ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** ) | **IN THE COURT OF COMMON PLEAS** |
| ) | |
| **COUNTY OF HORRY** ) | **FIFTEENTH JUDICIAL CIRCUIT** |
| ) | |
| ) | |
| GRAND STRAND WATER AND SEWER ) AUTHORITY, ) | C.A. No.: 2024-CP-26-_____ |
| ) | |
| *Plaintiff*, ) | |
| ) | **SUMMONS** |
| v. ) | (JURY TRIAL DEMANDED) |
| ) | |
| BURLINGTON INDUSTRIES, INC., ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

**TO THE DEFENDANT ABOVE-NAMED:**

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this Complaint upon the subscribers at 291 S. Pine Street, Spartanburg, South Carolina 29302, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

*Signature Page Follows*

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

August 9, 2024

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF HORRY** | ) | **FIFTEENTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GRAND STRAND WATER AND SEWER AUTHORITY, | ) | C.A. No.: 2024-CP-26-_____ |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BURLINGTON INDUSTRIES, INC., | ) | **COMPLAINT** |
| | ) | (JURY TRIAL DEMANDED) |
| *Defendant.* | ) | |
| | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

Plaintiff, GRAND STRAND WATER AND SEWER AUTHORITY, by and through the undersigned counsel, brings this action against the above-named Defendant for compensatory and punitive damages, injunctive relief, and abatement of a nuisance, and alleges as follows:

## STATEMENT OF THE CASE

1. Plaintiff, Grand Strand Water and Sewer Authority, brings this action to address Defendant's ongoing contamination of the Great Pee Dee River, Bull Creek, the Waccamaw River, the Intracoastal Waterway, and Plaintiff's properties with certain toxic per- and polyfluoroalkyl substances ("PFAS"): perfluorooctanoic acid ("PFOA"); perfluorooctanesulfonic acid ("PFOS"); perfluorononanoic acid ("PFNA"); perfluorobutane sulfonate ("PFBS"); perfluorohexane sulfonate ("PFHxS"); and hexafluoropropylene oxide dimer acid ("HFPO-DA" or "GenX Chemicals").

2. As Plaintiff has recently discovered, Defendant discharged products that contain or degrade to these PFAS to the Pee Dee River Watershed, which travel downstream to Plaintiff's water intakes on Bull Creek and the Intracoastal Waterway, thereby contaminating Plaintiff's

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

properties and the domestic water supply for over 115,000 water customers in Horry County. Plaintiff seeks a declaratory judgment, injunctive relief, abatement, damages, and an award of costs, including attorneys' fees, for Defendant's PFAS contamination.

3.      Plaintiff is a special purpose district that provides potable water to residents of various counties in South Carolina, including Horry County. It owns and occupies riparian lands in Horry County, both on Bull Creek in Bucksport, South Carolina; and on the Intracoastal Waterway in Myrtle Beach, South Carolina. On these respective properties, Plaintiff operates the Bull Creek Surface Water Treatment Plant ("SWTP"); Myrtle Beach SWTP; and related buildings, improvements, and equipment that make up these water distribution systems. Plaintiff's SWTPs draw raw water from Bull Creek and the Intracoastal Waterway for treatment before distributing treated water to customers.

4.      Defendant owned and/or operated industrial facilities upstream of Plaintiff's water intakes and has in the past and/or currently uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in its industrial processes. Defendant then discharged wastewater contaminated with these products to surface waters in the Pee Dee River Watershed upstream of Plaintiff's water intakes.

5.      Industrial wastewater from Defendant's facility contains high levels of PFAS, which cannot be adequately removed by conventional wastewater treatment processes; are discharged to the Pee Dee River Watershed; and flow downstream to Plaintiff's SWTPs. As a direct and proximate result of Defendant's actions, Plaintiff has suffered losses to the use and enjoyment of its property rights, and Plaintiff's properties have been, and will continuously be, trespassed and damaged by water contaminated with dangerous concentrations of PFAS.

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

6.      Defendant's PFAS contaminates Plaintiff's water sources at concentrations exceeding what the U.S. Environmental Protection Agency ("EPA") deems unsafe for consumption, and Plaintiff's existing water treatment processes cannot remove them. Instead, Plaintiff requires new water treatment technologies to remove, and provide water free from, Defendant's PFAS.

7.      As a result of Defendant's intentional, willful, wanton, reckless, and/or negligent acts and omissions and the nuisance thereby created, maintained, and continued, Plaintiff has suffered injury to its property rights and resulting damages, including compensatory and consequential damages. Plaintiff is also seeking equitable and injunctive relief requiring Defendant to cease discharging PFAS into the Pee Dee River Watershed; and requiring Defendant to fund the acquisition, installation, and operation of water treatment technologies at Plaintiff's SWTPs that will remove Defendant's PFAS from drinking water. In addition, based on Defendant's intentional, willful, wanton, reckless, malicious, and oppressive misconduct, Plaintiff is seeking the recovery of punitive damages.

## DISCLAIMER

8.      Plaintiff makes no assertion of fact concerning, and brings no cause of action based on, the manufacture, sale, distribution, use, or disposal of PFAS associated with aqueous film forming foam ("AFFF"), whether commercial, MilSpec, or other variety. Plaintiff expressly disclaims any causes of action, injury, or damages resulting from the manufacture, sale, distribution, use, or disposal of any AFFF by any Defendant or third-party.

9.      All Plaintiff's causes of action arise under South Carolina law, and Plaintiff brings no cause of action and seeks no relief under federal law or statute.

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to Article V of the Constitution of the State of South Carolina; sections 6-11-1610 and 14-1-80 of the South Carolina Code; and Act No. 337, 1971 S.C. Acts 444.

11.     This Court has personal jurisdiction over Defendant, consistent with due process and South Carolina's long-arm statute, section 36-2-803 of the South Carolina Code.

12.     Venue is also properly in this Court pursuant to sections 15-7-10 and -30 of the South Carolina Code because the subject of the action is for injuries sustained to Plaintiff's property located in Horry County, and the most substantial part of Defendant's alleged acts or omissions giving rise to Plaintiff's claims occurred in Horry County. Moreover, Defendant has consented to venue in this jurisdiction.

## PARTIES

### I.     Plaintiff

13.     Plaintiff Grand Strand Water and Sewer Authority is a special purpose district created for the distribution of potable water and provision of sewer services. Act No. 337, 1971 S.C. Acts 444.

14.     Plaintiff owns two properties at issue. The first is located at 8052 Treatment Plant Road, Bucksport, South Carolina 29527, where Plaintiff operates the Bull Creek SWTP. The Bull Creek SWTP is riparian to, and draws raw water from, Bull Creek. Plaintiff's second property is located at 3020 Mr. Joe White Avenue, Myrtle Beach, South Carolina 29577, where it operates the Myrtle Beach SWTP for the Myrtle Beach service area. The Myrtle Beach SWTP is riparian to, and draws raw water from, the Intracoastal Waterway.

4

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

15.    The Bull Creek SWTP provides potable water to approximately 115,000 customers. The Myrtle Beach SWTP services the Cities of Myrtle Beach and North Myrtle Beach, which distribute the water to their residents.

## II.    Defendant

16.    Defendant **Burlington Industries, Inc.** ("Burlington") was a Delaware corporation authorized to do business in South Carolina until its dissolution in 2004. On May 13, 2022, the South Carolina Circuit Court appointed Peter McCoy, Jr., a resident of Charleston County, South Carolina, as the receiver for Burlington. *See Mimms v. Burlington Indus., Inc. et al.*, C.A. No. 2021-CP-40-05873, Order Appointing Receiver Over Defendant Burlington Industries, Inc. (Richland Cnty. Ct. of Common Pleas May 13, 2022). Burlington was the owner and operator of an industrial facility located at 670 N. Main Street, Society Hill, South Carolina 29593 from 1966 to 1988. The facility is a former textile mill and finishing facility bordering Cedar Creek and the Great Pee Dee River, and it encompasses roughly 234 acres. Over the course of the facility's operations, Defendant used products that contain or degrade to PFOA, PFOS, PFNA, PFHxS, PFBS, and/or GenX Chemicals in the manufacture of textile products. As part of its processes, Defendant discharged industrial wastewater contaminated with these PFAS from its own wastewater treatment plant to Cedar Creek and the Great Pee Dee River upstream of Bull Creek. The facility was not remediated when shut down in 2016, and wastewater lagoons and other storage basins have accumulated PFOA, PFOS, PFNA, PFHxS, PFBS, GenX Chemicals, and/or their precursors for decades. These PFAS overflow to the Great Pee Dee River upstream of Bull Creek. Defendant's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River to Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## FACTUAL ALLEGATIONS

### I.    Background and Hazards of PFAS

17.    PFAS are a large group of man-made chemicals that do not occur naturally in the environment. Due to their strong carbon-fluorine bonds, PFAS are extremely stable, repel both oil and water, and are resistant to heat and chemical reactions. As a result of these properties, PFAS have a wide variety of industrial, commercial, and consumer applications.

18.    The stable carbon-fluorine bonds that make PFAS pervasive in industrial, commercial, and consumer products also result in their persistence in the environment. They are colloquially termed "forever chemicals," as terminal PFAS have no known environmental breakdown mechanism, are readily absorbed into biota, and tend to bioaccumulate with repeated exposure.

19.    There are both polymer and non-polymer PFAS. Non-polymer PFAS include well-known substances like PFOA, PFOS, PFHxS, PFNA, PFBS, and HFPO-DA (a/k/a GenX Chemicals). Polymer PFAS include fluoropolymers and side-chain fluorinated polymers that are often the active chemistry in PFAS products utilized by Defendant.

20.    There are also both terminal PFAS and their precursors. Precursors may undergo environmental degradation that ultimately results in the formation of terminal PFAS—meaning no further degradation occurs under normal environmental conditions. PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are all terminal PFAS.

21.    Both polymer and non-polymer PFAS can degrade to terminal PFAS. Generally, terminal PFAS are present in or otherwise form from PFAS products via three primary routes: (1) as a direct byproduct of the manufacturing process; (2) the degradation of precursor PFAS that are byproducts of the manufacturing process; and/or (3) the degradation of polymer PFAS into terminal PFAS and precursor PFAS.

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

22.    PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination. Therefore, a major source of human exposure to PFAS is through ingestion of contaminated drinking water. Exposure is dose-additive, meaning that exposure to low levels of multiple PFAS, which individually would pose little or no risk, can result in a combined dose capable of causing adverse health effects.

23.    While there are thousands of different PFAS chemicals, current scientific evidence shows that harmful health effects can result from consuming drinking water with any level of PFOA or PFOS, and at certain aggregate levels of PFHxS, PFNA, PFBS, and GenX Chemicals. Depending on the type of PFAS, negative health effects include increased risk of certain types of cancer and adverse impacts on fetal growth and development; reproduction; and on liver, thyroid, immune, cardiovascular, and/or nervous system function.

24.    PFOA and PFOS have been the most widely used PFAS, and they are the most studied by regulators and the scientific community. While some industries voluntarily phased out products containing PFOA and PFOS by 2015, their limited use continues even in the United States. Due to their persistent nature, PFOA and PFOS remain in the environment from decades of legacy industrial use.

25.    Products based on PFAS consisting of shorter fluorinated carbon chains were developed to replace PFOA and PFOS, and they are now used in industrial applications to confer similar properties and characteristics. These "short-chain" PFAS are still bioaccumulative and environmentally persistent, and some short-chain PFAS products nevertheless still contain PFOA and PFOS and their precursors.  Terminal short-chain PFAS include PFHxS, PFNA, PFBS, and GenX Chemicals.

7

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

26.     Based on the science available in 2009, EPA published provisional drinking water health advisories for short-term exposure to PFOA and PFOS. U.S.E.P.A., *Provisional Health Advisories for Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS)* (Jan. 8, 2009), *available at* https://www.epa.gov/sites/default/files/2015-09/documents/pfoa-pfos-provisional.pdf. The advisory levels were 400 parts per trillion ("ppt") for PFOA and 200 ppt for PFOS. In the same publication, EPA reported that it conducted sampling of public drinking water in Alabama communities, finding PFOA and PFOS levels lower than 40 ppt. It explained, "Based on its current understanding, EPA believes these levels are not of concern and residents may rely upon public water systems." *Id.*

27.     On May 16, 2016, due to the evolution of science on the health effects of PFOA and PFOS, EPA published lifetime health advisory levels for each chemical in drinking water. Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 33250 (May 25, 2016). Superseding the 2009 provisional levels, the 2016 levels for PFOA and PFOS were 70 ppt, independently or in the aggregate. EPA explained that its new health advisories "identify the concentration of PFOA and PFOS in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure."

28.     EPA's 2016 Health Advisories were based on peer-reviewed studies of the effects of PFOA and PFOS on laboratory animals and epidemiological studies of human populations exposed to PFOA and PFOS. These studies indicated that exposure to PFOA and PFOS over certain levels may result in adverse health effects, including developmental defects to fetuses, cancer (testicular, kidney), liver effects, immune effects, thyroid effects, and other adverse effects. But based on its review of the science, EPA stated that its analysis indicated exposure to PFOA

8

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

and PFOS at or below health advisory levels "will not result in adverse health effects (including cancer and non-cancer) to the general population over a lifetime (or any shorter period) of exposure to these chemicals." *Id.*

29.    On June 15, 2022, EPA again updated health advisory levels for PFOA and PFOS on an interim basis, which replaced the 2016 advisory levels. Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances, 87 Fed. Reg. 36848 (June 21, 2022). EPA explained that updated human epidemiological data indicated "that the level at which negative health effects could occur are much lower than previously understood when the agency issued its 2016 health advisories for PFOA and PFOS"—finding "associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, development (e.g., decreased birth weight), and cancer." *Id.* Concerned with the public health implications of its data, EPA issued interim levels pending determination of maximum contaminant levels and maximum contaminant level goals. The interim levels were 0.004 ppt for PFOA and 0.02 ppt for PFOS.

30.    Simultaneously, EPA also issued health advisories for the first time covering PFBS and GenX Chemicals. EPA reported that "GenX Chemicals have been linked to health effects on the liver, the kidney, the immune system, and developmental effects, as well as cancer." *Id.* For PFBS, it noted studies indicating health effects on the thyroid, reproductive system, development, and kidney. Based on its 2021 toxicity studies for these chemicals, EPA released final health advisories for each: GenX Chemicals at 10 ppt and PFBS at 2,000 ppt.

31.    In March of 2023, EPA issued proposed maximum contaminant level ("MCL")s and maximum contaminant level goal ("MCLG")s for PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals. PFAS Nat'l Primary Drinking Water Regulation Rulemaking, 88 Fed. Reg. 18638 (Mar. 29, 2023) (to be codified at 40 C.F.R. pt. 141, 142). An MCLG is the maximum level

9

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

of a contaminant in drinking water at which no known or anticipated adverse effect on the health of persons would occur, allowing an adequate margin of safety. An MCL is the maximum allowable level of a contaminant that may be delivered to any user of a public water system and is based on the feasibility of existing technology to detect PFAS at a threshold level.

32.     At that time, EPA announced that, "[f]ollowing a systematic review of available human epidemiological and animal toxicity studies, EPA has determined that PFOA and PFOS are likely to cause cancer (e.g., kidney and liver cancer) and that there is no dose below which either chemical is considered safe." *Id.* Therefore, it proposed MCLG levels for both chemicals at zero ppt. Enforceable MCL levels for each chemical were proposed at 4 ppt. According to EPA, "[a]ny exceedance of this limit requires action to protect public health, regardless of any mixture in which they are found." *Id.*

33.     Due to their toxic effects, dose additivity, and presence in drinking water, EPA proposed a hazard index approach covering mixtures of PFHxS, PFNA, PFBS, and GenX Chemicals. The hazard index is the sum of each PFAS's "hazard quotient." Hazard quotients are first calculated by dividing the applicable PFAS's "exposure metric" (i.e., concentration in drinking water) by its "health reference value" (PFHxS: 9 ppt; GenX Chemicals: 10 ppt; PFNA: 10 ppt; PFBS: 2,000 ppt). If the sum of each's hazard quotient is below 1.0, then it "represents a level at which no known or anticipated adverse effects on the health of persons is expected to occur and which allows for an adequate margin of safety." *Id.* If greater than 1.0, then "potential risk is indicated." *Id.*

34.     EPA stated that, once its proposed MCLs became final, it would "save thousands of lives and prevent tens of thousands of avoidable illnesses." U.S.E.P.A., *EPA Releases Annual Report Showing Steady Progress to Protect Communities from PFAS Pollution* (Dec. 14, 2023),

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

*available at* https://www.epa.gov/newsreleases/epa-releases-annual-report-showing-steady-progress-protect-communities-pfas-pollution.

35.     EPA finalized its proposed MCLs and MCLGs on April 10, 2024. U.S.E.P.A., *PFAS Nat'l Primary Drinking Water Regulation Rulemaking* (Apr. 10, 2024), *available at* https://www.epa.gov/system/files/documents/2024-04/pfas-npdwr_prepubfederalregisternotice_4.8.24.pdf (pre-publication version). In accompanying publications, EPA declared, "The science is clear: exposure to these six PFAS is linked to significant health risks" that include "certain cancers and heart impacts in adults, and immune and developmental impacts in infants and children." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024); *see also* U.S.E.P.A., *Final PFAS Nat'l Drinking Water Regulation Landing Page*, http://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (providing links to EPA PFAS regulation publications).

36.     The final regulation solidifies MCLs of 4.0 ppt for PFOA and PFOS and 10.0 ppt for PFNA, PFHxS, and GenX Chemicals, including a Hazard Index that covers mixtures of PFBS with PFNA, PFHxS, and GenX Chemicals. It also enshrines MCLGs of zero ppt for PFOA and PFOS, which EPA states "reflects the latest science showing that there is no level of exposure to these two PFAS without risk of health impacts." U.S.E.P.A., *Presentation: Overview EPA PFAS NPDWR* (Apr. 10, 2024). According to EPA, "[t]he more you reduce your exposure to PFAS, the more you reduce your risk." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024).

37.     EPA's final regulations mandate several new obligations regarding PFAS, including the implementation of solutions to reduce regulated PFAS concentrations in the drinking water that Plaintiff distributes, maintenance of ongoing compliance monitoring, and informing the

11

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

public of PFAS levels in the water and of any violations. By 2027, Plaintiff must begin conducting and reporting regular PFAS monitoring, and by 2029, Plaintiff must comply with all MCLs. Plaintiff has conducted a diligent investigation into this issue, is seeking to address it in an expedited manner, and for this reason seeks prompt relief from the Court.

## II. Contamination of Bull Creek and the Intracoastal Waterway with PFAS

38. Bull Creek is a tributary of the Great Pee Dee River, branching off the river near Bucksport, South Carolina.

39. Defendant's industrial facility operated upstream of Bull Creek.

40. PFAS sampling of Bull Creek and the Great Pee Dee River confirms the presence of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals throughout these bodies of water. These PFAS flow downstream and contaminate the water at Plaintiff's water intake on Bull Creek at concentrations exceeding EPA's MCLs and MCLGs. Indeed, sampling at Plaintiff's water intake confirm the presence of PFOA and PFOS at concentrations higher than what EPA deems unsafe for consumption.

41. Defendant was an owner and operator of an industrial facility located on Cedar Creek and the Gree Pee Dee River. In its industrial processes, Defendant utilized products that contain or degrade to PFOS, PFOA, PFHxS, PFNA, PFBS, and/or GenX Chemicals. Defendant's industrial processes generated industrial wastewater containing these PFAS, which Defendant ultimately discharged to surface waters upstream of Bull Creek.

42. Defendant's PFAS and their precursors flowed and still flow downstream to Plaintiff's water intake on Bull Creek, damaging Plaintiff's property and contaminating its water sources.

43. The Bull Creek SWTP utilizes conventional water treatment technologies to treat raw water, including coagulation, flocculation, sedimentation, filtration, and chlorination. None of

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

these methods remove PFAS from water, and the Bull Creek SWTP requires new water treatment technologies to do so.

44.    Plaintiff also owns the Bucksport Regional and Conway WWTPs, which operate along the Waccamaw River upstream of the Intracoastal Waterway.

45.    Neither the Bucksport nor Conway WWTPs have industrial users. Instead, both provide sewer services primarily to residential and commercial customers that use potable water distributed by the Bull Creek SWTP.

46.    Because the Bull Creek SWTP cannot remove Defendant's PFAS from the water Plaintiff draws from Bull Creek, the water that sewer customers send to the Bucksport and Conway WWTPs remains contaminated with Defendant's PFAS.

47.    Like the Bull Creek SWTP, the Bucksport and Conway WWTPs are not equipped to address Defendant's PFAS. Both utilize conventional wastewater treatment methods, including screening and grit removal, aeration, clarification, chlorination, and UV disinfection—none of which remove Defendant's PFAS. Once the Bucksport and Conway WWTPs treat sewer water, both discharge to the Waccamaw River upstream of the Intracoastal Waterway.

48.    Plaintiff's Myrtle Beach SWTP draws raw water from the Intracoastal Waterway for treatment and distribution to the Cities of Myrtle Beach and North Myrtle Beach, who in turn provide the water to tens of thousands of people. But because Defendant's PFAS resist environmental degradation and conventional treatment methods, they contaminate Plaintiff's water intakes on the Intracoastal Waterway and damage Plaintiff's property at the Myrtle Beach SWTP. As with the Bull Creek SWTP, the Myrtle Beach SWTP utilizes conventional water treatment methods that do not remove Defendant's PFAS, and the Myrtle Beach SWTP requires new treatment technologies to do so.

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

49.     Defendant knew or should have known that conventional water treatment technologies that it used could not remove PFAS from wastewater. Defendant also knew or should have known that its treated wastewater contaminated surface waters and the water Plaintiff draws for its customers.

### III.     Defendant has harmed Plaintiff and Plaintiff's community.

50.     For decades and unknown to Plaintiff, Defendant discharged PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors into the Pee Dee River Watershed, which has caused, and continues to cause, contamination of these waters with PFAS chemicals exceeding EPA's health advisories, MCLGs, and MCLs. Indeed, absent new treatment technologies, Plaintiff cannot use its properties and property rights to provide water that is either free of all PFOA and PFOS, or compliant with EPA's MCLs.

51.     Defendant's conduct has proximately caused the contamination of the Great Pee Dee River and of Plaintiff's land, its Bull Creek and Myrtle Beach SWTPs, its Bucksport and Conway WWTPs, and its water distribution systems with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals—including PFOA and PFOS at concentrations above EPA's MCLGs and MCLs.

52.     Defendant, individually and acting through its employees and agents, knowingly, intentionally, recklessly, or negligently engaged in conduct or omissions that proximately caused unreasonable interference with Plaintiff's right to use and enjoy its properties, its right to use Bull Creek and the Intracoastal Waterway, and has caused Plaintiff additional past, present, and future injury to property.

53.     Despite knowing that there is no safe dose for PFOA or PFOS, and that PFHxS, PFNA, PFBS, and GenX Chemicals are hazardous to human health, Defendant discharged

14

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

industrial wastewater contaminated with these chemicals into the Pee Dee River Watershed, which it knew or should have known contaminated Plaintiff's properties.

## FIRST CAUSE OF ACTION

### Private Nuisance

54. Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

55. Plaintiff is a special purpose district created for the purpose of constructing, operating, maintaining, improving, and extending a water distribution system for residents of Horry County and other counties. It uses its properties for those purposes, including the withdrawal of raw water from Bull Creek and the Intracoastal Waterway, the treatment of raw water, and the distribution of treated water to customers in Horry County and other counties.

56. Plaintiff owns riparian land abutting Bull Creek and the Intracoastal Waterway, and Plaintiff has a property right in the reasonable use of these waters, including for the provision of water to its customers.

57. Through the conduct described herein, Defendant created, contributed to, and/or maintained a nuisance; that is, the contamination of the Great Pee Dee River, the Waccamaw River, and the Intracoastal Waterway with PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors at concentrations exceeding those EPA deems unsafe for consumption.

58. Due to Defendant's contamination, Plaintiff cannot provide water to its customers without PFAS, or even at PFAS concentrations that comply with EPA's MCLs, absent new water treatment technology.

59. Defendant's contamination caused, contributed to, and/or maintains a nuisance that substantially and unreasonably interferes with Plaintiff's use and enjoyment of its properties, interferes with Plaintiff's properties and its riparian rights, damages Plaintiff's properties, and causes Plaintiff additional inconvenience, annoyance, and harm.

15

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

60.     Defendant, individually and acting through its employees and agents, knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights.

61.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer damages related to Defendant's contamination of the Great Pee Dee River, the Waccamaw River, the Intracoastal Waterway, and Plaintiff's property, including loss in value, the cost of removing Defendant's PFAS, and other damages to be proved at trial.

62.     In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendant.

63.     The ongoing contamination of Bull Creek, the Intracoastal Waterway, and Plaintiff's properties constitutes a continuing irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendant to take all steps necessary to prevent further discharge of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals and to fund the measures necessary to prevent these PFAS from continuing to interfere with Plaintiff's use and enjoyment of its land and its riparian use of Bull Creek and the Intracoastal Waterway to supply potable water to its customers.

64.     Defendant's interference with Plaintiff's use of its properties can be abated by methods that include, but are not limited to, funding the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTPs to remove legacy PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## SECOND CAUSE OF ACTION

### Public Nuisance

65.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

66.     Plaintiff is a special purpose district created for the purpose of constructing, operating, maintaining, improving, and extending a water distribution system for residents of Horry County and other counties. It uses its properties for those purposes, including the withdrawal of raw water from Bull Creek and the Intracoastal Waterway, the treatment of raw water, and the distribution of treated water to customers in Horry County and other counties.

67.     Plaintiff's customers use the water Plaintiff provides for many purposes, including drinking, cooking, bathing, cleaning, washing, and watering plants and gardens.

68.     Plaintiff's customers, and indeed all residents in Plaintiff's community, have a right to potable water that is reasonably pure and safe for their use—and thus free from contamination by Defendant's PFOA, PFOS, PFNA, PFHxS, PFBS, and GenX Chemicals. Defendant's contamination unreasonably interferes with, disrupts, and threatens public health, safety, and order. Indeed, EPA makes clear that there is no safe dose for consuming PFOA and PFOS.

69.     Plaintiff has sustained special injuries as a result of Defendant's public nuisance, including but not limited to, the lost use of its properties; the inability to provide potable water to customers without concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals deemed unsafe by EPA; expenses associated with future acquisition, installation, and operation of required treatment technologies to remove unsafe concentrations of these PFAS from water; expenses incurred in discovering and identifying sources of Defendant's contamination; interference with Plaintiff's riparian right to use Bull Creek and the Intracoastal Waterway; interference with the use of Plaintiff's SWTPs and water distribution systems; and lost revenue.

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

70. As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer special injury and damages related to Defendant's contamination of the Great Pee Dee River, the Waccamaw River, the Intracoastal Waterway, and Plaintiff's properties.

71. Defendant, individually and acting through its employees and agents, knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights and endangered the health of Plaintiff's customers, consumers of Plaintiff's drinking water, and Plaintiff's community.

72. As a result of the nuisance caused by Defendant, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Defendant's PFAS, and other damages to be proved at trial.

73. In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendant.

74. Defendant's ongoing contamination constitutes a continuing threat to public health, safety, and order, and it constitutes irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendant to take all steps necessary to prevent further discharge of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals and to fund the measures necessary to prevent these PFAS from continuing to threaten public health and safety and ensure that Plaintiff's customers and residents of Plaintiff's community receive water free from PFAS.

75. Defendant's contamination of potable water with unsafe concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals can be abated by methods that include, but are not limited to, requiring Defendant to fund the acquisition, installation, and operation of new water

18

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

treatment technology at Plaintiff's SWTPs to remove legacy PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

## THIRD CAUSE OF ACTION

### Trespass

76.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

77.     Plaintiff owns, possesses, and actively exercises its right to use its land, SWTPs, and related buildings, improvements, and equipment that make up its water distribution systems.

78.     Defendant intentionally discharged and continues to discharge PFAS to the Great Pee Dee River, notwithstanding that Defendant knew and/or reasonably should have known that:

(a)     Plaintiff draws water from Bull Creek for the provision of drinking water to its customers;

(b)     water Plaintiff draws from Bull Creek is contaminated with the PFAS it discharged to the Great Pee Dee River; and, thereby,

(c) water contaminated with high concentrations of Defendant's PFAS invades Plaintiff's properties.

79.     Plaintiff has not consented to, and does not consent to, the invasion of its properties by water contaminated with PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals at concentrations exceeding EPA's MCLs and MCLGs and beyond what EPA deems unsafe for consumption.

80.     Defendant's invasions of Plaintiff's properties are continuing and ongoing, and each separate invasion of PFAS-contaminated water constitutes a new trespass each time Plaintiff's water pumps are active.

81.     Defendant intends and/or intended that, while using PFAS in its industrial processes, PFAS-containing wastewater be discharged to the Great Pee Dee River.

19

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

82. Defendant's conduct is the actual and proximate cause of the invasion of PFAS-contaminated water into Plaintiff's properties, including its land, SWTPs, and related buildings, improvements, and equipment that make up its water distribution systems. The damage to Plaintiff's properties is the direct and proximate result of Defendant's intentional conduct.

83. As a direct, proximate, and foreseeable result of Defendant's trespasses, Plaintiff has suffered, now suffers, and will continue to suffer invasion of its property rights and damages, including loss in value, the cost of removing Defendant's PFAS, and other damages to be proved at trial.

84. Defendant's ongoing trespasses can be abated by, among other measures, ceasing all discharges of PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to surface waters upstream of Plaintiff's water intakes. In addition to compensatory and punitive damages, Plaintiff requests a permanent injunction prohibiting this conduct.

## FOURTH CAUSE OF ACTION

### Negligence, Gross Negligence, and/or Recklessness

85. Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

86. Defendant had a duty to use due care in the handling, use, and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to avoid causing an unreasonable risk of harm to others, which includes preventing the direct and/or indirect discharge of these PFAS into surface waters upstream of Plaintiff's SWTPs, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

87. Defendant knew or should have known that the PFAS it discharged were environmentally persistent, bioaccumulative, and dose-additive; that conventional wastewater treatment technologies utilized by Defendant could not remove its PFAS; and that surface waters—

20

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

including the Great Pee Dee River—were vulnerable to the contamination that has taken and now takes place.

88. Defendant nonetheless negligently, recklessly, wantonly, and/or willfully breached its duty in causing products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to escape its premises and contaminate the Great Pee Dee River, thereby interfering with Plaintiff's property rights and injuring Plaintiff's properties.

89. As a direct, proximate, and foreseeable result of Defendant's conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including but not limited to loss in value; the cost of removing Defendant's PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals; future costs of acquiring, installing, and operating adequate water treatment technologies; and other damages to be proved at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands trial by jury, and respectfully requests that the Court grant the following relief:

(a) Enter a judgment and decree against Defendant enjoining it from maintaining the nuisance it has caused, created, and maintained;

(b) Enter a judgment and decree against Defendant requiring it to abate the nuisance it has caused, created, and maintained;

(c) Enter a judgment and decree against Defendant enjoining it from continuing its trespasses onto Plaintiff's properties;

(d) Enter a judgment and decree against Defendant, requiring it to cease the discharge or release of products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX

21

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Chemicals into rivers, streams, and/or tributaries where they contaminate Plaintiff's water supply in Bull Creek and the Intracoastal Waterway;

(e)     Enter a judgment and decree against Defendant, requiring it to remove its PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX chemicals from Plaintiff's water systems by funding the acquisition, installation, and operation of treatment technology capable of removing them;

(f)     Enter a judgment and decree against Defendant, requiring it to prevent the release of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals into rivers, streams, and tributaries that contaminate Plaintiff's water systems;

(g)     Enter a judgment against Defendant, for past, present, and future compensatory damages in such amounts as the evidence shows Plaintiff to be justly entitled to recover, including interest and reasonable attorneys' fees and litigation expenses, and punitive damages, as applicable, in an amount sufficient to punish and penalize Defendant, and to deter it from repeating its wrongful conduct, and all costs; and

(h)     Award such other relief and further relief as this Court deems just, proper, and equitable.

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com

22

cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

August 9, 2024

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

23

# EXHIBIT

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Aug 09 5:14 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| | ) |
| COUNTY OF HORRY | ) FIFTEENTH JUDICIAL CIRCUIT |
| | ) |
| | ) |
| GRAND STRAND WATER AND SEWER AUTHORITY, | ) C.A. No.: 2024-CP-26-_____ |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BURLINGTON INDUSTRIES, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BURLINGTON INDUSTRIES, INC. CONSENT TO SUIT

1.    I am the court-appointed receiver for Burlington Industries, Inc. ("Burlington"), by order of the Richland County Court of Common Pleas. *See* Order Appointing Receiver Over Defendant Burlington Industries, Inc., *Mimms v. Burlington Indus., Inc.*, C.A. No. 2021-CP-40-05873 (May 13, 2022).

2.    I have received an unfiled copy of a complaint by the Grand Strand Water and Sewer Authority ("GSWSA") to be filed against Burlington Industries, Inc. in the Horry County Court of Common Pleas concerning contamination of the Great Pee Dee River and GSWSA's properties with certain per- and polyfluoroalkyl substances.

3.    By the order appointing me as receiver, Burlington may not be sued outside of the Richland County Court of Common Pleas without my prior consent. I hereby consent to GSWSA filing and maintaining this suit against Burlington in Horry County.

_____
Peter McCoy, Jr.
Receiver for Burlington Industries, Inc.

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF HORRY** | ) | **FIFTEENTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GRAND STRAND WATER AND SEWER AUTHORITY, | ) | C.A. No.: 2024-CP-26-05523 |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **AMENDED SUMMONS** (JURY TRIAL DEMANDED) |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

**TO THE DEFENDANTS ABOVE-NAMED:**

YOU ARE HEREBY SUMMONED and required to answer the First Amended Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to the First Amended Complaint upon the subscribers at 291 S. Pine Street, Spartanburg, South Carolina 29302, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the First Amended Complaint, judgment by default will be rendered against you for the relief demanded in the First Amended Complaint.

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

August 16, 2024

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF HORRY** | ) | **FIFTEENTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GRAND STRAND WATER AND SEWER | ) | C.A. No.: 2024-CP-26-05523 |
| AUTHORITY, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALADDIN MANUFACTURING | ) | **FIRST AMENDED COMPLAINT** |
| CORPORATION; BURLINGTON | ) | (JURY TRIAL DEMANDED) |
| INDUSTRIES, INC.; DELTA MILLS, INC., | ) | |
| its predecessors, successors, assigns, and/or | ) | |
| responsible parties; DOMTAR PAPER | ) | |
| COMPANY, LLC; ELEVATE TEXTILES, | ) | |
| INC.; FIBER INDUSTRIES, LLC; GFL | ) | |
| ENVIRONMENTAL USA, INC.; J.P. | ) | |
| STEVENS & COMPANY, INC., its | ) | |
| predecessors, successors, assigns, and/or | ) | |
| responsible parties; MOHAWK | ) | |
| INDUSTRIES, INC.; NAN YA PLASTICS | ) | |
| CORPORATION, AMERICA; PRET | ) | |
| ADVANCED MATERIALS, LLC; RED | ) | |
| ROCK DISPOSAL, LLC; SAMPSON | ) | |
| COUNTY DISPOSAL, LLC; and WASTE | ) | |
| INDUSTRIES, LLC, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

Plaintiff, GRAND STRAND WATER AND SEWER AUTHORITY, by and through the undersigned counsel, brings this action against the above-named Defendants for compensatory and punitive damages, injunctive relief, and abatement of a nuisance, and alleges as follows:

## STATEMENT OF THE CASE

1. Plaintiff, Grand Strand Water and Sewer Authority, brings this action to address Defendants' ongoing contamination of the Great Pee Dee River, Lynches River, Lumber River, Little Pee Dee River, Lynches Lake Swamp, Black Creek, and Bull Creek (collectively the "Pee

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Dee River Watershed"); the Waccamaw River and Intracoastal Waterway; and Plaintiff's properties with certain toxic per- and polyfluoroalkyl substances ("PFAS"): perfluorooctanoic acid ("PFOA"); perfluorooctanesulfonic acid ("PFOS"); perfluorononanoic acid ("PFNA"); perfluorobutane sulfonate ("PFBS"); perfluorohexane sulfonate ("PFHxS"); and hexafluoropropylene oxide dimer acid ("HFPO-DA" or "GenX Chemicals").

2.     As Plaintiff has recently discovered, Defendants have discharged and continue to discharge products that contain or degrade to these PFAS to the Pee Dee River Watershed, which travel downstream to Plaintiff's water intakes on Bull Creek and the Intracoastal Waterway, thereby contaminating Plaintiff's properties and the domestic water supply for over 115,000 water customers in Horry County. Plaintiff seeks a declaratory judgment, injunctive relief, abatement, damages, and an award of costs, including attorneys' fees, for Defendants' repeated and ongoing PFAS contamination.

3.     Plaintiff is a special purpose district that provides potable water to residents of various counties in South Carolina, including Horry County. It owns and occupies riparian lands in Horry County, both on Bull Creek in Bucksport, South Carolina; and on the Intracoastal Waterway in Myrtle Beach, South Carolina. On these respective properties, Plaintiff operates the Bull Creek Surface Water Treatment Plant ("SWTP"); Myrtle Beach SWTP; and related buildings, improvements, and equipment that make up these water distribution systems. Plaintiff's SWTPs draw raw water from Bull Creek and the Intracoastal Waterway for treatment before distributing treated water to customers.

4.     Defendants own and/or operate industrial facilities upstream of Plaintiff's water intakes and have in the past and/or currently use products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in their industrial processes. Defendants then

2

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

discharge wastewater contaminated with these products to surface waters in the Pee Dee River Watershed upstream of Plaintiff's water intakes. Some Defendants directly discharge PFAS-contaminated wastewater, while others do so indirectly via certain wastewater treatment plants ("WWTPs"). These WWTPs include the Johnsonville WWTP and Lake City WWTP.

5.      Industrial wastewater from Defendants' facilities contains high levels of PFAS, which cannot be adequately removed by conventional wastewater treatment processes, are discharged to the Pee Dee River Watershed, and flow downstream to Plaintiff's SWTPs. As a direct and proximate result of Defendants' actions, Plaintiff has suffered losses to the use and enjoyment of its property rights, and Plaintiff's properties have been, and will continuously be, trespassed and damaged by water contaminated with dangerous concentrations of PFAS.

6.      Defendants' PFAS contaminates Plaintiff's water sources at concentrations exceeding what the U.S. Environmental Protection Agency ("EPA") deems unsafe for consumption, and Plaintiff's existing water treatment processes cannot remove them. Instead, Plaintiff requires new water treatment technologies to remove, and provide water free from, Defendants' PFAS.

7.      As a result of Defendants' intentional, willful, wanton, reckless, and/or negligent acts and omissions and the nuisance thereby created, maintained, and continued, Plaintiff has suffered injury to its property rights and resulting damages, including compensatory and consequential damages. Plaintiff is also seeking equitable and injunctive relief requiring Defendants to cease discharging PFAS into the Pee Dee River Watershed; and requiring Defendants to fund the acquisition, installation, and operation of water treatment technologies at Plaintiff's SWTPs that will remove Defendants' PFAS from drinking water. In addition, based on

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

the Defendants' intentional, willful, wanton, reckless, malicious, and oppressive misconduct, Plaintiff is seeking the recovery of punitive damages.

### DISCLAIMER

8.      Plaintiff makes no assertion of fact concerning, and brings no cause of action based on, the manufacture, sale, distribution, use, or disposal of PFAS associated with aqueous film forming foam ("AFFF"), whether commercial, MilSpec, or other variety. Plaintiff expressly disclaims any causes of action, injury, or damages resulting from the manufacture, sale, distribution, use, or disposal of any AFFF by any Defendant or third-party.

9.      All Plaintiff's causes of action arise under South Carolina law, and Plaintiff brings no cause of action and seeks no relief under federal law or statute.

### JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to Article V of the Constitution of the State of South Carolina; sections 6-11-1610 and 14-1-80 of the South Carolina Code; and Act No. 337, 1971 S.C. Acts 444.

11.      This Court has personal jurisdiction over all Defendants, consistent with due process and South Carolina's long-arm statute, section 36-2-803 of the South Carolina Code.

12.      Venue is also properly in this Court pursuant to sections 15-7-10 and -30 of the South Carolina Code because the subject of the action is for injuries sustained to Plaintiff's property located in Horry County, and the most substantial part of Defendants' alleged acts or omissions giving rise to Plaintiff's claims occurred in Horry County. *See id.* at § 15-7-30(B) ("If there is more than one defendant, the action may be tried in any county where the action properly may be maintained against one of the defendants pursuant to this section.").

4

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## PARTIES

### I.    Plaintiff

13.    Plaintiff Grand Strand Water and Sewer Authority is a special purpose district created for the distribution of potable water and provision of sewer services. Act No. 337, 1971 S.C. Acts 444.

14.    Plaintiff owns two properties at issue. The first is located at 8052 Treatment Plant Road, Bucksport, South Carolina 29527, where Plaintiff operates the Bull Creek SWTP. The Bull Creek SWTP is riparian to, and draws raw water from, Bull Creek. Plaintiff's second property is located at 3020 Mr. Joe White Avenue, Myrtle Beach, South Carolina 29577, where it operates the Myrtle Beach SWTP for the Myrtle Beach service area. The Myrtle Beach SWTP is riparian to, and draws raw water from, the Intracoastal Waterway.

15.    The Bull Creek SWTP provides potable water to approximately 115,000 customers. The Myrtle Beach SWTP services the Cities of Myrtle Beach and North Myrtle Beach, which distribute the water to their residents.

### II.    Defendants

16.    Defendant **Burlington Industries, Inc.** ("Burlington") was a Delaware corporation authorized to do business in South Carolina until its dissolution in 2004. On May 13, 2022, the South Carolina Circuit Court appointed Peter McCoy, Jr., a resident of Charleston County, South Carolina, as the receiver for Burlington. *See Mimms v. Burlington Indus., Inc. et al.*, C.A. No. 2021-CP-40-05873, Order Appointing Receiver Over Defendant Burlington Industries, Inc. (Richland Cnty. Ct. of Common Pleas May 13, 2022). Burlington was the owner and operator of an industrial facility located at 670 N. Main Street, Society Hill, South Carolina 29593 from 1966 to 1988. The facility is a former textile mill and finishing facility bordering Cedar Creek and the

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Great Pee Dee River, and it encompasses roughly 234 acres. Over the course of the facility's operations, Defendant used products that contain or degrade to PFOA, PFOS, PFNA, PFHxS, PFBS, and/or GenX Chemicals in the manufacture of textile products. As part of its processes, Defendant discharged industrial wastewater contaminated with these PFAS from its own wastewater treatment plant to Cedar Creek and the Great Pee Dee River upstream of Bull Creek. The facility was not remediated when shut down in 2016, and wastewater lagoons and other storage basins have accumulated PFOA, PFOS, PFNA, PFHxS, PFBS, GenX Chemicals, and/or their precursors for decades. These PFAS overflow to the Great Pee Dee River upstream of Bull Creek. Defendant's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River to Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs. Burlington also manufactured and distributed agricultural biosolid products contaminated with PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to farms and other users throughout the Pee Dee River Watershed upstream of Plaintiff's water intake on Bull Creek. PFAS from Burlington's biosolids have accumulated in the Pee Dee River Watershed, continually flow downstream to Plaintiff's water intakes, and contaminate Plaintiff's properties and its water sources.

17.    Defendant **Domtar Paper Company, LLC ("Domtar")** is a Delaware limited liability company that does business in South Carolina. Domtar owns and operates the Marlboro Mill, located at 585 Willamette Rd, Bennettsville, SC 29512. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of certain paper products. As part of its processes, the Marlboro Mill directly discharges industrial wastewater contaminated with products that contain or degrade to these PFAS into the Great Pee Dee River upstream of Plaintiff's water intake on Bull Creek. Domtar's PFAS resist environmental

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

degradation, flow downstream from the Great Pee Dee River and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

18.     Defendant **Elevate Textiles, Inc. ("Elevate")** is a Delaware corporation authorized to do business in South Carolina. Elevate owns and operates an industrial facility located at 740 Old Cheraw Highway, Rockingham, NC 28379 ("Richmond Plant"), which was previously owned and operated by Defendant Burlington. Throughout the facility's operation, both Burlington and Elevate used, and Elevate continues to use, products that contain or degrade to PFOA, PFOS, PFHxs, PFNA, PFBS, and/or GenX Chemicals. As part of their processes, Burlington and Elevate discharged, and Elevate continues to discharge, industrial wastewater contaminated with products that contain or degrade to these PFAS from the Richmond Plant to Hitchcock Creek upstream of Great Pee Dee River and Bull Creek. The Richmond Plant does not remove Defendants' PFAS, and it discharged and continues to discharge their PFAS into the Great Pee Dee River upstream of Plaintiff's Bull Creek intake. Defendants' PFAS resist environmental degradation, flow downstream from the Great Pee Dee River and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

19.     Defendant **Fiber Industries, LLC ("Darling Fibers")** is a South Carolina limited liability company, and it owns and operates a textile manufacturing facility located at 1000 E. McIver Road, Darlington, South Carolina 29532. There, Darling Fibers uses products that contain or degrade to PFOA, PFOS, PFHxs, PFNA, PFBS, and/or GenX Chemicals in the manufacture of textile fibers and fabrics. As part of its processes, the Darlington facility directly discharges industrial wastewater contaminated with products that contain or degrade to these PFAS into Black Creek upstream of the Great Pee Dee River and Bull Creek. Darling Fibers' PFAS resist

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

environmental degradation, flow downstream from Black Creek, the Great Pee Dee River, and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

20.     Defendants **GFL Environmental USA, Inc.** is a Delaware corporation authorized to do business in South Carolina; and **Waste Industries, LLC** is a Delaware limited liability company authorized to do business in South Carolina (collectively **"GFL"**). GFL operate the South Wake County Landfill located at 6124 Old Smithfield Road, Apex, North Carolina 27502. **Sampson County Disposal, LLC ("SCD")** is a North Carolina limited liability company and subsidiary and/or division of GFL, and it and GFL operate the Sampson County Landfill located at 7434 Roseboro, North Carolina 28382. Defendant **Red Rock Disposal, LLC ("RRD")** is a North Carolina limited liability company and a subsidiary and/or division of GFL, and it and GFL operate the Red Rock Disposal Landfill located at 7130 New Landfill Drive, Holly Springs, North Carolina 27540. GFL, SCD, and RRD transport leachate from these landfills, which contain significant amounts of PFOA, PFOS, PFHxs, PFNA, PFBS, GenX Chemicals, and/or their precursors, to the Lumberton WWTP in Lumberton, North Carolina. The Lumberton WWTP cannot remove these PFAS from GFL, SCD, and RRD leachate before the WWTP discharges their PFAS into the Lumber River upstream of Bull Creek. GFL's, SCD's, and RRD's PFAS resist environmental degradation, flow downstream from the Lumber River, Little Pee Dee River, and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

21.     Defendant **J.P. Stevens & Company, Inc.** was a Delaware corporation authorized to do business in the State of South Carolina until 1999. J.P. Stevens & Company, Inc. and its predecessors, successors, assigns, and/or responsible parties are collectively referenced as **"JPS."**

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

From 1946 to 1987, JPS operated the Delta Mills industrial facility located at 4351 Brickyard Road, Wallace, South Carolina 29596. JPS transferred the Delta Mills facility to Defendant **Delta Mills, Inc.,** who owned and operated the facility from 1987 to 2006. Delta Mills, Inc. was a Delaware corporation with its principal place of business located at 700 North Woods Drive, Fountain Inn, South Carolina 29644. Delta Mills, Inc. and its predecessors, successors, assigns, and/or responsible parties are collectively referenced as **"Delta Mills."** Over the course of the Delta Mills facility operations, Defendants JPS and Delta Mills used products that contain or degrade to PFOA, PFOS, PFNA, PFHxS, PFBS, and/or GenX Chemicals in the finishing of textile products. As part of their processes, JPS and Delta Mills discharged industrial wastewater contaminated with these PFAS from the facility's own WWTP to the Great Pee Dee River upstream of Bull Creek. JPS and Delta Mills also created wastewater lagoons on the facility property, which were contaminated with high levels of these PFAS that accumulated over decades. Delta Mills did not remediate this contamination when it ceased operations in 2006, and the PFAS continually overflow and/or migrate to the Great Pee Dee River upstream of Bull Creek. JPS's and Delta Mills' PFAS resist environmental degradation, flow downstream from the Great Pee Dee River and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

22.     Defendants **Mohawk Industries, Inc.** and **Aladdin Manufacturing Corporation** are Delaware corporations authorized to do business in the State of South Carolina (collectively **"Mohawk"**). Mohawk owns Oak River Mill located at 2118 Marlboro Road, Blenheim, South Carolina 29516, which Mohawk operated until its closing in October 2022. For nearly 60 years, Mohawk used products that contain or degrade to PFOA, PFOS, PFHxs, PFNA, PFBS, and/or GenX Chemicals in the manufacture of carpet products at Oak River Mill. As part of its processes,

9

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Oak River Mill discharged industrial wastewater contaminated with products that contain or degrade to these PFAS directly into the Great Pee Dee River upstream of Bull Creek. Oak River Mill also utilized wastewater lagoons contaminated with high levels of these PFAS and/or their precursors on the border of the Great Pee Dee River. These lagoons currently and continually overflow and/or release contaminated wastewater into the Great Pee Dee River upstream of Bull Creek. PFAS and/or their precursors from both Mohawk's legacy discharges and continuing lagoon discharges resist environmental degradation, flow downstream from the Great Pee Dee River and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

23.     Defendant **Nan Ya Plastics Corporation, America ("Nan Ya")** is a Delaware corporation authorized to do business in the State of South Carolina. Nan Ya owns and operates an industrial facility located at 140 E. Beulah Road, Lake City, South Carolina 29560, where it uses products that contain or degrade to PFOA, PFOS, PFHxs, PFNA, PFBS, and/or GenX Chemicals in the manufacture of plastics, polyester chips, resin, fibers, and yarns. As part of its processes, the Nan Ya facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lake City WWTP. The Lake City WWTP cannot remove Nan Ya's PFAS, and the WWTP discharges water contaminated with Nan Ya's PFAS into Lake Swamp upstream of Bull Creek. Nan Ya's PFAS resist environmental degradation, flow downstream from Lake Swamp, Lynches River, the Great Pee Dee River, and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

24.     Defendant **PRET Advanced Materials, LLC ("PRET")** is a Delaware limited liability company that does business in South Carolina. PRET owns and operates an industrial

10

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

facility located at 520 Kingsburg Highway, Johnsonville, South Carolina 29555, where it uses products that contain or degrade to PFOA, PFOS, PFHxs, PFNA, PFBS, and/or GenX Chemicals in the manufacture of plastics and resins. As part of its processes, the PRET facility discharges industrial wastewater with products that contain or degrade to these PFAS to the Johnsonville WWTP. The Johnsonville WWTP cannot remove PRET's PFAS, and the WWTP discharges water contaminated with PRET's PFAS into Lynches River upstream of Bull Creek. PRET's PFAS resist environmental degradation, flow downstream from Lynches River, the Great Pee Dee River, and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

## FACTUAL ALLEGATIONS

### I.    Background and Hazards of PFAS

25.    PFAS are a large group of man-made chemicals that do not occur naturally in the environment. Due to their strong carbon-fluorine bonds, PFAS are extremely stable, repel both oil and water, and are resistant to heat and chemical reactions. As a result of these properties, PFAS have a wide variety of industrial, commercial, and consumer applications.

26.    The stable carbon-fluorine bonds that make PFAS pervasive in industrial, commercial, and consumer products also result in their persistence in the environment. They are colloquially termed "forever chemicals," as terminal PFAS have no known environmental breakdown mechanism, are readily absorbed into biota, and tend to bioaccumulate with repeated exposure.

27.    There are both polymer and non-polymer PFAS. Non-polymer PFAS include well-known substances like PFOA, PFOS, PFHxS, PFNA, PFBS, and HFPO-DA (a/k/a GenX Chemicals). Polymer PFAS include fluoropolymers and side-chain fluorinated polymers that are often the active chemistry in PFAS products utilized by Defendants.

11

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

28.     There are also both terminal PFAS and their precursors. Precursors may undergo environmental degradation that ultimately results in the formation of terminal PFAS—meaning no further degradation occurs under normal environmental conditions. PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are all terminal PFAS.

29.     Both polymer and non-polymer PFAS can degrade to terminal PFAS. Generally, terminal PFAS are present in or otherwise form from PFAS products via three primary routes: (1) as a direct byproduct of the manufacturing process; (2) the degradation of precursor PFAS that are byproducts of the manufacturing process; and/or (3) the degradation of polymer PFAS into terminal PFAS and precursor PFAS.

30.     PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination. Therefore, a major source of human exposure to PFAS is through ingestion of contaminated drinking water. Exposure is dose-additive, meaning that exposure to low levels of multiple PFAS, which individually would pose little or no risk, can result in a combined dose capable of causing adverse health effects.

31.     While there are thousands of different PFAS chemicals, current scientific evidence shows that harmful health effects can result from consuming drinking water with any level of PFOA or PFOS, and at certain aggregate levels of PFHxS, PFNA, PFBS, and GenX Chemicals. Depending on the type of PFAS, negative health effects include increased risk of certain types of cancer and adverse impacts on fetal growth and development; reproduction; and on liver, thyroid, immune, cardiovascular, and/or nervous system function.

32.     PFOA and PFOS have been the most widely used PFAS, and they are the most studied by regulators and the scientific community. While some industries voluntarily phased out

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

products containing PFOA and PFOS by 2015, their limited use continues even in the United States. Due to their persistent nature, PFOA and PFOS remain in the environment from decades of legacy industrial use.

33.     Products based on PFAS consisting of shorter fluorinated carbon chains were developed to replace PFOA and PFOS, and they are now used in industrial applications to confer similar properties and characteristics. These "short-chain" PFAS are still bioaccumulative and environmentally persistent, and some short-chain PFAS products nevertheless still contain PFOA and PFOS and their precursors.  Terminal short-chain PFAS include PFHxS, PFNA, PFBS, and GenX Chemicals.

34.     Based on the science available in 2009, EPA published provisional drinking water health advisories for short-term exposure to PFOA and PFOS. U.S.E.P.A., *Provisional Health Advisories for Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS)* (Jan. 8, 2009),     *available     at*     https://www.epa.gov/sites/default/files/2015-09/documents/pfoa-pfos-provisional.pdf. The advisory levels were 400 parts per trillion ("ppt") for PFOA and 200 ppt for PFOS. In the same publication, EPA reported that it conducted sampling of public drinking water in Alabama communities, finding PFOA and PFOS levels lower than 40 ppt. It explained, "Based on its current understanding, EPA believes these levels are not of concern and residents may rely upon public water systems." *Id.*

35.     On May 16, 2016, due to the evolution of science on the health effects of PFOA and PFOS, EPA published lifetime health advisory levels for each chemical in drinking water. Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 33250 (May 25, 2016). Superseding the 2009 provisional levels, the 2016 levels for PFOA and PFOS were 70 ppt, independently or in the aggregate. EPA

13

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

explained that its new health advisories "identify the concentration of PFOA and PFOS in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure."

36.    EPA's 2016 Health Advisories were based on peer-reviewed studies of the effects of PFOA and PFOS on laboratory animals and epidemiological studies of human populations exposed to PFOA and PFOS. These studies indicated that exposure to PFOA and PFOS over certain levels may result in adverse health effects, including developmental defects to fetuses, cancer (testicular, kidney), liver effects, immune effects, thyroid effects, and other adverse effects. But based on its review of the science, EPA stated that its analysis indicated exposure to PFOA and PFOS at or below health advisory levels "will not result in adverse health effects (including cancer and non-cancer) to the general population over a lifetime (or any shorter period) of exposure to these chemicals." *Id.*

37.    On June 15, 2022, EPA again updated health advisory levels for PFOA and PFOS on an interim basis, which replaced the 2016 advisory levels. Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances, 87 Fed. Reg. 36848 (June 21, 2022). EPA explained that updated human epidemiological data indicated "that the level at which negative health effects could occur are much lower than previously understood when the agency issued its 2016 health advisories for PFOA and PFOS"—finding "associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, development (e.g., decreased birth weight), and cancer." *Id.* Concerned with the public health implications of its data, EPA issued interim levels pending determination of maximum contaminant levels and maximum contaminant level goals. The interim levels were 0.004 ppt for PFOA and 0.02 ppt for PFOS.

14

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

38.     Simultaneously, EPA also issued health advisories for the first time covering PFBS and GenX Chemicals. EPA reported that "GenX Chemicals have been linked to health effects on the liver, the kidney, the immune system, and developmental effects, as well as cancer." *Id.* For PFBS, it noted studies indicating health effects on the thyroid, reproductive system, development, and kidney. Based on its 2021 toxicity studies for these chemicals, EPA released final health advisories for each: GenX Chemicals at 10 ppt and PFBS at 2,000 ppt.

39.     In March of 2023, EPA issued proposed maximum contaminant level ("MCL")s and maximum contaminant level goal ("MCLG")s for PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals. PFAS Nat'l Primary Drinking Water Regulation Rulemaking, 88 Fed. Reg. 18638 (Mar. 29, 2023) (to be codified at 40 C.F.R. pt. 141, 142). An MCLG is the maximum level of a contaminant in drinking water at which no known or anticipated adverse effect on the health of persons would occur, allowing an adequate margin of safety. An MCL is the maximum allowable level of a contaminant that may be delivered to any user of a public water system and is based on the feasibility of existing technology to detect PFAS at a threshold level.

40.     At that time, EPA announced that, "[f]ollowing a systematic review of available human epidemiological and animal toxicity studies, EPA has determined that PFOA and PFOS are likely to cause cancer (e.g., kidney and liver cancer) and that there is no dose below which either chemical is considered safe." *Id.* Therefore, it proposed MCLG levels for both chemicals at zero ppt. Enforceable MCL levels for each chemical were proposed at 4 ppt. According to EPA, "[a]ny exceedance of this limit requires action to protect public health, regardless of any mixture in which they are found." *Id.*

41.     Due to their toxic effects, dose additivity, and presence in drinking water, EPA proposed a hazard index approach covering mixtures of PFHxS, PFNA, PFBS, and GenX

Chemicals. The hazard index is the sum of each PFAS's "hazard quotient." Hazard quotients are first calculated by dividing the applicable PFAS's "exposure metric" (i.e., concentration in drinking water) by its "health reference value" (PFHxS: 9 ppt; GenX Chemicals: 10 ppt; PFNA: 10 ppt; PFBS: 2,000 ppt). If the sum of each's hazard quotient is below 1.0, then it "represents a level at which no known or anticipated adverse effects on the health of persons is expected to occur and which allows for an adequate margin of safety." *Id.* If greater than 1.0, then "potential risk is indicated." *Id.*

42.    EPA stated that, once its proposed MCLs became final, it would "save thousands of lives and prevent tens of thousands of avoidable illnesses." U.S.E.P.A., *EPA Releases Annual Report Showing Steady Progress to Protect Communities from PFAS Pollution* (Dec. 14, 2023), *available at* https://www.epa.gov/newsreleases/epa-releases-annual-report-showing-steady-progress-protect-communities-pfas-pollution.

43.    EPA finalized its proposed MCLs and MCLGs on April 10, 2024. U.S.E.P.A., *PFAS Nat'l Primary Drinking Water Regulation Rulemaking* (Apr. 10, 2024), *available at* https://www.epa.gov/system/files/documents/2024-04/pfas-npdwr_prepubfederalregisternotice_4.8.24.pdf (pre-publication version). In accompanying publications, EPA declared, "The science is clear: exposure to these six PFAS is linked to significant health risks" that include "certain cancers and heart impacts in adults, and immune and developmental impacts in infants and children." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024); *see also* U.S.E.P.A., *Final PFAS Nat'l Drinking Water Regulation Landing Page*, http://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (providing links to EPA PFAS regulation publications).

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

44.     The final regulation solidifies MCLs of 4.0 ppt for PFOA and PFOS and 10.0 ppt for PFNA, PFHxS, and GenX Chemicals, including a Hazard Index that covers mixtures of PFBS with PFNA, PFHxS, and GenX Chemicals. It also enshrines MCLGs of zero ppt for PFOA and PFOS, which EPA states "reflects the latest science showing that there is no level of exposure to these two PFAS without risk of health impacts." U.S.E.P.A., *Presentation: Overview EPA PFAS NPDWR* (Apr. 10, 2024). According to EPA, "[t]he more you reduce your exposure to PFAS, the more you reduce your risk." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024).

45.     EPA's final regulations mandate several new obligations regarding PFAS, including the implementation of solutions to reduce regulated PFAS concentrations in the drinking water that Plaintiff distributes, maintenance of ongoing compliance monitoring, and informing the public of PFAS levels in the water and of any violations. By 2027, Plaintiff must begin conducting and reporting regular PFAS monitoring, and by 2029, Plaintiff must comply with all MCLs. Plaintiff has conducted a diligent investigation into this issue, is seeking to address it in an expedited manner, and for this reason seeks prompt relief from the Court.

## II.     Contamination of Bull Creek and the Intracoastal Waterway with PFAS

46.     Bull Creek is a tributary of the Great Pee Dee River, branching off the river near Bucksport, South Carolina. By way of the Great Pee Dee River, Bull Creek is also hydrologically connected to the Little Pee Dee and Lumber Rivers to the northeast, and to the Lynches River, Lynches Lake Swamp, and Black Creek to the northwest.

47.     Defendants' industrial facilities, and/or their applicable WWTPs, operate upstream of Bull Creek.

48.     PFAS sampling of Bull Creek, the Great Pee Dee River, Little Pee Dee River, Lumber River, Lynches River, and Black Creek confirms the presence of PFOA, PFOS, PFHxS,

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

PFNA, PFBS, and GenX Chemicals throughout these bodies of water. These PFAS flow downstream and contaminate the water at Plaintiff's water intake on Bull Creek at concentrations exceeding EPA's MCLs and MCLGs. Indeed, sampling at Plaintiff's water intakes confirm the presence of PFOA and PFOS at concentrations higher than what EPA deems unsafe for consumption. Defendants are the source.

49.    Defendants are, or were, owners and operators of manufacturing plants and related industrial facilities throughout the Pee Dee River Watershed. In their industrial processes, Defendants utilize, or utilized, products that contain or degrade to PFOS, PFOA, PFHxS, PFNA, PFBS, and/or GenX Chemicals. Defendants' industrial processes generate industrial wastewater containing these PFAS, which Defendants ultimately discharge to surface waters upstream of Bull Creek.

50.    As part of their industrial processes, Defendants Burlington, Domtar, Darling Fibers, Delta Mills, Elevate, JP Stevens, and Mohawk in the past discharged and/or currently discharge PFAS-contaminated wastewater directly to surface waters upstream of Bull Creek, as follows:

| Defendant(s) | Surface Waters |
| --- | --- |
| Burlington | Great Pee Dee River; Hitchcock Creek |
| Domtar | Great Pee Dee River |
| Darling Fibers | Black Creek |
| Delta Mills & JP Stevens | Great Pee Dee River |
| Elevate | Hitchcock Creek |
| Mohawk | Great Pee Dee River |

18

51.     As part of their industrial processes, Defendants Nan Ya and PRET indirectly discharge PFAS-contaminated wastewater to WWTPs that lack filtration technologies to remove their PFAS. The WWTPs then discharge water contaminated with these Defendants' PFAS to surface waters upstream of Bull Creek as follows:

| Defendant | WWTP | Surface Waters |
|---|---|---|
| Nan Ya | Lake City WWTP | Lynches Lake Swamp |
| PRET | Johnsonville WWTP | Lynches River |

52.     Defendants GFL, SCD, and RRD operate landfills in North Carolina and transport PFAS-contaminated leachate to the Lumberton WWTP, which lacks filtration technologies to remove their PFAS. The Lumberton WWTP then discharges GFL's, SCD's and RRD's PFAS to the Lumber River upstream of the Little Pee Dee River and Bull Creek.

53.     Defendants' PFAS and their precursors flow downstream to Plaintiff's water intake on Bull Creek, damaging Plaintiff's property and contaminating its water sources.

54.     The Bull Creek SWTP utilizes conventional water treatment technologies to treat raw water, including coagulation, flocculation, sedimentation, filtration, and chlorination. None of these methods remove PFAS from water, and the Bull Creek SWTP requires new water treatment technologies to do so.

55.     Plaintiff also owns the Bucksport Regional and Conway WWTPs, which operate along the Waccamaw River upstream of the Intracoastal Waterway.

56.     Neither the Bucksport nor the Conway WWTPs have industrial users. Instead, both provide sewer services primarily to residential and commercial customers that use potable water distributed by the Bull Creek SWTP.

19

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

57.    Because the Bull Creek SWTP cannot remove Defendants' PFAS from the water Plaintiff draws from Bull Creek, the water that sewer customers send to the Bucksport and Conway WWTPs remains contaminated with Defendants' PFAS.

58.    Like the Bull Creek SWTP, the Bucksport and Conway WWTPs are not equipped to address Defendants' PFAS. Both utilize conventional wastewater treatment methods, including screening and grit removal, aeration, clarification, chlorination, and UV disinfection—none of which remove Defendants' PFAS. Once the Bucksport and Conway WWTPs treat sewer water, both discharge to the Waccamaw River upstream of the Intracoastal Waterway.

59.    Plaintiff's Myrtle Beach SWTP draws raw water from the Intracoastal Waterway for treatment and distribution to the Cities of Myrtle Beach and North Myrtle Beach, who in turn provide the water to tens of thousands of people. But because Defendants' PFAS resist environmental degradation and conventional treatment methods, they contaminate Plaintiff's water intakes on the Intracoastal Waterway and damage Plaintiff's property at the Myrtle Beach SWTP. As with the Bull Creek SWTP, the Myrtle Beach SWTP utilizes conventional water treatment methods that do not remove Defendants' PFAS, and the Myrtle Beach SWTP requires new treatment technologies to do so.

60.    All Defendants knew or should have known that conventional water treatment technologies used by direct discharger Defendants and WWTPs cannot remove PFAS from wastewater. All Defendants also knew or should have known that their treated wastewater contaminates surface waters and the water Plaintiff draws for its customers.

**III.    Defendants have harmed Plaintiff and Plaintiff's community.**

61.    For decades and unknown to Plaintiff, Defendants have discharged PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors into the Pee Dee River Watershed,

20

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

which has caused, and continues to cause, contamination of these waters with PFAS chemicals exceeding EPA's health advisories, MCLGs, and MCLs. Indeed, absent new treatment technologies, Plaintiff cannot use its properties and property rights to provide water that is either free of all PFOA and PFOS, or compliant with EPA's MCLs.

62.    Defendants' conduct has proximately caused the contamination of the Pee Dee River Watershed; and of Plaintiff's land, its Bull Creek and Myrtle Beach SWTPs, its Bucksport and Conway WWTPs, and its water distribution systems with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals—including PFOA and PFOS at concentrations above EPA's MCLGs and MCLs.

63.    Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, or negligently engaged in conduct or omissions that proximately caused unreasonable interference with Plaintiff's right to use and enjoy its properties, its right to use Bull Creek and the Intracoastal Waterway, and has caused Plaintiff additional past, present, and future injury to property.

64.    Despite knowing that there is no safe dose for PFOA or PFOS, and that PFHxS, PFNA, PFBS, and GenX Chemicals are hazardous to human health, Defendants, directly or indirectly, discharged industrial wastewater contaminated with these chemicals into the Pee Dee River Watershed, which they knew or should have known contaminated Plaintiff's properties.

## FIRST CAUSE OF ACTION

### Private Nuisance

65.    Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

66.    Plaintiff is a special purpose district created for the purpose of constructing, operating, maintaining, improving, and extending a water distribution system for residents of Horry County and other counties. It uses its properties for those purposes, including the withdrawal

21

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

of raw water from Bull Creek and the Intracoastal Waterway, the treatment of raw water, and the distribution of treated water to customers in Horry County and other counties.

67.    Plaintiff owns riparian land abutting Bull Creek and the Intracoastal Waterway, and Plaintiff has a property right in the reasonable use of these waters, including for the provision of water to its customers.

68.    Through the conduct described herein, Defendants created, contributed to, and/or maintained a nuisance; that is, the contamination of the Pee Dee River Watershed, the Waccamaw River, and the Intracoastal Waterway with PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors at concentrations exceeding those EPA deems unsafe for consumption.

69.    Due to Defendants' contamination, Plaintiff cannot provide water to its customers without PFAS, or even at PFAS concentrations that comply with EPA's MCLs, absent new water treatment technology.

70.    Defendants' contamination caused, contributed to, and/or maintains a nuisance that substantially and unreasonably interferes with Plaintiff's use and enjoyment of its properties, interferes with Plaintiff's properties and its riparian rights, damages Plaintiff's properties, and causes Plaintiff additional inconvenience, annoyance, and harm.

71.    Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights.

72.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer damages related to Defendants' contamination of the Pee Dee River Watershed, the Waccamaw River, the Intracoastal Waterway, and Plaintiff's

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

property, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

73.     In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

74.     The ongoing contamination of Bull Creek, the Intracoastal Waterway, and Plaintiff's properties constitutes a continuing irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to take all steps necessary to prevent further discharge of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals and to fund the measures necessary to prevent these PFAS from continuing to interfere with Plaintiff's use and enjoyment of its land and its riparian use of Bull Creek and the Intracoastal Waterway to supply potable water to its customers.

75.     Defendants' interference with Plaintiff's use of its properties can be abated by methods that include, but are not limited to:

(a)     ceasing Defendants' discharges of products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to surface waters; and

(b)     funding the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTPs to remove legacy PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

76.     Defendants are jointly and severally liable to Plaintiffs for all damages resulting from this nuisance, and the costs of its abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

<u>**SECOND CAUSE OF ACTION**</u>

**Public Nuisance**

23

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

77. Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

78. Plaintiff is a special purpose district created for the purpose of constructing, operating, maintaining, improving, and extending a water distribution system for residents of Horry County and other counties. It uses its properties for those purposes, including the withdrawal of raw water from Bull Creek and the Intracoastal Waterway, the treatment of raw water, and the distribution of treated water to customers in Horry County and other counties.

79. Plaintiff's customers use the water Plaintiff provides for many purposes, including drinking, cooking, bathing, cleaning, washing, and watering plants and gardens.

80. Plaintiff's customers, and indeed all residents in Plaintiff's community, have a right to potable water that is reasonably pure and safe for their use—and thus free from contamination by Defendants' PFOA, PFOS, PFNA, PFHxS, PFBS, and GenX Chemicals. Defendants' contamination unreasonably interferes with, disrupts, and threatens public health, safety, and order. Indeed, EPA makes clear that there is no safe dose for consuming PFOA and PFOS.

81. Plaintiff has sustained special injuries as a result of Defendants' public nuisance, including but not limited to, the lost use of its properties; the inability to provide potable water to customers without concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals deemed unsafe by EPA; expenses associated with future acquisition, installation, and operation of required treatment technologies to remove unsafe concentrations of these PFAS from water; expenses incurred in discovering and identifying sources of Defendants' contamination; interference with Plaintiff's riparian right to use Bull Creek and the Intracoastal Waterway; interference with the use of Plaintiff's SWTPs and water distribution systems; and lost revenue.

82. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer special injury and damages related to Defendants'

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

contamination of the Pee Dee River Watershed, the Waccamaw River, the Intracoastal Waterway, and Plaintiff's properties.

83.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights and endangers the health of Plaintiff's customers, consumers of Plaintiff's drinking water, and Plaintiff's community.

84.     As a result of the nuisance caused by Defendants, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

85.     In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

86.     Defendants' ongoing contamination constitutes a continuing threat to public health, safety, and order, and it constitutes irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to take all steps necessary to prevent further discharge of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals and to fund the measures necessary to prevent these PFAS from continuing to threaten public health and safety and ensure that Plaintiff's customers and residents of Plaintiff's community receive water free from PFAS.

87.     Defendants' contamination of potable water with unsafe concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals can be abated by methods that include, but are not limited to:

25

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

(a)     ceasing Defendants' direct and indirect discharges of products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to surface waters; and

(b)     requiring Defendants to fund the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTPs to remove legacy PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

88.     Defendants are jointly and severally liable to Plaintiffs for all damages resulting from this nuisance, and the costs of abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## THIRD CAUSE OF ACTION

### Trespass

89.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

90.     Plaintiff owns, possesses, and actively exercises its right to use its land, SWTPs, and related buildings, improvements, and equipment that make up its water distribution systems.

91.     Defendants Nan Ya and PRET intentionally discharged and continue to discharge PFAS to the Lake City and Johnsonville WWTPs, respectively, notwithstanding that they knew and/or reasonably should have known that:

(a)     these WWTPs cannot remove their PFAS from wastewater before discharging to surface waters upstream of Plaintiff's water intake on Bull Creek;

(b)     Plaintiff draws water from Bull Creek for the provision of potable water to its customers;

(c)     water Plaintiff draws from Bull Creek is contaminated with the PFAS the Defendants discharge to these WWTPs; and, thereby,

26

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

(d)     water contaminated with high concentrations of these Defendants' PFAS invades Plaintiff's properties.

92.     Defendants GFL, SCD, and RRD intentionally deliver PFAS-contaminated leachate to the Lumberton WWTP, notwithstanding that these Defendants knew and/or reasonably should have known that:

(a)     the Lumberton WWTP cannot remove their PFAS from the leachate before discharging to surface waters upstream of Plaintiff's water intake on Bull Creek;

(b)     Plaintiff draws water from Bull Creek for the provision of potable water to its customers;

(e)     that water Plaintiff draws from Bull Creek is contaminated with the PFAS they send to the Lumberton WWTP; and, thereby,

(c)     water contaminated with high concentrations of these Defendants' PFAS invades Plaintiff's properties.

93.     Defendants Burlington, Domtar, Darling Fibers, Delta Mills, Elevate, JPS, and Mohawk intentionally discharged and continue to discharge PFAS to the Great Pee Dee River and Black Creek, notwithstanding that these Defendants knew and/or reasonably should have known that:

(a)     Plaintiff draws water from Bull Creek for the provision of drinking water to its customers;

(b)     water Plaintiff draws from Bull Creek is contaminated with the PFAS they discharge to each River; and, thereby,

(c) water contaminated with high concentrations of Defendants' PFAS invades Plaintiff's properties.

27

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

94.    Plaintiff has not consented to, and does not consent to, the invasion of its properties by water contaminated with PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals at concentrations exceeding EPA's MCLs and MCLGs and beyond what EPA deems unsafe for consumption.

95.    Defendants' invasions of Plaintiff's properties are continuing and ongoing, and each separate invasion of PFAS-contaminated water constitutes a new trespass each time Plaintiff's water pumps are active.

96.    Defendants Nan Ya and PRET intend that, while using PFAS in their industrial processes, PFAS-containing wastewater generated by those processes be discharged to the Lake City and Johnsonville WWTPs, respectively. Defendants GFL, SCD, and RRD intend that their PFAS-contaminated leachate be disposed of by the Lumberton WWTP. Defendants Burlington, Domtar, Darling Fibers, Delta Mills, Elevate, JPS, and Mohawk intend and/or intended that, while using PFAS in their industrial processes, PFAS-containing wastewater be discharged to the Great Pee Dee River and Black Creek. Defendants' conduct is wanton, willful, and in reckless disregard of Plaintiff's property and riparian rights.

97.    Defendants' conduct is the actual and proximate cause of the invasion of PFAS-contaminated water into Plaintiff's properties, including its land, SWTPs, and related buildings, improvements, and equipment that make up its water distribution systems. The damage to Plaintiff's properties is the direct and proximate result of Defendants' intentional conduct.

98.    As a direct, proximate, and foreseeable result of Defendants' trespasses, Plaintiff has suffered, now suffers, and will continue to suffer invasion of its property rights and damages, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

28

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

99.    Defendants' ongoing trespasses can be abated by, among other measures, ceasing all discharges of PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to surface waters upstream of Plaintiff's water intakes. In addition to compensatory and punitive damages, Plaintiff requests a permanent injunction prohibiting this conduct.

**FOURTH CAUSE OF ACTION**

**Negligence, Gross Negligence, and/or Recklessness**

100.    Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

101.    Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to avoid causing an unreasonable risk of harm to others, which includes preventing the direct and/or indirect discharge of these PFAS into surface waters upstream of Plaintiff's SWTPs, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

102.    Defendants knew or should have known that the PFAS they discharged were environmentally persistent, bioaccumulative, and dose-additive; that conventional wastewater treatment technologies utilized by themselves or their WWTPs could not remove their PFAS; and that surface waters—including the Pee Dee River Watershed—were vulnerable to the contamination that has taken and now takes place.

103.    Defendants nonetheless negligently, recklessly, wantonly, and/or willfully breached their duty in causing products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to escape their premises and contaminate the Pee Dee River Watershed, thereby interfering with Plaintiff's property rights and injuring Plaintiff's properties.

104.    Additionally, Defendant Burlington had a duty to use due care in the manufacturing, handling, control, disposal, labeling, and instructing for the use and disposal of

29

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

biosolid products that contain PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to ensure the proper use of these products and prevent contamination of surface waters.

105. By continually suppling biosolid products without providing warnings, proper instructions, or direction on the dangers of these PFAS and their properties, or otherwise preventing their contamination of surface waters, Burlington negligently, recklessly, wantonly, and/or willfully created the risk that its PFAS would contaminate the Pee Dee River Watershed, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

106. Because Burlington created the risk of harm from PFAS-contaminated water, it had a duty to ensure that users of its biosolid products did not allow PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to escape its users' premises and contaminate the Pee Dee River Watershed. Burlington also had a duty to warn others, including Plaintiff, of the danger presented by water contaminated with its PFAS.

107. Burlington negligently, recklessly, wantonly, and willfully breached its duty by failing to prevent the discharge of these PFAS from its biosolid products into the Pee Dee River Watershed, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property, and by failing to warn Plaintiff of the danger presented by water contaminated by its PFAS.

108. As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including but not limited to loss in value; the cost of removing Defendants' PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals; future costs of acquiring, installing, and operating adequate water treatment technologies; and other damages to be proved at trial.

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

109.    Defendants are jointly and severally liable to Plaintiffs for all damages resulting from their conduct, practices, actions, omissions, and inactions, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## FIFTH CAUSE OF ACTION
### Strict Products Liability – Ultrahazardous Activity
### (Burlington)

110.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

111.    PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are unreasonably dangerous to humans and the environment.

112.    Burlington manufactured, handled, sold, and distributed biosolid products containing or degrading to these PFAS chemicals to agricultural and/or other users, knowing that these PFAS chemicals have been, and are presently, discharged to surface waters, and thereby enter and contaminate Plaintiff's water sources and Plaintiff's properties.

113.    Burlington knew that these PFAS chemicals were environmentally persistent, bioaccumulative, toxic, and dose-additive; and Burlington knew that there was no safe dose of PFOA or PFOS.

114.    Burlington knew or expected that these hazardous PFAS chemicals that it was manufacturing, handling, selling, and distributing would reach Plaintiff's water sources and Plaintiff's properties while in essentially the same condition as when they left Burlington's hands.

115.    Burlington manufactured, handled, sold, and distributed its biosolid products that were dangerous and unsafe for the uses and purposes for which they were intended, despite knowing the consequences of the use and of, and exposure to, its products.

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

116.    Burlington and/or its agents were responsible for the unreasonably dangerous products that it sold and distributed, and Burlington and received financial benefits from their sales and distribution.

117.    As a direct and proximate result of Burlington's ultrahazardous activities, its PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors have damaged Plaintiff's water sources and Plaintiff's properties, and Plaintiff is unable to provide potable water free from contamination with these chemicals.

118.    As a direct, proximate, and foreseeable result of Burlington's ultrahazardous activities, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Burlington's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial.

## SIXTH CAUSE OF ACTION
### Strict Products Liability – Design Defect
### (Burlington)

119.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

120.    PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are unreasonably dangerous to humans and the environment.

121.    Burlington knew that agricultural users would purchase and use its biosolid products containing these PFAS and their precursors without inspection for defects.

122.    Burlington's biosolid products containing or degrading to these PFAS chemicals have been, and are presently, discharged to surface waters, and thereby enter and contaminate Plaintiff's water sources and Plaintiff's properties.

32

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

123. Burlington's biosolid products containing these PFAS and their precursors were used in a reasonably foreseeable manner and without substantial change in their condition.

124. Burlington knew that the use of its biosolid products in their intended manner would result in PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals damaging Plaintiff's water sources and Plaintiff's properties.

125. Burlington's biosolid products were and are defective in design and unreasonably dangerous for their intended use because:

(a) PFAS resist environmental degradation;

(b) PFAS leach from soil to groundwater, are highly mobile and water soluble, making groundwater and surface water vulnerable to contamination;

(c) Applying PFAS-contaminated biosolids to soil near surface waters exposes surface waters to PFAS contamination via overland and groundwater flow;

(d) PFAS contamination in drinking water poses significant threats to public health and property; indeed, there is no safe dose of PFOA or PFOS in drinking water;

(e) Burlington failed to conduct and/or failed to disclose reasonable, appropriate, and/or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of PFAS; and

(f) There are and were safe or safer feasible alternatives to PFAS-contaminated biosolids that Burlington could have employed.

126. Burlington's products containing or degrading to these PFAS chemicals were and are dangerous beyond that which was and is contemplated by the ordinary consumer.

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

127.     The foreseeable risk of harm to public health and property posed by Burlington's products containing these PFAS outweighed and outweigh the cost to Burlington of reducing or eliminating those risks.

128.     A reasonable product manufacturer knew or should have known of the significant dangers posed by Burlington's products containing PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors.

129.     As a direct and proximate result of the sale and application of Burlington's defective and unsafe biosolid products, these PFAS have contaminated Plaintiff's water sources and Plaintiff's properties, and Plaintiff is unable to provide potable water free from Burlington's PFAS.

130.     As a direct, proximate, and foreseeable result of the sale and application of Burlington's defective and unsafe biosolid products, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Burlington's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial.

## SEVENTH CAUSE OF ACTION
### Strict Products Liability – Failure to Warn
### (Burlington)

131.     Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

132.     Burlington manufactured, formulated, promoted, marketed, and/or distributed biosolid products containing PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors.

133.     Burlington's biosolid products were used by agricultural users in a reasonably foreseeable manner and without substantial change in the condition of such products, and

34

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Burlington knew that agricultural users purchased and used its products without inspection for defects.

134.    Burlington knew or should have known that the use of its biosolid products would result in these PFAS being discharged to surface waters, and thereby entering and contaminating Plaintiff's water sources and Plaintiff's properties.

135.    Burlington knew that these PFAS in its biosolid products were environmentally persistent and bioaccumulative, that use of its biosolids would cause PFAS to accumulate in soil and groundwater, and that its PFAS would infiltrate surface waters that Plaintiff relies on to supply potable water to the public—making Burlington's biosolid products unreasonably dangerous.

136.    Despite the known and/or foreseeable risk of contaminating potable water sources and Plaintiff's properties, Burlington failed to provide adequate warnings to its customers and other users or to take any other precautionary measures to mitigate those hazards.

137.    Burlington failed to describe such dangers or provide precautionary statements regarding such hazards, and it failed to provide instruction or direction on the proper use and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the labeling of such products. As a result of these failures, Burlington's biosolid products were sold and distributed in an unreasonably dangerous and defective condition.

138.    As a direct and proximate result of Burlington's failure to warn of the dangers and hazards posed by its biosolid products, PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors have damaged Plaintiff's water sources and Plaintiff's properties, and Plaintiff is unable to provide potable water free from contamination with these chemicals.

139.    As a direct, proximate, and foreseeable result of Burlington's conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, losses resulting

35

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

from injury to its properties, including loss in value, the cost of removing Burlington's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial.

**EIGHTH CAUSE OF ACTION**
**Breach of Implied Warranties**
**(Burlington)**

140.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

141.    Burlington manufactured, sold, and distributed its biosolid products to be used in the agricultural context.

142.    Burlington's biosolid products include PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors, and Burlington knew or had reason to know that such biosolids were not fit for the known and particular uses on agricultural lands.

143.    Burlington knew that agricultural users of its biosolid products would apply its biosolids to lands nearby or abutting surface waters in the Pee Dee River Watershed, causing Burlington's PFAS to infiltrate these surface waters.

144.    Burlington knew that these PFAS chemicals are environmentally persistent, bioaccumulative, toxic, and dose-additive, and Burlington knew that there is no safe dose of PFOA or PFOS.

145.    Burlington breached applicable implied warranties, and as a result, caused the contamination of Plaintiff's water sources and Plaintiff's properties, and Plaintiff is unable to provide potable water free from Burlington's PFAS.

146.    As a direct, proximate, and foreseeable result of Defendants' ultrahazardous activities, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

properties, including loss in value, the cost of removing Burlington's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial. Plaintiff is entitled to damages in an amount that will address its damages caused by Burlington's breaches of implied warranties

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands trial by jury, and respectfully requests that the Court grant the following relief:

(a)     Enter a judgment and decree against all Defendants enjoining them from maintaining the nuisance they have caused, created, and maintained;

(b)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to abate the nuisance they have caused, created, and maintained;

(c)     Enter a judgment and decree against all Defendants enjoining them from continuing their trespasses onto Plaintiff's properties;

(d)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to cease the discharge or release of products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals into rivers, streams, and/or tributaries where they contaminate Plaintiff's water supply in Bull Creek and the Intracoastal Waterway;

(e)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to remove their PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX chemicals from Plaintiff's water systems by funding the acquisition, installation, and operation of treatment technology capable of removing them;

ELECTRONICALLY FILED - 2024 Aug 16 3:28 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

(f)      Enter a judgment and decree against all Defendants, jointly and severally, requiring them to prevent the release of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals into rivers, streams, and tributaries that contaminate Plaintiff's water systems;

(g)      Enter a judgment against all Defendants, jointly and severally, for past, present, and future compensatory damages in such amounts as the evidence shows Plaintiff to be justly entitled to recover, including interest and reasonable attorneys' fees and litigation expenses, and punitive damages, as applicable, in an amount sufficient to punish and penalize Defendants, and to deter them from repeating their wrongful conduct, and all costs; and

(h)      Award such other relief and further relief as this Court deems just, proper, and equitable.

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

August 16, 2024

ELECTRONICALLY FILED - 2024 Aug 16 8:38 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

Grand Strand Water and Sewer Authority,

Plaintiff,

v.

Burlington Industries, Inc.,

Defendant.

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

C.A. No. 2024-CP-26-05523

**ACCEPTANCE OF SERVICE
ON BEHALF OF
BURLINGTON INDUSTRIES, INC.**

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt via email of the Summons and Complaint in the above captioned matter on behalf of Defendant Burlington Industries, Inc., effective this 14th day of August, 2024.

Peter M. McCoy, Jr.
McCoy Law Group, LLC
15 Prioleau Street
Charleston, SC 29401
peter@mccoylawgrp.com

*Receiver for Burlington Industries, Inc.*

# The Supreme Court of South Carolina

RE:  PFAS Litigation

O R D E R

Pursuant to the provisions of Article V, Section 4 of the South Carolina Constitution, I find that assigning a single circuit judge to dispose of all matters arising out of the PFAS litigation currently pending and to be filed in the state court system will promote the effective and expeditious disposition of this litigation through uniform rulings and will conserve the judicial resources of the parties, their counsel, and the judiciary.  Therefore,

IT IS ORDERED that the Honorable Grace Gilchrist Knie be vested with exclusive jurisdiction to hear and dispose of all PFAS litigation cases.  Judge Knie shall decide all pretrial motions and other pretrial matters, including appropriate scheduling deadlines and admission of counsel *pro hac vice* pursuant to Rule 404, SCACR, arising out of the PFAS cases filed in the state court system. Judge Knie shall have jurisdiction in all circuits in the state to dispose of all pretrial matters arising out of the PFAS litigation and may schedule such hearings as may be necessary at any time without regard as to whether there is a term of court scheduled.

IT IS FURTHER ORDERED that for administrative purposes and convenience, upon the filing of a new action involving PFAS litigation, the clerk of court shall notify Judge Knie, via email, of such filing within five business days. This notification shall include the case caption, including the docket number, as well as the name of the attorney or party signing the pleadings.  Judge Knie shall then direct the clerk of court as to the preferred method for transmitting the pleadings and additional filings to her office.

IT IS FURTHER ORDERED that Judge Knie shall have jurisdiction to issue case management orders directing the consolidation of certain pretrial matters within the PFAS litigation.

IT IS FURTHER ORDERED that this is not a consolidation for trial purposes.  At the conclusion of all pretrial matters, any party may move to have

ELECTRONICALLY FILED - 2024 Aug 16 3:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

trial ready cases transferred to the trial roster of the court of original jurisdiction or the court of appropriate venue for trial.  Judge Knie shall preside over the trials of all PFAS cases.

This order shall remain in effect until amended or rescinded by the Chief Justice.

_____ C.J.
FOR THE COURT
John W. Kittredge
Chief Justice of South Carolina

Columbia, South Carolina
August 14, 2024

ELECTRONICALLY FILED - 2024 Aug 16 3:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Aug 26 3:04 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF HORRY | FOR THE FIFTEENTH JUDICIAL CIRCUIT |

GRAND STRAND WATER AND SEWER AUTHORITY,

C.A. No. 2024-CP-26-05523

Plaintiff,

v.

**ACCEPTANCE OF SERVICE ON BEHALF OF BURLINGTON INDUSTRIES, INC.**

ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, LLC,

Defendants.

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt via email of the Amended Summons and First Amended Complaint in the above captioned matter on behalf of Defendant Burlington Industries, Inc., effective this 26th day of August, 2024.

_____
Peter M. McCoy, Jr.
McCoy Law Group, LLC
15 Prioleau Street
Charleston, SC 29401
peter@mccoylawgrp.com

*Receiver for Burlington Industries, Inc.*



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394



August 29, 2024

The Honorable Renee Elvis
Clerk of Court
P.O. Box 677
Conway, SC  29528-0677

RE:     Grand Strand Water and Sewer Authority v. Burlington Industries, Inc., et al.

        Case No: 2024-CP-26-05523

Dear Ms. Elvis:

I certify that the Office of Bar Admissions has received the verified application requesting Hirlye Ray Lutz III be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:     Hirlye Ray Lutz III
        John B. White Jr.



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394



August 29, 2024

The Honorable Renee Elvis
Clerk of Court
P.O. Box 677
Conway, SC 29528-0677

RE:    Grand Strand Water and Sewer Authority v. Burlington Industries, Inc., et al.

Case No: 2024-CP-26-05523

Dear Ms. Elvis:

I certify that the Office of Bar Admissions has received the verified application requesting Frank Jerome Tapley be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:    Frank Jerome Tapley
       John B. White Jr.



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

August 29, 2024

The Honorable Renee Elvis
Clerk of Court
P.O. Box 677
Conway, SC  29528-0677

RE:   Grand Strand Water and Sewer Authority v. Burlington Industries, Inc., et al.

Case No: 2024-CP-26-05523

Dear Ms. Elvis:

I certify that the Office of Bar Admissions has received the verified application requesting Brett Cooper Thompson be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:   Brett Cooper Thompson
John B. White Jr.

ELECTRONICALLY FILED - 2024 Sep 05 4:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

GRAND STRAND WATER AND SEWER
AUTHORITY,

Plaintiff,

v.

ALADDIN MANUFACTURING
CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-26-05523

**MOTION FOR PRO HAC VICE
ADMISSION OF ROBERT AKIRA
WATSON**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Robert Akira Watson of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. As of the date of the filing of this motion, no one has entered an appearance as counsel of record for any defendant in this matter.

1

Mr. Watson is a member in good standing with his local bar association, and the Verified

Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary

information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: September 5, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /Marghretta H. Shisko*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED - 2024 Sep 05 4:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

2

# EXHIBIT

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
## IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

| Grand Strand Water and Sewer Authority | 2024-CP-26-05523 | In The Court of Common Pleas Fifteenth Judicial Circuit |
|---|---|---|
| Plaintiff | Case No. | Tribunal |

vs.

Mailing Address of Tribunal:

| *Burlington Industries, Inc.*, et al, | | 1301 Second Avenue |
|---|---|---|
| Defendant | | Conway, SC 29526 |

Comes now ___Robert Akira Watson___, applicant herein, and respectfully represents the following:

1. Applicant resides at:

███████

Street Address

| ███████ | ███████ | ███████ | ███████ |
|---|---|---|---|
| City | County | State | Zip Code |

███████

Telephone

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of) ___Cory Watson, P.C.___, with offices at

2131 Magnolia Avenue South

Street Address

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| City | County | State | Zip Code |
| 205-328-2200 | 205-354-3666 | 205-324-7896 | awatson@corywatson.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3. Applicant has been retained personally or as a member of the above-named law firm by ___Grand Strand Water and Sewer Authority___ to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since ___September 25___ of ___2020___, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of ___Alabama___ where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/25/2020 |
| United States District Court Northern District of Alabama | 11/16/2020 |
| United States District Court Southern District of Alabama | 12/2/2020 |
| | |
| | |
| | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Yes

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency?  If yes, give particulars, e.g., jurisdiction, court date.

No

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked?  If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

No

9. Please be aware that local counsel must be Rule 403 certified.  Local counsel of record associated

with Applicant in this case is Marghretta H. Shisko                of the John B. White, Jr., P.A.

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)

Street Address

| Spartanburg | Spartanburg | South Carolina | 29303 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-590-3907 | 864-594-5870 | mshisko@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

*Page 2 of 4*

100106
_____
South Carolina Bar Number
(You must provide Bar Number)

10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| | | | | |
|---|---|---|---|---|
| Yes - Woodruff Roebuck Water District v. AFL Telecommunications, LLC et al | Active | 7/15/2024 | John B. White | Granted |
| Yes - Laurens County Water and Sewer Commission v. Cone Mills Receiver, LLC | Active | 8/21/2024 | Marghretta Shisko | Pending |

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| |
|---|
| Yes |

12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____21_____ day of ___August___ , 20 _24_

_____
APPLICANT

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

*Page 3 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# VERIFICATION

STATE OF <u>SOUTH CAROLINA</u> )

COUNTY OF <u>JEFFERSON</u> )

I, <u>Robert Akira Watson</u>, do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

<u>APPLICANT/AFFIANT</u>

Subscribed and sworn to before me this <u>21st</u> day of <u>august</u>, 20 <u>24</u>

<u>(Notary Signature)</u>

Notary Public for the State of <u>alabama</u>

My Commission Expires: <u>9/15/2024</u>

# LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this <u>29th</u> day of <u>August</u>, 20 <u>24</u>

<u>LOCAL COUNSEL OF RECORD</u>

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this <u>29th</u> day of <u>August</u>, 20 <u>24</u>

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ Robert Akira Watson _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ September 25, 2020 _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ July 1, 2024 _____ with the seal of the Supreme Court of Alabama attached.



Megan B. Rhodebeck
Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2024 Sep 06 3:42 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

GRAND STRAND WATER AND SEWER
AUTHORITY,

Plaintiff,

v.

ALADDIN MANUFACTURING
CORPORATION, *et al.*,

Defendants.

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

CASE NO. 2024-CP-26-05523

**ORDER GRANTING PRO HAC
VICE ADMISSION OF ROBERT
AKIRA WATSON**

Having considered the Motion of Marghretta H. Shisko, on behalf of Plaintiff Grand Strand Water and Sewer Authority, to admit Robert Akira Watson, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**



Horry Common Pleas

**Case Caption:**  Grand Strand Water And Sewer Authority VS Aladdin Manufacturing Corporation , defendant, et al

**Case Number:**  2024CP2605523

**Type:**  Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2024-09-06 09:28:32     page 2 of 2

ELECTRONICALLY FILED - 2024 Sep 06 3:42 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 04 3:42 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF HORRY | FOR THE FIFTEENTH JUDICIAL CIRCUIT |

| | |
|---|---|
| GRAND STRAND WATER AND SEWER AUTHORITY, | CASE NO. 2024-CP-26-05523 |
| Plaintiff, | |
| v. | |
| ALADDIN MANUFACTURING CORPORATION, *et al.*, | **MOTION FOR PRO HAC VICE ADMISSION OF HIRLYE RAY LUTZ, III** |
| Defendants. | |

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Hirlye Ray Lutz, III, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. As of the date of the filing of this motion, no one has entered an appearance as counsel of record for any defendant in this matter.

1

Mr. Lutz is a member in good standing with his local bar association, and the Verified Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: September 4, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /John B. White, Jr.*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED - 2024 Sep 04 3:42 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# EXHIBIT

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
# IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

Grand Strand Water and Sewer Authority

**Plaintiff**

vs.

*Burlington Industries, Inc., et al,*

**Defendant**

2024-CP-26-05523

**Case No.**

In The Court of Common Pleas Fifteenth Judicial Circuit

**Tribunal**

Mailing Address of Tribunal:

PO Box 677

Conway, SC 29526

Comes now Hirlye Ray Lutz, III                , applicant herein, and respectfully represents the following:

    1.  Applicant resides at:

███████████

**Street Address**

████████     ████████     ████████          ████████

**City**          **County**          **State**          **Zip Code**

████████

**Telephone**

    2.  Applicant is an attorney and a member of the law firm of (or practices law under the name of)

Cory Watson, P.C.                , with offices at

2131 Magnolia Avenue South

**Street Address**

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| **City** | **County** | **State** | **Zip Code** |
| 205-328-2200 | 205-914-1502 | 205-324-7896 | rlutz@corywatson.com |
| **Primary Telephone** | **Cell Phone** | **Fax Number** | **Email Address** |

    3.  Applicant has been retained personally or as a member of the above-named law firm by Grand Strand Water and Sewer Authority                to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

    4.  Since September 26 of 2006                , Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of Alabama                where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

5.  List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/26/2006 |
| United States District Court Northern District of Alabama | 10/19/2006 |
| United States District Court Middle District of Alabama | 10/19/2006 |
| United States District Court Southern District of Alabama | 10/19/2006 |
| United States District Court Western District of Wisconsin | 5/24/2013 |
| United States District Court Southern District of Indiana | 12/16/2011 |
| Please see the attachment below for remaining courts. | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

> Yes

6.  Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency?  If yes, give particulars, e.g., jurisdiction, court date.

> No

7.  Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked?  If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

> No

8.  Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked?  If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

> No

9.  Please be aware that local counsel must be Rule 403 certified.  Local counsel of record associated

with Applicant in this case is <u>John B. White Jr.</u>  of the <u>John B. White, Jr., P.A.</u>

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)
Street Address

| Spartanburg | Spartanburg | South Carolina | 29303 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-706-8701 | 864-594-5870 | jwhite@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

*Page 2 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

5996

South Carolina Bar Number
(You must provide Bar Number)

10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| | | | | |
|---|---|---|---|---|
| Yes - Woodruff Roebuck Water District v. AFL Telecommunications, LLC et al | Active | 7/15/2024 | John B. White | Granted |
| Yes - Laurens County Water & Sewer Commission v. Cone Mills Receiver, LLC | Active | 8/22/2024 | John B. White | Pending |

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

Yes

12.    Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____ day of August _____, 20 24 _____

_____
APPLICANT

*Page 3 of 4*

# VERIFICATION

STATE OF <u>SOUTH CAROLINA</u>          )

COUNTY OF <u>JEFFERSON</u>          )

I, <u>HIRLYE RAY LUTZ, III</u>, do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this <u>22nd</u> day of <u>august</u>, 20<u>24</u>

_____
(Notary Signature)

Notary Public for the State of <u>alabama</u>

My Commission Expires: <u>9/15/2024</u>

# LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this <u>26th</u> day of August, 20<u>24</u>

_____
LOCAL COUNSEL OF RECORD

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this <u>26th</u> day of <u>August</u>, 20<u>24</u>

_____

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

*Page 4 of 4*

**ATTACHMENT TO PRO HAC VICE APPLICATION OF HIRLYE R. LUTZ, III**

| Court | Date Admitted: |
|---|---|
| US Court of Appeals for the 5th Circuit | 6/30/2015 |
| US Court of Appeals for the 9th Circuit | 12/30/2011 |
| US Court of Appeals for the 11th Circuit | 2/5/2014 |

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ Hirlye Ray Lutz III _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ September 29, 2006 _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ . _____ July 1, 2024 _____

with the seal of the Supreme Court of Alabama attached.



Megan B. Rhodebeck

Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394



August 29, 2024

The Honorable Renee Elvis
Clerk of Court
P.O. Box 677
Conway, SC  29528-0677

RE:     Grand Strand Water and Sewer Authority v. Burlington Industries, Inc., et al.

Case No: 2024-CP-26-05523

Dear Ms. Elvis:

I certify that the Office of Bar Admissions has received the verified application requesting Hirlye Ray Lutz III be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:     Hirlye Ray Lutz III
John B. White Jr.

ELECTRONICALLY FILED - 2024 Sep 06 3:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

GRAND STRAND WATER AND SEWER
AUTHORITY,

Plaintiff,

v.

ALADDIN MANUFACTURING
CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-26-05523

**ORDER GRANTING PRO HAC
VICE ADMISSION OF HIRLYE RAY
LUTZ, III**

Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Grand Strand

Water and Sewer Authority, to admit Hirlye Ray Lutz, III, of Cory Watson, P.C., 2131 Magnolia

Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in

the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support

thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**

ELECTRONICALLY FILED - 2024 Sep 06 3:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523



Horry Common Pleas

**Case Caption:**     Grand Strand Water And Sewer Authority VS Aladdin Manufacturing
Corporation , defendant, et al
**Case Number:**     2024CP2605523

**Type:**     Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2024-09-06 09:29:32     page 2 of 2

ELECTRONICALLY FILED - 2024 Sep 04 3:42 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

GRAND STRAND WATER AND SEWER
AUTHORITY,

Plaintiff,

v.

ALADDIN MANUFACTURING
CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-26-05523

**MOTION FOR PRO HAC VICE
ADMISSION OF FRANK JEROME
TAPLEY**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Frank Jerome Tapley of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. As of the date of the filing of this motion, no one has entered an appearance as counsel of record for any defendant in this matter.

1

Mr. Tapley is a member in good standing with his local bar association, and the Verified

Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary

information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: September 4, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /John B. White, Jr.*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED - 2024 Sep 04 3:42 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# EXHIBIT

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
# IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

Grand Strand Water and Sewer Authority

_____Plaintiff_____

vs,

_Burlington Industries, Inc., et al,_

_____Defendant_____

2024-CP-26-05523

Case No.

Mailing Address of Tribunal:

In The Court of Common Pleas Fifteenth Judicial Circuit

Tribunal

PO Box 677

Conway, SC 29526

Comes now  Frank Jerome Tapley  , applicant herein, and respectfully represents the following:

1. Applicant resides at:

▮▮▮▮▮▮▮▮

Street Address

▮▮▮▮▮▮        ▮▮▮▮▮▮        ▮▮▮▮▮        ▮▮▮▮

City                County              State              Zip Code

▮▮▮▮▮▮

Telephone

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)

Cory Watson, P.C.

, with offices at

2131 Magnolia Avenue South

Street Address

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| City | County | State | Zip Code |
| 205-328-2200 | 205-370-1116 | 205-324-7896 | jtapley@corywatson.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3. Applicant has been retained personally or as a member of the above-named law firm by

Grand Strand Water and Sewer Authority  to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since  September 26  of  2003  , Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of Alabama  where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/26/2003 |
| Florida Supreme Court | 4/25/2006 |
| Tennessee Supreme Court | 2/17/2022 |
| United States District Court Northern District of Alabama | 10/22/2003 |
| United States District Court Middle District of Alabama | 10/22/2003 |
| United States District Court Southern District of Alabama | 10/22/2003 |
| Please see the attachment for remaining court admission information. | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Yes

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

No

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

No

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is _John B. White, Jr._ of the _John B. White, Jr., P.A._ law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)
Street Address

| Spartanburg | Spartanburg | South Carolina | 29305 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-590-3907 | 864-594-5870 | jwhite@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

*Page 2 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

5996
South Carolina Bar Number
(You must provide Bar Number)

10.     Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| | | | | |
|---|---|---|---|---|
| Yes - Woodruff RoebuckWater District v. AFL Telecommunications, LLC et al | Active | 7/10/2024 | Marghretta Shisko | Granted |
| Yes - Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC | Active | 8/22/2024 | John B. White | Pending |

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

Yes

12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this ____22nd____ day of August_____, 20 _24____

_____
APPLICANT

# VERIFICATION

STATE OF SOUTH CAROLINA )

COUNTY OF JEFFERSON )

I, Frank Jerome Tapley , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this 22nd day of August , 20 24

_____
(Notary Signature)

Notary Public for the State of Alabama

My Commission Expires: 9/15/2024

# LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this 26th day of August , 20 24

_____
LOCAL COUNSEL OF RECORD

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this _____ day of August , 20 24

_____

*Page 4 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**ATTACHMENT TO PRO HAC VICE APPLICATION OF FRANK JEROME TAPLEY**

| Court | Date Admitted: |
|---|---|
| USDC Northern District of Florida | 12/16/2005 |
| USDC Middle District of Florida | 6/13/2007 |
| USDC Southern District of Indiana | 12/16/2011 |
| US Court of Appeals for the 9th Circuit | 12/30/2011 |
| USDC Southern District of Florida | 4/18/2012 |
| USDC Western District of Wisconsin | 5/24/2013 |
| US Court of Appeals for the 5th Circuit | 6/30/2015 |
| US Court of Appeals for the 11th Circuit | 8/23/2017 |
| US Eastern District of Arkansas | 11/11/2019 |
| US Western District of Arkansas | 11/11/2019 |
| US Court of Appeals for the 6th Circuit | 5/13/2021 |
| USDC Western District of Tennessee | 2/15/2023 |
| United States Supreme Court | 3/20/2023 |
| USDC Northern District of Ohio | 4/13/2023 |
| USDC Eastern District of Tennessee | 5/25/2023 |

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ **Frank Jerome Tapley** _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ September 26, 2003 _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ July 1, 2024 _____

with the seal of the Supreme Court of Alabama attached.



*Megan B. Rhodebeck*

Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394



August 29, 2024

The Honorable Renee Elvis
Clerk of Court
P.O. Box 677
Conway, SC  29528-0677

RE:    Grand Strand Water and Sewer Authority v. Burlington Industries, Inc., et al.

       Case No: 2024-CP-26-05523

Dear Ms. Elvis:

I certify that the Office of Bar Admissions has received the verified application requesting Frank Jerome Tapley be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:    Frank Jerome Tapley
       John B. White Jr.

ELECTRONICALLY FILED - 2024 Sep 06 3:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

GRAND STRAND WATER AND SEWER
AUTHORITY,

Plaintiff,

v.

ALADDIN MANUFACTURING
CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-26-05523

**ORDER GRANTING PRO HAC
VICE ADMISSION OF FRANK
JEROME TAPLEY**

Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Grand Strand

Water and Sewer Authority, to admit Frank Jerome Tapley, of Cory Watson, P.C., 2131 Magnolia

Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in

the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support

thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**



Horry Common Pleas

**Case Caption:**    Grand Strand Water And Sewer Authority VS Aladdin Manufacturing
Corporation , defendant, et al

**Case Number:**    2024CP2605523

**Type:**    Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2024-09-06 09:29:02    page 2 of 2

ELECTRONICALLY FILED - 2024 Sep 06 3:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 04 3:42 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF HORRY | FOR THE FIFTEENTH JUDICIAL CIRCUIT |

GRAND STRAND WATER AND SEWER
AUTHORITY,

                         Plaintiff,

      v.

ALADDIN MANUFACTURING
CORPORATION, *et al.*,

                       Defendants.

CASE NO. 2024-CP-26-05523

**MOTION FOR PRO HAC VICE
ADMISSION OF BRETT COOPER
THOMPSON**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Brett Cooper Thompson of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. As of the date of the filing of this motion, no one has entered an appearance as counsel of record for any defendant in this matter.

1

Mr. Thompson is a member in good standing with his local bar association, and the Verified Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: September 4, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /John B. White, Jr.*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED - 2024 Sep 04 3:42 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# EXHIBIT

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
# IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

| | | |
|---|---|---|
| Grand Strand Water and Sewer Authority | 2024-CP-26-05523 | In The Court of Common Pleas Fifteenth Judicial Circuit |
| Plaintiff | Case No. | Tribunal |
| vs. | Mailing Address of Tribunal: | PO Box 677 |
| Burlington Industries, Inc., et al, | | Conway, SC 29526 |
| Defendant | | |

Comes now  Brett Cooper Thompson  , applicant herein, and respectfully represents the following:

1. Applicant resides at:

▇▇▇▇▇▇▇▇▇

Street Address

| ▇▇▇▇▇ | ▇▇▇▇ | ▇▇▇ | ▇▇▇▇ |
|---|---|---|---|
| City | County | State | Zip Code |

▇▇▇▇▇▇

Telephone

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)
Cory Watson, P.C. , with offices at

2131 Magnolia Avenue South
Street Address

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| City | County | State | Zip Code |
| 205-328-2200 | 615-870-8952 | 205-324-7896 | bthompson@corywatson.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3. Applicant has been retained personally or as a member of the above-named law firm by
Grand Strand Water and Sewer Authority  to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since  September 30  of  2011  , Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of Alabama  where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
| --- | --- |
| Alabama Supreme Court | 9/30/2011 |
| United States District Court Northern District of Alabama | 10/19/2011 |
| United States District Court Middle District of Alabama | 10/19/2011 |
| United States District Court Southern District of Alabama | 3/7/2018 |
| | |
| | |
| | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

| Yes |
| --- |

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

| No |
| --- |

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

| No |
| --- |

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

| No |
| --- |

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is ___John B. White, Jr.___ of the ___John B. White, Jr., P.A.___

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)

Street Address

| Spartanburg | Spartanburg | South Carolina | 29305 |
| --- | --- | --- | --- |
| City | County | State | Zip Code |
| 864-594-5988 | 864-706-8701 | 864-594-5870 | jwhite@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

*Page 2 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

5996

South Carolina Bar Number
(You must provide Bar Number)

10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| | | | | |
|---|---|---|---|---|
| Yes - Woodruff Roebuck Water District v. AFL Telecommunications, LLC et al | Active | 7/15/2024 | John B. White | Granted |
| Yes - Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC | Active | 8/22/2024 | John B. White | Pending |

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| |
|---|
| Yes |

12.  Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this ____22nd____ day of __August____, 20 _24_____

APPLICANT

*Page 3 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# VERIFICATION

STATE OF <u>SOUTH CAROLINA</u>                )

COUNTY OF <u>JEFFERSON</u>                )

I, <u>Brett Cooper Thompson</u>, do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

<u>APPLICANT/AFFIANT</u>

Subscribed and sworn to before me this <u>22nd</u> day of <u>August</u>, 20 <u>24</u>

<u>(Notary Signature)</u>

Notary Public for the State of <u>Alabama</u>

My Commission Expires: <u>9/15/2024</u>

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this <u>26th</u> day of <u>August</u>, 20 <u>24</u>

<u>LOCAL COUNSEL OF RECORD</u>

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this <u>26th</u> day of <u>August</u>, 20 <u>24</u>

*Page 4 of 4*

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ Brett Cooper Thompson _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ September 30, 2011 _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ July 1, 2024 _____ with the seal of the Supreme Court of Alabama attached.



*Megan B. Rhodebeck*

Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

August 29, 2024

The Honorable Renee Elvis
Clerk of Court
P.O. Box 677
Conway, SC  29528-0677

RE:     Grand Strand Water and Sewer Authority v. Burlington Industries, Inc., et al.

Case No: 2024-CP-26-05523

Dear Ms. Elvis:

I certify that the Office of Bar Admissions has received the verified application requesting Brett Cooper Thompson be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:     Brett Cooper Thompson
        John B. White Jr.

ELECTRONICALLY FILED - 2024 Sep 06 3:41 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF HORRY | FOR THE FIFTEENTH JUDICIAL CIRCUIT |

GRAND STRAND WATER AND SEWER
AUTHORITY,

CASE NO. 2024-CP-26-05523

Plaintiff,

v.

ALADDIN MANUFACTURING
CORPORATION, *et al.*,

**ORDER GRANTING PRO HAC
VICE ADMISSION OF BRETT
COOPER THOMPSON**

Defendants.

Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Grand Strand

Water and Sewer Authority, to admit Brett Cooper Thompson, of Cory Watson, P.C., 2131

Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the

Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice*

in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**



Horry Common Pleas

**Case Caption:**     Grand Strand Water And Sewer Authority VS Aladdin Manufacturing Corporation , defendant, et al

**Case Number:**     2024CP2605523

**Type:**     Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2024-09-06 09:30:12     page 2 of 2

ELECTRONICALLY FILED - 2024 Sep 06 3:41 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 05 4:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

GRAND STRAND WATER AND SEWER
AUTHORITY,

Plaintiff,

v.

ALADDIN MANUFACTURING
CORPORATION, *et al.*,

Defendants.

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

CASE NO. 2024-CP-26-05523

**MOTION FOR PRO HAC VICE
ADMISSION OF HAMILTON
JORDAN**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Hamilton Jordan of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. As of the date of the filing of this motion, no one has entered an appearance as counsel of record for any defendant in this matter.

1

ELECTRONICALLY FILED - 2024 Sep 05 4:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Mr. Jordan is a member in good standing with his local bar association, and the Verified Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: September 5, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /Marghretta H. Shisko*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

# EXHIBIT

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
IN THE STATE OF SOUTH CAROLINA**

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

| | | |
|---|---|---|
| Grand Strand Water And Sewer Authority | 2024-CP-26-05523 | In The Court of Common Pleas Fifteenth Judicial Circuit |
| Plaintiff | Case No. | Tribunal |
| vs. | | |
| | Mailing Address of Tribunal: | PO Box 677 |
| Aladdin Manufacturing Corporation *et al.* | | Conway, SC 29528 |
| Defendant | | |

Comes now <u>Hamilton Jordan</u>, applicant herein, and respectfully represents the following:

1. Applicant resides at:

<u>████████████████████████████</u>
Street Address

<u>████████</u>          <u>████████</u>          <u>████████</u>          <u>████████</u>
City                    County                    State                    Zip Code

<u>████████</u>
Telephone

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)

<u>Cory Watson, P.C.</u>, with offices at

<u>1033 Demonbreun St. #300</u>
Street Address

<u>Nashville</u>          <u>          </u>          <u>Tennessee</u>          <u>37203</u>
City                    County                    State                    Zip Code

<u>615-903-4660</u>          <u>334-714-1783</u>          <u>866-327-4000</u>          <u>hjordan@corywatson.com</u>
Primary Telephone          Cell Phone          Fax Number          Email Address

3. Applicant has been retained personally or as a member of the above-named law firm by

<u>Grand Strand Water And Sewer Authority</u> to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since <u>October 19</u> of <u>2017</u>, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of <u>Tennessee</u> where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Tennessee Supreme Court | 10/19/2017 |
| Tennessee State Courts | 10/19/2017 |
| United States District Court Eastern District of Tennessee | 3/16/2022 |
| United States District Court Middle District of Tennessee | 10/21/2019 |
| North Carolina State Courts | 7/21/2023 |
|  |  |
|  |  |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

| Yes |
|---|

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

| No |
|---|

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

| No |
|---|

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

| No |
|---|

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is <u>Marghretta H. Shisko</u> of the <u>John B. White, Jr., P.A.</u>

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)
_____
Street Address

Spartanburg          Spartanburg          South Carolina          2930l.
City                 County               State                   Zip Code

864-594-5988         864-590-3907         864-594-5870         mshisko@johnbwhitelaw.com
Primary Telephone    Cell Phone           Fax Number           Email Address

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

100106
_____

South Carolina Bar Number
(You must provide Bar Number)

     10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| Yes, Woodruff-Roebuck Water District v. GTI Chemical Solutions, Inc. et al Active 8/21/2024 Marghretta H. Shisko Pending |

Laurens County And Sewer Commission v. Cone Mills Receiver, LLC et al Active 8/21/2024 Marghretta H. Shisko Pending

     11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| Yes |

     12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this ___2 18t___ day of ___August___, 20 __24__

APPLICANT _____

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# VERIFICATION

STATE OF <u>TENNESSEE</u>                    )

COUNTY OF <u>DAVIDSON</u>                    )

I,        Hamilton Jordan                                        , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true.  I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice.  Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding.  Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

<u>APPLICANT/AFFIANT</u>

Subscribed and sworn to before me this  <u>20th</u>  day of <u>August</u>  , 20 <u>24</u>

<u>Lisa R Gillespie</u>
(Notary Signature)

Notary Public for the State of  <u>Tennessee</u>
My Commission Expires:  <u>November 3, 2025</u>

LISA R. GILLESPIE
STATE OF TENNESSEE
NOTARY PUBLIC
DAVIDSON COUNTY
My Commission Expires Nov. 3, 2025

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this  <u>29th</u>  day of <u>August</u> , 20 <u>24</u>

<u>M Smisko</u>
LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this <u>29th</u> day of <u>August</u>              , 20 <u>24</u>

<u>M Smisko</u>

*Page 4 of 4*

# Supreme Court of Tennessee

# Certificate of Good Standing

I, James M. Hivner, Clerk of the Supreme Court of the State of Tennessee, do hereby certify that

## Hamilton G. Jordan

is a licensed and practicing attorney of the Courts of this State, having been admitted to practice on October 19, 2017, and is presently in good standing. The Supreme Court is the Court of last resort in Tennessee.

In testimony whereof, I have set my hand and affixed the seal of the Court on this the 18th day of July, 2024.

James M. Hivner
Clerk of the Supreme Court of Tennessee

By Donna Gilmore
Donna Gilmore, D.C.

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 06 3:42 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

GRAND STRAND WATER AND SEWER
AUTHORITY,

Plaintiff,

v.

ALADDIN MANUFACTURING
CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-26-05523

**ORDER GRANTING PRO HAC
VICE ADMISSION OF HAMILTON
JORDAN**

Having considered the Motion of Marghretta H. Shisko, on behalf of Plaintiff Grand Strand Water and Sewer Authority, to admit Hamilton Jordan, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**



Horry Common Pleas

**Case Caption:**    Grand Strand Water And Sewer Authority VS Aladdin Manufacturing
Corporation , defendant, et al
**Case Number:**    2024CP2605523

**Type:**    Order/Pro Hac Vice


IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760


Electronically signed on 2024-09-06 09:28:12    page 2 of 2

ELECTRONICALLY FILED - 2024 Sep 06 3:42 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

September 3, 2024

The Honorable Renee Elvis
Clerk of Court
P.O. Box 677
Conway, SC  29528-0677

RE:    Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation, et al.

Case No: 2024-CP-26-05523

Dear Ms. Elvis:

I certify that the Office of Bar Admissions has received the verified application requesting Hamilton Jordan be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:    Hamilton Jordan
       Marghretta H. Shisko



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

September 3, 2024

The Honorable Renee Elvis
Clerk of Court
P.O. Box 677
Conway, SC  29528-0677

RE:   Grand Strand Water and Sewer Authority v. Burlington Industries, Inc., et al.

      Case No: 2024-CP-26-05523

Dear Ms. Elvis:

I certify that the Office of Bar Admissions has received the verified application requesting Robert Akira Watson be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M. J. Thames
Bar Admissions Coordinator

cc:   Robert Akira Watson
      Marghretta H. Shisko

ELECTRONICALLY FILED - 2024 Sep 06 3:42 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF HORRY | FOR THE FIFTEENTH JUDICIAL CIRCUIT |

GRAND STRAND WATER AND SEWER
AUTHORITY,

                              Plaintiff,

      v.

ALADDIN MANUFACTURING
CORPORATION, *et al.*,

                          Defendants.

CASE NO. 2024-CP-26-05523

**ORDER GRANTING PRO HAC
VICE ADMISSION OF HAMILTON
JORDAN**

Having considered the Motion of Marghretta H. Shisko, on behalf of Plaintiff Grand Strand Water and Sewer Authority, to admit Hamilton Jordan, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**



Horry Common Pleas

**Case Caption:**    Grand Strand Water And Sewer Authority VS Aladdin Manufacturing
Corporation , defendant, et al
**Case Number:**    2024CP2605523

**Type:**    Order/Pro Hac Vice


IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760


Electronically signed on 2024-09-06 09:28:12    page 2 of 2

ELECTRONICALLY FILED - 2024 Sep 06 3:42 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 06 3:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

GRAND STRAND WATER AND SEWER AUTHORITY,

Plaintiff,

v.

ALADDIN MANUFACTURING CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-26-05523

**ORDER GRANTING PRO HAC VICE ADMISSION OF HIRLYE RAY LUTZ, III**

Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Grand Strand Water and Sewer Authority, to admit Hirlye Ray Lutz, III, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**



Horry Common Pleas

**Case Caption:**    Grand Strand Water And Sewer Authority VS Aladdin Manufacturing
Corporation , defendant, et al

**Case Number:**    2024CP2605523

**Type:**    Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2024-09-06 09:29:32    page 2 of 2

ELECTRONICALLY FILED - 2024 Sep 06 3:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 06 3:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

GRAND STRAND WATER AND SEWER AUTHORITY,

Plaintiff,

v.

ALADDIN MANUFACTURING CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-26-05523

**ORDER GRANTING PRO HAC VICE ADMISSION OF FRANK JEROME TAPLEY**

Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Grand Strand Water and Sewer Authority, to admit Frank Jerome Tapley, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**



Horry Common Pleas

**Case Caption:**     Grand Strand Water And Sewer Authority VS Aladdin Manufacturing
Corporation , defendant, et al
**Case Number:**     2024CP2605523

**Type:**     Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2024-09-06 09:29:02     page 2 of 2

ELECTRONICALLY FILED - 2024 Sep 06 3:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 06 3:41 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

GRAND STRAND WATER AND SEWER AUTHORITY,

Plaintiff,

v.

ALADDIN MANUFACTURING CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-26-05523

**ORDER GRANTING PRO HAC VICE ADMISSION OF BRETT COOPER THOMPSON**

Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Grand Strand Water and Sewer Authority, to admit Brett Cooper Thompson, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**



Horry Common Pleas

**Case Caption:**     Grand Strand Water And Sewer Authority VS Aladdin Manufacturing
                      Corporation , defendant, et al

**Case Number:**      2024CP2605523

**Type:**             Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2024-09-06 09:30:12     page 2 of 2

ELECTRONICALLY FILED - 2024 Sep 06 3:41 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 06 3:42 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF HORRY | FOR THE FIFTEENTH JUDICIAL CIRCUIT |

| | |
|---|---|
| GRAND STRAND WATER AND SEWER AUTHORITY, | CASE NO. 2024-CP-26-05523 |
| Plaintiff, | |
| v. | **ORDER GRANTING PRO HAC VICE ADMISSION OF ROBERT AKIRA WATSON** |
| ALADDIN MANUFACTURING CORPORATION, *et al.*, | |
| Defendants. | |

Having considered the Motion of Marghretta H. Shisko, on behalf of Plaintiff Grand Strand Water and Sewer Authority, to admit Robert Akira Watson, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**



Horry Common Pleas

**Case Caption:**     Grand Strand Water And Sewer Authority VS Aladdin Manufacturing
Corporation , defendant, et al

**Case Number:**     2024CP2605523

**Type:**     Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2024-09-06 09:28:32     page 2 of 2

ELECTRONICALLY FILED - 2024 Sep 06 3:42 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523



**JOHN B. WHITE JR. P.A.**
Law Firm

September 6, 2024

The Honorable Renee N. Elvis
Horry County Clerk of Court
PO Box 677
Conway, SC 29526

   **Re:**  ***Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation, et al.***
     **Case No.: 2024-CP-26-05523**

Dear Ms. Elvis:

  On behalf of our client, Grand Strand Water and Sewer Authority, we filed a Motion for Pro Hac Vice Admission of Hamilton Jordan with the Court on September 5, 2024.

  Attached please find an Exhibit to be attached to that Motion, which was erroneously left out of the filing of our motion.

       Sincerely,

       *s/ Marghretta H. Shisko*

       Marghretta H. Shisko

Enclosure as Stated

JOHN B. WHITE, JR.
jwhite@johnbwhitelaw.com

GRIFFIN LITTLEJOHN LYNCH
glynch@johnbwhitelaw.com

MARGHRETTA SHISKO
mshisko@johnbwhitelaw.com

291 SOUTH PINE STREET
P.O. BOX 2465
SPARTANBURG S.C. 29304
(864) 594-5988

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# EXHIBIT

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
## IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

Grand Strand Water And Sewer Authority

Plaintiff

vs.

Aladdin Manufacturing Corporation *et al.*

Defendant

Case No. 2024-CP-26-05523

In The Court of Common Pleas Fifteenth Judicial Circuit

Tribunal

Mailing Address of Tribunal: PO Box 677

Conway, SC 29528

Comes now Hamilton Jordan , applicant herein, and respectfully represents the following:

1.  Applicant resides at:

Street Address ██████████

City ███████   County ███████   State ███████   Zip Code ███████

Telephone ██████

2.  Applicant is an attorney and a member of the law firm of (or practices law under the name of) Cory Watson, P.C. , with offices at

1033 Demonbreun St. #300

Street Address

Nashville   Tennessee   37203

City   County   State   Zip Code

615-903-4660   334-714-1783   866-327-4000   hjordan@corywatson.com

Primary Telephone   Cell Phone   Fax Number   Email Address

3.  Applicant has been retained personally or as a member of the above-named law firm by Grand Strand Water And Sewer Authority to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4.  Since October 19 of 2017 , Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of Tennessee where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Tennessee Supreme Court | 10/19/2017 |
| Tennessee State Courts | 10/19/2017 |
| United States District Court Eastern District of Tennessee | 3/16/2022 |
| United States District Court Middle District of Tennessee | 10/21/2019 |
| North Carolina State Courts | 7/21/2023 |
|  |  |
|  |  |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

| Yes |
|---|

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

| No |
|---|

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

| No |
|---|

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

| No |
|---|

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is Marghretta H. Shisko of the John B. White, Jr., P.A.

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)

Street Address

| Spartanburg | Spartanburg | South Carolina | 29304 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-590-3907 | 864-594-5870 | mshisko@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

100106

South Carolina Bar Number
(You must provide Bar Number)

     10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

Yes, Woodruff-Roebuck Water District v. GTI Chemical Solutions, Inc. et al Active 8/21/2024 Marghretta H. Shisko Pending
Laurens County And Sewer Commission v. Cone Mills Receiver, LLC et al Active 8/21/2024 Marghretta H. Shisko Pending

     11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

Yes

     12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____21st_____ day of ___August___, 20 _24_

_____
APPLICANT

# VERIFICATION

STATE OF <u>TENNESSEE</u>        )

COUNTY OF <u>DAVIDSON</u>        )

I, <u>Hamilton Jordan</u>, do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this <u>20th</u> day of <u>August</u>, 20 <u>24</u>

_____
(Notary Signature)

Notary Public for the State of <u>Tennessee</u>

My Commission Expires: <u>November 3, 2025</u>

LISA R. GILLESPIE
STATE OF
TENNESSEE
NOTARY
PUBLIC
DAVIDSON COUNTY
My Commission Expires Nov. 3, 2025

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this <u>29th</u> day of <u>August</u>, 20 <u>24</u>

_____
LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this <u>29th</u> day of <u>August</u>, 20 <u>24</u>

_____

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# Supreme Court of Tennessee

# Certificate of Good Standing

I, James M. Hivner, Clerk of the Supreme Court of the State of Tennessee, do hereby certify that

## Hamilton G. Jordan

is a licensed and practicing attorney of the Courts of this State, having been admitted to practice on October 19, 2017, and is presently in good standing. The Supreme Court is the Court of last resort in Tennessee.

In testimony whereof, I have set my hand and affixed the seal of the Court on this the 18th day of July, 2024.

James M. Hivner
Clerk of the Supreme Court of Tennessee

By Donna Gilmore
Donna Gilmore, D.C.

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523



**JOHN B. WHITE JR. P.A.**
Law Firm

September 6, 2024

The Honorable Renee N. Elvis
Horry County Clerk of Court
PO Box 677
Conway, SC 29526

      **Re:**    ***Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation, et al.***
             **Case No.: 2024-CP-26-05523**

Dear Ms. Elvis:

On behalf of our client, Grand Strand Water and Sewer Authority, we filed a Motion for Pro Hac Vice Admission of Hirlye Ray Lutz, III with the Court on September 4, 2024.

Attached please find an Exhibit to be attached to that Motion, which was erroneously left out of the filing of our motion.

                       Sincerely,

                       *s/ John B. White, Jr.*

                       John B. White, Jr.

Enclosure as Stated

JOHN B. WHITE, JR.
jwhite@johnbwhitelaw.com

GRIFFIN LITTLEJOHN LYNCH
glynch@johnbwhitelaw.com

MARGHRETTA SHISKO
mshisko@johnbwhitelaw.com

291 SOUTH PINE STREET
P.O. BOX 2465
SPARTANBURG S.C. 29304
(864) 594-5988

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# EXHIBIT

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE* IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

| Grand Strand Water and Sewer Authority | 2024-CP-26-05523 | In The Court of Common Pleas Fifteenth Judicial Circuit |
|---|---|---|
| Plaintiff | Case No. | Tribunal |

vs.

Mailing Address of Tribunal:    PO Box 677
Conway, SC 29526

| *Burlington Industries, Inc., et al,* | | |
|---|---|---|
| Defendant | | |

Comes now  Hirlye Ray Lutz, III                        , applicant herein, and respectfully represents the following:

    1. Applicant resides at:

| ██████████ | | | |
|---|---|---|---|
| Street Address | | | |
| ██████████ | ██████ | ██████ | ██████ |
| City | County | State | Zip Code |
| ██████████ | | | |
| Telephone | | | |

    2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)

Cory Watson, P.C.                                                                 , with offices at

2131 Magnolia Avenue South

| Street Address | | | |
|---|---|---|---|
| Birmingham | Jefferson | Alabama | 35205 |
| City | County | State | Zip Code |
| 205-328-2200 | 205-914-1502 | 205-324-7896 | rlutz@corywatson.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

    3. Applicant has been retained personally or as a member of the above-named law firm by Grand Strand Water and Sewer Authority                               to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

    4. Since  September 26  of  2006                               , Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of Alabama                               where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/26/2006 |
| United States District Court Northern District of Alabama | 10/19/2006 |
| United States District Court Middle District of Alabama | 10/19/2006 |
| United States District Court Southern District of Alabama | 10/19/2006 |
| United States District Court Western District of Wisconsin | 5/24/2013 |
| United States District Court Southern District of Indiana | 12/16/2011 |
| Please see the attachment below for remaining courts. | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Yes

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

No

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

No

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is _John B. White Jr._____ of the _John B. White, Jr., P.A._____

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)
_____
Street Address

| Spartanburg | Spartanburg | South Carolina | 29303 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-706-8701 | 864-594-5870 | jwhite@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

5996
_____

South Carolina Bar Number
(You must provide Bar Number)

     10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| | | | | |
|---|---|---|---|---|
| Yes - Woodruff Roebuck Water District v. AFL Telecommunications, LLC et al | Active | 7/15/2024 | John B. White | Granted |
| Yes - Laurens County Water & Sewer Commission v. Cone Mills Receiver, LLC | Active | 8/22/2024 | John B. White | Pending |

     11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| |
|---|
| Yes |

     12.  Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____ day of August _____, 20 _24_____

_____
APPLICANT

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# VERIFICATION

STATE OF SOUTH CAROLINA )

COUNTY OF JEFFERSON )

I, HIRLYE RAY LUTZ, III , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

APPLICANT/AFFIANT

Subscribed and sworn to before me this 22nd day of August , 20 24

(Notary Signature)

Notary Public for the State of alabama

My Commission Expires: 9/15/2024

*SKYLER PAIGE DONALDSON*
*MY COMMISSION EXPIRES*
*SEPTEMBER 15, 2024*
*NOTARY PUBLIC*
*STATE OF ALABAMA*

# LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this 26th day of August , 20 24

LOCAL COUNSEL OF RECORD

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this 26th day of August , 20 24

*Page 4 of 4*

**ATTACHMENT TO PRO HAC VICE APPLICATION OF HIRLYE R. LUTZ, III**

| Court | Date Admitted: |
|---|---|
| US Court of Appeals for the 5th Circuit | 6/30/2015 |
| US Court of Appeals for the 9th Circuit | 12/30/2011 |
| US Court of Appeals for the 11th Circuit | 2/5/2014 |

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ Hirlye Ray Lutz III _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ September 29, 2006 _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ July 1, 2024 _____

with the seal of the Supreme Court of Alabama attached.



*Megan B. Rhodebeck*
Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523



**JOHN B. WHITE JR. P.A.**
Law Firm

September 6, 2024

The Honorable Renee N. Elvis
Horry County Clerk of Court
PO Box 677
Conway, SC 29526

> **Re:**   ***Grand Strand Water and Sewer Authority v. Aladdin Manufacturing
> Corporation, et al.***
> **Case No.: 2024-CP-26-05523**

Dear Ms. Elvis:

On behalf of our client, Grand Strand Water and Sewer Authority, we filed a Motion for Pro Hac Vice Admission of Frank Jerome Tapley with the Court on September 4, 2024.

Attached please find an Exhibit to be attached to that Motion, which was erroneously left out of the filing of our motion.

Sincerely,

*s/ John B. White, Jr.*

John B. White, Jr.

Enclosure as Stated

JOHN B. WHITE, JR.
jwhite@johnbwhitelaw.com

GRIFFIN LITTLEJOHN LYNCH
glynch@johnbwhitelaw.com

MARGHRETTA SHISKO
mshisko@johnbwhitelaw.com

291 SOUTH PINE STREET
P.O. BOX 2465
SPARTANBURG S.C. 29304
(864) 594-5988

# EXHIBIT

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
## IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

Grand Strand Water and Sewer Authority
_____ Plaintiff _____

vs.

*Burlington Industries, Inc., et al,*
_____ Defendant _____

Case No. 2024-CP-26-05523

In The Court of Common Pleas Fifteenth Judicial Circuit

Tribunal

Mailing Address of Tribunal: PO Box 677
Conway, SC 29526

Comes now  Frank Jerome Tapley _____, applicant herein, and respectfully represents the following:

1. Applicant resides at:

▮▮▮▮▮▮▮

Street Address

▮▮▮▮   ▮▮▮▮   ▮▮▮▮   ▮▮▮▮

City          County          State          Zip Code

▮▮▮▮

Telephone

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)
Cory Watson, P.C. _____, with offices at

2131 Magnolia Avenue South
Street Address

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| City | County | State | Zip Code |
| 205-328-2200 | 205-370-1116 | 205-324-7896 | jtapley@corywatson.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3. Applicant has been retained personally or as a member of the above-named law firm by
Grand Strand Water and Sewer Authority _____ to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since  September 26  of  2003 _____, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of Alabama _____ where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

5.  List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/26/2003 |
| Florida Supreme Court | 4/25/2006 |
| Tennessee Supreme Court | 2/17/2022 |
| United States District Court Northern District of Alabama | 10/22/2003 |
| United States District Court Middle District of Alabama | 10/22/2003 |
| United States District Court Southern District of Alabama | 10/22/2003 |
| Please see the attachment for remaining court admission information. | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Yes

6.  Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency?  If yes, give particulars, e.g., jurisdiction, court date.

No

7.  Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked?  If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No

8.  Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

No

9.  Please be aware that local counsel must be Rule 403 certified.  Local counsel of record associated

with Applicant in this case is _John B. White, Jr._ of the _John B. White, Jr., P.A._ law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)

Street Address

| Spartanburg | Spartanburg | South Carolina | 29305 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-590-3907 | 864-594-5870 | jwhite@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

5996
_____

South Carolina Bar Number
(You must provide Bar Number)

      10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| | | | | |
|---|---|---|---|---|
| Yes - Woodruff RoebuckWater District v. AFL Telecommunications, LLC et al | Active | 7/10/2024 | Marghretta Shisko | Granted |
| Yes - Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC | Active | 8/22/2024 | John B. White | Pending |

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| |
|---|
| Yes |

      12.  Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____22nd_____ day of August_____, 20 _24_____

_____
APPLICANT

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# VERIFICATION

STATE OF <u>SOUTH CAROLINA</u>    )

COUNTY OF <u>JEFFERSON</u>    )

I, <u>Frank Jerome Tapley</u>, do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this <u>22nd</u> day of <u>August</u>, 20<u>24</u>

_____
(Notary Signature)

Notary Public for the State of <u>alabama</u>

My Commission Expires: <u>9/15/2024</u>

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this <u>26th</u> day of August, 20<u>24</u>

_____
LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this <u>26th</u> day of <u>August</u>, 20<u>24</u>

_____

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

*Page 4 of 4*

**ATTACHMENT TO PRO HAC VICE APPLICATION OF FRANK JEROME TAPLEY**

| Court | Date Admitted: |
|---|---|
| USDC Northern District of Florida | 12/16/2005 |
| USDC Middle District of Florida | 6/13/2007 |
| USDC Southern District of Indiana | 12/16/2011 |
| US Court of Appeals for the 9th Circuit | 12/30/2011 |
| USDC Southern District of Florida | 4/18/2012 |
| USDC Western District of Wisconsin | 5/24/2013 |
| US Court of Appeals for the 5th Circuit | 6/30/2015 |
| US Court of Appeals for the 11th Circuit | 8/23/2017 |
| US Eastern District of Arkansas | 11/11/2019 |
| US Western District of Arkansas | 11/11/2019 |
| US Court of Appeals for the 6th Circuit | 5/13/2021 |
| USDC Western District of Tennessee | 2/15/2023 |
| United States Supreme Court | 3/20/2023 |
| USDC Northern District of Ohio | 4/13/2023 |
| USDC Eastern District of Tennessee | 5/25/2023 |

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ Frank Jerome Tapley _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ September 26, 2003 _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ July 1, 2024 _____ with the seal of the Supreme Court of Alabama attached.



Megan B. Rhodebeck
Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama



**JOHN B. WHITE JR. P.A.**
Law Firm

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

September 6, 2024

The Honorable Renee N. Elvis
Horry County Clerk of Court
PO Box 677
Conway, SC 29526

      **Re:**    ***Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation, et al.***
            **Case No.: 2024-CP-26-05523**

Dear Ms. Elvis:

On behalf of our client, Grand Strand Water and Sewer Authority, we filed a Motion for Pro Hac Vice Admission of Brett Cooper Thompson with the Court on September 4, 2024.

Attached please find an Exhibit to be attached to that Motion, which was erroneously left out of the filing of our motion.

               Sincerely,

               *s/ John B. White, Jr.*

               John B. White, Jr.

Enclosure as Stated

JOHN B. WHITE, JR.
jwhite@johnbwhitelaw.com

GRIFFIN LITTLEJOHN LYNCH
glynch@johnbwhitelaw.com

MARGHRETTA SHISKO
mshisko@johnbwhitelaw.com

291 SOUTH PINE STREET
P.O. BOX 2465
SPARTANBURG S.C. 29304
(864) 594-5988

# EXHIBIT

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
## IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

| Grand Strand Water and Sewer Authority | 2024-CP-26-05523 | In The Court of Common Pleas Fifteenth Judicial Circuit |
|---|---|---|
| Plaintiff | Case No. | Tribunal |
| vs. | Mailing Address of Tribunal: | PO Box 677 |
| *Burlington Industries, Inc., et al,* | | Conway, SC 29526 |
| Defendant | | |

Comes now <u>Brett Cooper Thompson</u>, applicant herein, and respectfully represents the following:

1. Applicant resides at:

<u>████████</u>
Street Address

<u>████</u>  <u>████</u>  <u>████</u>  <u>████</u>
City         County         State         Zip Code

<u>████</u>
Telephone

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of) Cory Watson, P.C., with offices at

<u>2131 Magnolia Avenue South</u>
Street Address

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| City | County | State | Zip Code |
| 205-328-2200 | 615-870-8952 | 205-324-7896 | bthompson@corywatson.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3. Applicant has been retained personally or as a member of the above-named law firm by <u>Grand Strand Water and Sewer Authority</u> to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since <u>September 30</u> of <u>2011</u>, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of <u>Alabama</u> where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/30/2011 |
| United States District Court Northern District of Alabama | 10/19/2011 |
| United States District Court Middle District of Alabama | 10/19/2011 |
| United States District Court Southern District of Alabama | 3/7/2018 |
|  |  |
|  |  |
|  |  |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

| Yes |
|---|

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

| No |
|---|

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

| No |
|---|

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

| No |
|---|

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is ___John B. White, Jr.___ of the ___John B. White, Jr., P.A.___

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)
_____
Street Address

| Spartanburg | Spartanburg | South Carolina | 29305 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-706-8701 | 864-594-5870 | jwhite@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

*Page 2 of 4*

5996
_____

South Carolina Bar Number
(You must provide Bar Number)

10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| | | | | |
|---|---|---|---|---|
| Yes - Woodruff Roebuck Water District v. AFL Telecommunications, LLC et al | Active | 7/15/2024 | John B. White | Granted |
| Yes - Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC | Active | 8/22/2024 | John B. White | Pending |

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| |
|---|
| Yes |

12.  Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this ____22nd____ day of ___August___, 20 _24_

_____
APPLICANT

*Page 3 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# VERIFICATION

STATE OF SOUTH CAROLINA )

COUNTY OF JEFFERSON )

I, Brett Cooper Thompson , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

APPLICANT/AFFIANT

Subscribed and sworn to before me this 22nd day of August , 20 24

(Notary Signature)

Notary Public for the State of Alabama

My Commission Expires: 9/15/2024

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this 26th day of August , 20 24

LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this ___26th___ day of August , 20 24

*Page 4 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 5:03 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ Brett Cooper Thompson _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ September 30, 2011 _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ July 1, 2024 _____ with the seal of the Supreme Court of Alabama attached.



Megan B. Rhodebeck
Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama



## JOHN B. WHITE JR. P.A.
### Law Firm

September 6, 2024

The Honorable Renee N. Elvis
Horry County Clerk of Court
PO Box 677
Conway, SC 29526

> **Re:** ***Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation, et al.***
> **Case No.: 2024-CP-26-05523**

Dear Ms. Elvis:

On behalf of our client, Grand Strand Water and Sewer Authority, we filed a Motion for Pro Hac Vice Admission of Robert Akira Watson with the Court on September 5, 2024.

Attached please find an Exhibit to be attached to that Motion, which was erroneously left out of the filing of our motion.

Sincerely,

*s/ Marghretta H. Shisko*

Marghretta H. Shisko

Enclosure as Stated

JOHN B. WHITE, JR.
jwhite@johnbwhitelaw.com

GRIFFIN LITTLEJOHN LYNCH
glynch@johnbwhitelaw.com

MARGHRETTA SHISKO
mshisko@johnbwhitelaw.com

291 SOUTH PINE STREET
P.O. BOX 2465
SPARTANBURG S.C. 29304
(864) 594-5988

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# EXHIBIT

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE* IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

| | | |
|---|---|---|
| Grand Strand Water and Sewer Authority | 2024-CP-26-05523 | In The Court of Common Pleas Fifteenth Judicial Circuit |
| Plaintiff | Case No. | Tribunal |
| vs. | | |
| | Mailing Address of Tribunal: | 1301 Second Avenue |
| Burlington Industries, Inc., et al, | | Conway, SC 29526 |
| Defendant | | |

Comes now  Robert Akira Watson                    , applicant herein, and respectfully represents the following:

    1.  Applicant resides at:

▮▮▮▮▮▮▮

**Street Address**

| ▮▮▮▮ | ▮▮▮▮ | ▮▮▮ | ▮▮▮ |
|---|---|---|---|
| City | County | State | Zip Code |

▮▮▮▮▮

**Telephone**

    2.  Applicant is an attorney and a member of the law firm of (or practices law under the name of) Cory Watson, P.C.                                        , with offices at

2131 Magnolia Avenue South

**Street Address**

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| City | County | State | Zip Code |
| 205-328-2200 | 205-354-3666 | 205-324-7896 | awatson@corywatson.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

    3.  Applicant has been retained personally or as a member of the above-named law firm by Grand Strand Water and Sewer Authority                         to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

    4.  Since  September 25  of  2020                    , Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of Alabama                    where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

5.  List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
| --- | --- |
| Alabama Supreme Court | 9/25/2020 |
| United States District Court Northern District of Alabama | 11/16/2020 |
| United States District Court Southern District of Alabama | 12/2/2020 |
|  |  |
|  |  |
|  |  |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

| Yes |
| --- |

6.  Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency?  If yes, give particulars, e.g., jurisdiction, court date.

| No |
| --- |

7.  Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked?  If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

| No |
| --- |

8.  Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked?  If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

| No |
| --- |

9.  Please be aware that local counsel must be Rule 403 certified.  Local counsel of record associated

with Applicant in this case is Marghretta H. Shisko                of the John B. White, Jr., P.A.

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)

Street Address

| Spartanburg | Spartanburg | South Carolina | 29303 |
| --- | --- | --- | --- |
| City | County | State | Zip Code |
| 864-594-5988 | 864-590-3907 | 864-594-5870 | mshisko@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

*Page 2 of 4*

100106

South Carolina Bar Number
(You must provide Bar Number)

10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| | | | | |
|---|---|---|---|---|
| Yes - Woodruff Roebuck Water District v. AFL Telecommunications, LLC et al | Active | 7/15/2024 | John B. White | Granted |
| Yes - Laurens County Water and Sewer Commission v. Cone Mills Receiver, LLC | Active | 8/21/2024 | Marghretta Shisko | Pending |

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

Yes

12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____21_____ day of ___August___, 20 _24___

_____
APPLICANT

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

*Page 3 of 4*

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# VERIFICATION

STATE OF SOUTH CAROLINA                )

COUNTY OF JEFFERSON                )

I, Robert Akira Watson , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this 21st day of august , 20 24

_____
(Notary Signature)

Notary Public for the State of alabama

My Commission Expires: 9/15/2024

# LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this 29th day of August , 20 24

_____
LOCAL COUNSEL OF RECORD

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this _____ day of August , 20 24

_____

*Page 4 of 4*

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ Robert Akira Watson _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ September 25, 2020 _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ July 1, 2024 _____ with the seal of the Supreme Court of Alabama attached.



Megan B. Rhodebeck
Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2024 Sep 16 4:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF HORRY** | ) | **FIFTEENTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GRAND STRAND WATER AND SEWER AUTHORITY, | ) | C.A. No.: 2024-CP-26-05523 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **SECOND AMENDED SUMMONS** (JURY TRIAL DEMANDED) |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**TO THE DEFENDANTS ABOVE-NAMED:**

YOU ARE HEREBY SUMMONED and required to answer the Second Amended Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to the Second Amended Complaint upon the subscribers at 291 S. Pine Street, Spartanburg, South Carolina 29302, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Second Amended Complaint, judgment by default will be rendered against you for the relief demanded in the Second Amended Complaint.

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

October 7, 2024

2

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF HORRY** | ) | **FIFTEENTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GRAND STRAND WATER AND SEWER AUTHORITY, | ) | C.A. No.: 2024-CP-26-05523 |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **SECOND AMENDED COMPLAINT** (JURY TRIAL DEMANDED) |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

Plaintiff, GRAND STRAND WATER AND SEWER AUTHORITY, by and through the undersigned counsel, brings this action against the above-named Defendants for compensatory and punitive damages, injunctive relief, and abatement of a nuisance, and alleges as follows:

## STATEMENT OF THE CASE

1.     Plaintiff, Grand Strand Water and Sewer Authority, brings this action to address Defendants' ongoing contamination of the Great Pee Dee River, Lynches River, Lumber River, Little Pee Dee River, Lynches Lake Swamp, Black Creek, and Bull Creek (collectively the "Pee

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Dee River Watershed"); the Waccamaw River and Intracoastal Waterway; and Plaintiff's properties with certain toxic per- and polyfluoroalkyl substances ("PFAS"): perfluorooctanoic acid ("PFOA"); perfluorooctanesulfonic acid ("PFOS"); perfluorononanoic acid ("PFNA"); perfluorobutane sulfonate ("PFBS"); perfluorohexane sulfonate ("PFHxS"); and hexafluoropropylene oxide dimer acid ("HFPO-DA" or "GenX Chemicals").

2.      As Plaintiff has recently discovered, Defendants have discharged and continue to discharge products that contain or degrade to these PFAS to the Pee Dee River Watershed, which travel downstream to Plaintiff's water intakes on Bull Creek and the Intracoastal Waterway, thereby contaminating Plaintiff's properties and the domestic water supply for over 115,000 water customers in Horry County. Plaintiff seeks a declaratory judgment, injunctive relief, abatement, damages, and an award of costs, including attorneys' fees, for Defendants' repeated and ongoing PFAS contamination.

3.      Plaintiff is a special purpose district that provides potable water to residents of various counties in South Carolina, including Horry County. It owns and occupies riparian lands in Horry County, both on Bull Creek in Bucksport, South Carolina; and on the Intracoastal Waterway in Myrtle Beach, South Carolina. On these respective properties, Plaintiff operates the Bull Creek Surface Water Treatment Plant ("SWTP"); Myrtle Beach SWTP; and related buildings, improvements, and equipment that make up these water distribution systems. Plaintiff's SWTPs draw raw water from Bull Creek and the Intracoastal Waterway for treatment before distributing treated water to customers.

4.      Defendants own and/or operate industrial facilities upstream of Plaintiff's water intakes and have in the past and/or currently use products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in their industrial processes. Defendants then

2

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

discharge wastewater contaminated with these products to surface waters in the Pee Dee River Watershed upstream of Plaintiff's water intakes. Some Defendants directly discharge PFAS-contaminated wastewater, while others do so indirectly via certain wastewater treatment plants ("WWTPs"). These WWTPs include the Johnsonville WWTP and Lake City WWTP.

5.      Industrial wastewater from Defendants' facilities contains high levels of PFAS, which cannot be adequately removed by conventional wastewater treatment processes, are discharged to the Pee Dee River Watershed, and flow downstream to Plaintiff's SWTPs. As a direct and proximate result of Defendants' actions, Plaintiff has suffered losses to the use and enjoyment of its property rights, and Plaintiff's properties have been, and will continuously be, trespassed and damaged by water contaminated with dangerous concentrations of PFAS.

6.      Defendants' PFAS contaminates Plaintiff's water sources at concentrations exceeding what the U.S. Environmental Protection Agency ("EPA") deems unsafe for consumption, and Plaintiff's existing water treatment processes cannot remove them. Instead, Plaintiff requires new water treatment technologies to remove, and provide water free from, Defendants' PFAS.

7.      As a result of Defendants' intentional, willful, wanton, reckless, and/or negligent acts and omissions and the nuisance thereby created, maintained, and continued, Plaintiff has suffered injury to its property rights and resulting damages, including compensatory and consequential damages. Plaintiff is also seeking equitable and injunctive relief requiring Defendants to fund the acquisition, installation, and operation of water treatment technologies at Plaintiff's SWTPs that will remove Defendants' PFAS from drinking water. In addition, based on the Defendants' intentional, willful, wanton, reckless, malicious, and oppressive misconduct, Plaintiff is seeking the recovery of punitive damages.

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**DISCLAIMER**

8.    Plaintiff makes no assertion of fact concerning, and brings no cause of action based on, the manufacture, sale, distribution, use, or disposal of PFAS associated with aqueous film forming foam ("AFFF"), whether commercial, MilSpec, or other variety. Plaintiff expressly disclaims any causes of action, injury, or damages resulting from the manufacture, sale, distribution, use, or disposal of any AFFF by any Defendant or third-party.

9.    Plaintiff's causes of action against GFL Environmental USA, Inc.; Waste Industries, LLC; Sampson County Disposal, LLC; Red Rock Disposal, LLC, and Elevate Textiles, Inc. arise under North Carolina Law. Plaintiff brings no cause of action against these Defendants under South Carolina law.

10.    Plaintiff's causes of action against the remaining Defendants arise under South Carolina law.

11.     Plaintiff brings no cause of action against, and seeks no relief from, any Defendant under federal law or statute.

**JURISDICTION AND VENUE**

12.    This Court has subject matter jurisdiction over this action pursuant to Article V of the Constitution of the State of South Carolina; sections 6-11-1610 and 14-1-80 of the South Carolina Code; and Act No. 337, 1971 S.C. Acts 444.

13.    This Court has personal jurisdiction over all Defendants, consistent with due process and South Carolina's long-arm statute, section 36-2-803 of the South Carolina Code.

14.    Venue is also properly in this Court pursuant to sections 15-7-10 and -30 of the South Carolina Code because the subject of the action is for injuries sustained to Plaintiff's property located in Horry County, and the most substantial part of Defendants' alleged acts or omissions giving rise to Plaintiff's claims occurred in Horry County. *See id.* at § 15-7-30(B)

4

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

("If there is more than one defendant, the action may be tried in any county where the action properly may be maintained against one of the defendants pursuant to this section.").

## PARTIES

### I.　Plaintiff

15.　Plaintiff Grand Strand Water and Sewer Authority is a special purpose district created for the distribution of potable water and provision of sewer services. Act No. 337, 1971 S.C. Acts 444.

16.　Plaintiff owns two properties at issue. The first is located at 8052 Treatment Plant Road, Bucksport, South Carolina 29527, where Plaintiff operates the Bull Creek SWTP. The Bull Creek SWTP is riparian to, and draws raw water from, Bull Creek. Plaintiff's second property is located at 3020 Mr. Joe White Avenue, Myrtle Beach, South Carolina 29577, where it operates the Myrtle Beach SWTP for the Myrtle Beach service area. The Myrtle Beach SWTP is riparian to, and draws raw water from, the Intracoastal Waterway.

17.　The Bull Creek SWTP provides potable water to approximately 115,000 customers. The Myrtle Beach SWTP services the Cities of Myrtle Beach and North Myrtle Beach, which distribute the water to their residents.

### II.　Defendants

18.　Defendant **Burlington Industries, Inc.** ("Burlington") was a Delaware corporation authorized to do business in South Carolina until its dissolution in 2004. On May 13, 2022, the South Carolina Circuit Court appointed Peter McCoy, Jr., a resident of Charleston County, South Carolina, as the receiver for Burlington. *See Mimms v. Burlington Indus., Inc. et al.*, C.A. No. 2021-CP-40-05873, Order Appointing Receiver Over Defendant Burlington Industries, Inc. (Richland Cnty. Ct. of Common Pleas May 13, 2022). Burlington was the owner and operator of

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

an industrial facility located at 670 N. Main Street, Society Hill, South Carolina 29593. The facility is a former textile mill and finishing facility bordering Cedar Creek and the Great Pee Dee River, and it encompasses roughly 234 acres. Over the course of the facility's operations, Defendant used products that contain or degrade to PFOA, PFOS, PFNA, PFHxS, PFBS, and/or GenX Chemicals in the manufacture of textile products. As part of its processes, Defendant discharged industrial wastewater contaminated with these PFAS from its own wastewater treatment plant to Cedar Creek and the Great Pee Dee River upstream of Bull Creek. Wastewater lagoons and other storage basins at the facility have accumulated PFOA, PFOS, PFNA, PFHxS, PFBS, GenX Chemicals, and/or their precursors for decades. These PFAS overflow to the Great Pee Dee River upstream of Bull Creek.  Defendant's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River to Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs. Burlington also manufactured and distributed agricultural biosolid products contaminated with PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to farms and other users throughout the Pee Dee River Watershed upstream of Plaintiff's water intake on Bull Creek. PFAS from Burlington's biosolids have accumulated in the Pee Dee River Watershed, continually flow downstream to Plaintiff's water intakes, and contaminate Plaintiff's properties and its water sources.

19.     Defendant **Domtar Paper Company, LLC ("Domtar")** is a Delaware limited liability company that does business in South Carolina. Domtar owns and operates the Marlboro Mill, located at 585 Willamette Rd, Bennettsville, SC 29512. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of certain paper products. As part of its processes, the Marlboro Mill directly discharges industrial wastewater contaminated with products that contain or degrade to these PFAS into the Great Pee

6

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Dee River upstream of Plaintiff's water intake on Bull Creek. Domtar's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

20.     Defendant **Elevate Textiles, Inc. ("Elevate")** is a Delaware corporation authorized to do business in South Carolina. Elevate owns and operates an industrial facility located at 740 Old Cheraw Highway, Rockingham, NC 28379 ("Richmond Plant"), which was previously owned and operated by Defendant Burlington. Throughout the facility's operation, both Burlington and Elevate used, and Elevate continues to use, products that contain or degrade to PFOA, PFOS, PFHxs, PFNA, PFBS, and/or GenX Chemicals. As part of their processes, Burlington and Elevate discharged, and Elevate continues to discharge, industrial wastewater contaminated with products that contain or degrade to these PFAS from the Richmond Plant to Hitchcock Creek upstream of Great Pee Dee River and Bull Creek. The Richmond Plant does not remove Defendants' PFAS, and it discharged and continues to discharge their PFAS into the Great Pee Dee River upstream of Plaintiff's Bull Creek intake. Defendants' PFAS resist environmental degradation, flow downstream from the Great Pee Dee River and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

21.     Defendant **Fiber Industries, LLC ("Darling Fibers")** is a South Carolina limited liability company, and it owns and operates a textile manufacturing facility located at 1000 E. McIver Road, Darlington, South Carolina 29532. There, Darling Fibers uses products that contain or degrade to PFOA, PFOS, PFHxs, PFNA, PFBS, and/or GenX Chemicals in the manufacture of textile fibers and fabrics. As part of its processes, the Darlington facility directly discharges industrial wastewater contaminated with products that contain or degrade to these PFAS into Black

7

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Creek upstream of the Great Pee Dee River and Bull Creek. Darling Fibers' PFAS resist environmental degradation, flow downstream from Black Creek, the Great Pee Dee River, and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

22.     Defendant **GFL Environmental USA, Inc.** is a Delaware corporation authorized to do business in South Carolina; and **Waste Industries, LLC** is a Delaware limited liability company authorized to do business in South Carolina (collectively **"GFL"**). GFL operate the South Wake County Landfill located at 6124 Old Smithfield Road, Apex, North Carolina 27502. **Sampson County Disposal, LLC ("SCD")** is a North Carolina limited liability company and subsidiary and/or division of GFL, and it and GFL operate the Sampson County Landfill located at 7434 Roseboro, North Carolina 28382. Defendant **Red Rock Disposal, LLC ("RRD")** is a North Carolina limited liability company and a subsidiary and/or division of GFL, and it and GFL operate the Red Rock Disposal Landfill located at 7130 New Landfill Drive, Holly Springs, North Carolina 27540. GFL, SCD, and RRD transport leachate from these landfills, which contain significant amounts of PFOA, PFOS, PFHxs, PFNA, PFBS, GenX Chemicals, and/or their precursors, to the Lumberton WWTP in Lumberton, North Carolina. The Lumberton WWTP cannot remove these PFAS from GFL, SCD, and RRD leachate before the WWTP discharges their PFAS into the Lumber River upstream of Bull Creek. GFL's, SCD's, and RRD's PFAS resist environmental degradation, flow downstream from the Lumber River, Little Pee Dee River, and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

23.     Defendant **J.P. Stevens & Company, Inc.** was a Delaware corporation authorized to do business in the State of South Carolina until 1999. J.P. Stevens & Company, Inc. and its

8

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

predecessors, successors, assigns, and/or responsible parties are collectively referenced as **"JPS."** From 1946 to 1987, JPS operated the Delta Mills industrial facility located at 4351 Brickyard Road, Wallace, South Carolina 29596. JPS transferred the Delta Mills facility to Defendant **Delta Mills, Inc.,** who owned and operated the facility from 1987 to 2006. Delta Mills, Inc. was a Delaware corporation with its principal place of business located at 700 North Woods Drive, Fountain Inn, South Carolina 29644. Delta Mills, Inc. and its predecessors, successors, assigns, and/or responsible parties are collectively referenced as **"Delta Mills."** Over the course of the Delta Mills facility operations, Defendants JPS and Delta Mills used products that contain or degrade to PFOA, PFOS, PFNA, PFHxS, PFBS, and/or GenX Chemicals in the finishing of textile products. As part of their processes, JPS and Delta Mills discharged industrial wastewater contaminated with these PFAS from the facility's own WWTP to the Great Pee Dee River upstream of Bull Creek. JPS and Delta Mills also created wastewater lagoons on the facility property, which were contaminated with high levels of these PFAS that accumulated over decades. Delta Mills did not remediate this contamination when it ceased operations in 2006, and the PFAS continually overflow and/or migrate to the Great Pee Dee River upstream of Bull Creek. JPS's and Delta Mills' PFAS resist environmental degradation, flow downstream from the Great Pee Dee River and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

24.     Defendants **Mohawk Industries, Inc.** and **Aladdin Manufacturing Corporation** are Delaware corporations authorized to do business in the State of South Carolina (collectively **"Mohawk"**). Mohawk owns Oak River Mill located at 2118 Marlboro Road, Blenheim, South Carolina 29516, which Mohawk operated until its closing in October 2022. For nearly 60 years, Mohawk used products that contain or degrade to PFOA, PFOS, PFHxs, PFNA, PFBS, and/or

9

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

GenX Chemicals in the manufacture of carpet products at Oak River Mill. As part of its processes, Oak River Mill discharged industrial wastewater contaminated with products that contain or degrade to these PFAS directly into the Great Pee Dee River upstream of Bull Creek. Oak River Mill also utilized wastewater lagoons contaminated with high levels of these PFAS and/or their precursors on the border of the Great Pee Dee River. These lagoons currently and continually overflow and/or release contaminated wastewater into the Great Pee Dee River upstream of Bull Creek. PFAS and/or their precursors from both Mohawk's legacy discharges and continuing lagoon discharges resist environmental degradation, flow downstream from the Great Pee Dee River and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

25.    Defendant **Nan Ya Plastics Corporation, America ("Nan Ya")** is a Delaware corporation authorized to do business in the State of South Carolina. Nan Ya owns and operates an industrial facility located at 140 E. Beulah Road, Lake City, South Carolina 29560, where it uses products that contain or degrade to PFOA, PFOS, PFHxs, PFNA, PFBS, and/or GenX Chemicals in the manufacture of plastics, polyester chips, resin, fibers, and yarns. As part of its processes, the Nan Ya facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lake City WWTP. The Lake City WWTP cannot remove Nan Ya's PFAS, and the WWTP discharges water contaminated with Nan Ya's PFAS into Lake Swamp upstream of Bull Creek. Nan Ya's PFAS resist environmental degradation, flow downstream from Lake Swamp, Lynches River, the Great Pee Dee River, and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

10

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

26.     Defendant **PRET Advanced Materials, LLC ("PRET")** is a Delaware limited liability company that does business in South Carolina. PRET owns and operates an industrial facility located at 520 Kingsburg Highway, Johnsonville, South Carolina 29555, where it uses products that contain or degrade to PFOA, PFOS, PFHxs, PFNA, PFBS, and/or GenX Chemicals in the manufacture of plastics and resins. As part of its processes, the PRET facility discharges industrial wastewater with products that contain or degrade to these PFAS to the Johnsonville WWTP. The Johnsonville WWTP cannot remove PRET's PFAS, and the WWTP discharges water contaminated with PRET's PFAS into Lynches River upstream of Bull Creek. PRET's PFAS resist environmental degradation, flow downstream from Lynches River, the Great Pee Dee River, and Bull Creek, and thereby contaminate Plaintiff's properties and its water sources at the Bull Creek and Myrtle Beach SWTPs.

## FACTUAL ALLEGATIONS

### I.    Background and Hazards of PFAS

27.      PFAS are a large group of man-made chemicals that do not occur naturally in the environment. Due to their strong carbon-fluorine bonds, PFAS are extremely stable, repel both oil and water, and are resistant to heat and chemical reactions. As a result of these properties, PFAS have a wide variety of industrial, commercial, and consumer applications.

28.     The stable carbon-fluorine bonds that make PFAS pervasive in industrial, commercial, and consumer products also result in their persistence in the environment. They are colloquially termed "forever chemicals," as terminal PFAS have no known environmental breakdown mechanism, are readily absorbed into biota, and tend to bioaccumulate with repeated exposure.

29.     There are both polymer and non-polymer PFAS. Non-polymer PFAS include well-known substances like PFOA, PFOS, PFHxS, PFNA, PFBS, and HFPO-DA (a/k/a GenX

11

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Chemicals). Polymer PFAS include fluoropolymers and side-chain fluorinated polymers that are often the active chemistry in PFAS products utilized by Defendants.

30.     There are also both terminal PFAS and their precursors. Precursors may undergo environmental degradation that ultimately results in the formation of terminal PFAS—meaning no further degradation occurs under normal environmental conditions. PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are all terminal PFAS.

31.     Both polymer and non-polymer PFAS can degrade to terminal PFAS. Generally, terminal PFAS are present in or otherwise form from PFAS products via three primary routes: (1) as a direct byproduct of the manufacturing process; (2) the degradation of precursor PFAS that are byproducts of the manufacturing process; and/or (3) the degradation of polymer PFAS into terminal PFAS and precursor PFAS.

32.     PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination. Therefore, a major source of human exposure to PFAS is through ingestion of contaminated drinking water. Exposure is dose-additive, meaning that exposure to low levels of multiple PFAS, which individually would pose little or no risk, can result in a combined dose capable of causing adverse health effects.

33.     While there are thousands of different PFAS chemicals, current scientific evidence shows that harmful health effects can result from consuming drinking water with any level of PFOA or PFOS, and at certain aggregate levels of PFHxS, PFNA, PFBS, and GenX Chemicals. Depending on the type of PFAS, negative health effects include increased risk of certain types of cancer and adverse impacts on fetal growth and development; reproduction; and on liver, thyroid, immune, cardiovascular, and/or nervous system function.

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

34.     PFOA and PFOS have been the most widely used PFAS, and they are the most studied by regulators and the scientific community. While some industries voluntarily phased out products containing PFOA and PFOS by 2015, their limited use continues even in the United States. Due to their persistent nature, PFOA and PFOS remain in the environment from decades of legacy industrial use.

35.     Products based on PFAS consisting of shorter fluorinated carbon chains were developed to replace PFOA and PFOS, and they are now used in industrial applications to confer similar properties and characteristics. These "short-chain" PFAS are still bioaccumulative and environmentally persistent, and some short-chain PFAS products nevertheless still contain PFOA and PFOS and their precursors.  Terminal short-chain PFAS include PFHxS, PFNA, PFBS, and GenX Chemicals.

36.     Based on the science available in 2009, EPA published provisional drinking water health advisories for short-term exposure to PFOA and PFOS. U.S.E.P.A., *Provisional Health Advisories for Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS)* (Jan. 8, 2009), *available at* https://www.epa.gov/sites/default/files/2015-09/documents/pfoa-pfos-provisional.pdf. The advisory levels were 400 parts per trillion ("ppt") for PFOA and 200 ppt for PFOS. In the same publication, EPA reported that it conducted sampling of public drinking water in Alabama communities, finding PFOA and PFOS levels lower than 40 ppt. It explained, "Based on its current understanding, EPA believes these levels are not of concern and residents may rely upon public water systems." *Id.*

37.     On May 16, 2016, due to the evolution of science on the health effects of PFOA and PFOS, EPA published lifetime health advisory levels for each chemical in drinking water. Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Perfluorooctane Sulfonate, 81 Fed. Reg. 33250 (May 25, 2016). Superseding the 2009 provisional levels, the 2016 levels for PFOA and PFOS were 70 ppt, independently or in the aggregate. EPA explained that its new health advisories "identify the concentration of PFOA and PFOS in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure."

38.     EPA's 2016 Health Advisories were based on peer-reviewed studies of the effects of PFOA and PFOS on laboratory animals and epidemiological studies of human populations exposed to PFOA and PFOS. These studies indicated that exposure to PFOA and PFOS over certain levels may result in adverse health effects, including developmental defects to fetuses, cancer (testicular, kidney), liver effects, immune effects, thyroid effects, and other adverse effects. But based on its review of the science, EPA stated that its analysis indicated exposure to PFOA and PFOS at or below health advisory levels "will not result in adverse health effects (including cancer and non-cancer) to the general population over a lifetime (or any shorter period) of exposure to these chemicals." *Id.*

39.     On June 15, 2022, EPA again updated health advisory levels for PFOA and PFOS on an interim basis, which replaced the 2016 advisory levels. Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances, 87 Fed. Reg. 36848 (June 21, 2022). EPA explained that updated human epidemiological data indicated "that the level at which negative health effects could occur are much lower than previously understood when the agency issued its 2016 health advisories for PFOA and PFOS"—finding "associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, development (e.g., decreased birth weight), and cancer." *Id.* Concerned with the public health implications of its data,

14

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

EPA issued interim levels pending determination of maximum contaminant levels and maximum contaminant level goals. The interim levels were 0.004 ppt for PFOA and 0.02 ppt for PFOS.

40.     Simultaneously, EPA also issued health advisories for the first time covering PFBS and GenX Chemicals. EPA reported that "GenX Chemicals have been linked to health effects on the liver, the kidney, the immune system, and developmental effects, as well as cancer." *Id.* For PFBS, it noted studies indicating health effects on the thyroid, reproductive system, development, and kidney. Based on its 2021 toxicity studies for these chemicals, EPA released final health advisories for each: GenX Chemicals at 10 ppt and PFBS at 2,000 ppt.

41.     In March of 2023, EPA issued proposed maximum contaminant level ("MCL")s and maximum contaminant level goal ("MCLG")s for PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals. PFAS Nat'l Primary Drinking Water Regulation Rulemaking, 88 Fed. Reg. 18638 (Mar. 29, 2023) (to be codified at 40 C.F.R. pt. 141, 142). An MCLG is the maximum level of a contaminant in drinking water at which no known or anticipated adverse effect on the health of persons would occur, allowing an adequate margin of safety. An MCL is the maximum allowable level of a contaminant that may be delivered to any user of a public water system and is based on the feasibility of existing technology to detect PFAS at a threshold level.

42.     At that time, EPA announced that, "[f]ollowing a systematic review of available human epidemiological and animal toxicity studies, EPA has determined that PFOA and PFOS are likely to cause cancer (e.g., kidney and liver cancer) and that there is no dose below which either chemical is considered safe." *Id.* Therefore, it proposed MCLG levels for both chemicals at zero ppt. Enforceable MCL levels for each chemical were proposed at 4 ppt. According to EPA, "[a]ny exceedance of this limit requires action to protect public health, regardless of any mixture in which they are found." *Id.*

15

43. Due to their toxic effects, dose additivity, and presence in drinking water, EPA proposed a hazard index approach covering mixtures of PFHxS, PFNA, PFBS, and GenX Chemicals. The hazard index is the sum of each PFAS's "hazard quotient." Hazard quotients are first calculated by dividing the applicable PFAS's "exposure metric" (i.e., concentration in drinking water) by its "health reference value" (PFHxS: 9 ppt; GenX Chemicals: 10 ppt; PFNA: 10 ppt; PFBS: 2,000 ppt). If the sum of each's hazard quotient is below 1.0, then it "represents a level at which no known or anticipated adverse effects on the health of persons is expected to occur and which allows for an adequate margin of safety." *Id.* If greater than 1.0, then "potential risk is indicated." *Id.*

44. EPA stated that, once its proposed MCLs became final, it would "save thousands of lives and prevent tens of thousands of avoidable illnesses." U.S.E.P.A., *EPA Releases Annual Report Showing Steady Progress to Protect Communities from PFAS Pollution* (Dec. 14, 2023), *available at* https://www.epa.gov/newsreleases/epa-releases-annual-report-showing-steady-progress-protect-communities-pfas-pollution.

45. EPA finalized its proposed MCLs and MCLGs on April 10, 2024. U.S.E.P.A., *PFAS Nat'l Primary Drinking Water Regulation Rulemaking* (Apr. 10, 2024), *available at* https://www.epa.gov/system/files/documents/2024-04/pfas-npdwr_prepubfederalregisternotice_4.8.24.pdf (pre-publication version). In accompanying publications, EPA declared, "The science is clear: exposure to these six PFAS is linked to significant health risks" that include "certain cancers and heart impacts in adults, and immune and developmental impacts in infants and children." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024); *see also* U.S.E.P.A., *Final PFAS Nat'l Drinking Water*

16

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

*Regulation Landing Page*, http://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (providing links to EPA PFAS regulation publications).

46.    The final regulation solidifies MCLs of 4.0 ppt for PFOA and PFOS and 10.0 ppt for PFNA, PFHxS, and GenX Chemicals, including a Hazard Index that covers mixtures of PFBS with PFNA, PFHxS, and GenX Chemicals. It also enshrines MCLGs of zero ppt for PFOA and PFOS, which EPA states "reflects the latest science showing that there is no level of exposure to these two PFAS without risk of health impacts." U.S.E.P.A., *Presentation: Overview EPA PFAS NPDWR* (Apr. 10, 2024). According to EPA, "[t]he more you reduce your exposure to PFAS, the more you reduce your risk." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024).

47.    EPA's final regulations mandate several new obligations regarding PFAS, including the implementation of solutions to reduce regulated PFAS concentrations in the drinking water that Plaintiff distributes, maintenance of ongoing compliance monitoring, and informing the public of PFAS levels in the water and of any violations. By 2027, Plaintiff must begin conducting and reporting regular PFAS monitoring, and by 2029, Plaintiff must comply with all MCLs. Plaintiff has conducted a diligent investigation into this issue, is seeking to address it in an expedited manner, and for this reason seeks prompt relief from the Court.

## II.    Contamination of Bull Creek and the Intracoastal Waterway with PFAS

48.    Bull Creek is a tributary of the Great Pee Dee River, branching off the river near Bucksport, South Carolina. By way of the Great Pee Dee River, Bull Creek is also hydrologically connected to the Little Pee Dee and Lumber Rivers to the northeast, and to the Lynches River, Lynches Lake Swamp, and Black Creek to the northwest.

49.    Defendants' industrial facilities, and/or their applicable WWTPs, operate upstream of Bull Creek.

17

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

50.     PFAS sampling of Bull Creek, the Great Pee Dee River, Little Pee Dee River, Lumber River, Lynches River, and Black Creek confirms the presence of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals throughout these bodies of water. These PFAS flow downstream and contaminate the water at Plaintiff's water intake on Bull Creek at concentrations exceeding EPA's MCLs and MCLGs. Indeed, sampling at Plaintiff's water intakes confirm the presence of PFOA and PFOS at concentrations higher than what EPA deems unsafe for consumption. Defendants are the source.

51.     Defendants are, or were, owners and operators of manufacturing plants and related industrial facilities throughout the Pee Dee River Watershed. In their industrial processes, Defendants utilize, or utilized, products that contain or degrade to PFOS, PFOA, PFHxS, PFNA, PFBS, and/or GenX Chemicals. Defendants' industrial processes generate industrial wastewater containing these PFAS, which Defendants ultimately discharge to surface waters upstream of Bull Creek.

52.     As part of their industrial processes, Defendants Burlington, Domtar, Darling Fibers, Delta Mills, Elevate, JP Stevens, and Mohawk in the past discharged and/or currently discharge PFAS-contaminated wastewater directly to surface waters upstream of Bull Creek, as follows:

| Defendant(s) | Surface Waters |
| --- | --- |
| Burlington | Great Pee Dee River; Hitchcock Creek |
| Domtar | Great Pee Dee River |
| Darling Fibers | Black Creek |
| Delta Mills & JP Stevens | Great Pee Dee River |
| Elevate | Hitchcock Creek |

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Mohawk                                    Great Pee Dee River

53.    As part of their industrial processes, Defendants Nan Ya and PRET indirectly discharge PFAS-contaminated wastewater to WWTPs that lack filtration technologies to remove their PFAS. The WWTPs then discharge water contaminated with these Defendants' PFAS to surface waters upstream of Bull Creek as follows:

| Defendant | WWTP | Surface Waters |
|---|---|---|
| Nan Ya | Lake City WWTP | Lynches Lake Swamp |
| PRET | Johnsonville WWTP | Lynches River |

54.    Defendants GFL, SCD, and RRD operate landfills in North Carolina and transport PFAS-contaminated leachate to the Lumberton WWTP, which lacks filtration technologies to remove their PFAS. The Lumberton WWTP then discharges GFL's, SCD's and RRD's PFAS to the Lumber River upstream of the Little Pee Dee River and Bull Creek.

55.    Defendants' PFAS and their precursors flow downstream to Plaintiff's water intake on Bull Creek, damaging Plaintiff's property and contaminating its water sources.

56.    The Bull Creek SWTP utilizes conventional water treatment technologies to treat raw water, including coagulation, flocculation, sedimentation, filtration, and chlorination. None of these methods remove PFAS from water, and the Bull Creek SWTP requires new water treatment technologies to do so.

57.    Plaintiff also owns the Bucksport Regional and Conway WWTPs, which operate along the Waccamaw River upstream of the Intracoastal Waterway.

58.    Neither the Bucksport nor the Conway WWTPs have industrial users. Instead, both provide sewer services primarily to residential and commercial customers that use potable water distributed by the Bull Creek SWTP.

19

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

59. Because the Bull Creek SWTP cannot remove Defendants' PFAS from the water Plaintiff draws from Bull Creek, the water that sewer customers send to the Bucksport and Conway WWTPs remains contaminated with Defendants' PFAS.

60. Like the Bull Creek SWTP, the Bucksport and Conway WWTPs are not equipped to address Defendants' PFAS. Both utilize conventional wastewater treatment methods, including screening and grit removal, aeration, clarification, chlorination, and UV disinfection—none of which remove Defendants' PFAS. Once the Bucksport and Conway WWTPs treat sewer water, both discharge to the Waccamaw River upstream of the Intracoastal Waterway.

61. Plaintiff's Myrtle Beach SWTP draws raw water from the Intracoastal Waterway for treatment and distribution to the Cities of Myrtle Beach and North Myrtle Beach, who in turn provide the water to tens of thousands of people. But because Defendants' PFAS resist environmental degradation and conventional treatment methods, they contaminate Plaintiff's water intakes on the Intracoastal Waterway and damage Plaintiff's property at the Myrtle Beach SWTP. As with the Bull Creek SWTP, the Myrtle Beach SWTP utilizes conventional water treatment methods that do not remove Defendants' PFAS, and the Myrtle Beach SWTP requires new treatment technologies to do so.

62. All Defendants knew or should have known that conventional water treatment technologies used by direct discharger Defendants and WWTPs cannot remove PFAS from wastewater. All Defendants also knew or should have known that their treated wastewater contaminates surface waters and the water Plaintiff draws for its customers.

## III. Defendants have harmed Plaintiff and Plaintiff's community.

63. For decades and unknown to Plaintiff, Defendants have discharged PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors into the Pee Dee River Watershed,

20

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

which has caused, and continues to cause, contamination of these waters with PFAS chemicals exceeding EPA's health advisories, MCLGs, and MCLs. Indeed, absent new treatment technologies, Plaintiff cannot use its properties and property rights to provide water that is either free of all PFOA and PFOS, or compliant with EPA's MCLs.

64.    Defendants' conduct has proximately caused the contamination of the Pee Dee River Watershed; and of Plaintiff's land, its Bull Creek and Myrtle Beach SWTPs, its Bucksport and Conway WWTPs, and its water distribution systems with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals—including PFOA and PFOS at concentrations above EPA's MCLGs and MCLs.

65.    Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, or negligently engaged in conduct or omissions that proximately caused unreasonable interference with Plaintiff's right to use and enjoy its properties, its right to use Bull Creek and the Intracoastal Waterway, and has caused Plaintiff additional past, present, and future injury to property.

66.    Despite knowing that there is no safe dose for PFOA or PFOS, and that PFHxS, PFNA, PFBS, and GenX Chemicals are hazardous to human health, Defendants, directly or indirectly, discharged industrial wastewater contaminated with these chemicals into the Pee Dee River Watershed, which they knew or should have known contaminated Plaintiff's properties.

## FIRST CAUSE OF ACTION

### Private Nuisance

67.    Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

68.    Plaintiff is a special purpose district created for the purpose of constructing, operating, maintaining, improving, and extending a water distribution system for residents of Horry County and other counties. It uses its properties for those purposes, including the withdrawal

21

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

of raw water from Bull Creek and the Intracoastal Waterway, the treatment of raw water, and the distribution of treated water to customers in Horry County and other counties.

69.     Plaintiff owns riparian land abutting Bull Creek and the Intracoastal Waterway, and Plaintiff has a property right in the reasonable use of these waters, including for the provision of water to its customers.

70.     Through the conduct described herein, Defendants created, contributed to, and/or maintained a nuisance; that is, the contamination of the Pee Dee River Watershed, the Waccamaw River, and the Intracoastal Waterway with PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors at concentrations exceeding those EPA deems unsafe for consumption.

71.     Due to Defendants' contamination, Plaintiff cannot provide water to its customers without PFAS, or even at PFAS concentrations that comply with EPA's MCLs, absent new water treatment technology.

72.     Defendants' contamination caused, contributed to, and/or maintains a nuisance that substantially and unreasonably interferes with Plaintiff's use and enjoyment of its properties, interferes with Plaintiff's properties and its riparian rights, damages Plaintiff's properties, and causes Plaintiff additional inconvenience, annoyance, and harm.

73.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights.

74.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer damages related to Defendants' contamination of the Pee Dee River Watershed, the Waccamaw River, the Intracoastal Waterway, and Plaintiff's

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

property, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

75.    In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

76.    The ongoing contamination of Bull Creek, the Intracoastal Waterway, and Plaintiff's properties constitutes a continuing irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to fund the measures necessary to prevent these PFAS from continuing to interfere with Plaintiff's use and enjoyment of its land and its riparian use of Bull Creek and the Intracoastal Waterway to supply potable water to its customers.

77.    Defendants' interference with Plaintiff's use of its properties can be abated by funding the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTPs to remove PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

78.    Defendants are jointly and severally liable to Plaintiffs for all damages resulting from this nuisance, and the costs of its abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## SECOND CAUSE OF ACTION

### Public Nuisance

79.    Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

80.    Plaintiff is a special purpose district created for the purpose of constructing, operating, maintaining, improving, and extending a water distribution system for residents of Horry County and other counties. It uses its properties for those purposes, including the withdrawal

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

of raw water from Bull Creek and the Intracoastal Waterway, the treatment of raw water, and the distribution of treated water to customers in Horry County and other counties.

81.     Plaintiff's customers use the water Plaintiff provides for many purposes, including drinking, cooking, bathing, cleaning, washing, and watering plants and gardens.

82.     Plaintiff's customers, and indeed all residents in Plaintiff's community, have a right to potable water that is reasonably pure and safe for their use—and thus free from contamination by Defendants' PFOA, PFOS, PFNA, PFHxS, PFBS, and GenX Chemicals. Defendants' contamination unreasonably interferes with, disrupts, and threatens public health, safety, and order. Indeed, EPA makes clear that there is no safe dose for consuming PFOA and PFOS.

83.     Plaintiff has sustained special injuries as a result of Defendants' public nuisance, including but not limited to, the lost use of its properties; the inability to provide potable water to customers without concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals deemed unsafe by EPA; expenses associated with future acquisition, installation, and operation of required treatment technologies to remove unsafe concentrations of these PFAS from water; expenses incurred in discovering and identifying sources of Defendants' contamination; interference with Plaintiff's riparian right to use Bull Creek and the Intracoastal Waterway; interference with the use of Plaintiff's SWTPs and water distribution systems; and lost revenue.

84.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer special injury and damages related to Defendants' contamination of the Pee Dee River Watershed, the Waccamaw River, the Intracoastal Waterway, and Plaintiff's properties.

85.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in

24

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

conduct that unreasonably interferes with Plaintiff's property rights and endangers the health of Plaintiff's customers, consumers of Plaintiff's drinking water, and Plaintiff's community.

86.     As a result of the nuisance caused by Defendants, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

87.     In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

88.     Defendants' ongoing contamination constitutes a continuing threat to public health, safety, and order, and it constitutes irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to fund the measures necessary to prevent these PFAS from continuing to threaten public health and safety and ensure that Plaintiff's customers and residents of Plaintiff's community receive water free from PFAS.

89.     Defendants' contamination of potable water with unsafe concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals can be abated by requiring Defendants to fund the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTPs to remove PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

90.     Defendants are jointly and severally liable to Plaintiffs for all damages resulting from this nuisance, and the costs of abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## THIRD CAUSE OF ACTION

### Trespass

91.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

25

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

92.    Plaintiff owns, possesses, and actively exercises its right to use its land, SWTPs, and related buildings, improvements, and equipment that make up its water distribution systems.

93.    Defendants Nan Ya and PRET intentionally discharged and continue to discharge PFAS to the Lake City and Johnsonville WWTPs, respectively, notwithstanding that they knew and/or reasonably should have known that:

(a)    these WWTPs cannot remove their PFAS from wastewater before discharging to surface waters upstream of Plaintiff's water intake on Bull Creek;

(b)    Plaintiff draws water from Bull Creek for the provision of potable water to its customers;

(c)    water Plaintiff draws from Bull Creek is contaminated with the PFAS the Defendants discharge to these WWTPs; and, thereby,

(d)    water contaminated with high concentrations of these Defendants' PFAS invades Plaintiff's properties.

94.    Defendants GFL, SCD, and RRD intentionally deliver PFAS-contaminated leachate to the Lumberton WWTP, notwithstanding that these Defendants knew and/or reasonably should have known that:

(a)    the Lumberton WWTP cannot remove their PFAS from the leachate before discharging to surface waters upstream of Plaintiff's water intake on Bull Creek;

(b)    Plaintiff draws water from Bull Creek for the provision of potable water to its customers;

(e)    that water Plaintiff draws from Bull Creek is contaminated with the PFAS they send to the Lumberton WWTP; and, thereby,

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

(c)    water contaminated with high concentrations of these Defendants' PFAS invades Plaintiff's properties.

95.    Defendants Burlington, Domtar, Darling Fibers, Delta Mills, Elevate, JPS, and Mohawk intentionally discharged and continue to discharge PFAS to the Great Pee Dee River and Black Creek, notwithstanding that these Defendants knew and/or reasonably should have known that:

(a)    Plaintiff draws water from Bull Creek for the provision of drinking water to its customers;

(b)    water Plaintiff draws from Bull Creek is contaminated with the PFAS they discharge to each River; and, thereby,

(c) water contaminated with high concentrations of Defendants' PFAS invades Plaintiff's properties.

96.    Plaintiff has not consented to, and does not consent to, the invasion of its properties by water contaminated with PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals at concentrations exceeding EPA's MCLs and MCLGs and beyond what EPA deems unsafe for consumption.

97.    Defendants' invasions of Plaintiff's properties are continuing and ongoing, and each separate invasion of PFAS-contaminated water constitutes a new trespass each time Plaintiff's water pumps are active.

98.    Defendants Nan Ya and PRET intend that, while using PFAS in their industrial processes, PFAS-containing wastewater generated by those processes be discharged to the Lake City and Johnsonville WWTPs, respectively. Defendants GFL, SCD, and RRD intend that their PFAS-contaminated leachate be disposed of by the Lumberton WWTP. Defendants Burlington,

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Domtar, Darling Fibers, Delta Mills, Elevate, JPS, and Mohawk intend and/or intended that, while using PFAS in their industrial processes, PFAS-containing wastewater be discharged to the Great Pee Dee River and Black Creek. Defendants' conduct is wanton, willful, and in reckless disregard of Plaintiff's property and riparian rights.

99.     Defendants' conduct is the actual and proximate cause of the invasion of PFAS-contaminated water into Plaintiff's properties, including its land, SWTPs, and related buildings, improvements, and equipment that make up its water distribution systems. The damage to Plaintiff's properties is the direct and proximate result of Defendants' intentional conduct.

100.    As a direct, proximate, and foreseeable result of Defendants' trespasses, Plaintiff has suffered, now suffers, and will continue to suffer invasion of its property rights and damages, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

101.    Defendants' ongoing trespasses can be abated by requiring Defendants to fund the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTPs to remove PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

## FOURTH CAUSE OF ACTION

### Negligence, Gross Negligence, and/or Recklessness

102.    Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

103.    Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to avoid causing an unreasonable risk of harm to others, which includes preventing the direct and/or indirect discharge of these PFAS into surface waters upstream of Plaintiff's SWTPs, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

28

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

104. Defendants knew or should have known that the PFAS they discharged were environmentally persistent, bioaccumulative, and dose-additive; that conventional wastewater treatment technologies utilized by themselves or their WWTPs could not remove their PFAS; and that surface waters—including the Pee Dee River Watershed—were vulnerable to the contamination that has taken and now takes place.

105. Defendants nonetheless negligently, recklessly, wantonly, and/or willfully breached their duty in causing products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to escape their premises and contaminate the Pee Dee River Watershed, thereby interfering with Plaintiff's property rights and injuring Plaintiff's properties.

106. Additionally, Defendant Burlington had a duty to use due care in the manufacturing, handling, control, disposal, labeling, and instructing for the use and disposal of biosolid products that contain PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to ensure the proper use of these products and prevent contamination of surface waters.

107. By continually suppling biosolid products without providing warnings, proper instructions, or direction on the dangers of these PFAS and their properties, or otherwise preventing their contamination of surface waters, Burlington negligently, recklessly, wantonly, and/or willfully created the risk that its PFAS would contaminate the Pee Dee River Watershed, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

108. Because Burlington created the risk of harm from PFAS-contaminated water, it had a duty to ensure that users of its biosolid products did not allow PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to escape its users' premises and contaminate the Pee Dee River Watershed. Burlington also had a duty to warn others, including Plaintiff, of the danger presented by water contaminated with its PFAS.

29

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

109.    Burlington negligently, recklessly, wantonly, and willfully breached its duty by failing to prevent the discharge of these PFAS from its biosolid products into the Pee Dee River Watershed, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property, and by failing to warn Plaintiff of the danger presented by water contaminated by its PFAS.

110.    As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including but not limited to loss in value; the cost of removing Defendants' PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals; future costs of acquiring, installing, and operating adequate water treatment technologies; and other damages to be proved at trial.

111.    Defendants are jointly and severally liable to Plaintiffs for all damages resulting from their conduct, practices, actions, omissions, and inactions, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## FIFTH CAUSE OF ACTION
### Strict Products Liability – Ultrahazardous Activity
### (Burlington)

112.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

113.    PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are unreasonably dangerous to humans and the environment.

114.    Burlington manufactured, handled, sold, and distributed biosolid products containing or degrading to these PFAS chemicals to agricultural and/or other users, knowing that

30

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

these PFAS chemicals have been, and are presently, discharged to surface waters, and thereby enter and contaminate Plaintiff's water sources and Plaintiff's properties.

115. Burlington knew that these PFAS chemicals were environmentally persistent, bioaccumulative, toxic, and dose-additive; and Burlington knew that there was no safe dose of PFOA or PFOS.

116. Burlington knew or expected that these hazardous PFAS chemicals that it was manufacturing, handling, selling, and distributing would reach Plaintiff's water sources and Plaintiff's properties while in essentially the same condition as when they left Burlington's hands.

117. Burlington manufactured, handled, sold, and distributed its biosolid products that were dangerous and unsafe for the uses and purposes for which they were intended, despite knowing the consequences of the use and of, and exposure to, its products.

118. Burlington and/or its agents were responsible for the unreasonably dangerous products that it sold and distributed, and Burlington and received financial benefits from their sales and distribution.

119. As a direct and proximate result of Burlington's ultrahazardous activities, its PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors have damaged Plaintiff's water sources and Plaintiff's properties, and Plaintiff is unable to provide potable water free from contamination with these chemicals.

120. As a direct, proximate, and foreseeable result of Burlington's ultrahazardous activities, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Burlington's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial.

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**SIXTH CAUSE OF ACTION**
**Strict Products Liability – Design Defect**
**(Burlington)**

121.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

122.    PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are unreasonably dangerous to humans and the environment.

123.    Burlington knew that agricultural users would purchase and use its biosolid products containing these PFAS and their precursors without inspection for defects.

124.    Burlington's biosolid products containing or degrading to these PFAS chemicals have been, and are presently, discharged to surface waters, and thereby enter and contaminate Plaintiff's water sources and Plaintiff's properties.

125.    Burlington's biosolid products containing these PFAS and their precursors were used in a reasonably foreseeable manner and without substantial change in their condition.

126.    Burlington knew that the use of its biosolid products in their intended manner would result in PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals damaging Plaintiff's water sources and Plaintiff's properties.

127.    Burlington's biosolid products were and are defective in design and unreasonably dangerous for their intended use because:

(a)    PFAS resist environmental degradation;

(b)    PFAS leach from soil to groundwater, are highly mobile and water soluble, making groundwater and surface water vulnerable to contamination;

(c)    Applying PFAS-contaminated biosolids to soil near surface waters exposes surface waters to PFAS contamination via overland and groundwater flow;

32

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

(d)    PFAS contamination in drinking water poses significant threats to public health and property; indeed, there is no safe dose of PFOA or PFOS in drinking water;

(e)    Burlington failed to conduct and/or failed to disclose reasonable, appropriate, and/or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of PFAS; and

(f)    There are and were safe or safer feasible alternatives to PFAS-contaminated biosolids that Burlington could have employed.

128.    Burlington's products containing or degrading to these PFAS chemicals were and are dangerous beyond that which was and is contemplated by the ordinary consumer.

129.    The foreseeable risk of harm to public health and property posed by Burlington's products containing these PFAS outweighed and outweigh the cost to Burlington of reducing or eliminating those risks.

130.    A reasonable product manufacturer knew or should have known of the significant dangers posed by Burlington's products containing PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors.

131.    As a direct and proximate result of the sale and application of Burlington's defective and unsafe biosolid products, these PFAS have contaminated Plaintiff's water sources and Plaintiff's properties, and Plaintiff is unable to provide potable water free from Burlington's PFAS.

132.    As a direct, proximate, and foreseeable result of the sale and application of Burlington's defective and unsafe biosolid products, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing

33

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Burlington's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial.

**SEVENTH CAUSE OF ACTION**
**Strict Products Liability – Failure to Warn**
**(Burlington)**

133.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

134.    Burlington manufactured, formulated, promoted, marketed, and/or distributed biosolid products containing PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors.

135.    Burlington's biosolid products were used by agricultural users in a reasonably foreseeable manner and without substantial change in the condition of such products, and Burlington knew that agricultural users purchased and used its products without inspection for defects.

136.    Burlington knew or should have known that the use of its biosolid products would result in these PFAS being discharged to surface waters, and thereby entering and contaminating Plaintiff's water sources and Plaintiff's properties.

137.    Burlington knew that these PFAS in its biosolid products were environmentally persistent and bioaccumulative, that use of its biosolids would cause PFAS to accumulate in soil and groundwater, and that its PFAS would infiltrate surface waters that Plaintiff relies on to supply potable water to the public—making Burlington's biosolid products unreasonably dangerous.

138.    Despite the known and/or foreseeable risk of contaminating potable water sources and Plaintiff's properties, Burlington failed to provide adequate warnings to its customers and other users or to take any other precautionary measures to mitigate those hazards.

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

139.    Burlington failed to describe such dangers or provide precautionary statements regarding such hazards, and it failed to provide instruction or direction on the proper use and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the labeling of such products. As a result of these failures, Burlington's biosolid products were sold and distributed in an unreasonably dangerous and defective condition.

140.    As a direct and proximate result of Burlington's failure to warn of the dangers and hazards posed by its biosolid products, PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors have damaged Plaintiff's water sources and Plaintiff's properties, and Plaintiff is unable to provide potable water free from contamination with these chemicals.

141.    As a direct, proximate, and foreseeable result of Burlington's conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Burlington's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial.

## EIGHTH CAUSE OF ACTION
### Breach of Implied Warranties
### (Burlington)

142.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

143.    Burlington manufactured, sold, and distributed its biosolid products to be used in the agricultural context.

144.    Burlington's biosolid products include PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors, and Burlington knew or had reason to know that such biosolids were not fit for the known and particular uses on agricultural lands.

35

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

145. Burlington knew that agricultural users of its biosolid products would apply its biosolids to lands nearby or abutting surface waters in the Pee Dee River Watershed, causing Burlington's PFAS to infiltrate these surface waters.

146. Burlington knew that these PFAS chemicals are environmentally persistent, bioaccumulative, toxic, and dose-additive, and Burlington knew that there is no safe dose of PFOA or PFOS.

147. Burlington breached applicable implied warranties, and as a result, caused the contamination of Plaintiff's water sources and Plaintiff's properties, and Plaintiff is unable to provide potable water free from Burlington's PFAS.

148. As a direct, proximate, and foreseeable result of Defendants' ultrahazardous activities, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Burlington's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial. Plaintiff is entitled to damages in an amount that will address its damages caused by Burlington's breaches of implied warranties

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands trial by jury, and respectfully requests that the Court grant the following relief:

(a) Enter a judgment and decree against all Defendants, jointly and severally, requiring them to abate the nuisance they have caused, created, and maintained;

(b) Enter a judgment and decree against all Defendants requiring them to abate their trespasses onto Plaintiff's properties;

36

ELECTRONICALLY FILED - 2024 Oct 07 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

(c)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to remove their PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX chemicals from Plaintiff's water systems by funding the acquisition, installation, and operation of treatment technology capable of removing them;

(d)     Enter a judgment against all Defendants, jointly and severally, for past, present, and future compensatory damages in such amounts as the evidence shows Plaintiff to be justly entitled to recover, including interest and reasonable attorneys' fees and litigation expenses, and punitive damages, as applicable, in an amount sufficient to punish and penalize Defendants, and to deter them from repeating their wrongful conduct, and all costs; and

(e)     Award such other relief and further relief as this Court deems just, proper, and equitable.

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

October 7, 2024

ELECTRONICALLY FILED - 2024 Oct 18 11:27 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

|  |  |
|---|---|
| GRAND STRAND WATER AND SEWER AUTHORITY,<br><br>*Plaintiff*,<br><br>v.<br><br>ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, LLC,<br><br>*Defendants*. | C.A. No. 2024-CP-26-05523<br><br>**ACCEPTANCE OF SERVICE ON BEHALF OF BURLINGTON INDUSTRIES, INC.** |

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt via email of the Second Amended Summons and Second Amended Complaint in the above captioned matter on behalf of Defendant Burlington Industries, Inc., effective this 18th day of October, 2024.

s/ Konstantine P. Diamaduros
Andrew A. Mathias (SC Bar No. 76220)
Konstantine P. Diamaduros (SC Bar No. 102231)
Connor B. Bauknight (SC Bar No. 105019)
MAYNARD NEXSEN PC
104 South Main Street (29601)
Post Office Drawer 10648
Greenville, SC  29603-0648

Telephone: 864.370.2211
Facsimile: 864.477.2626
AMathias@maynardnexsen.com
KDiamaduros@maynardnexsen.com
CBauknight@maynardnexsen.com

*Counsel for Burlington Industries, Inc.*

ELECTRONICALLY FILED - 2024 Oct 18 11:27 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Oct 30 4:13 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HORRY | ) | CASE NO: 2024-CP-26-05523 |
| | ) | |
| Grand Strand Water and Sewer Authority, | ) | |
| | ) | |
| Plaintiff, | ) | **AFFIDAVIT OF SERVICE** |
| | ) | |
| vs. | ) | |
| | ) | |
| Aladdin Manufacturing Corporation, Burlington Industries, Inc., et. al. | ) | |
| | ) | |
| Defendants. | ) | |

The undersigned, Debbie Brothers being duly sworn, says that she served the foregoing: **COVER LETTER, SECOND AMENDED SUMMONS AND SECOND AMENDED COMPLAINT** in the above captioned action upon the Defendant **FIBER INDUSTRIES, LLC** by delivering the same to:

( ) the individual personally, or

(X) **TRACEY FORMAN, Paralegal for Corporation Service Company, Registered Agent** person served as authorized/designated to receive service for the defendant and leaving with him/her one (1) copy of the same at **508 Meeting Street, West Columbia, SC** on the **30th day** of **October, 2024**, at **8:59 a.m.**

The Affiant further says, that upon information and belief, she know the person so served to be the defendant mentioned and described in the documents served and that the affiant is not a party to nor interested in the action.

_____
Debbie Brothers

SWORN TO before me this 30 day
of October 2017 ,2024
_____
Notary Public for S.C.
My Commission Expires: 3-6-2025

ELECTRONICALLY FILED - 2024 Nov 07 4:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HORRY | ) | FIFTEENTH JUDICIAL CIRCUIT |
| | ) | |
| Grand Strand Water and Sewer Authority, | ) | |
| | ) | CA No.: 2024-CP-26-05523 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PROOF OF SERVICE** |
| | ) | |
| Aladdin Manufacturing Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff") served Plaintiff's Second Amended Summons and Second Amended Complaint on Defendant Mohawk Industries, Inc. ("Mohawk") via certified mail, restricted delivery, mailed on October 31, 2024, from Spartanburg, SC to Mohawk's registered agent, Corporation Service Company, 508 Meeting Street, West Columbia, SC 29169. The date of delivery was November 4, 2024, as shown on the attached signed USPS Return Receipt Card.

/s/ John B. White, Jr.
John B. White, Jr. (SC Bar No. 05996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
JOHN B. WHITE, JR., PA
PO Box 2465 (29304)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

Spartanburg, SC
November 7, 2024

ELECTRONICALLY FILED - 2024 Nov 07 4:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mohawk Industries, Inc.
c/o Registered Agent,
Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

9590 9402 8365 3156 8032 57

2. Article Number *(Transfer from service label)*

7020 0640 0001 2195 5536

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Daniele Kriz*    ☐ Agent
                    ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery
4 NOV 2024

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

Daniele Kriz

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
  Mail Restricted Delivery
  )

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

ELECTRONICALLY FILED - 2024 Nov 08 9:55 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS
FOR THE FIFTEENTH JUDICIAL CIRCUIT

GRAND STRAND WATER AND SEWER
AUTHORITY,

Plaintiff,

v.

ALADDIN MANUFACTURING
CORPORATION; BURLINGTON INDUSTRIES,
INC.; DELTA MILLS, INC., its predecessors,
successors, assigns, and/or responsible parties;
DOMTAR PAPER COMPANY, LLC; ELEVATE
TEXTILES, INC.; FIBER INDUSTRIES, LLC;
GFL ENVIRONMENTAL USA, INC.; J.P.
STEVENS & COMPANY, INC., its predecessors,
successors, assigns, and/or responsible parties;
MOHAWK INDUSTRIES, INC.; NAN YA
PLASTICS CORPORATION, AMERICA; PRET
ADVANCED MATERIALS, LLC; RED ROCK
DISPOSAL, LLC; SAMPSON COUNTY
DISPOSAL, LLC; and WASTE INDUSTRIES,
LLC,

Defendants.

C.A. No. 2024-CP-26-05523

**ACCEPTANCE OF SERVICE
ON BEHALF OF
NAN YA PLASTICS
CORPORATION, AMERICA**

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt via email of the Second Amended Summons and Second Amended Complaint in the above captioned matter on behalf of Defendant Nan Ya Plastics Corporation, America ("Nan Ya"), effective this 8th day of November, 2024, with no further service on Nan Ya being necessary.

Stan Barnett
Stan Barnett, Attorney at Law
305 North Civitas Street
Mt. Pleasant, SC 29464
843-708-4887
Stan.barnett@yahoo.com
*Counsel for Nan Ya Plastics Corporation, America*

ELECTRONICALLY FILED - 2024 Nov 08 11:21 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF HORRY ) | FIFTEENTH JUDICIAL CIRCUIT |
| ) | |
| Grand Strand Water and Sewer Authority, ) | |
| ) | CA No.: 2024-CP-26-05523 |
| Plaintiff, ) | |
| ) | |
| v. ) | **PROOF OF SERVICE** |
| ) | |
| Aladdin Manufacturing Corporation, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff") served Plaintiff's Second Amended Summons and Second Amended Complaint on Defendant Aladdin Manufacturing Corporation ("Aladdin") via certified mail, restricted delivery, mailed on October 31, 2024, from Spartanburg, SC to Aladdin's registered agent, Corporation Service Company, 508 Meeting Street, West Columbia, SC 29169. The date of delivery was November 4, 2024, as shown on the attached signed USPS Return Receipt Card.

/s/ John B. White, Jr.
John B. White, Jr. (SC Bar No. 05996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
JOHN B. WHITE, JR., PA
PO Box 2465 (29304)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

Spartanburg, SC
November 8, 2024



ELECTRONICALLY FILED - 2024 Nov 08 11:21 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Nov 08 11:21 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HORRY | ) | FIFTEENTH JUDICIAL CIRCUIT |
| | ) | |
| Grand Strand Water and Sewer Authority, | ) | |
| | ) | CA No.: 2024-CP-26-05523 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PROOF OF SERVICE** |
| | ) | |
| Aladdin Manufacturing Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff") served Plaintiff's Second Amended Summons and Second Amended Complaint on Defendant PRET Advanced Materials, LLC ("PRET") via certified mail, restricted delivery, mailed on November 1, 2024, from Spartanburg, SC to PRET's registered agent, CT Corporation System, 2 Office Park Court, Ste. 103, Columbia, SC 29223. The date of delivery was November 4, 2024, as shown on the attached signed USPS Return Receipt Card.

/s/ John B. White, Jr.
John B. White, Jr. (SC Bar No. 05996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
JOHN B. WHITE, JR., PA
PO Box 2465 (29304)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

Spartanburg, SC
November 8, 2024



ELECTRONICALLY FILED - 2024 Nov 08 11:21 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Nov 08 11:21 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HORRY | ) | FIFTEENTH JUDICIAL CIRCUIT |
| | ) | |
| Grand Strand Water and Sewer Authority, | ) | |
| | ) | CA No.: 2024-CP-26-05523 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PROOF OF SERVICE** |
| | ) | |
| Aladdin Manufacturing Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff") served Plaintiff's Second Amended Summons and Second Amended Complaint on Defendant Waste Industries, LLC ("Waste Industries") via certified mail, restricted delivery, mailed on November 1, 2024, from Spartanburg, SC to Waste Industries' registered agent, CT Corporation System, 2 Office Park Court, Ste. 103, Columbia, SC 29223. The date of delivery was November 4, 2024, as shown on the attached signed USPS Return Receipt Card and USPS Tracking Results.

/s/ John B. White, Jr.
John B. White, Jr. (SC Bar No. 05996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
JOHN B. WHITE, JR., PA
PO Box 2465 (29304)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

Spartanburg, SC
November 8, 2024



ELECTRONICALLY FILED - 2024 Nov 08 11:21 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Tracking Number Copied

# USPS Tracking®

FAQs >

Remove ✕

**Tracking Number:**

## 70200640000121955567

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to an individual at the address at 1:35 pm on November 4, 2024 in COLUMBIA, SC 29223.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered

**Delivered, Left with Individual**
COLUMBIA, SC 29223
November 4, 2024, 1:35 pm

**See All Tracking History**

**What Do USPS Tracking Statuses Mean?** (https://faq.usps.com/s/article/Where-is-my-package)

| | |
|---|---|
| **Text & Email Updates** | ⌄ |
| **USPS Tracking Plus®** | ⌄ |
| **Product Information** | ⌄ |

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

ELECTRONICALLY FILED - 2024 Nov 08 11:21 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Feedback

ELECTRONICALLY FILED - 2024 Nov 11 3:45 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HORRY | ) | FIFTEENTH JUDICIAL CIRCUIT |
| | ) | |
| Grand Strand Water and Sewer Authority, | ) | |
| | ) | CA No.: 2024-CP-26-05523 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PROOF OF SERVICE** |
| | ) | |
| Aladdin Manufacturing Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff") served Plaintiff's Second Amended Summons and Second Amended Complaint on Defendant Domtar Paper Company, LLC ("Domtar") via certified mail, restricted delivery, mailed on October 31, 2024, from Spartanburg, SC to Domtar's registered agent, National Registered Agents Inc., 2 Office Park Court, Ste. 103, Columbia, SC 29223. The date of delivery was November 4, 2024, as shown on the attached signed USPS Return Receipt Card.

/s/ John B. White, Jr.
John B. White, Jr. (SC Bar No. 05996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
JOHN B. WHITE, JR., PA
PO Box 2465 (29304)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

Spartanburg, SC
November 11, 2024



ELECTRONICALLY FILED - 2024 Nov 11 3:45 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Nov 11 3:45 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HORRY | ) | FIFTEENTH JUDICIAL CIRCUIT |
| | ) | |
| Grand Strand Water and Sewer Authority, | ) | |
| | ) | CA No.: 2024-CP-26-05523 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PROOF OF SERVICE** |
| | ) | |
| Aladdin Manufacturing Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff") served Plaintiff's Second Amended Summons and Second Amended Complaint on Defendant Elevate Textiles, Inc. ("Elevate") via certified mail, restricted delivery, mailed on October 31, 2024, from Spartanburg, SC to Elevate's registered agent, CT Corporation System, 2 Office Park Court, Ste. 103, Columbia, SC 29223. The date of delivery was November 4, 2024, as shown on the attached signed USPS Return Receipt Card.

/s/ John B. White, Jr.
John B. White, Jr. (SC Bar No. 05996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
JOHN B. WHITE, JR., PA
PO Box 2465 (29304)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

Spartanburg, SC
November 11, 2024

ELECTRONICALLY FILED - 2024 Nov 11 3:45 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Elevate Textiles, Inc.
c/o Registered Agent,
CT Corporation System
2 Office Park Court, Ste. 103
Columbia, SC 29223

9590 9402 8365 3156 8032 40

2. Article Number (Transfer from service label)

7020 0640 0001 2195 5529

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X  *Pam Johnson*     ☐ Agent
                      ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☒ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restric'
  Delivery
☐ Signature Confirmation™
☒ Signature Con'
  Restricted De'

PS Form 3811, July 2020 PSN 7530-02-000-9053     Domestic Return Receipt

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| | FIFTEENTH JUDICIAL CIRCUIT |
| COUNTY OF HORRY | |
| | |
| Grand Strand Water and Sewer Authority, | |
| | Case No. 2024-CP-26-05523 |
| Plaintiff, | |
| | |
| v. | |
| | |
| Aladdin Manufacturing Corporation; Burlington Industries, Inc.; Delta Mills, Inc., its predecessors, successors, assigns, and/or responsible parties; Domtar Paper Company, LLC; Elevate Textiles, Inc.; Fiber Industries, LLC; GFL Environmental USA, Inc.; J.P. Stevens & Company, Inc., its predecessors, successors, assigns, and/or responsible parties; Mohawk Industries, Inc.; Nan Ya Plastics Corporation, America; Pret Advanced Materials, LLC; Red Rock Disposal, LLC; Sampson County Disposal, LLC; and Waste Industries, LLC, | **DEFENDANT BURLINGTON INDUSTRIES, INC.'S ANSWER TO SECOND AMENDED COMPLAINT** |
| | |
| Defendants. | |

Defendant Burlington Industries, Inc. ("Burlington"), by and through its undersigned counsel, hereby files this Answer in response to Plaintiff Grand Strand Water and Sewer Authority's ("Plaintiff") Second Amended Complaint ("Complaint").

## PRELIMINARY STATEMENT

Burlington incorporates the following matters into the responses to each paragraph of the Complaint.

A.    Burlington was a Delaware corporation authorized to do business in South Carolina until its dissolution in 2004. Burlington has been in receivership since May 13, 2022, which is when the South Carolina Circuit Court appointed Peter McCoy, Jr. as the receiver for

1

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Burlington ("Receiver"). All responses and defenses contained in this Answer are made on behalf of Burlington's Receiver and should not be construed as a response on behalf of any other Burlington or Burlington-related entity.

B. An investigation on behalf of the Receiver into the facts and circumstances related to this matter is ongoing. This investigation is not complete and, therefore, the following responses and defenses should not be construed as factual representations of the Receiver. Rather, they are based upon, and therefore necessarily limited by, the facts and information presently available to the Receiver. Burlington reserves the right to seek to amend and/or supplement its Answer as may be appropriate or necessary in accordance with the South Carolina Rules of Civil Procedure.

C. Burlington submits this Answer only on behalf of itself in receivership. Where allegations are made against "Defendants" as a group, however described, Burlington's responses only apply to itself in receivership.

D. The Complaint contains purported references to several documents, third-party publications, and statements that have often been excerpted, paraphrased, characterized, and otherwise taken out of context. These documents, third-party publications, and statements should be considered, if at all, in context and in unmodified form, and Burlington hereby respectfully refers the Court to the respective documents, third-party publications, and statements for their complete contents.

E. Except as is expressly admitted, qualified, or explained herein, Burlington specifically denies each and every allegation contained in the Complaint, including without limitation any allegations contained in titles, headings, and subparagraphs of the Complaint, and specifically denies any liability to Plaintiff. To the extent that the titles, headings, and

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

subparagraphs of the Complaint are intended to be allegations directed at Burlington, they are denied.

F.     Burlington specifically denies that it contaminated South Carolina waterways with excessive concentrations of PFAS.[1]  Furthermore, Burlington does not concede that PFAS was present at facilities owned or operated by Burlington, nor does Burlington concede that it discharged PFAS into any bodies of water.

G.     Burlington does not concede or adopt any suggestion, implication, or assertion concerning any alleged connection, association, or causal relationship between PFAS and purported harm to humans.

## RESPONSE TO STATEMENT OF THE CASE

1.     The allegations in Paragraph 1 contain introductory statements to which no response is required.  To the extent a response is required, and to the extent the allegations in Paragraph 1 are directed at Burlington, Burlington denies the allegations.  To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

2.     To the extent the allegations in Paragraph 2 are directed at Burlington, Burlington denies the allegations.  To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

---

[1] "PFAS" as used herein is a collective reference to the substances at issue in Plaintiff's Complaint: per- and polyfluoroalkyl substances (PFAS); perfluorooctanoic acid (PFOA); perfluorooctanesulfonic acid (PFOS); perfluorononanoic acid (PFNA); perfluorobutane sulfonate (PFBS); perfluorohexane sulfonate (PFHxS); and hexafluoropropylene oxide dimer acid (HFPO-DA or GenX Chemicals).

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

3. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3, and therefore denies them.

4. Upon information and belief, Burlington admits only that it owned and/or operated industrial manufacturing facilities upstream of Plaintiff's water intakes. To the extent the remaining allegations in Paragraph 4 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

5. To the extent the allegations in Paragraph 5 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

6. To the extent the allegations in Paragraph 6 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

7. To the extent the allegations in Paragraph 7 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

**RESPONSE TO DISCLAIMER**

8. The allegations in Paragraph 8 contain a disclaimer to which no response is required. To the extent a response is required, Burlington lacks knowledge or information

4

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

sufficient to form a belief as to the truth of the allegations in Paragraph 8, and therefore denies them.

9.      The allegations in Paragraph 9 contain a disclaimer to which no response is required. To the extent a response is required, Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9, and therefore denies them.

10.     The allegations in Paragraph 10 contain a disclaimer to which no response is required. To the extent a response is required, Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10, and therefore denies them.

11.     The allegations in Paragraph 11 contain a disclaimer to which no response is required. To the extent a response is required, Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11, and therefore denies them.

## RESPONSE TO JURISDICTION AND VENUE

12.     The allegations in Paragraph 12 contain conclusions of law to which no response is required. To the extent a response is required, Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12, and therefore denies them.

13.     The allegations in Paragraph 13 contain conclusions of law to which no response is required. To the extent a response is required, Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13, and therefore denies them.

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

14.    The allegations in Paragraph 14 contain conclusions of law to which no response is required.  To the extent a response is required, Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14, and therefore denies them.

### RESPONSE TO PARTIES

15.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15, and therefore denies them.

16.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16, and therefore denies them.

17.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17, and therefore denies them.

18.    Burlington admits that it was a Delaware corporation authorized to do business in South Carolina until its dissolution in 2004, and that on May 13, 2022, the South Carolina Circuit Court appointed Peter McCoy, Jr., as the receiver for Burlington.  Upon information and belief, Burlington further admits that it was the owner and operator of a roughly 234-acre industrial facility located in Society Hill, South Carolina, which is a former textile mill and finishing facility bordering Cedar Creek and the Great Pee Dee River.  Burlington denies the remaining allegations in Paragraph 18.

19.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, and therefore denies them.

20.    Upon information and belief, Burlington admits only that it previously owned and operated an industrial facility located in Rockingham, NC.  To the extent the remaining allegations in Paragraph 20 are directed at Burlington, Burlington denies them.  To the extent the

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

remaining allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge or information sufficient to form a belief as to the truth of such allegations and therefore denies them.

21.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore denies them.

22.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22, and therefore denies them.

23.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, and therefore denies them.

24.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and therefore denies them.

25.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, and therefore denies them.

26.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26, and therefore denies them.

**RESPONSE TO FACTUAL ALLEGATIONS**

27.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, and therefore denies them.

28.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28, and therefore denies them.

29.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29, and therefore denies them.

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

30.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30, and therefore denies them.

31.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31, and therefore denies them.

32.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32, and therefore denies them.

33.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33, and therefore denies them.

34.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34, and therefore denies them.

35.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35, and therefore denies them.

36.    The allegations in Paragraph 36 refer to specific publications from the United States Environmental Protection Agency ("EPA"), to which Burlington specifically craves reference and denies any allegations in Paragraph 36 that are in addition to or inconsistent with the terms of those publications.

37.    The allegations in Paragraph 37 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 37 that are in addition to or inconsistent with the terms of those publications.

38.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38, and therefore denies them.

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

39.    The allegations in Paragraph 39 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 39 that are in addition to or inconsistent with the terms of those publications.

40.    The allegations in Paragraph 40 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 40 that are in addition to or inconsistent with the terms of those publications.

41.    The allegations in Paragraph 41 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 41 that are in addition to or inconsistent with the terms of those publications.

42.    The allegations in Paragraph 42 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 42 that are in addition to or inconsistent with the terms of those publications.

43.    The allegations in Paragraph 43 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 43 that are in addition to or inconsistent with the terms of those publications.

44.    The allegations in Paragraph 44 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 44 that are in addition to or inconsistent with the terms of those publications.

45.    The allegations in Paragraph 45 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 45 that are in addition to or inconsistent with the terms of those publications.

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

46. The allegations in Paragraph 46 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 46 that are in addition to or inconsistent with the terms of those publications.

47. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47, and therefore denies them.

48. Upon information and belief, Burlington admits the allegations in Paragraph 48.

49. To the extent the allegations in Paragraph 49 are directed at Burlington, upon information and belief, Burlington admits only that it owned and/or operated industrial facilities upstream of Bull Creek and denies any remaining allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

50. Burlington denies that it was the source of any alleged contamination referenced in Paragraph 50. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 50, and therefore denies them.

51. To the extent the allegations in Paragraph 51 are directed at Burlington, upon information and belief, Burlington admits only that it owned and/or operated certain manufacturing plants and industrial facilities upstream of Bull Creek and denies any remaining allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

52. To the extent the allegations in Paragraph 52 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

53.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53, and therefore denies them.

54.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54, and therefore denies them.

55.     To the extent the allegations in Paragraph 55 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

56.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56, and therefore denies them.

57.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57, and therefore denies them.

58.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58, and therefore denies them.

59.     To the extent the allegations in Paragraph 59 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 59, and therefore denies them.

11

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

60. To the extent the allegations in Paragraph 60 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 60, and therefore denies them.

61. To the extent the allegations in Paragraph 61 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 61, and therefore denies them.

62. To the extent the allegations in Paragraph 62 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

63. To the extent the allegations in Paragraph 63 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

64. To the extent the allegations in Paragraph 64 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

65. To the extent the allegations in Paragraph 65 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

66. To the extent the allegations in Paragraph 66 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

## RESPONSE TO FIRST CAUSE OF ACTION
### Private Nuisance

67. Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 66 as if fully set forth herein.

68. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68, and therefore denies them.

69. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69, and therefore denies them.

70. To the extent the allegations in Paragraph 70 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

71. To the extent the allegations in Paragraph 71 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other

13

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

72. To the extent the allegations in Paragraph 72 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

73. To the extent the allegations in Paragraph 73 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

74. To the extent the allegations in Paragraph 74 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

75. To the extent the allegations in Paragraph 75 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

76. To the extent the allegations in Paragraph 76 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

14

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

77. To the extent the allegations in Paragraph 77 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

78. To the extent the allegations in Paragraph 78 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

## RESPONSE TO SECOND CAUSE OF ACTION
### Public Nuisance

79. Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 78 as if fully set forth herein.

80. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80, and therefore denies them.

81. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81, and therefore denies them.

82. To the extent the allegations in Paragraph 82 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 82, and therefore denies them.

83. To the extent the allegations in Paragraph 83 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

84.    To the extent the allegations in Paragraph 84 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

85.    To the extent the allegations in Paragraph 85 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

86.    To the extent the allegations in Paragraph 86 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

87.    To the extent the allegations in Paragraph 87 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

88.    To the extent the allegations in Paragraph 88 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

89. To the extent the allegations in Paragraph 89 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

90. To the extent the allegations in Paragraph 90 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

## RESPONSE TO THIRD CAUSE OF ACTION
### Trespass

91. Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 90 as if fully set forth herein.

92. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92, and therefore denies them.

93. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93, including all subparagraphs, and therefore denies them.

94. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94, including all subparagraphs, and therefore denies them.

95. To the extent the allegations in Paragraph 95, including all subparagraphs, are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph, including all subparagraphs, are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

96. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96, including all subparagraphs, and therefore denies them.

97. To the extent the allegations in Paragraph 97 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

98. To the extent the allegations in Paragraph 98 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

99. To the extent the allegations in Paragraph 99 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

100. To the extent the allegations in Paragraph 100 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

101. To the extent the allegations in Paragraph 101 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## RESPONSE TO FOURTH CAUSE OF ACTION
**Negligence, Gross Negligence, and/or Recklessness**

102.    Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 101 as if fully set forth herein.

103.    The allegations in Paragraph 103 contain conclusions of law to which no response is required.  To the extent a response is required, and to the extent the allegations in Paragraph 103 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

104.    To the extent the allegations in Paragraph 104 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

105.    To the extent the allegations in Paragraph 105 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

106.    The allegations in Paragraph 106 contain conclusions of law to which no response is required.  To the extent a response is required, Burlington denies the allegations in Paragraph 106.

107.    Burlington denies the allegations in Paragraph 107.

108.    Burlington denies the allegations in Paragraph 108.

109.    Burlington denies the allegations in Paragraph 109.

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

110.    To the extent the allegations in Paragraph 110 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

111.    To the extent the allegations in Paragraph 111 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

## RESPONSE TO FIFTH CAUSE OF ACTION
### Strict Products Liability – Ultrahazardous Activity
### (Burlington)

112.    Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 111 as if fully set forth herein.

113.    Burlington denies the allegations in Paragraph 113.

114.    Burlington denies the allegations in Paragraph 114.

115.    Burlington denies the allegations in Paragraph 115.

116.    Burlington denies the allegations in Paragraph 116.

117.    Burlington denies the allegations in Paragraph 117.

118.    Burlington denies the allegations in Paragraph 118.

119.    Burlington denies the allegations in Paragraph 119.

120.    Burlington denies the allegations in Paragraph 120.

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

### RESPONSE TO SIXTH CAUSE OF ACTION
**Strict Products Liability – Design Defect**
**(Burlington)**

121.    Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 120 as if fully set forth herein.

122.    Burlington denies the allegations in Paragraph 122.

123.    Burlington denies the allegations in Paragraph 123.

124.    Burlington denies the allegations in Paragraph 124.

125.    Burlington denies the allegations in Paragraph 125.

126.    Burlington denies the allegations in Paragraph 126.

127.    Burlington denies the allegations in Paragraph 127, including subparagraphs (a) through (f).

128.    Burlington denies the allegations in Paragraph 128.

129.    Burlington denies the allegations in Paragraph 129.

130.    Burlington denies the allegations in Paragraph 130.

131.    Burlington denies the allegations in Paragraph 131.

132.    Burlington denies the allegations in Paragraph 132.

### RESPONSE TO SEVENTH CAUSE OF ACTION
**Strict Products Liability – Failure to Warn**
**(Burlington)**

133.    Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 132 as if fully set forth herein.

134.    Burlington denies the allegations in Paragraph 134.

135.    Burlington denies the allegations in Paragraph 135.

136.    Burlington denies the allegations in Paragraph 136.

21

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

137.    Burlington denies the allegations in Paragraph 137.

138.    Burlington denies the allegations in Paragraph 138.

139.    Burlington denies the allegations in Paragraph 139.

140.    Burlington denies the allegations in Paragraph 140.

141.    Burlington denies the allegations in Paragraph 141.

## RESPONSE TO EIGHTH CAUSE OF ACTION
### Breach of Implied Warranties
### (Burlington)

142.    Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 141 as if fully set forth herein.

143.    Upon information and belief, Burlington admits the allegations in Paragraph 143.

144.    Burlington denies the allegations in Paragraph 144.

145.    Burlington denies the allegations in Paragraph 145.

146.    Burlington denies the allegations in Paragraph 146.

147.    Burlington denies the allegations in Paragraph 147.

148.    Burlington denies the allegations in Paragraph 148.

## RESPONSE TO PRAYER FOR RELIEF

Responding to the WHEREFORE Paragraph that follows Paragraph 148 of Plaintiff's Complaint, Burlington denies any and all liability and further denies that Plaintiff is entitled to any of the relief sought in this Paragraph, including subparagraphs (a) through (e).

## AFFIRMATIVE AND OTHER DEFENSES

Burlington asserts the following defenses to the Complaint.  By providing notice of these defenses, Burlington does not admit or acknowledge that it bears the burden of proof or burden of persuasion with respect to any such defense.  Burlington reserves its rights to: (1) alter or

22

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

amend this list; (2) assert additional defenses or withdraw any of these defenses as may be appropriate following fact or expert discovery; and (3) rely on any other applicable defenses set forth in any Answer or notices of defenses provided by any other defendant in this action. Independent of these defenses, Burlington further demands that Plaintiff satisfy its burden to provide sufficient evidence under the applicable burden of proof for each and every element of each of its claims for which it seeks relief.

## FIRST DEFENSE

1. Plaintiff's Complaint fails, in whole or in part, to state a claim for relief and should be dismissed in its entirety pursuant to SCRCP 12(b)(6) and 12(c).

## SECOND DEFENSE

2. Plaintiff's claims may be barred, in whole or in part, by the applicable statutes of limitations and/or repose.

## THIRD DEFENSE

3. Plaintiff's Complaint, and each cause of action or count alleged therein, fails to join necessary parties.

## FOURTH DEFENSE

4. Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## FIFTH DEFENSE

5. Plaintiff's claims may be barred, in whole or in part, because Plaintiff is not the real party in interest.

## SIXTH DEFENSE

6. Plaintiff's claims may be barred, in whole or in part, to the extent Plaintiff has failed to exhaust administrative remedies.

23

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## SEVENTH DEFENSE

7.　　Plaintiff's claims may be barred, in whole or in part, by the doctrine of estoppel and/or waiver.

## EIGHTH DEFENSE

8.　　Plaintiff's claims may be barred, in whole or in part, by the doctrines of res judicata and/or collateral estoppel.

## NINTH DEFENSE

9.　　Plaintiff's claims may be barred, in whole or in part, by the doctrine of election of remedies.

## TENTH DEFENSE

10.　　Pursuant to the South Carolina Contribution Among Tortfeasors Act, S.C. Code Ann. § 15-38-10, *et seq.*, any damages recoverable from Burlington should be limited to the percentage of the relative degree of fault of Burlington as compared with other parties to this action, if any, as well as other persons or entities not presently before this Court.

## ELEVENTH DEFENSE

11.　　Any alleged injuries and/or damages sustained by Plaintiff may have been caused or contributed to by the negligence, omissions or actual conduct of Plaintiff and/or other persons, firms, corporations, or entities over whom Burlington had no control or right of control and for whom Burlington is not responsible.

## TWELFTH DEFENSE

12.　　Any alleged injuries and/or damages sustained by Plaintiff may be barred, in whole or in part, by the doctrines of intervening cause and/or superseding cause.

24

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**THIRTEENTH DEFENSE**

13. Plaintiff's claims may be barred, in whole or in part, under the doctrines of contributory negligence and/or comparative fault, and/or other applicable common law or statutory doctrines.

**FOURTEENTH DEFENSE**

14. Plaintiff's claims may be barred, in whole or in part, because Burlington's products were in conformity with (i) any federal, state or other regulations, standards, guidelines, specifications, and laws in effect; (ii) available knowledge and research of the scientific and industrial communities; and (iii) generally recognized and prevailing industry standards; and (iv) state of the art in existence at the time the design was prepared and the products were manufactured, handled, sold, distributed, and/or used.

**FIFTEENTH DEFENSE**

15. Any product manufactured, handled, designed, sold, distributed, or used by Burlington and alleged to have caused harm to Plaintiff was, at the time, safer than any reasonable or feasible alternative designs, and any alternative designs would have been less safe, more likely to have caused injury or otherwise not feasible for their intended use.

**SIXTEENTH DEFENSE**

16. Plaintiff's claims may be barred, in whole or in part, because federal, state, and/or local authorities, departments and/or agencies authorized, ratified, or were aware of and acquiesced to actions taken by Burlington that are the subject of Plaintiff's claims. Burlington is not responsible or liable for any acts or omissions undertaken by or at the direction of any governmental authority, department or agency.

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## SEVENTEENTH DEFENSE

17.     Plaintiff's claims may be barred, in whole or in part, under the doctrine of Federal Preemption, including, without limitation, express preemption, implied conflict preemption, and field preemption, pursuant to any applicable statutes, regulations, guidance documents, notices, military specification, and policy statements, enacted and/or promulgated and/or issues by Congress, federal agencies, or the executive branch.

## EIGHTEENTH DEFENSE

18.     Burlington asserts its rights to allocation, setoff or apportionment of fault pursuant to applicable law, as well as its rights to a proportionate reduction of any damages found against Burlington based on the negligence, omissions or other conduct of any settling tortfeasor and/or responsible third party and/or Plaintiff.

## NINETEENTH DEFENSE

19.     An award of judgment rendered in favor of Plaintiff must be reduced by the amount of compensation Plaintiff received, or is entitled to receive, from any source as a result of Plaintiff's alleged injuries.

## TWENTIETH DEFENSE

20.     Plaintiff may have failed or refused to exercise reasonable care and diligence to avoid loss and minimize damages and, therefore, may not recover for losses that could have been prevented by reasonable efforts on Plaintiff's part, or by expenditures which might reasonably have been made. Recovery, if any, should therefore be reduced by Plaintiff's failure to mitigate damages, if any.

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## TWENTY-FIRST DEFENSE

21.    Burlington and its agents and/or employees acted with due care and otherwise conducted themselves at all relevant times as reasonable people and/or entities under the circumstances.

## TWENTY-SECOND DEFENSE

22.    Burlington has satisfied, fulfilled and performed each and every obligation and duty imposed by law, if any, to the full extent of its responsibility.

## TWENTY-THIRD DEFENSE

23.    Any alleged injury, damage or loss sustained by Plaintiff in connection with the subject matter of this action was not reasonably foreseeable to Burlington.

## TWENTY-FOURTH DEFENSE

24.    Plaintiff's claims fail as a matter of substantive law and violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and the South Carolina Constitution to the extent that by relying on market share or other aggregate proof of causation or liability, Plaintiff seeks to deprive Burlington of procedural and substantive safeguards including, but not limited to, statutory and common law defenses to liability and causation generally.

## TWENTY-FIFTH DEFENSE

25.    Plaintiff's claims may be barred for lack of proximate causation between any alleged act, omission, or product of Burlington and the claims, damages, and harm alleged in Plaintiff's Complaint.

27

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**TWENTY-SIXTH DEFENSE**

26.     Plaintiff's claims are barred, in whole or in part, because Plaintiff fails to identify any specific product of Burlington which was allegedly manufactured, handled, sold, distributed, or used and caused the alleged injury.

**TWENTY-SEVENTH DEFENSE**

27.     Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff cannot prove that its alleged injuries were caused by exposure to PFAS allegedly contained in any product(s) manufactured, handled, distributed, used, or sold by Burlington.

**TWENTY-EIGHTH DEFENSE**

28.     Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff cannot prove that PFAS has been reliably established, through scientific means, to be capable of causing Plaintiff's alleged injuries.

**TWENTY-NINTH DEFENSE**

29.     Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff cannot establish that Plaintiff was exposed to a sufficient concentration or amount of PFAS, and/or for a sufficient duration, that has been reliably established, through scientific means, to be capable of causing Plaintiff's alleged injuries.

**THIRTIETH DEFENSE**

30.     Plaintiff's purported exposure to products manufactured, handled, distributed, used or sold by Burlington, if any, was too removed, indefinite, de minimis and insufficient to establish a reasonable degree of probability that any such product caused any alleged injury, damage or loss to Plaintiff.

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## THIRTY-FIRST DEFENSE

31.     Burlington cannot be held jointly and severally liable for the acts or omissions of third parties or other parties because their acts or omissions were separate and distinct and the alleged harm is divisible from and greater than any harm allegedly caused by acts, omissions, or products of Burlington.

## THIRTY-SECOND DEFENSE

32.     Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff seeks to retroactively impose liability for conduct that was not actionable at the time it occurred, and Burlington may not be held liable under retroactive theories not requiring proof or fault or causation.

## THIRTY-THIRD DEFENSE

33.     Plaintiff's claims are barred, in whole or in part, because Burlington neither knew, nor should have known, that any of the chemicals or substances to which Plaintiff was allegedly exposed were hazardous or constituted a reasonable or foreseeable risk of physical harm by virtue of the prevailing state of medical, scientific, technical, and/or industrial knowledge available to Burlington at all times relevant to the claims or causes of action asserted by Plaintiff.

## THIRTY-FOURTH DEFENSE

34.     Burlington is entitled to all procedural, substantive, and other protections, caps, and limitations provided by applicable state statutes and other state laws regarding Plaintiff's claims for compensatory and punitive damages. Burlington specifically pleads the application of S.C. Code Ann. § 15-32-530 to this action.

29

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## THIRTY-FIFTH DEFENSE

35.    The Complaint fails to state a claim upon which punitive damages may be awarded. Nor did Burlington engage in any conduct that would permit an award of punitive damages. And, any award of punitive damages would violate the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, the excessive fines clause of the Eighth Amendment to the United States Constitution, and various articles and sections of the South Carolina Constitution.

## THIRTY-SIXTH DEFENSE

36.    To the extent Plaintiff seeks punitive damages against Burlington under a strict liability or warranty cause of action, those claims may be barred, in whole or in part, if punitive damages are not recoverable under those claims pursuant to applicable law.

## THIRTY-SEVENTH DEFENSE

37.    Plaintiff's claims may be barred, in whole or in part, by the political question and separation of powers doctrines because their claims implicate issues of statewide importance that are reserved for state regulation.

## THIRTY-EIGHTH DEFENSE

38.    Plaintiff's claims against Burlington may not arise out of the same transactions or occurrences as their claims against other defendants, as required for proper joinder of parties.

## THIRTY-NINTH DEFENSE

39.    Plaintiff's claims may be barred, in whole or in part, by the Due Process or Ex Post Facto clauses of the Constitution of the United States or the Constitution of the State of South Carolina.

30

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**FORTIETH DEFENSE**

40.    To the extent Plaintiff seeks equitable relief, Plaintiff is not entitled to equitable relief because Plaintiff has an adequate remedy at law and the alleged harm is not irreparable.

**FORTY-FIRST DEFENSE**

41.    Plaintiff's claims are barred, in whole or in part, by the free public services doctrine and by the municipal cost recovery doctrine.

**FORTY-SECOND DEFENSE**

42.    Plaintiff's claims are barred to the extent that Plaintiff's alleged damages are speculative, uncertain, and hypothetical.

**FORTY-THIRD DEFENSE**

43.    Plaintiff's damages, if any, may have been the direct and proximate result of facts and circumstances over which Burlington exercises no control.

**FORTY-FOURTH DEFENSE**

44.    Plaintiff's nuisance claims are barred, in whole or in part, because they lack the legal authority or standing to bring a nuisance claim under South Carolina law.

**FORTY-FIFTH DEFENSE**

45.    Plaintiff's private nuisance claim is barred, in whole or in part, because Burlington did not unreasonably interfere with Plaintiff's ownership or possession of land.

**FORTY-SIXTH DEFENSE**

46.    Plaintiff's public nuisance claim is barred, in whole or in part, because no action of Burlington involved the interference with real or personal property, the alleged public nuisance would have impermissible extraterritorial reach, and the alleged conduct of Burlington is too remote from the alleged injury as a matter of law and due process.

31

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## FORTY-SEVENTH DEFENSE

47.     Plaintiff's public nuisance claim fails because Plaintiff is not a private person bringing an action for damages to real or personal property.

## FORTY-EIGHTH DEFENSE

48.     Plaintiff's public nuisance claim fails because Plaintiff fails to allege facts showing that Burlington controlled the instrumentality of the alleged nuisance.

## FORTY-NINTH DEFENSE

49.     Plaintiff's public nuisance claim fails because Plaintiff failed to plead that it suffered a particular damage beyond that which the public has experienced.

## FIFTIETH DEFENSE

50.     Plaintiff's trespass claim fails because Burlington did not interfere with Plaintiff's right to the exclusive, peaceable possession of its property.

## FIFTY-FIRST DEFENSE

51.     Plaintiff's tort-based claims fail because Burlington does not owe Plaintiff a duty under governing law.

## FIFTY-SECOND DEFENSE

52.     Plaintiff's tort-based claims fail because Burlington did not breach any duty allegedly owed to Plaintiff.

## FIFTY-THIRD DEFENSE

53.     Plaintiff's claims for strict liability may be barred because of the principles embodied in Section 402A of the Restatement (Second) of Torts and its comments, to the extent adopted by applicable law.

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## FIFTY-FOURTH DEFENSE

54.     Plaintiff's products liability claims may be barred, in whole or in part, by the Restatement (Third) of Torts: Products Liability, to the extent adopted by applicable law.

## FIFTY-FIFTH DEFENSE

55.     Plaintiff's claims may be barred, in whole or in part, to the extent Plaintiff's alleged injuries and damages were caused by the disregard of, or failure to follow and heed, warnings, recommendations, specifications, uses, standards, or instructions provided by Burlington.

## FIFTY-SIXTH DEFENSE

56.     Plaintiff cannot obtain relief on its claims based on actions undertaken by Burlington of which Burlington provided adequate notice or warnings.

## FIFTY-SEVENTH DEFENSE

57.     Plaintiff's warranty claim may be barred, in whole or in part, to the extent that any warranties were disclaimed and/or are limited by applicable provisions of the UCC.

## FIFTY-EIGHTH DEFENSE

58.     Plaintiff's warranty claim may be barred, in whole or in part, because there was no warranty.

## FIFTY-NINTH DEFENSE

59.     Plaintiff's warranty claim may be barred, in whole or in part, because Plaintiff did not provide Burlington with reasonable notice of any alleged breach and otherwise failed to satisfy all conditions precedent or subsequent to the enforcement of any such warranty.

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## SIXTIETH DEFENSE

60.     Plaintiff's warranty claim may be barred, in whole or in part, because Plaintiff was not in privity of contract with Burlington and did not rely on any warranty allegedly provided.

## SIXTY-FIRST DEFENSE

61.     Plaintiff's warranty claim may be barred, in whole or in part, to the extent any implied warranty was disclaimed.

## SIXTY-SECOND DEFENSE

62.     Plaintiff's claims may be barred, in whole or in part, because Burlington complied at all relevant times with all applicable laws, including all legal and regulatory duties.

## SIXTY-THIRD DEFENSE

63.     Plaintiff's claims may be barred, reduced, or limited pursuant to the applicable South Carolina statutory and common law regarding limitations of awards, caps on recovery, and setoffs.

## SIXTY-FOURTH DEFENSE

64.     To the extent Plaintiff seeks recovery of attorneys' fees and costs, Plaintiff is not entitled to any attorneys' fees or costs associated with this action because no statute or contract exists that would give Plaintiff the right to recover such fees or costs.

## SIXTY-FIFTH DEFENSE

65.     Burlington adopts by reference any additional applicable defense pled by any other defendant not otherwise pled herein.

## RESERVATION OF RIGHTS

Burlington hereby reserves the right to amend this Answer, raise additional defenses as may be discovered during the course of this litigation and its continuing factual investigations,

34

ELECTRONICALLY FILED - 2024 Nov 18 4:11 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

add cross-claims, or assert third-party claims pursuant to the provisions of the South Carolina Rules of Civil Procedure, the substantive law of South Carolina, and the inherent authority of this Court to manage the procedural aspects of this litigation.

WHEREFORE, having fully answered Plaintiff's Complaint, Burlington denies that Plaintiff is entitled to any of the relief requested in the Complaint, and respectfully prays for the dismissal of Plaintiff's Complaint with prejudice and for such other and further relief as this Court may deem just and proper.

Respectfully submitted,

s/ Konstantine P. Diamaduros
Andrew A. Mathias (SC Bar No. 76220)
Konstantine P. Diamaduros (SC Bar No. 102231)
Connor B. Bauknight (SC Bar No. 105019)
MAYNARD NEXSEN PC
104 South Main Street, Suite 900 (29601)
Post Office Drawer 10648
Greenville, SC 29603-0648
Telephone: 864.370.2211
Facsimile: 864.282.1177
AMathias@maynardnexsen.com
KDiamaduros@maynardnexsen.com
CBauknight@maynardnexsen.com

*Attorneys for Defendant Burlington Industries, Inc.*

November 18, 2024
Greenville, South Carolina

35

# AFFIDAVIT OF SERVICE

**State of South Carolina**                **County of Horry**                **Common Pleas Court**

Case Number: 2024-CP-26-05523

Plaintiff:
**GRAND STRAND WATER AND SEWER AUTHORITY**

vs.

Defendant:
**ALADDIN MANUFACTURING CORPORATION; et al**

Received by FALCON EXPRESS SERVICES, LLC to be served on **GFL Environmental USA Inc. c/o Registered Agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801**.

I, Ramona Talvacchio, being duly sworn, depose and say that on the **12th day of November, 2024** at **1:17 pm, I:**

served a **REGISTERED AGENT** by delivering a true copy of the **LETTER, SECOND AMENDED SUMMONS and SECOND AMENDED COMPLAINT** with the date and hour of service endorsed thereon by me, to: **Robin Huttbanks** as **Registered Agent** at the address of: **1209 Orange Street, Wilmington, DE 19801** on behalf of **GFL Environmental USA Inc.**, and informed said person of the contents therein, in compliance with state statutes.

Any and all physical description details are approximations.

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the _13_
day of _NOVEMBER_, _2024_ by the affiant who
is personally known to me.

_____
NOTARY PUBLIC
My Commission Expires: _MAY 14 2027_

**Ramona Talvacchio**
Process Server

**FALCON EXPRESS SERVICES, LLC**
**(843) 577-9696**

Our Job Serial Number: FES-2024010480

```
JOSEPH TALVACCHIO JR
Notary Public
State of Delaware
My Commission Expires on May 14, 2027
```

ELECTRONICALLY FILED - 2024 Nov 19 1:58 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**STATE OF NORTH CAROLINA**
**COUNTY OF WAKE**

**STATE OF SOUTH CAROLINA**
**COUNTY OF HORRY**



Plaintiff Name:
GRAND STRAND WATER AND SEWER
AUTHORITY

*Versus*

Defendant Name:
RED ROCK DISPOSAL LLC
c/o Registered Agent,
CT CORPORATION SYSTEM, 160 MINE
LAKE CT, STE 200, RALEIGH, NC 27615

## DEPUTY'S AFFIDAVIT OF SERVICE

Court File No: 2024CP2605523

I, ◯.R. Carmichael , being a duly sworn Deputy Sheriff of Wake County, Raleigh, North Carolina, States that in the above referenced matter,   on the 22 Day of November ,2024 at 9:01 {X}AM{ }PM, HE/SHE {√}SERVED/ { } WAS UNABLE TO SERVE, RED ROCK DISPOSAL LLC, legal service of SECOND AMENDED SUMMONS and SECOND AMENDED COMPLAINT , on Defendant/Person to serve as follows: (check one):

[ ] BY DELIVERING TO DEFENDANT / PERSON TO SERVE A COPY (IES)

[ ] BY LEAVING A COPY (IES) AT THE DWELLING HOUSE OR USUAL PLACE OF ABODE OF THE DEFENDANT/ PERSON TO SERVE, WITH A PERSON OF SUITABLE AGE.

[X] AS THE DEFENDANT / PERSON TO SERVE IS A CORPORATION, SERVICE WAS EFFECTED BY DELIVERING A COPY(IES) TO WHO IS AN OFFICER OF THE CORPORATION: Tabitha Davis (Reg Agent)

[ ] NOT SERVED: DEFENDANT/PERSON NOT FOUND IN WAKE COUNTY.

[ ] OTHER:_____

Service Name:_____

**WILLIE ROWE**
SHERIFF OF WAKE COUNTY

BY: S.R. Carmichael (3445)
*DEPUTY SHERIFF*

SUBSCRIBED AND SWORN TO BEFORE ME THIS
THE 22 DAY OF November 2024,

Carolyn Monroe

NOTARY PUBLIC, WAKE COUNTY, NORTH CAROLINA
MY COMMISSION EXPIRES THE 30 DAY OF June 2029



CAROLYN MONROE
NOTARY PUBLIC
WAKE COUNTY, NC

R_Civi83

ELECTRONICALLY FILED - 2024 Dec 02 2:44 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**STATE OF NORTH CAROLINA**
**COUNTY OF WAKE**

**STATE OF SOUTH CAROLINA**
**COUNTY OF HORRY**



Plaintiff Name:
GRAND STRAND WATER AND SEWER
AUTHORITY
            *Versus*
Defendant Name:
SAMPSON COUNTY DISPOSAL LLC
c/o Registered Agent,
CT CORPORATION SYSTEM, 160 MINE
LAKE CT, STE 200, RALEIGH, NC 27615

# DEPUTY'S AFFIDAVIT
# OF SERVICE

Court File No: 2024-CP-26-05523

I, S.R.Carmichael          , being a duly sworn Deputy Sheriff of
Wake County, Raleigh, North Carolina, States that in the above referenced matter,   on the
22 Day of november ,2024 at 9:01 {✓}AM{ }PM, HE/SHE
{✓}SERVED/ { } WAS UNABLE TO SERVE, SAMPSON COUNTY DISPOSAL LLC, legal service of SECOND AMENDED
SUMMONS and SECOND AMENDED COMPLAINT , on Defendant/Person to serve as follows: (check one):

[ ]  BY DELIVERING TO DEFENDANT / PERSON TO SERVE A COPY (IES)

[ ]  BY LEAVING A COPY (IES) AT THE DWELLING HOUSE OR USUAL PLACE OF ABODE OF THE DEFENDANT/
     PERSON TO SERVE, WITH A PERSON OF SUITABLE AGE.

[X]  AS THE DEFENDANT / PERSON TO SERVE IS A CORPORATION, SERVICE WAS EFFECTED BY DELIVERING
     A COPY(IES) TO WHO IS AN OFFICER OF THE CORPORATION Tabitha Davis (Reg Agent)

[ ]  NOT SERVED: DEFENDANT/PERSON NOT FOUND IN WAKE COUNTY.

[ ]  OTHER:_____

Service Name:_____

**WILLIE ROWE**
SHERIFF OF WAKE COUNTY

BY: S.R. Carmichael (3465)
*DEPUTY SHERIFF*

SUBSCRIBED AND SWORN TO BEFORE ME THIS
THE 22 DAY OF NOvember 2024
Carolyn Monroe
NOTARY PUBLIC, WAKE COUNTY, NORTH CAROLINA
MY COMMISSION EXPIRES THE 30 DAY OF June 2029



R_Civi83

ELECTRONICALLY FILED - 2024 Dec 02 2:44 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 04 2:34 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

Grand Strand Water and Sewer Authority,

Plaintiff,

v.

Aladdin Manufacturing Corporation; Burlington Industries, Inc.; Delta Mills, Inc., its predecessors, successors, assigns, and/or responsible parties; Domtar Paper Company, LLC, Elevate Textiles, Inc.; Fiber Industries, LLC; GFL Environmental USA, Inc.; J.P. Stevens & Company, Inc., its predecessors, successors, assigns, and/or responsible parties; Mohawk Industries, Inc.; Nan Ya Plastics Corporation, America; PRET Advanced Materials, LLC; Red Rock Disposal, LLC; and Waste Industries, LLC,

Defendants.

IN THE COURT OF COMMON PLEAS

FIFTEENTH JUDICIAL CIRCUIT

C.A. No.: 2024-CP-26-05523

**DEFENDANT PRET ADVANCED MATERIALS, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant PRET Advanced Materials, LLC ("PRET") hereby moves the Court to dismiss Plaintiff's Second Amended Complaint as to PRET pursuant to South Carolina Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6).

Plaintiff Grand Strand Water & Sewer Authority ("Grand Strand" or "Plaintiff") is a public entity that operates the Bull Creek Surface Water Treatment Plant ("SWTP") and the Myrtle Beach SWTP and owns certain land on Bull Creek in Bucksport, South Carolina and on the Intracoastal Waterway in Myrtle Beach. (Plaintiff's Second Amended Complaint ("SAC") ¶3). Plaintiff's SWTPs withdraw water from Bull Creek and the Intracoastal Waterway for treatment before distributing it to customers. (*Id.*)

1

ELECTRONICALLY FILED - 2024 Dec 04 2:34 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Plaintiff's claims involve per- and polyfluoroalkyl and related substances ("PFAS"). (*Id. ¶¶* 1, 26, & 53.) There are multiple types of PFAS. Further, PFAS have dozens of uses in industrial, commercial, and consumer applications, have been used for decades, and are ubiquitous.

Plaintiff asserts the following four causes of action against PRET: (1 and 2) private and public nuisance, (3) trespass, and (4) negligence.[1] The basis of Plaintiff's claims against PRET is that PRET conveyed wastewater that allegedly contained PFAS to the Johnsonville Wastewater Treatment Plant ("Johnsonville WWTP"). (*Id. ¶¶* 1, 26, & 53.) In turn, after further treatment, the Johnsonville WWTP discharged water containing PFAS that allegedly came from PRET into the Lynches River at a location over 22 miles "as a crow flies" upstream from Plaintiff's plant on Bull Creek. (*Id.*) **Exhibit A.**[2] Plaintiff's SWTP in Myrtle Beach on the Intracoastal Waterway is even farther away (over 32 miles) and is not downstream from the Johnsonville WWTP. **Exhibits B, C, D, and E.**[3]

PRET is the current owner of a plant in Johnsonville, South Carolina where it recycles carpet. PRET has only owned the plant since 2015 when it purchased certain assets in connection with the bankruptcy of Wellman, Inc., which previously owned and operated the plant and recycled carpet at that location for several decades.[4] PRET does not make, sell, or distribute PFAS or

---

[1] Plaintiff asserts additional causes of action against Defendant Burlington Industries, Inc., but those claims do not state and do not purport to state claims against PRET.

[2] Exhibit A is a Google Map of an area including Johnsonville, SC and Plaintiff's Bull Creek SWTP, https://www.google.com/maps (Last Visited: 12/4/2024).

[3] Exhibit B is a Google Map of an area including Johnsonville, SC and Plaintiff's Myrtle Beach SWTP, https://www.google.com/maps (Last Visited: 12/4/2024). Exhibits C, D, and E are United States Geological Survey maps showing that the Johnsonville WWTP is *not* upstream from Plaintiff's Myrtle Beach SWTP.

[4] The entity acquiring the Wellman assets changed its name to PRET Advanced Materials, LLC in 2018. PRET has no liability for any PFAS discharges from the plant during the many years it was owned and operated by Wellman.

2

ELECTRONICALLY FILED - 2024 Dec 04 2:34 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

purchase PFAS for use in its carpet recycling, and Plaintiff does not allege that it does.  Further, PRET's operations and its discharges to the Johnsonville WWTP are regulated by governmental authorities, and Plaintiff does not allege that PRET or the Johnsonville WWTP have operated in violation of their permits.

An additional premise of Plaintiff's claims is that the United States Environmental Protection Agency ("EPA") recently proposed a dramatic reduction in the allowable amount of certain PFAS in drinking water to 4 parts per *trillion.*  (*Id.* ¶¶ 41, 42, & 45.)  But that EPA regulation, which is being challenged in multiple lawsuits, does not become final and require compliance until **2029.**  (*Id. ¶* 47.)  Plaintiff alleges that it may be able to meet the potential future requirement by incurring unspecified and unknown expenses (*See id. ¶¶* 78, 83 ("expenses associated with **future** acquisition … of required treatment technologies"), 89 (seeking funding of "the acquisition … of new water treatment technology"); 101, and 110.)

Plaintiff's claims against PRET should be dismissed as premature, contingent, speculative, and not justiciable because the subject EPA regulation does not yet require compliance and is subject to change, and Plaintiff is not currently required to and has not purchased treatment technologies to comply with that potential future requirement, and it is entirely speculative what measures, if any, Plaintiff may be required to take in the future.

In addition, PRET does not discharge PFAS into Lynches River -- or any other body of water.  As alleged by Plaintiff, PRET conveys its wastewater to Johnsonville WWTP for treatment, and PRET cannot and does not control what Johnsonville WWTP does any more than citizens who use consumer products resulting in PFAS discharges into their wastewater can direct and control the activities of public utilities handling their wastewater.

ELECTRONICALLY FILED - 2024 Dec 04 2:34 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Plaintiff's private nuisance claims should be dismissed as to PRET because it does not control the source of the alleged nuisance or the property owned by numerous entities and individuals between the Johnsonville WWTP and Plaintiff's property and facilities. In addition, any alleged contamination of a public body of water cannot state a claim for private nuisance.

Plaintiff's trespass claim against PRET should be dismissed for the additional reason that the alleged PFAS particles are intangible in nature such that they cannot constitute a trespass. Further, Plaintiff lacks exclusive possession and control of the subject watershed. In addition, any alleged presence of PFAS particles at Plaintiff's facilities occurs only as a result of Plaintiff deliberately drawing the subject water into its facilities.

Plaintiff's negligence claim should be dismissed as to PRET on the grounds that Plaintiff has failed to allege facts sufficient to state a plausible claim that PRET owes a duty to Plaintiff or that any conduct by PRET was a proximate cause of damages to Plaintiff.

Plaintiff's claims with respect to its Myrtle Beach plant should be dismissed because PRET's Johnsonville plant and the Johnsonville WWTP are not upstream of the Plaintiff's Myrtle Beach plant and thus PRET's operations have no impact on Plaintiff's Myrtle Beach plant.

Plaintiff's SAC fails to state facts sufficient to constitute a claim for an award of its attorneys' fees or prejudgment interest.

This motion will be supported by a memorandum of law and exhibits to be submitted to the Court, the Court's record in this matter, and any additional arguments that may be presented to the Court. In addition, to the extent applicable to this Defendant, PRET joins in arguments submitted for dismissal by co-defendants in this action.

*[Signature Block on Following Page]*

4

ELECTRONICALLY FILED - 2024 Dec 04 2:34 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Respectfully submitted,

**HAYNSWORTH SINKLER BOYD, P.A.**

 s/Robert Y. Knowlton
Robert Y. Knowlton, S.C. Bar No. 3589
John P. Boyd, S.C. Bar No. 72412
1201 Main Street, 22nd Floor (29201)
Post Office Box 11889
Columbia, SC 29211-1889
(803) 779-3080
bknowlton@hsblawfirm.com
jboyd@hsblawfirm.com

Frank T. Davis, S.C. Bar No. 66291
Jonathan D. Klett, S.C. Bar. 103208
One North Main, 2nd Floor
(864) 240-3211
fdavis@hsblawfirm.com
jklett@hsblawfirm.com

*Attorneys for Defendant PRET Advanced Materials, LLC*

December 4, 2024

5

*Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation; Burlington Industries, Inc.; Delta Mills, Inc., its predecessors, successors, assigns, and/or responsible parties; Domtar Paper Company, LLC, Elevate Textiles, Inc.; Fiber Industries, LLC; GFL Environmental USA, Inc.; J.P. Stevens & Company, Inc., its predecessors, successors, assigns, and/or responsible parties; Mohawk Industries, Inc.; Nan Ya Plastics Corporation, America; PRET Advanced Materials, LLC; Red Rock Disposal, LLC; and Waste Industries, LLC*
C.A. No.: 2024-CP-26-05523

# EXHIBIT A

Google Map showing distance between Johnsonville Wastewater Treatment Plant and Plaintiff Bull Creek Surface Water Treatment Plant

ELECTRONICALLY FILED - 2024 Dec 04 2:34 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# Google Map measuring distance between Johnsonville WWTP and Bull Creek SWTP

Google (2024), Johnsonville WWTP to Bull Creek SWTP. Available at https://www.google.com/maps (Last Visited: 12/4/2024)

*Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation; Burlington Industries, Inc.; Delta Mills, Inc., its predecessors, successors, assigns, and/or responsible parties; Domtar Paper Company, LLC, Elevate Textiles, Inc.; Fiber Industries, LLC; GFL Environmental USA, Inc.; J.P. Stevens & Company, Inc., its predecessors, successors, assigns, and/or responsible parties; Mohawk Industries, Inc.; Nan Ya Plastics Corporation, America; PRET Advanced Materials, LLC; Red Rock Disposal, LLC; and Waste Industries, LLC*
C.A. No.: 2024-CP-26-05523

# EXHIBIT B

Google Map showing distance between Johnsonville Wastewater Treatment Plant and Plaintiff Myrtle Beach Surface Water Treatment Plant

ELECTRONICALLY FILED - 2024 Dec 04 2:34 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 04 2:34 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Google Map measuring distance between Johnsonville WWTP and Myrtle Beach SWTP



Google (2024), Johnsonville WWTP to Myrtle Beach SWTP. Available at https://www.google.com/maps (Last Visited: 12/4/2024)

*Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation; Burlington Industries, Inc.; Delta Mills, Inc., its predecessors, successors, assigns, and/or responsible parties; Domtar Paper Company, LLC, Elevate Textiles, Inc.; Fiber Industries, LLC; GFL Environmental USA, Inc.; J.P. Stevens & Company, Inc., its predecessors, successors, assigns, and/or responsible parties; Mohawk Industries, Inc.; Nan Ya Plastics Corporation, America; PRET Advanced Materials, LLC; Red Rock Disposal, LLC; and Waste Industries, LLC*
C.A. No.: 2024-CP-26-05523

# EXHIBIT C

USGS Map showing downstream flowline from Plaintiff Myrtle Beach WWTP to Winyah Bay

ELECTRONICALLY FILED - 2024 Dec 04 2:34 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## USGS Map showing downstream flowline from Myrtle Beach WWTP to Winyah Bay

A – Myrtle Beach SWTP
B – Winyah Bay



https://waterdata.usgs.gov/monitoring-location/02110755/#parameterCode=00010&period=P7D&showMedian=false

*Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation; Burlington Industries, Inc.; Delta Mills, Inc., its predecessors, successors, assigns, and/or responsible parties; Domtar Paper Company, LLC, Elevate Textiles, Inc.; Fiber Industries, LLC; GFL Environmental USA, Inc.; J.P. Stevens & Company, Inc., its predecessors, successors, assigns, and/or responsible parties; Mohawk Industries, Inc.; Nan Ya Plastics Corporation, America; PRET Advanced Materials, LLC; Red Rock Disposal, LLC; and Waste Industries, LLC*
C.A. No.: 2024-CP-26-05523

# EXHIBIT D

## USGS Map displaying location of Johnsonville WWTP and Myrtle Beach SWTP

ELECTRONICALLY FILED - 2024 Dec 04 2:34 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## USGS Map displaying location of Johnsonville WWTP and Myrtle Beach SWTP

A - Johnsonville WWTP
B - Myrtle Beach SWTP



https://waterdata.usgs.gov/monitoring-location/02110755/#parameterCode=00010&period=P7D&showMedian=false

*Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation; Burlington Industries, Inc.; Delta Mills, Inc., its predecessors, successors, assigns, and/or responsible parties; Domtar Paper Company, LLC, Elevate Textiles, Inc.; Fiber Industries, LLC; GFL Environmental USA, Inc.; J.P. Stevens & Company, Inc., its predecessors, successors, assigns, and/or responsible parties; Mohawk Industries, Inc.; Nan Ya Plastics Corporation, America; PRET Advanced Materials, LLC; Red Rock Disposal, LLC; and Waste Industries, LLC*
C.A. No.: 2024-CP-26-05523

# EXHIBIT E

USGS Map annotated with locations of monitoring stations upstream and downstream of Plaintiff Myrtle Beach SWTP, all showing downstream flowline

ELECTRONICALLY FILED - 2024 Dec 04 2:34 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

USGS Map Annotated with locations of monitoring stations upstream and downstream of Plaintiff Myrtle Beach SWTP, all showing downstream flowline



https://waterdata.usgs.gov/monitoring-location/02110755/#parameterCode=00010&period=P7D&showMedian=false

ELECTRONICALLY FILED - 2024 Dec 04 2:34 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 17 2:30 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## AMENDED AFFIDAVIT OF SERVICE

**State of South Carolina**              **County of Horry**              **Common Pleas Court**

Case Number: 2024-CP-26-05523

Plaintiff:
**GRAND STRAND WATER AND SEWER AUTHORITY**

vs.

Defendant:
**ALADDIN MANUFACTURING CORPORATION; et al**

Received by FALCON EXPRESS SERVICES, LLC to be served on **GFL Environmental USA Inc. c/o Registered Agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.**

I, Ramona Talvacchio, being duly sworn, depose and say that on the **12th day of November, 2024 at 1:17 pm, I:**

served this **CORPORATION** by delivering a true copy of the **LETTER, SECOND AMENDED SUMMONS and SECOND AMENDED COMPLAINT** , to: **Robin Huttbanks** as **Intake Specialist for Registered Agent** for **GFL Environmental USA Inc.**, at the address of: **1209 Orange Street, Wilmington, DE 19801**, in compliance with state statutes.

Any and all physical description details are approximations.

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the __29__ day of __NOVEMBER__ __2024__ by the affiant who is personally known to me.

_____
NOTARY PUBLIC
My Commission Expires: _MAY 14, 2027_

**Ramona Talvacchio**
Process Server

**FALCON EXPRESS SERVICES, LLC**
**(843) 577-9696**

Our Job Serial Number: FES-2024010480

JOSEPH TALVACCHIO JR
Notary Public
State of Delaware
My Commission Expires on May 14, 2027

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a

ELECTRONICALLY FILED - 2024 Dec 23 1:59 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | **FIFTEENTH JUDICIAL CIRCUIT** |
| **COUNTY OF HORRY** | ) | **CASE NO.: 2024-CP-26-05523** |
| | ) | |
| GRAND STRAND WATER AND SEWER AUTHORITY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **ELEVATE TEXTILES, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY PENDING THE RESOLUTION OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant Elevate Textiles, Inc. ("Elevate"), by and through its undersigned counsel, and pursuant to Rule 26(c) SCRCP, hereby moves the Court for a protective order to stay discovery pending the Court's resolution of Elevate's Motion to Dismiss. In support of this Motion for Protective Order, Elevate respectfully states as follows:

## I.     INTRODUCTION AND BACKGROUND

In response to Plaintiff's Second Amended Complaint (the "Complaint"), Elevate filed a Motion to Dismiss (the "Motion") and a Memorandum of Law in Support of Motion to Dismiss (the "Memo. of Law"), and in connection therewith has moved to dismiss all claims asserted by

ELECTRONICALLY FILED - 2024 Dec 23 1:59 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Plaintiff pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the South Carolina Rules of Civil Procedure. The Motion is based on several different grounds. For one thing, Plaintiff's case is not ripe for adjudication, both because Plaintiff's claims all rely upon newly-promulgated drinking water standards for certain per- and polyfluoroalkyl substances ("PFAS") that do not go into effect (and that Plaintiff does not have to comply with) until 2029, and because Plaintiff does not allege that it has incurred any costs (or taken any action at all) as a result of the new rule or the allegedly PFAS-contaminated water that the rule concerns. (*See* Elevate's Memo. of Law at pp. 1-6). Plaintiff's individual claims also fail for other reasons. Plaintiff's private nuisance claim fails because it is based on the alleged contamination of a public water body. Plaintiff's public nuisance claim fails because Plaintiff has failed to allege it has suffered any unique injury that is not suffered by the public at large; and because Plaintiff's allegations (for several reasons) simply do not state valid causes of action for trespass and negligence under South Carolina law. (*See id.* at pp. 6-16). Yet, despite the litany of reasons for which Plaintiff's claims against Elevate should be dismissed, it remains that none of these reasons rely on matters outside the pleadings, and instead all are based on the allegations within the four corners of Plaintiff's Second Amended Complaint alone. Without question, this Court has broad discretion and inherent power under Rule 26(c), SCRCP, to enter a protective order staying discovery until the Court rules upon Elevate's pending Motion to Dismiss, and the Court should exercise that authority here. Accordingly, Elevate's Motion for Protective Order should be granted.

## II.    ARGUMENT AND CITATION OF AUTHORITY

As the United States Supreme Court long ago made clear, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am.*

2

ELECTRONICALLY FILED - 2024 Dec 23 1:59 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

*Co.*, 299 U.S. 248, 254 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997) (noting that a "[d]istrict [c]ourt has broad discretion to stay proceedings as an incident to its power to control its own docket") (citation omitted).  This discretion plainly extends to discovery, as under Rule 26(c), SCRCP, the Court, "for good cause shown . . . may make any order which justice requires to protect a party or person from . . . undue burden by expense, including one or more of the following:  (1) that the discovery not be had; [and] (2) that the discovery be had only on specified terms and conditions, including a designation of the time or place."  Rule 26(c), SCRCP.

Notably, state and federal courts alike,[1] both within and outside of South Carolina, have time and again recognized the broad discretion that trial courts have to stay discovery pending the resolution of a Rule 12 motion to dismiss and have furthermore emphasized it is appropriate to exercise that discretion when the discovery at issue is irrelevant to the motion.  *See Burks v. Rushton*, No. 3:08-cv-3025, 2009 WL 10703167, at *1 (D.S.C. June 8, 2009) ("Defendants request that discovery be stayed until after the Court rules on their motion to dismiss in order to avoid requiring them to unnecessarily expend time and incur expenses in responding to Plaintiff's discovery requests. . . . Requiring Defendants to answer Plaintiff's discovery requests at this time would be unduly burdensome.  Here, the motion to dismiss has the potential to dispose of the case . . . without the need for discovery such that it is within the court's discretion to stay discovery

---

[1] The South Carolina Supreme Court has recognized that in construing the South Carolina Rules of Civil Procedure, trial courts should "look for guidance to cases interpreting the federal rules." *See Maybank v. BB&T Corp.*, 416 S.C. 541, 565, 787 S.E.2d 498, 510 (2016) ("In construing the South Carolina Rules of Civil Procedure, our Court looks for guidance to cases interpreting the federal rules."); *Gardner v. Newsome Chevrolet-Buick, Inc.*, 304 S.C. 328, 330, 404 S.E.2d 200, 201 (1991) ("Since our Rules of Procedure are based on the Federal Rules, where there is no South Carolina law, we look to the construction placed on the Federal Rules of Civil Procedure.").

3

ELECTRONICALLY FILED - 2024 Dec 23 1:59 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

pending resolution of the dispositive motion . . . .") (citations omitted); *Williams v. New Century Investigations, Inc.,* No. 2005-UP-237, 2005 WL 7083703, at *2 (S.C. Ct. App. Apr. 6, 2005) (rejecting argument that discovery should have been allowed despite pending motion to dismiss "[b]ecause a dismissal pursuant to Rule 12(b)(6), SCRCP, is based solely on the allegations within the four corners of the complaint," and thus "further discovery is not necessary").[2]

Absent a stay of discovery in this case, there is no dispute that Elevate will be required to devote substantial time and resources responding to any discovery requests served by Plaintiff in this action. If the Court ultimately grants Elevate's Motion to Dismiss, the time and resources expended by it to respond to discovery will have been unnecessary. Accordingly, to protect Elevate from "undue burden by expense," Rule 26(c), SCRCP, and thereby "secure the just, speedy, and inexpensive determination" of this action, Rule 1, SCRCP, the Court should temporarily stay discovery in this case pending the resolution of Elevate's Motion to Dismiss.

## III.    CONCLUSION

For all of the foregoing reasons, Elevate's Motion for Protective Order should be granted, and all discovery requests served on Elevate in connection with this case should be stayed pending the Court's resolution of Elevate's previously filed Motion to Dismiss Plaintiff's Second Amended Complaint.

---

[2] *See also Cuyler v. Dep't of Army*, No. 3:08-cv-3261, 2009 WL 1749604, at *8 (D.S.C. June 22, 2009) (agreeing that the plaintiff's discovery to the defendant should be stayed pending the court's ruling on the defendant's Rule 12(b)(1) and Rule 12(b)(6) motion to dismiss); *Tilley v. United States*, 270 F. Supp. 2d 731, 734 (M.D.N.C. 2003), (entering protective order to stay discovery pending resolution of motion to dismiss because "the discovery requested by the [plaintiffs] is not relevant to the opposition of the motion"), *aff'd by* 85 F. App'x 333 (4th Cir. 2004); *see also, e.g.*, *See Gettings v. Building Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003) (emphasizing that "[l]imitations on pretrial discovery are appropriate where claims may be dismissed 'based on legal determinations that could not have been altered by any further discovery'" (quoting *Muzquiz v. W.A. Foote Mem'l Hosp., Inc.*, 70 F.3d 422, 430 (6th Cir. 1995))).

ELECTRONICALLY FILED - 2024 Dec 23 1:59 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Dated: December 23, 2024                    GORDON REES SCULLY MANSUKHANI

By     *s/William H. Kleindienst*
       William H. Kleindienst (SC 101278)
       E-mail: wkleindienst@grsm.com
       Brittney M. Darnell (SC 105274)
       E-mail: bdarnell@grsm.com
       677 King Street, Suite 450
       Charleston, SC  29403
       Telephone: (843) 278-5900
       *Attorneys for Elevate Textiles, Inc.*

5

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | **FIFTEENTH JUDICIAL CIRCUIT** |
| **COUNTY OF HORRY** | ) | **CASE NO.: 2024-CP-26-05523** |
| | ) | |
| GRAND STRAND WATER AND SEWER | ) | |
| AUTHORITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALADDIN MANUFACTURING | ) | |
| CORPORATION; BURLINGTON | ) | |
| INDUSTRIES, INC.; DELTA MILLS, INC., its | ) | **ELEVATE TEXTILES, INC.'S** |
| predecessors, successors, assigns, and/or | ) | **MEMORANDUM OF LAW IN** |
| responsible parties; DOMTAR PAPER | ) | **SUPPORT OF ITS MOTION TO** |
| COMPANY, LLC; ELEVATE TEXTILES, INC.; | ) | **DISMISS PLAINTIFF'S SECOND** |
| FIBER INDUSTRIES, LLC; GFL | ) | **AMENDED COMPLAINT** |
| ENVIRONMENTAL USA, INC.; J.P. STEVENS | ) | |
| & COMPANY, INC., its predecessors, successors, | ) | |
| assigns, and/or responsible parties; MOHAWK | ) | |
| INDUSTRIES, INC.; NAN YA PLASTICS | ) | |
| CORPORATION, AMERICA; PRET | ) | |
| ADVANCED MATERIALS, LLC; RED ROCK | ) | |
| DISPOSAL, LLC; SAMPSON COUNTY | ) | |
| DISPOSAL, LLC; and WASTE INDUSTRIES, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant Elevate Textiles, Inc., (hereinafter "Defendant" or "Elevate") by and through its undersigned counsel, and pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the South Carolina Rules of Civil Procedure, hereby submits its Memorandum of Law in Support of its Motion to Dismiss all claims asserted against Elevate in the Second Amended Complaint filed by Plaintiff Grand Strand Water and Sewer Authority (the "Plaintiff"), respectfully stating as follows:

## I.      INTRODUCTION

Plaintiff's Second Amended Complaint (the "Complaint") should be dismissed for multiple reasons. At the outset, this dispute is not ripe for judicial review. Rather, the Plaintiff, which is a

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

water and sewer authority that provides "potable water to residents of various counties in South Carolina, including Horry County," bases its claims on newly-promulgated drinking water standards for certain per- and polyfluoroalkyl substances ("PFAS") that do not go into effect (and that Plaintiff does not have to comply with) until 2029. Moreover, even assuming these standards go into effect in 2029 as currently written (they are at present being challenged in federal court on multiple grounds), it is unknown what measures, if any, Plaintiff will ultimately have to undertake in order to meet them. By contrast, what is clear under the Complaint is that the new rule includes a three (3) year initial testing phase that has only just begun, and that Plaintiff does not allege that it has incurred any costs whatsoever (or taken any action at all for that matter) as a result of the new rule or the allegedly PFAS-contaminated water that the rule concerns. Instead, Plaintiff's Complaint seeks to recover potential future expenses that it might incur in connection with its acquisition, installation, and operation of a new water treatment system, which are inherently conjectural and contingent on what may or may not occur over the next several years. Accordingly, Plaintiff's case is not ripe for adjudication and should be dismissed for this reason alone.

In addition to the premature nature of Plaintiff's claims, Plaintiff's claims against Elevate should be dismissed for several other reasons. In particular, Plaintiff's private nuisance claim fails because the alleged contamination of the Pee Dee River Watershed, the Waccamaw River and the Intracoastal Waterway affects the general public, which as a matter of law does not support a claim for private nuisance. Plaintiff's trespass claim likewise fails, as PFAS molecules constitute "intangible" matter that only enter Plaintiff's property as a result of its own voluntary actions. Lastly, Plaintiff's negligence claim fails as well, as Elevate does not owe a legal duty to the Plaintiff, nor does Plaintiff allege that it has incurred any physical injury or property damage because of such negligence. For all of these reasons, and as shown in greater detail below,

2

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Plaintiff's claims against Elevate fail as a matter of law and should therefore be dismissed.

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A.  Plaintiff's claims are not ripe for adjudication and should be dismissed.

"A threshold inquiry for any court is a determination of justiciability, i.e., whether the litigation presents an active case or controversy." *Peoples Fed. Sav. & Loan Ass'n of S.C. v. Res. Plan. Corp.*, 358 S.C. 460, 477, 596 S.E.2d 51, 60 (2004) (quoting *Lennon v. S.C. Coastal Council*, 330 S.C. 414, 415, 498 S.E.2d 906, 906 (Ct. App. 1998)). Justiciability encompasses several doctrines, including an assessment of whether the plaintiff's claims are ripe for adjudication. See *James v. Anne's Inc.*, 390 S.C. 188, 193, 701 S.E.2d 730, 732 (2010) (citing *Jackson v. State*, 331 S.C. 486, 490 n.2, 489 S.E.2d 915, 917 n.2 (1997)). Where, as here, a claim presents only "a contingent, hypothetical or abstract dispute," the claim is not ripe for adjudication and must be dismissed. See *Pee Dee Elec. Co-op., Inc. v. Carolina Power & Light Co.*, 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983); see also *Peoples Fed. Sav. & Loan Ass'n of S.C.*, 358 S.C. at 477, 596 S.E.2d at 60 ("A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute.") (citation omitted).[1] See also Carolina Care Plan, Inc. v. United HealthCare Servs., Inc., 361 S.C. 544, 557, 606 S.E.2d 752, 759 (2004) (affirming dismissal of complaint where claims were contingent in nature and therefore not yet ripe for adjudication).[2]

---

[1] *See also Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 294 (4th Cir. 2022) ("A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'") (citation omitted); *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) ("[A] plaintiff's claim is not ripe for judicial review 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013))).

[2] *See also Kiawah Prop. Owners Grp. v. Pub. Serv. Comm'n of S.C.*, 357 S.C. 232, 242-43, 593 S.E.2d 148, 154 (2004) (finding "it is patent there is no present, justiciable controversy" where plaintiffs "assert only that the loan provisions may have some negative impact in the future" on

3

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

In this case, Plaintiff's allegations demonstrate that it has not yet suffered any legally cognizable injury due to PFAS, and in fact that it might never suffer such injury. Indeed, while the U.S. Environmental Protection Agency's PFAS drinking water standards ("maximum contaminant levels" or "MCLs") became final in April 2024, (Compl. ¶ 45), it has not yet been determined how, if at all, the rule will impact the Plaintiff or its ability to provide acceptable drinking water. Notably, the Plaintiff will not be required to comply with the MCLs until April 26, 2029. (Id. ¶ 47). Prior to the MCL compliance date, there is a three-year "initial monitoring" period that runs through April 26, 2027. (Id.); see also PFAS National Primary Drinking Water Regulation, 89 Fed. Reg. 32,532, 32,633 (Apr. 26, 2024) (codified at 40 CFR Parts 141 and 142). Plaintiff does not allege any facts demonstrating that, at this time, it is doing anything other than waiting to see if and when it will have to take action to comply with the 2029 MCLs. In fact, Plaintiff has not alleged that it has incurred any costs or expenses whatsoever due to the presence of PFAS in its source water. Rather, it is seeking "future costs of acquiring, installing, and operating adequate water treatment technologies." (See Compl. ¶ 110). Nothing in the Complaint indicates that Plaintiff's operations have changed at all from the period before the MCLs were finalized in April or as a result of PFAS in the Pee Dee River Watershed, the Waccamaw River and/or the Intracoastal Waterway.

This status quo may continue indefinitely. Plaintiff's testing during the initial monitoring period may indicate that Plaintiff will not be required to make any capital investments to remain

---

water utility's customers, because "'a contingent, hypothetical or abstract dispute' . . . is simply insufficient to warrant this Court's review"); *McClanahan v. Richland Cnty. Council*, 350 S.C. 433, 441, 567 S.E.2d 240, 244 (2002) (agreeing property owner's claim based on adoption of land use plan that had not yet been implemented "is not justiciable because it is not ripe for review"); see also, e.g., *Tracy v. Tracy*, 384 S.C. 91, 100, 682 S.E.2d 14, 18 (Ct. App. 2009) (determining case not ripe for review where appellant not yet exposed to liability due to appellee's conduct).

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

in compliance with applicable regulations. It is further uncertain whether the MCLs will remain valid law by the time they would actually apply to Plaintiff. For instance, in June 2024, three sets of plaintiffs filed challenges to the EPA's PFAS rule in actions currently pending before the D.C. Circuit Court of Appeals. See Petition for Review, *The Chemours Co. v. EPA*, No. 24-1192 (D.C. Cir. June 10, 2024), *available at* https://www.epa.gov/system/files/documents/2024-06/chemoursv.-epa_d.c.cir_.pdf; Petition for Review, *Nat'l Assoc. of Mfrs. v. EPA*, No. 24-1191 (D.C. Cir. June 10, 2024), *available at* https://www.fbm.com/content/uploads/2024/06/24-1191_Documents.pdf; Petition for Review, *Am. Water Works Assoc. v. EPA*, No. 24-1188 (D.C. Cir. June 7, 2024), *available at* https://www.awwa.org/Portals/0/AWWA/Government/062124Insiders/AWWA-vEPA-No-1188-DC-Cir-Filed-Petition.pdf. The changes to the MCLs that could result from these cases (or for other reasons) preclude Plaintiff's claims from being ripe at this time. See *Jowers v. S.C. Dep't of Health & Env't Control*, 423 S.C. 343, 364, 815 S.E.2d 446, 457 (2018) (finding action was not ripe because the plaintiff's claim "depends on there being no changes to the law regarding surface water withdrawals"). Because of these numerous contingencies and the resulting uncertainty, the facts alleged by Plaintiff demonstrate, at most, "the mere threat of potential injury," which is "too contingent or remote to support present adjudication." *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 228, 467 S.E.2d 913, 918 (1996) (quoting *Thrifty Rent-A-Car Sys., Inc. v. Thrifty Auto Sales of Charleston, Inc.*, 849 F. Supp. 1083, 1086 (D.S.C. 1991)). Thus, for this reason alone, Plaintiff's claims are not ripe for adjudication and should be dismissed.

In addition to Plaintiff's claims being premature, speculative, and legally insufficient, Plaintiff's claims may also intrude on regulatory territory reserved for federal oversight if permitted to proceed. Federal law may preempt state law in three ways: (1) Congress may

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

expressly define the extent to which it preempts state law; (2) Congress may occupy a field of regulation, "impliedly" preempting state law; or (3) a state law may be preempted to the extent it "conflicts" with federal law. *Normandy Corp. v. S.C. Dep't of Transp.*, 386 S.C. 393, 409, 688 S.E.2d 136, 145 (Ct. App. 2009).

Here, the Environmental Protection Agency ("EPA") issued a National Primary Drinking Water Regulation under the Safe Drinking Water Act to manage the risks of PFAS in drinking water. The new EPA regulation mandates several new obligations regarding PFAS including regular PFAS monitoring to the EPA. (See Compl. ¶ 47). The Safe Drinking Water Act already provides mechanisms for PFAS regulation and enforcement. Therefore, Plaintiff's state law claims should be decided under federal law.

## B.  Plaintiff lacks standing and the Complaint should be dismissed.

Plaintiff fails to establish any constitutional standing to bring this action.  For constitutional standing, a plaintiff must show: "(1) he suffered an invasion of a legally protected interest, which is concrete and particularized, and actual or imminent; (2) a causal connection between the injury and the challenged conduct; and (3) it is likely the injury will be redressed by a favorable decision." *S.C. Pub. Interest Found. v. S.C. Dep't of Transp.*, 421 S.C. 110, 117-18, 804 S.E.2d 854, 858 (2017).  "[A] private person may not invoke the judicial power to determine the validity of executive or legislative action unless he has sustained, or is in immediate danger of sustaining, prejudice therefrom." *Evins v. Richland Cnty. Historic Pres. Comm'n*, 341 S.C. 15, 21, 532 S.E.2d 876, 879 (2000).

Here, Plaintiff's claims rest entirely on speculative harm. Plaintiff alleges that it will incur future compliance costs and hypothetical property value reductions. (See Compl. ¶ 110). These regulations may not even become law in 2029. Plaintiff does not allege a concrete and

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

particularized injury. Furthermore, Plaintiff has failed to allege fact which show a causal connection between Plaintiff's alleged injury and Defendant's conduct. Therefore, Plaintiff has failed to establish standing to bring this action and the Complaint should be dismissed.

**C.  Plaintiff's individual claims against Elevate Textiles each fail as a matter of law.**

In addition to Plaintiff's failure to assert a justiciable dispute that is ripe for adjudication, each of Plaintiff's claims against Elevate are legally deficient, and should again be dismissed.

> *1.    Plaintiff's allegations of contamination of the Pee Dee River Watershed, the Waccamaw River, and the Intracoastal Waterway fail to state an actionable claim for private nuisance.*

Plaintiff's private nuisance claim against Elevate should be dismissed because the alleged contamination of a public water body cannot form the basis of a claim for private nuisance. Indeed, "[a] private nuisance affects only one person or a determinate number of persons," whereas "[a] nuisance is public because of the danger to the public which might have been created." *See Baltzeger v. Carolina Midland Ry. Co.*, 54 S.C. 242, 248, 32 S.E. 358, 360 (1899); *Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989) ("A nuisance is public because of the danger to the public which might have been created. It is private only because the individual as distinguished from the public has been or may be injured."); *see also Charleston Dev. Co. v. Alami*, 433 S.C. 533, 547-48, 860 S.E.2d 687, 695 (Ct. App. 2021) ("'A private nuisance is anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another. It produces damage to but one or two persons, and cannot be said to be public.'") (citations omitted); *accord Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96-97 (4th Cir. 2011) ("If the only interest that is invaded is an interest shared equally by members of the public, then the alleged nuisance is public in nature. Such a circumstance is precisely the situation presented here, because DuPont's allegedly tortious conduct interfered with the general

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

public's access to clean drinking water. . . . We therefore conclude . . . that when a release of pollutants directly affects a municipal water supply and does not interfere with any private water source, such as a well drilled on private property, the presence of the pollutants in the public water supply will not support a private nuisance claim.") (citations omitted).

Plaintiff's Complaint makes clear that its claims against Elevate are based on the alleged contamination of the Pee Dee River Watershed, the Waccamaw River, and the Intracoastal Waterway. (*See* Compl. ¶ 20)(alleging that Elevate discharges "industrial wastewater contaminated with products that contain or degrade to these PFAS from the Richmond Plant to Hitchcock Creek upstream of Great Pee Dee River and Bull Creek"); *see also id.* ¶¶ 2, 4-5, 48-52, 69-70, 72, 74, 76, 82-84, 88). However, Plaintiff is just one of the hundreds of riparian landowners with property located along the Pee Dee River Watershed, Waccamaw River and Intracoastal Waterway. Plaintiff's nuisance claim therefore involves an alleged nuisance that is "public in nature," which "will not support a private nuisance claim." *See Rhodes*, 636 F.3d at 96-97. As such, Plaintiff's private nuisance claim in Count 1 should be dismissed.

### 2.    *Plaintiff's claim for public nuisance fails as a matter of law.*

Plaintiff's public nuisance claim against Elevate should be dismissed because Plaintiff pleads no facts alleging that it has suffered any unique injury that is not suffered by the public at large, and it does not allege injury to its own real or personal property. A public nuisance can be asserted typically only by the State to remedy harms suffered by the public generally. *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 78 (2014). A private citizen generally cannot bring a suit to abate a public nuisance and must rely on the State to assert the claim. *Id.* The one exception to this rule allows a private entity to bring a suit for a public nuisance only if it suffered a "special injury." *Id.* The special injury must be an "individual or specific

8

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

damage in addition to that suffered by the public," *id.*, and "is satisfied only by injury to the individual's real or personal property." *Overcash v. S.C. Elec. & Gas Co.*, 364 S.C. 569, 575 (2005).

Plaintiff pleads no facts alleging that it has suffered any unique injury that is not suffered by the public at large, and it does not allege injury to its own real or personal property. Plaintiff alleges that its special injury is "the inability to provide potable water to customers without concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals deemed unsafe by the EPA" (Compl. ¶ 83). This alleged injury is no different than the injury allegedly suffered by the public at large – the alleged contamination of water with PFAS. (*See id.* ¶ 63). Also, although Plaintiff alleges that it "cannot use its properties", it does not identify an injury to its own personal or real property. (*Id.*). As such, Plaintiff's claim for public nuisance fails as a matter of law and should be dismissed.

### 3.     *Plaintiff fails to state a valid claim for trespass under South Carolina law.*

#### a.     PFAS are "intangible" particles that cannot support a trespass claim.

The South Carolina Supreme Court has definitively held that South Carolina follows "the traditional dimensional test and only recognizes intrusions by physical, tangible things as capable of constituting a trespass." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 152, 747 S.E.2d 468, 480 (2013). To constitute a physical and sufficiently tangible intrusion, the interference must be "with the right to exclusive possession," as opposed to "merely interfer[ing] with the right to use and enjoyment." *Id.* at 151, 747 S.E.2d at 480. Thus, intrusions by "microscopic particulates" or similarly intangible "infiltration[s] of contaminants onto a plaintiff's property" — while in some cases potentially could give rise to a claim for nuisance — do not constitute an actionable trespass under South Carolina law. *See id.* at 144-52, 747 S.E.2d at 476-80.

9

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Notably, in adhering to the traditional rule that requires "an invasion by a physical, tangible thing for a trespass to exist," the South Carolina Supreme Court recognized that "the dimensional test is an imperfect rule" that "does not comport with modern science's understanding of matter and the relationship between matter and energy." *Id.* at 150, 747 S.E.2d at 479.  Nevertheless, the court held that South Carolina's traditional rule remained "superior" to the rules formulated by "a divergent line of decisions," as the traditional rule does not require the adoption of an uncertain "substantiality requirement," but instead "possesses the virtues of clarity, ease of implementation, and ability to serve as a guide for future conduct," thus "yield[ing] a stable rule as to what rises to the level of a trespass." *Id.* at 146, 149-51, 747 S.E.2d at 477, 479-80.  The court further explained that the dimensional test preserves "the distinction between trespass and nuisance," whereas "the divergent view would transform trespass into nuisance," thereby "leav[ing] property owners with less, rather than more, protection of their property rights." *Id.* at 151-52, 747 S.E.2d at 480.

By retaining the traditional rule, the South Carolina Supreme Court expressly rejected "divergent" cases in Oregon and Alabama, which had held that intrusions of "fluoride particles" and "sulfoxide emissions" were sufficient to constitute a trespass despite their "intangible nature." *Id.* at 146-49, 747 S.E.2d at 477-78 (rejecting *Martin v. Reynolds Metals Co.*, 221 Or. 86, 342 P.2d 790 (1959), which involved "fluoride particles," and *Borland v. Sanders Lead Co.*, 369 So. 2d 523 (Ala. 1979), which involved "lead and sulfoxide emissions").[3] Instead, the *Babb* court followed the Michigan Court of Appeals' decision in *Adams v. Cleveland-Cliffs Iron Co.*, wherein the court concluded that dust is "not actionable in trespass" because "dust, along with other forms of

---

[3] The South Carolina Supreme Court's rejection of *Martin v. Reynolds Metals Co.* is particularly instructive, as the *Babb* court rejected the ruling in *Martin* that an intrusion of "fluoride particles" could constitute an actionable trespass, as fluoride is chemically related to and derived from fluorine, just like PFAS. *See* 405 S.C. at 146-50, 747 S.E.2d at 477-79; (*see* Compl. ¶¶ 27-28 (referring to PFAS strong and stable "carbon-fluorine bonds")).

10

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

airborne particulate, does not normally present itself as a significant physical intrusion," but instead "become[s] a part of the ambient circumstances of th[e] space" on which it settles. *See id.* at 149-50, 747 S.E.2d at 479; *see also* 237 Mich. App. 51, 67-70, 602 N.W.2d 215, 222-24 (1999).

In this case, Plaintiff's trespass claim is based on the alleged contamination from PFAS molecules, which are precisely the kind of "intangible matter" that the South Carolina Supreme Court held "are insufficient to constitute a trespass." *See Babb*, 405 S.C. at 144-52, 747 S.E.2d at 476-80. Indeed, Plaintiff's own Complaint demonstrates that PFAS molecules are microscopic particles — measured, if at all, in the parts per ***trillion*** — that cannot be visibly seen, felt, or otherwise perceived in water or any other medium. (*See* Compl. ¶¶ 36-37, 39-40, 42-43, 46). Moreover, the damages that Plaintiff alleges from the PFAS contamination are not to its "right to the exclusive, peaceable possession of [its] property," but are based on the alleged "losses to the use and enjoyment of its property rights," and the alleged "interference with Plaintiff's right to use and enjoy its property," which are remedied through (if by anything) a claim for nuisance, not trespass. (*See id.* ¶¶ 5, 63, 65); *see also Babb*, 405 S.C. at 139, 149-52, 747 S.E.2d at 473, 479-80 (citation omitted).[4] For these reasons, Plaintiff's allegations do not state an actionable claim for trespass under South Carolina law and Count 3 of Plaintiff's Complaint should be dismissed.

---

[4] *See also City of Lake Elmo v. 3M Co.*, 237 F. Supp. 3d 877, 888 (D. Minn. 2017) ("The Complaint alleges . . . that 3M trespassed upon Lake Elmo's property 'by contaminating it with PFCs and thereby preventing the City from using the groundwater within the aquifer that flows underneath the property.' As alleged, Lake Elmo is complaining of an invasion of the right to use and enjoy its land, rather than to exclusively possess its land. Accordingly, Lake Elmo's claim is one for nuisance, not trespass. Because Lake Elmo does not allege that 3M prevented it from possessing the groundwater, the trespass claim fails. The motion to dismiss is granted for this claim.") (citations omitted); *Barnes v. Birds Eye Foods, Inc.*, No. 1:10-CV-541, 2011 WL 13362363, at *6 (W.D. Mich. Sept. 26, 2011) (granting motion to dismiss trespass claim because "migrating groundwater interferes with the landowner's interest in use and enjoyment of the property . . . not his interest in excluding others from the property [as] is vindicated by a trespass action").

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

a. Plaintiff's trespass claim based on the alleged contamination of the Pee Dee River Watershed, the Waccamaw River and the Intracoastal Waterway fails for other reasons.

Plaintiff's trespass claim should also be dismissed for other reasons. For one thing, the claim fails because Plaintiff does not sufficiently allege a physical invasion of Plaintiff's property. As the South Carolina Supreme Court has made clear, trespass protects only the "right to *exclusive* possession." *See Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 150-51, 747 S.E.2d 468, 479-80 (2013) (emphasis added); *see also Charleston Joint Venture v. McPherson*, 308 S.C. 145, 153, 417 S.E.2d 544, 549 (1992) (same). Here, however, Plaintiff does not hold an exclusive right to the water from the Pee Dee River Watershed, Waccamaw River, or Intracoastal Waterway, only a riparian right of reasonable use. *See White v. Whitney Mfg. Co.*, 60 S.C. 254, 265, 38 S.E. 456, 460 (1901) (holding it is a "well-settled rule of law" that while a riparian owner has "an equal right to the use of the water which flows in the stream adjacent to his lands . . . [h]e has no property in the water itself, but a simple usufruct").

Although Plaintiff alleges that PFAS contamination is present on property that Plaintiff owns, "including its land, SWTPs, and related buildings, improvements, and equipment that make up its water distribution systems" Plaintiff concedes that this alleged contamination only occurs as a result of Plaintiff's own actions, i.e. when Plaintiff's "water pumps are active." (*See* Compl. ¶¶ 97, 99). Such allegations do not constitute an actionable trespass under South Carolina law, as instead "there must be an affirmative act" by the defendant, and "the invasion of the land must be intentional." *See Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991). Importantly, an act is only "intentional" if "done with knowledge that it will to a substantial certainty result in the entry of the foreign matter" on the plaintiff's land. *Sales v. S.C. Dep't of Transp.*, No. 2014-000582, 2016 WL 3607225, at *2 (S.C. Ct. App. June 30, 2016) (quoting Restatement (Second) of Torts § 158 cmt. i (1965)). Here, there could be no "substantial certainty"

12

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

that PFAS would enter Plaintiff's property, as such entry could not have occurred absent Plaintiff's intervening activation of its water pumps. Plaintiff also cannot show an "unauthorized entry" of PFAS on "property in its exclusive possession," as Plaintiff made its own voluntary decision to activate the water pumps and draw in water from a public waterway, which is likewise fatal to Plaintiff's trespass claim. *See Ravan v. Greenville Cnty.*, 315 S.C. 447, 464, 434 S.E.2d 296, 306 (Ct. App. 1993) ("The essence of trespass is the unauthorized entry onto the land of another.").

Simply put, courts have considered allegations similar to the Plaintiff's here, and have in turn held that a drinking water utility cannot state a cause of action for trespass when it voluntarily draws PFAS-contaminated water from a public water source. *See, e.g.*, *Utilities. Bd. of Tuskegee v. 3M Co.*, No. 2:22-cv-420, 2023 WL 1870912, at *16 (M.D. Ala. Feb. 9, 2023) ("Trespass . . . requires an invasion of property in plaintiff's exclusive possession. As alleged, the facts here do not sound in trespass because, unlike other indirect trespasses, Defendants' PFAS did not cross onto UBT's boundary line by a natural process. Rather, UBT pulls the water onto its property through an intake system from a public waterway (over which UBT does not have exclusive possession). Accordingly, there is no invasion onto UBT's property. . . . UBT's indirect trespass claims fail . . . for want of an invasion of property in its exclusive possession because UBT itself pulled the water onto its property from a public water source . . . .") (internal citation omitted). This Court should do the same and Count 3 of Plaintiff's Complaint should again be dismissed.

### 3. *Plaintiff's negligence claim against Elevate fails as a matter of law.*

#### a. Elevate does not owe a legal duty of care to the Plaintiff.

It is well-settled under South Carolina law that "[a]n essential element in a negligence action is 'the existence of a legal duty of care owed by the defendant to the plaintiff.'" *Shaw v. Psychemedics Corp.*, 426 S.C. 194, 197, 826 S.E.2d 281, 282 (2019) (quoting *Oblachinski v.*

13

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

*Reynolds*, 391 S.C. 557, 561, 706 S.E.2d 844, 845-46 (2011)).  "If there is no duty, then the defendant in a negligence action is entitled to judgment as a matter of law."  *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 135-36, 638 S.E.2d 650, 656 (2006) (citing *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999)); *see also McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 47, 644 S.E.2d 43, 46 (2007) ("In order for liability to attach based on a theory of negligence, the parties must have a relationship recognized by law as providing the foundation for a duty to prevent an injury." (citing *Huggins v. Citibank, N.A.*, 355 S.C. 329, 333, 585 S.E.2d 275, 277 (2003))).  Notably, "[a]n affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance."  *McPherson v. CSX Transportation, Inc.*, No. 4:16-cv-2725, 2017 WL 1135291, at *2 (D.S.C. Mar. 27, 2017) (citing *Madison ex rel. Bryant*, 371 S.C. at 136, 638 S.E.2d at 656-57).  "However, South Carolina courts 'will not extend the concept of a legal duty of care in tort liability beyond reasonable limits,'" and without more, "[f]oreseeability of injury, in and of itself, does not give rise to a duty."  *Shaw*, 426 S.C. at 198, 826 S.E.2d at 283 (quoting *McCullough*, 373 S.C. at 48, 644 S.E.2d at 46); *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614, 618, 586 S.E.2d 586, 588 (2003).

Here, Plaintiff does not allege any facts that suggest the existence of a relationship between it and Elevate sufficient to establish a legal duty of care.  Indeed, Plaintiff does not allege any duty "created by statute, a contractual relationship, status, property interest, or some other special circumstance," but instead alleges only that the "Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to [PFAS] to avoid causing an unreasonable risk of harm to others."  (*See* Compl. ¶ 103).  However, South Carolina does not recognize or impose such a broad and oversimplified duty of care.  Just the opposite, as under

14

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

South Carolina law, "one who has no control owes no duty." *See Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997) (citing *Clark v. Greenville Cnty.*, 313 S.C. 205, 209, 437 S.E.2d 117, 119 (1993)); *see also Ellis v. Tall Ships Charleston, LLC*, 593 F. Supp. 3d 253, 268 (D.S.C. 2022) ("Under South Carolina law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." (quoting *Faile v. S.C. Dep't of Juv. Just.*, 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002))). As a result of the absence of any duty, Plaintiff's negligence claim against Elevate in Count 4 of the Complaint should be dismissed.

      b.   <u>Plaintiff's alleged damages are not recoverable under negligence.</u>

Finally, Plaintiff's negligence claim against Elevate also fails as a matter of law because Plaintiff alleges no facts that would establish the element of damages. "Generally, under South Carolina law, the damages element [for a negligence claim] requires a plaintiff to establish physical injury or property damage." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 153, 747 S.E.2d 468, 481 (2013). As explained above, Plaintiff does not own the water in the Pee Dee River Watershed, the Waccamaw River, or the Intracoastal Waterway, but merely has a conditional right to use it. *See White v. Whitney Mfg. Co.*, 60 S.C. 254, 265, 38 S.E. 456, 460 (1901). The Complaint includes unexplained and conclusory allegations of damage or injury to Plaintiff's property, (*see, e.g.*, Compl. ¶¶ 61, 65, 110 (alleging unspecified "past, present, and future injury to property," and unnamed damages and "losses resulting from injury to its property")) but does not allege any facts showing that anything other than water from a public waterway has or could have been damaged by PFAS. Instead, the Complaint reveals that Plaintiff's alleged damages are only (contingent) losses in property ***value***, along with (potential) increases in future operating costs. Such allegations of damages do not implicate or suggest the kind of "physical injury or property damage" that is recoverable on a claim for negligence. *See Gray v. S. Facilities, Inc.*, 256 S.C. 558, 183

S.E.2d 438 (1971) *Gray v. S. Facilities, Inc.*, 256 S.C. 558, 566-71, 183 S.E.2d 438, 442-44 (1971) (finding property owner could not recover for diminution of the value of his property resulting from oil fire in adjacent river that did not cause physical damage to his property).

Furthermore, Plaintiff is a special purpose district that provides "potable water to residents of various counties in South Carolina, including Horry County." (Compl. ¶ 3). Under the municipal cost recovery rule, also known as the "free public services doctrine," public expenditures made in the performance of governmental functions, like those sought by Plaintiff to upgrade its SWTP, are not recoverable in tort. *See United States v. Standard Oil Co. of California*, 332 U.S. 301 (1947). Therefore, Plaintiff's damages claim for its future costs associated with the acquisition, installation and operation of adequate water treatment technologies would not be recoverable. Thus, for these additional reasons, Plaintiff's negligence claim fails as a matter of law and should be dismissed.

## III.    CONCLUSION

For all of the foregoing reasons, Elevate Textile, Inc.'s Motion to Dismiss should be granted, and all of the claims that Plaintiff has asserted against Elevate should be dismissed.

Dated: December 23, 2024                    GORDON REES SCULLY MANSUKHANI

By    *s/William H. Kleindienst*
William H. Kleindienst (SC 101278)
E-mail: wkleindienst@grsm.com
Brittney M. Darnell (SC 105274)
E-mail: bdarnell@grsm.com
677 King Street, Suite 450
Charleston, SC  29403
Telephone: (843) 278-5900
*Attorneys for Elevate Textiles, Inc.*

ELECTRONICALLY FILED - 2024 Dec 23 3:27 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

16

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF HORRY** | ) | **FIFTEENTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GRAND STRAND WATER AND SEWER AUTHORITY, | ) | C.A. No.: 2024-CP-26-05523 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**DEFENDANTS RED ROCK DISPOSAL, LLC AND SAMPSON COUNTY DISPOSAL, LLC' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Red Rock Disposal, LLC ("Red Rock") and Sampson County Disposal, LLC ("Sampson," collectively "Defendants"), by and through their undersigned counsel, and pursuant to Rules 8(a), 12(b)(1), 12(b)(2), and 12(b)(6) of the South Carolina Rules of Civil Procedure, hereby submit this memorandum of law in support of their motion to dismiss all claims asserted

1

against them in the Second Amended Complaint filed by the Plaintiff, Grand Strand Water and Sewer Authority ("Grand Strand"), respectfully stating as follows:

## I.     INTRODUCTION

Grand Strand's Second Amended Complaint (the "Complaint") is subject to dismissal on multiple grounds.  As a threshold matter, the Court lacks personal jurisdiction over the Defendants. The Defendants are both North Carolina residents and have no contacts with South Carolina. Grand Strand does not allege Defendants engaged in any conduct in, or directed at, South Carolina. Subjecting Defendants to suit in South Carolina would violate constitutional due process protections and the South Carolina long-arm statute.

In addition to the jurisdictional defect, Grand Strand has not stated a valid claim against Defendants for a number of reasons. For one, the dispute is not ripe for judicial review.  Grand Strand's claims are based on the newly-promulgated drinking water standards for certain per- and polyfluoroalkyl substances ("PFAS"), which Grand Strand does not have to comply with until at least 2029. Even assuming the standards go into effect as written at that time (they are currently being challenged in federal court), it is unknowable what measures, if any, Grand Strand will have to take to meet them. The rule includes a three-year initial testing period that has only just begun. Grand Strand does not allege that it has incurred any costs—or taken any action at all—due to the new rule or on account of alleged PFAS-contaminated water.  The costs it is seeking to recover—future expenses it might incur to acquire and operate a new water treatment system—are inherently conjectural and contingent. Accordingly, this lawsuit is premature and should be dismissed.

If Grand Strand's claims are allowed to proceed now, there is potential that Grand Strand would receive an unwarranted windfall. Grand Strand asks the Court to speculate that the condition of its source water five years from now will be the same as it is today—that there will be no

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

changes to PFAS contributions to its source water (such as would result from the installation of third-party wastewater pretreatment systems), river flow rates, or any other developments that will moot Grand Strand's claims before 2029. Furthermore, in the event Grand Strand's claims do become ripe, they will lie only against any parties legally responsible for contributing PFAS to Grand Strand's source water at that time, not today.

Grand Strand's claims against Defendants also fail on additional grounds. The injuries Grand Strand ascribes to Defendants arise from the alleged discharge of PFAS from the Lumberton Wastewater Treatment Plant, a third-party, and not from Defendants' landfills. Grand Strand alleges that Defendants deliver leachate to Lumberton and that discharges from Lumberton flow downstream and contaminate Grand Strand's water sources. But Grand Strand does not allege that Defendants have any control over Lumberton's operations or discharges. South Carolina law does not allow Grand Strand to sue Defendants for Lumberton's discharges.

In addition to the above deficiencies, Grand Strand's complaint against Defendants fails because:

1. The alleged contamination of the riverways affects the general public and cannot support a claim for private nuisance;

2. PFAS molecules are "intangible" matter that as a matter of law cannot constitute a trespass;

3. Grand Strand has no claim for trespass because the PFAS only allegedly entered its property as a result of its own actions;

4. Defendants owe no duty to Grand Strand and therefore cannot be liable for negligence; and

5. Grand Strand does not allege that it suffered any physical injury or property damage as required for a valid negligence claim.

For all of these reasons, and as explained in more detail below, the Complaint should be dismissed.

3

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## II.       ARGUMENT AND CITATION OF AUTHORITY

### A.       South Carolina Law Applies to Grand Strand's Claims.

Grand Strand alleges that its claims against Defendants arise under North Carolina law. (Compl., ¶ 9).  But under South Carolina choice-of-law rules, South Carolina law applies to Grand Strand's claims.  The substantive law governing tort actions filed in South Carolina is determined by the *lex loci delicti*, "the law of the state in which the injury occurred." *Boone v. Boone*, 345 S.C. 8, 13, 546 S.E.2d 191, 193 (2001). Under this test, the applicable law is that of  "the state where the last event necessary to make an actor liable for an alleged tort takes place." *Friedman as trustee for SportCo Creditors Liquidation Tr. v. Wellspring Cap. Mgmt., LLC*, 651 B.R. 509, 516 (Bankr. D.S.C. 2023) (quoting *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) (quoting RESTATEMENT (FIRST) OF CONFLICT OF LAWS § 377 (1934))).[1]  For each of Grand Strand's claims, that event is the alleged contamination of Grand Strand's property and sources waters, which are all located in South Carolina. (Compl., ¶ 16). Thus, Grand Strand's claims are governed by South Carolina law.

### B.       The Court Lacks Personal Jurisdiction Over Defendants.

Defendants are not residents of South Carolina (Compl., ¶ 22). Furthermore, they have not, at any time, been present or conducted any activity in South Carolina. (*See* **Exhibit A**, Affidavit

---

[1] Note 3 to Restatement (First) of Conflict of Laws § 377 (1934) offers examples analogous to the allegations in this case which confirm that South Carolina is the place of the alleged wrong for purposes of the *lex loci delicti* analysis:

> *3. When harm is caused to land or chattels, the place of wrong is the place where the force takes effect on the thing.*
> *Illustrations:*
> *A, standing in state X, throws a stone with which he breaks a mirror in state Y. The place of the wrong is state Y.*
> *A, in state X, throws out noxious fumes from a chimney which destroy the grass of B in state Y. The place of the wrong is in Y.*

4

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

of Anthony Pelletier).[2] Each Defendant's sole business is operating a solid waste landfill in North Carolina. *Id.* The landfills do not accept waste from South Carolina. *Id.* Neither Defendant does business, is registered to do business, or solicits business in South Carolina. *Id.* They also do not own any property or have any employees in South Carolina. *Id.*

Jurisdiction in this Court could therefore only arise under the South Carolina long-arm statute, S.C. Code Ann. § 36–2–803. *See Cribb v. Spatholt*, 382 S.C. 475, 482, 676 S.E.2d 706, 710 (Ct. App. 2009). For the statute to apply, however, Grand Strand must demonstrate that, despite never being present South Carolina, Defendants' contacts with the state are substantial enough that compelling them to defend a suit in this Court "does not offend traditional notions of fair play and justice" and is consistent with due process. *Aviation Assocs. & Consultants, Inc. v. Jet Time, Inc.*, 303 S.C. 502, 507, 402 S.E.2d 177, 180 (1991). Jurisdiction can only attach if the plaintiff identifies "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." *Coggeshall v. Reprod. Endocrine Assocs. of Charlotte*, 376 S.C. 12, 16, 655 S.E.2d 476, 478 (2007). It requires showing that Defendants have "directed [their] activities to a resident of [South Carolina] and that the cause of action arises out of or relates to those activities." *S. Plastics Co. v. S. Com. Bank*, 310 S.C. 256, 260, 423 S.E.2d 128, 131 (1992). The court's "principal inquiry" in this type of jurisdictional assessment "is whether the defendant's activities manifest an intention to submit to the power of a sovereign." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882, 131 S. Ct. 2780, 2788, 180 L. Ed. 2d 765 (2011).

---

[2] When a party challenges personal jurisdiction in a motion to dismiss, the court does not need to consider only the allegations in the complaint but may rely on affidavits or other evidence. *See Abdulla v. S. Bank*, 439 S.C. 391, 400, 887 S.E.2d 138, 143 (Ct. App. 2023).

5

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Grand Strand cannot meet its burden. It alleges no conduct by Defendants that satisfy these requirements of jurisdiction.  Defendants' actions are directed exclusively within North Carolina. The allegedly wrongful actions are limited to moving leachate between Defendants' North Carolina landfills and a permitted wastewater treatment plant in North Carolina. (Compl., ¶ 22). Grand Strand alleges that Defendants put in motion a series of events—Lumberton's failure to adequately treat wastewater, Lumberton's discharge of contaminated effluent into the Lumber River, and the carrying of PFAS through a river network to Grand Strand's water intakes—that eventually result in impacts within South Carolina. But the indirect results of Defendants' North Carolina activity does not extend the Court's jurisdiction to them.

In the personal jurisdiction analysis, "the focus must center on the contacts generated by the defendant, and not on the unilateral actions of some other entity." *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 492 (2005).  "Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).  It is only Lumberton's unilateral actions in treating and discharging wastewater that allegedly connect Defendants' out-of-state contact with South Carolina, which cannot suffice.

Nor does this Court acquire jurisdiction by virtue of Grand Strand's allegations that Defendants "knew or should have known" that Lumberton's discharge would result in harm in South Carolina. The U.S. Supreme Court has "consistently held" that "foreseeability of causing injury in another state…is not a sufficient benchmark for exercising personal jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quotations omitted).  In fact, basing jurisdiction "on general notions of fairness and foreseeability, is inconsistent with the premises of

lawful judicial power." *Nicastro*, 564 U.S. at 883. Because "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id*.; *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) (holding that sellers of automobiles in New York were not subject to jurisdiction in Oklahoma in case arising from car accident there despite foreseeability that cars they sold would be driven to that state). Here, Defendants' actions are contained entirely within North Carolina. Thus, this Court has no jurisdiction over the claims against them and the Complaint should be dismissed on that basis.

**C.**       **Grand Strand's Claims Are Not Ripe**

"A threshold inquiry for any court is a determination of justiciability, *i.e.*, whether the litigation presents an active case or controversy." *Lennon v. S.C. Coastal Council*, 330 S.C. 414, 415, 498 S.E.2d 906, 906 (Ct. App. 1998). This includes an assessment of whether the plaintiff's claims are ripe for adjudication. *See James v. Anne's Inc*., 390 S.C. 188, 193, 701 S.E.2d 730, 732 (2010). A claim is not ripe and should be dismissed when it presents "a contingent, hypothetical or abstract dispute." *Pee Dee Elec. Co-op., Inc. v. Carolina Power & Light Co*., 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983).

Grand Strand's allegations demonstrate that it has not yet suffered any legally cognizable injury due to PFAS, and such injury may never come to pass. Although the U.S. Environmental Protection Agency's PFAS drinking water standards ("maximum contaminant levels" or "MCLs") became final in April 2024, (Compl., ¶ 45), it has not yet been determined how, if at all, the rule will impact Grand Strand. Grand Strand will not have to comply with the MCLs until 2029. (*Id*., ¶ 47). Before that, there is a three year "initial monitoring" period that runs through April 2027. (*Id*.); *see also* PFAS National Primary Drinking Water Regulation, 89 Fed. Reg. 32,532, 32,633 (April 26, 2024) (codified at 40 CFR Parts 141 and 142).

7

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Grand Strand does not allege any facts indicating that, at this time, it is doing anything other than waiting to see if and when it will have to take action to comply with the MCLs in 2029. Grand Strand has not alleged it has incurred any costs or expenses whatsoever due to PFAS in its source water. Rather, it is seeking "expenses associated with the *future* acquisition, installation, and operation of required treatment technologies[.]" (Compl., ¶ 83 (emphasis added)). Nothing in the Complaint indicates that Grand Strand's operations have changed at all from the period before the MCLs were finalized in April or as a result of PFAS in Bull Creek or the Intracoastal Waterway.

This status quo may continue indefinitely. Grand Strand's testing during the initial monitoring period may indicate Grand Strand will not be required to make any capital investments to remain in compliance with applicable regulations. It is also uncertain whether the MCLs will remain valid law by the time they would be applicable to Grand Strand. In June 2024, three sets of plaintiffs filed challenges to EPA's rule in actions currently pending before the Court of Appeals for the D.C. Circuit. *See Am. Water Works Assoc. v. U.S. EPA*, Case No. 24-1188; *Nat'l Assoc. of Manufacturers, et al. v. U.S. EPA*, Case No. 24-1191; *The Chemours Company FC, LLC v. U.S. EPA*, Case No. 24-1192. The potential changes that could result from these cases (or for other reasons) preclude Grand Strand's claims from being ripe at this time. *See Jowers v. S.C. Dep't of Health & Env't Control*, 423 S.C. 343, 364, 815 S.E.2d 446, 457 (2018) (finding that action was not ripe because the plaintiff's claim "depends on there being no changes to the law regarding surface water withdrawals."). Because of these numerous uncertainties, the facts alleged by Grand Strand demonstrate, at most, "the mere threat of potential injury," which is "too contingent or remote to support present adjudication." *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 228, 467 S.E.2d 913, 918 (1996) (quoting *Thrifty Rent–A–Car Sys., Inc. v. Thrifty Auto Sales*

8

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

*of Charleston, Inc.*, 849 F. Supp. 1083, 1086 (D.S.C. 1991)). Accordingly, Grand Strand's claims are not ripe and should be dismissed.

**D.**       **Each of Grand Strand's Causes of Action Against Defendants Fail as a Matter of Law.**

   ***1.***       ***Grand Strand Has No Claim for Nuisance Against Defendants Because Defendants Do Not Control the Source of the Alleged Nuisance.***

As a matter of South Carolina law, Defendants cannot be liable to Grand Strand for nuisance for delivering leachate to a third-party wastewater treatment plant. Nuisance law is a mechanism for resolving "conflicting interests of **landowners**" and balancing their competing rights. *Winget v. Winn-Dixie Stores, Inc.*, 242 S.C. 152, 159, 130 S.E.2d 363, 367 (1963) (emphasis added); *see also O'Cain v. O'Cain*, 322 S.C. 551, 560, 473 S.E.2d 460, 465 (Ct. App. 1996). It follows, the South Carolina Supreme Court has held, that "one who has no control over property at the time of the alleged nuisance cannot be held liable therefor." *Clark v. Greenville Cnty.*, 313 S.C. 205, 210, 437 S.E.2d 117, 119 (1993). The alleged nuisance for which Grand Strand alleges Defendants are responsible arises solely from Lumberton's discharges from its wastewater treatment plant. Defendants have no control over that facility and cannot be liable for its discharges.

*Greenville County* is indistinguishable in all material respects. In *Greenville County*, the plaintiffs alleged that their properties were contaminated by hazardous waste that had escaped from a nearby landfill. They sued the landfill as well as a number of corporations that had sent the hazardous waste to the landfill for disposal. The South Carolina Supreme Court affirmed judgment for the corporations on the nuisance claim because plaintiffs "neither alleged nor produced any evidence the corporate respondents had control over the landfill or the hazardous waste once it was deposited at the landfill." *Id*. at 210, 437 S.E.2d at 119. Likewise, Grand Strand concedes that control of the allegedly PFAS containing wastewater is passed from Defendants to Lumberton

9

before any PFAS is discharged into the river system, and Grand Strand does not allege that Defendants have any control over Lumberton's treatment facility.

A South Carolina federal court, in *Weatherford v. E.I. Dupont de Neumours & Co.*, No. 4:22-CV-1427-RBH, 2023 WL 11015357 (D.S.C. Sept. 27, 2023), recently held that *Greenville County* compelled it to dismiss PFAS nuisance claims nearly identical to Grand Strand's. In *Weatherford*, the plaintiffs alleged that their drinking water wells were contaminated with PFAS which had been discharged from a textile facility's wastewater treatment plant. They brought claims against the companies that manufactured and distributed the PFAS to that facility. The court dismissed the nuisance claims because those defendants were not alleged to have control over the manufacturing facility (*id*. at 6), despite the plaintiffs' allegation that the defendants "knew [the PFAS they supplied] would go into the water and soil surrounding the textile plant." *Id*. at 1. The same result is required here. Accordingly, Counts 1 (private nuisance) and 2 (public nuisance)[3] should be dismissed.

### 2.  *Grand Strand's Allegations of Contamination of Public Waterways Do Not State a Claim for Private Nuisance.*

Grand Strand's private nuisance claim should be dismissed for the additional reason that the alleged contamination of a public waterway cannot be the basis of a private nuisance claim. A private nuisance "produces damage to but one or two persons, and cannot be said to be public." *Charleston Dev. Co., LLC v. Alami*, 433 S.C. 533, 547-48, 860 S.E.2d 687, 695 (Ct. App. 2021) (quoting *Deason v. S. Ry. Co.*, 142 S.C. 328, 334, 140 S.E. 575, 577 (1927)); *see also Baltzeger v. Carolina Midland Ry. Co.*, 54 S.C. 242, 248, 32 S.E. 358, 360 (1899) ("A private nuisance affects

---

[3] Defendants' lack of control over Lumberton's plant precludes Grand Strand's public and private nuisance claims, as the difference between the two causes of action is based only on the persons affected, not "the nature or character of the thing or activity itself." *Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989).

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

only one person or a determinate number of persons." (quoting 16 Am. & Eng. Enc. Law, 926));
*accord Rhodes v. E.I. du Pont de Nemours & Co.,* 636 F.3d 88, 96-97 (4th Cir. 2011) (holding
"that when a release of pollutants directly affects a municipal water supply and does not interfere
with any private water source…the presence of the pollutants in the public water supply will not
support a private nuisance claim.") Grand Strand is just one of the many riparian landowners in
the more than 60 miles of river between Lumberton and Grand Strand's property.[4]

### 3. *Grand Strand's Allegations Do Not Support a Trespass Claim Under South Carolina Law.*

a.    <u>PFAS particles are "intangible" matter that cannot support a trespass claim.</u>

South Carolina follows the traditional rule that there must be "an invasion by a physical,
tangible thing for a trespass to exist." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 145, 747
S.E.2d 468, 476 (2013). To qualify as "tangible," the invasion must "interfere with the right to
exclusive possession" and not "merely interfere with the right to use and enjoyment." *Id*. at 151, 747
S.E.2d at 480. Invasion by "microscopic particulates" are not "tangible" and can support, if anything,
only a nuisance claim, but do not constitute trespass. *Id*. at 146, 747 S.E.2d at 477.

PFAS molecules are quintessentially "intangible." The alleged PFAS at issue in this case
are measured, if at all, in the parts per ***trillion***. (Compl., ¶¶ 36-47). Grand Strand does not allege
(nor could it) that PFAS can be seen, felt, or otherwise perceived in water. PFAS in water is the
equivalent of dust in air, which is "intangible" under the traditional rule that South Carolina follows.
As the court explained in *Adams v. Cleveland-Cliffs Iron Co*., 237 Mich. App. 51, 69 (1999)—the

---

[4] A court may take judicial notice of a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201(b), SCRE. "'[G]eographical information is especially appropriate for judicial notice.'" *Prioleau v. Wallace*, No. 5:24-cv-1171, 2024 WL 3416605, at *1 (D.S.C. May 24, 2024), *adopted by* 2024 WL 3412324 (D.S.C. July 15, 2024) (quoting *United States v. Johnson*, 726 F.2d 1018, 1021 (4th Cir. 1984)). The distance between the Lumberton wastewater treatment plant and Grand Strand's property in Myrtle Beach (the closer of the two) is more than sixty miles "as the crow flies." The length of the rivers between the two locations is longer.

case which persuaded the *Babb* Court to adopt the traditional rule—while "dust particles are tangible objects in a strict sense that they can be touched and are comprised of physical elements," they cannot form the basis of a trespass claim because dust "does not normally present itself as a significant physical intrusion." PFAS molecules likewise "do not normally occupy the land [or water] on which they settle in any meaningful sense" but rather "simply become a part of the ambient circumstances of that space." *Id*. at 70.

PFAS are also equivalent to the microscopic fluoride particles that were the subject of the trespass action in *Martin v. Reynolds Metals Co.*, 221 Or. 86 (1959) (PFAS—per- and poly***fluoro***alkyl substances—are all fluorinated compounds) (Compl., ¶¶ 27-28). Although the *Martin* court found trespass liability, the *Babb* court specifically rejected *Martin* and this expanded theory of trespass law. Grand Strand's claims are squarely at odds with *Babb*.

The nature of Grand Strand's claims confirm that dismissal is the correct result. The core of Grand Strand's Complaint is that its ability to use its property to provide drinking water to its customers is (or rather, will be) negatively impacted. Its allegations do not implicate its "right to the exclusive, peaceable possession of [its] property." *Babb*, 405 S.C. at 139, 747 S.E.2d at 473 (quoting *Ravan v. Greenville Cnty.*, 315 S.C. 447, 463, 434 S.E.2d 296, 306 (Ct. App. 1993)). It is therefore nuisance law that would provide the remedy, if there was in fact a wrong (which there is not).[5] In all respects, this case is a quintessential nuisance matter and Grand Strand's attempts to dress it in other tort theories should be rejected.

---

[5] *See also City of Lake Elmo v. 3M Co.*, 237 F. Supp. 3d 877, 888 (D. Minn. 2017) (finding that complaint alleging contamination of groundwater used for drinking water with PFAS stated a claim for nuisance but not trespass because plaintiff "is complaining of an invasion of the right to use and enjoy its land, rather than to exclusively possess its land" and "[b]ecause [plaintiff] does not allege that [defendant] prevented it from possessing the groundwater, the trespass claim fails.")

12

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

b.    The alleged contamination of the Bull Creek and the Intracoastal Waterway cannot constitute a trespass to Grand Strand.

Grand Strand's trespass claim also fails because Grand Strand does not allege that there has been any actionable invasion of Grand Strand's property. Trespass protects only the "rights of ***exclusive*** possession." *Babb*, 405 S.C. at 141, 747 S.E.2d at 475 (emphasis added). Grand Strand has no such right in the river water, but rather only a riparian right of reasonable use. *See White v. Whitney Mfg. Co.*, 60 S.C. 254, 265, 38 S.E. 456, 460 (1901) (holding that although a riparian owner has "an equal right to the use of the water which flows in the stream adjacent to his lands. . . . He has no property in the water itself, but a simple usufruct.") (quotation omitted).

Although Grand Strand alleges that PFAS have been present on the property it owns, they got there only as a result of Grand Strand's own actions: the alleged invasion occurs only when Grand Strand's "water pumps are active." (Compl., ¶ 97). This does not constitute a trespass under South Carolina law, which requires that the trespass be caused by a defendant's "affirmative act [and that] ***the invasion of the land must be intentional*** . . . ." *Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991) (emphasis added). An act is only "intentional" if it "is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter" on the plaintiff's land. *Sales v. S.C. Dep't of Transportation*, No. 2014-000582, 2016 WL 3607225, at *2 (S.C. Ct. App. June 30, 2016) (quoting Restatement (Second) of Torts § 158 cmt. i (1965)). There can be no such certainty that any PFAS will enter Grand Strand's property absent Grand Strand's intervening acts. Likewise, there is no trespass because Grand Strand's instrumental role prevents the presence of PFAS there from being "unauthorized." *See Ravan v. Greenville Cnty.*, 315 S.C. 447, 464, 434 S.E.2d 296, 306 (Ct. App. 1993) ("The essence of trespass is the unauthorized entry onto the land of another.").

13

Multiple courts have recently found that a drinking water utility has no cause of action for trespass where it voluntarily draws PFAS contaminated water from a public water source. *See Utilities Bd. of Tuskegee v. 3M Co., Inc.*, No. 2:22-cv-420-WKW, 2023 WL 1870912, at *16 (M.D. Ala. Feb. 9, 2023) ("As alleged, the facts here do not sound in trespass because, unlike other indirect trespasses, Defendants' PFAS did not cross onto [plaintiff's] boundary line by a natural process."); *see also W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 208 F. Supp. 3d 1227, 1235 (N.D. Ala. 2016). This Court should reach the same conclusion and dismiss Count 3.

> **4.      Grand Strand Has Failed to State a Claim for Negligence Against Defendants.**

> a.      <u>Defendants owe no duty to Grand Strand.</u>

It is well-settled under South Carolina law that "[a]n essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." *Huggins v. Citibank, N.A.*, 355 S.C. 329, 332, 585 S.E.2d 275, 276 (2003). There can be no negligence liability unless the parties "have a relationship recognized by law as providing the foundation for a duty to prevent an injury." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 47, 644 S.E.2d 43, 46 (2007). Such a duty "may be created by statute, a contractual relationship, status, property interest, or some other special circumstance." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 136, 638 S.E.2d 650, 656-57 (2006). But "[f]oreseeability of injury, in and of itself, does not give rise to a duty." *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614, 618, 586 S.E.2d 586, 588 (2003).

Grand Strand does not allege any facts that suggest any relationship between Defendants and Grand Strand sufficient to establish a duty. Grand Strand does not allege that it and Defendants have any contractual, business, or other relationship of any kind on which a duty could be found.

With respect to duty, the Complaint asserts only that all of the "Defendants have a duty to use due care in the handling, use and disposal of products containing or degrading to [PFAS] to avoid

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

causing an unreasonable risk of harm to others." (Compl. ¶ 103). But South Carolina does not impose such a broad and general duty. To the contrary, "there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." *Babcock Ctr.,* 371 S.C. at 136, 638 S.E.2d at 656. Furthermore, "one who has no control owes no duty." *Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997). Accordingly, in delivering its wastewater to Lumberton, Defendants had no duty to ensure that Lumberton treated the wastewater in a way that did not risk harm to third parties and thus owed no duty to Grand Strand. *See, e.g.*, *Oulla v. Velazques*, 427 S.C. 428, 444, 831 S.E.2d 450, 458 (Ct. App. 2019) (finding that sod manufacturer that placed sod on truck which subsequently fell and injured motorist did not owe a duty to motorist to ensure that the sod was properly secured).

        b.    <u>Grand Strand has not alleged a type of damages that are recoverable under a negligence theory.</u>

Grand Strand's negligence claim also fails because Grand Strand alleges no facts that would establish the damages element of such a claim, which "requires a plaintiff to establish physical injury or property damage." *Babb*, 405 S.C. at 153, 747 S.E.2d at 481. As explained above, Grand Strand does not own the water in Bull Creek or the Intracoastal Waterway, but merely has a conditional right to use it. *See Whitney Mfg. Co*., 60 S.C. at 265, 38 S.E. at 460. The Complaint makes unexplained and conclusory references to damage or injury to property, but does not allege any facts showing that anything other than river water has or could be damaged by PFAS. Instead, the Complaint reveals that Grand Strand's alleged damages are only (contingent) losses in property *value* and (potential) increases in operating costs in the future. Such damages are not "physical injury or property damage" recoverable in negligence. *See Gray v. S. Facilities, Inc.*, 256 S.C. 558, 183 S.E.2d 438 (1971) (finding that property owner could not recover for diminution of the value of his property resulting from oil fire in adjacent river that did not cause

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

physical damage to his property). Thus, for this reason as well, Grand Strand's negligence claim fails as a matter of law and should be dismissed.

### III.     CONCLUSION

For all of the foregoing reasons, Red Rock Disposal, LLC and Sampson County Disposal, LLC's Motion to Dismiss should be granted, and all of the claims that Grand Strand has asserted against them should be dismissed.

**WILLIAMS MULLEN**

By: s/ John G. Tamasitis
Richard H. Willis (S.C. Bar No.: 6159)
rwillis@williamsmullen.com
John G. Tamasitis (S.C. Bar No.: 101875)
jtamasitis@williamsmullen.com
1230 Main Street, Suite 330
Columbia, SC 29201
Tel: 803.567.4615

*And*

Philip L. Comella (*PHV Admission to be filed*)
pcomella@taftlaw.com
Ryan G. Rudich (*PHV Admission to be filed*)
rrudich@taftlaw.com
Taft Stettinius & Hollister
111 E. Wacker Drive, Suite 2600
Chicago, IL 60601
Tel. 312.527.4000

*Counsel for Defendants Red Rock Disposal, LLC and Sampson County Disposal*

December 23, 2024

Columbia, South Carolina

16

# Exhibit A

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | ) **IN THE COURT OF COMMON** |
| | ) **PLEAS** |
| **COUNTY OF HORRY** | ) |
| | ) **FIFTEENTH JUDICIAL CIRCUIT** |
| | ) |
| GRAND STRAND WATER AND SEWER | ) |
| AUTHORITY, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| *v.* | ) |
| | ) |
| ALADDIN MANUFACTURING | ) |
| CORPORATION; BURLINGTON | ) |
| INDUSTRIES, INC.; DELTA MILLS, INC., | ) |
| its predecessors, successors, assigns, and/or | ) |
| responsible parties; DOMTAR PAPER | ) |
| COMPANY, LLC; ELEVATE TEXTILES, | ) C.A. No.: 2024-CP-26-05523 |
| INC.; FIBER INDUSTRIES, LLC; GFL | ) |
| ENVIRONMENTAL USA, INC.; J.P. | ) |
| STEVENS & COMPANY, INC., its | ) |
| predecessors, successors, assigns, and/or | ) |
| responsible parties; MOHAWK | ) |
| INDUSTRIES, INC.; NAN YA PLASTICS | ) |
| CORPORATION, AMERICA; PRET | ) |
| ADVANCED MATERIALS, LLC; RED | ) |
| ROCK DISPOSAL, LLC; SAMPSON | ) |
| COUNTY DISPOSAL, LLC; and WASTE | ) |
| INDUSTRIES, LLC, | ) |
| | ) |
| *Defendants.* | ) |

## AFFIDAVIT OF ANTHONY PELLETIER

Anthony Pelletier, being duly sworn, deposes and says:

1.      I am over 18 years of age, of sound mind and otherwise competent to make this Affidavit.

2.      My title is Vice President - Post-Collections Support for GFL Environmental.  In this position, I have gained an understanding of the corporate structure of GFL, the different lines of business in which the company operates, and the nature and scope of those businesses.

1

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

3.    The evidence set out in this Affidavit is based on both my personal knowledge and information assembled by other authorized personnel and company representatives.

**Sampson County Disposal, LLC**

4.    Sampson County Disposal, LLC is a North Carolina limited liability company.

5.    Sampson County Disposal, LLC's sole business is operating the Sampson County Landfill in Roseboro, North Carolina and that facility is its principal place of business.

6.    Sampson County Disposal, LLC is not registered to do business in South Carolina.

7.    Sampson County Disposal, LLC does not do business in South Carolina.

8.    Sampson County Disposal, LLC does not own, lease, or maintain any property in South Carolina.

9.    Sampson County Disposal, LLC does not maintain an office, place of business, or mailing address in South Carolina.

10.    Sampson County Disposal, LLC does not have any employees in South Carolina.

11.    Sampson County Disposal, LLC does not advertise, solicit business, or engage in any marketing in South Carolina

12.    The Sampson County Landfill does not accept waste from outside of North Carolina.

**Red Rock Disposal, LLC**

13.    Red Rock Disposal, LLC is a North Carolina limited liability company.

14.    Red Rock Disposal, LLC's sole business is operating the Red Rock Landfill in Holly Springs, North Carolina, which does not accept waste from outside of North Carolina and is Red Rock Disposal, LLC's principal place of business.

15.    Red Rock Disposal, LLC is not registered to do business in South Carolina.

16.    Red Rock Disposal, LLC does not do business in South Carolina.

2

ELECTRONICALLY FILED - 2024 Dec 23 5:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

17.     Red Rock Disposal, LLC does not own, lease, or maintain any property in South Carolina.

18.     Red Rock Disposal, LLC does not maintain an office, place of business, or mailing address in South Carolina.

19.     Red Rock Disposal, LLC does not have any employees in South Carolina.

20.     Red Rock Disposal, LLC does not advertise, solicit business, or engage in any marketing in South Carolina.

Executed on this 21st day of December, 2024.



_____
Anthony Pelletier

Sworn to before me this 21st day of December, 2024.

_____
NOTARY NAME
Notary Public/[OTHER PERSON AUTHORIZED TO TAKE OATHS]]
My Commission Expires: _____12-06-2025_____

DAVID VAUGHAN
Notary Public
State of Ohio
My Comm. Expires
December 6, 2025

3

ELECTRONICALLY FILED - 2024 Dec 23 1:59 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | **FIFTEENTH JUDICIAL CIRCUIT** |
| **COUNTY OF HORRY** | ) | **CASE NO.: 2024-CP-26-05523** |
| | ) | |
| GRAND STRAND WATER AND SEWER AUTHORITY, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **ELEVATE TEXTILES, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| Defendants. | ) ) | |

COMES NOW, Defendant Elevate Textiles, Inc., (hereinafter "Defendant" or "Elevate") pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the South Carolina Rules of Civil Procedure, and moves this Court for an order dismissing all claims asserted against Elevate in the Second Amended Complaint. This Motion is based on the pleadings of record and those grounds, arguments and authorities set forth in a Memorandum of Law in Support of this Motion being submitted contemporaneously herewith. Elevate's participation in discovery in this matter prior to this Motion being heard shall not be construed as a waiver by Elevate of any rights, defenses or objections, including lack of personal jurisdiction, all of which are expressly reserved.

ELECTRONICALLY FILED - 2024 Dec 23 1:59 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Dated: December 23, 2024          GORDON REES SCULLY MANSUKHANI

By    *s/William H. Kleindienst*
        William H. Kleindienst (SC 101278)
        E-mail: wkleindienst@grsm.com
        Brittney M. Darnell (SC 105274)
        E-mail: bdarnell@grsm.com
        677 King Street, Suite 450
        Charleston, SC  29403
        Telephone: (843) 278-5900
        *Attorneys for Elevate Textiles, Inc.*

2

ELECTRONICALLY FILED - 2024 Dec 23 5:00 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF HORRY** | ) | **FIFTEENTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GRAND STRAND WATER AND SEWER AUTHORITY, | ) | C.A. No.: 2024-CP-26-05523 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**DEFENDANTS RED ROCK DISPOSAL, LLC AND SAMPSON COUNTY DISPOSAL, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Red Rock Disposal, LLC and Sampson County Disposal, LLC, by and through their undersigned counsel, and pursuant to Rules 8(a), 12(b)(1), 12(b)(2), and 12(b)(6) of the South Carolina Rules of Civil Procedure, hereby move this Court to dismiss all claims asserted against them in the Second Amended Complaint filed by the Plaintiff, Grand Strand Water and Sewer Authority. A separate memorandum of law shall be filed contemporaneously herewith.

1

**WILLIAMS MULLEN**

By: s/ John G. Tamasitis
Richard H. Willis (S.C. Bar No.: 6159)
rwillis@williamsmullen.com
John G. Tamasitis (S.C. Bar No.: 101875)
jtamasitis@williamsmullen.com
1230 Main Street, Suite 330
Columbia, SC 29201
Tel: 803.567.4615

*And*

Philip L. Comella (*PHV Admission to be filed*)
pcomella@taftlaw.com
Ryan G. Rudich (*PHV Admission to be filed*)
rrudich@taftlaw.com
Taft Stettinius & Hollister
111 E. Wacker Drive, Suite 2600
Chicago, IL 60601
Tel. 312.527.4000

*Counsel for Defendants Red Rock Disposal, LLC and Sampson County Disposal*

December 23, 2024

Columbia, South Carolina

2

ELECTRONICALLY FILED - 2024 Dec 23 5:00 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 30 5:13 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

GRAND STRAND WATER AND SEWER
AUTHORITY,

Plaintiff,

v.

ALADDIN MANUFACTURING
CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-26-05523

**MOTION FOR PRO HAC VICE
ADMISSION OF HANNAH CORY
CALDWELL**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Hannah Cory Caldwell, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. Undersigned counsel hereby certifies that they contacted counsel of record regarding Mrs. Caldwell's admission and received no objection.

1

ELECTRONICALLY FILED - 2024 Dec 30 5:13 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Mrs. Caldwell is a member in good standing with her local bar association, and the Verified Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: December 30, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /Marghretta H. Shisko.*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

2

# EXHIBIT

ELECTRONICALLY FILED - 2024 Dec 30 5:13 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 30 5:13 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
## IN THE STATE OF SOUTH CAROLINA

Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.

| Grand Strand Water and Sewer Authority | 2024-CP-26-05523 | In the Court of Common Pleas Fifteenth Judicial Circuit |
|---|---|---|
| **Plaintiff** | **Case No.** | **Tribunal** |

vs.

| Aladdin Manufacturing Corporation; Burlington Industries, Inc; Delta Mills, Inc; et al | **Mailing Address of Tribunal:** | P.O. Box 677 |
|---|---|---|
| **Defendant** | | Conway, SC 29526 |

Comes now ___Hannah Cory Caldwell___ , applicant herein, and respectfully represents the following:

    1. **Applicant resides at:**

428 Glenwood Road
**Street Address**

| Birmingham, AL | Jefferson | Alabama | 35216 |
|---|---|---|---|
| **City** | **County** | **State** | **Zip Code** |

205-271-7113
**Telephone**

    2. **Applicant is an attorney and a member of the law firm of (or practices law under the name of)**

Cory Watson, P.C. , with offices at

2131 Magnolia Avenue South
**Street Address**

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| **City** | **County** | **State** | **Zip Code** |
| 205-328-2200 | 205-370-6021 | 205-324-7896 | hcaldwell@corywatson.com |
| **Primary Telephone** | **Cell Phone** | **Fax Number** | **Email Address** |

    3. **Applicant has been retained personally or as a member of the above-named law firm by**

Grand Strand Sewer and Water Authority to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

    4. **Since** September 19th **of** 2019 , Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of Alabama where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2024 Dec 30 5:13 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/19/2019 |
| United States District Court Northern District of Alabama | 10/24/2019 |
| United States District Court Southern District of Alabama | 10/24/2019 |
| United States District Court Middle District of Alabama | 10/24/2019 |
| Alabama State Courts | 10/24/2019 |
| | |
| | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Yes

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

No

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

No

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is ____Marghretta Shisko____ of the ____John B. White Jr., P.A.____

law firm, which has offices at:

291 S. Pine Street/ P. O. Box 2465 (29304)
**Street Address**

| Spartanburg | Spartanburg | South Carolina | 29302 |
|---|---|---|---|
| **City** | **County** | **State** | **Zip Code** |
| 864-594-5988 | 864-590-3907 | 864-594-5870 | mshisko@johnbwhite.com |
| **Primary Telephone** | **Cell Phone** | **Fax Number** | **Email Address** |

100106

South Carolina Bar Number
(You must provide Bar Number)

10.     Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

> Yes - See attached Exhibit A

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

> Yes

12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this ___27th___ day of ___December___, 20 _24_

_____Harry Caldwell_____
APPLICANT

ELECTRONICALLY FILED - 2024 Dec 30 5:13 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

*Page 3 of 4*

# VERIFICATION

STATE OF ____ALABAMA_____ )

COUNTY OF ____JEFFERSON_____ )

I, _____Hannah Cory Caldwell_____, do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this ____27th____ day of ____December_____, 20 24__

_____
(Notary Signature)

Notary Public for the State of _____Alabama_____

My Commission Expires: ___June 24, 2028_____

# LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this ____30th_____ day of ___December__, 20 24___

_____
LOCAL COUNSEL OF RECORD

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this ____30th____ day of __December_____, 20 24___

_____

*Page 4 of 4*

ELECTRONICALLY FILED - 2024 Dec 30 5:13 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## Exhibit A

## Application to Appear *Pro Hac Vice* in South Carolina

| Case Name | Status | Date of Application | Local Counsel | Granting/ Pending |
|---|---|---|---|---|
| Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC, et al | Active | 10/18/2024 | John B. White | Granted |
| City of Florence, South Carolina v. Burlington Industries, Inc. | Active | 12/11/2024 | Marghretta Shisko | Pending |
| South Carolina Public Service Authority a/k/a Santee Cooper, an Agency of the State of South Carolina | Active | 12/11/2024 | John B. White | Pending |
| The City of Union, South Carolina | Active | 12/27/24 | Marghretta Shisko | Pending |
| Laurens County Water and Sewer Commission | Active | 12/27/24 | Marghretta Shisko | Pending |

ELECTRONICALLY FILED - 2024 Dec 30 5:13 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 30 5:13 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that ___**Hannah Cory Caldwell**___ was duly and legally admitted to practice law by the Supreme Court of Alabama on ___September 19, 2019___ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on ___December 5, 2024___ with the seal of the Supreme Court of Alabama attached.



_Megan B. Rhodebeck_

Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF HORRY | IN THE COURT OF COMMON PLEAS<br>FOR THE FIFTEENTH JUDICIAL CIRCUIT |
| GRAND STRAND WATER AND SEWER AUTHORITY, | C.A. No. 2024-CP-26-05523 |
| *Plaintiff*,<br><br>v.<br><br>ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC., FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; NAN YA ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, LLC,<br><br>*Defendants*. | **MOTION TO DISMISS BY NAN YA PLASTICS CORPORATION, AMERICA** |

## INTRODUCTION

Defendant Nan Ya Plastics Corporation America ("Nan Ya") hereby moves the Court to dismiss Plaintiff's Second Amended Complaint as to NAN YA pursuant to South Carolina Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6).[1]  Plaintiff Grand Strand Water & Sewer Authority ("Plaintiff") is a public entity that operates the Bull Creek Surface Water Treatment Plant ("SWTP") and the Myrtle Beach SWTP and owns certain land on Bull Creek in Bucksport, South Carolina and on the Intracoastal Waterway in Myrtle Beach. (Plaintiff's Second Amended

---

[1] In preparing this Motion, counsel for Nan Ya has borrowed liberally from the well-constructed motions and memoranda filed by counsel for Elevate Textiles, Inc. and PRET Advanced Materials, LLC and joins fully in the motions by those co-defendants.

1

Complaint ("SAC"). Plaintiff's SWTPs withdraw water from Bull Creek and the Intracoastal Waterway for treatment before distributing it to customers. Plaintiff's claims involve per- and polyfluoroalkyl and related substances ("PFAS). There are multiple types of PFAS. Further, PFAS have dozens of uses in industrial, commercial, and consumer applications, have been used for decades, and are ubiquitous.

Plaintiff asserts the following four causes of action against Nan Ya: (1 and 2) private and public nuisance, (3) trespass, and (4) negligence. The basis of Plaintiff's claims against Nan Ya is that Nan Ya conveyed wastewater that allegedly contained PFAS to the Lake City Wastewater Treatment Plant ("Lake City WWTP"). In turn, after further treatment, Plaintiff alleges, the Lake City WWTP discharged water containing PFAS (that were allegedly introduced into the wastewater by NAN YA) into the Lynches River at a location over 39 miles "as a crow flies" upstream from Plaintiff's plant on Bull Creek. Exhibit A. Plaintiff's SWTP in Myrtle Beach on the Intracoastal Waterway is even farther away (over 49 miles) and is clearly not downstream from the Lake City WWTP.

Nan Ya is the current owner of a plant just south of Lake City, South Carolina where it produces pellets from which plastic containers are made. Nan Ya does not make, sell, or distribute PFAS. Plaintiff asserts additional causes of action against Defendant Burlington Industries, Inc., but those claims do not state and do not purport to state claims against Nan Ya. Nan Ya does not purchase PFAS for use in its pellet manufacturing, and Plaintiff does not allege that it does.

Further, Nan Ya's operations and its discharges to the Lake City WWTP are regulated by governmental authorities, specifically the US Environmental Protection Agency ("EPA") and the South Carolina Department of Environmental Services ("DES"), formerly SCDHEC. Plaintiff does not allege that Nan Ya or the Lake City WWTP have operated in violation of their permits.

2

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

An additional premise of Plaintiff's claims is that the EPA recently proposed a dramatic reduction in the allowable amount of certain PFAS in drinking water to 4 parts per trillion. (SAC para. 41, 42, & 45.) But that EPA regulation, which is being challenged in multiple lawsuits, does not become final and require compliance until 2029. (SAC para. 47.) Plaintiff alleges that it may be able to meet the potential future requirement by incurring unspecified and unknown expenses (See SAC para. 78, 83 ("expenses associated with future acquisition … of required treatment technologies"), 89 (seeking funding of "the acquisition … of new water treatment technology"); 101, and 110.) Plaintiff's claims against Nan Ya should be dismissed as premature, contingent, speculative, and not justiciable because the subject EPA regulation does not yet require compliance and is subject to change. Plaintiff is not currently required to and has not purchased treatment technologies to comply with that potential future requirement, and it is entirely speculative what measures, if any, Plaintiff may be required to take in the future.

In addition, Nan Ya does not discharge PFAS into the Lynches River -- or any other body of water. As alleged by Plaintiff, Nan Ya conveys its wastewater to Lake City WWTP for treatment, and Nan Ya cannot and does not control what the Lake City WWTP does any more than citizens who use consumer products resulting in PFAS discharges into their wastewater can direct and control the activities of public utilities handling their wastewater. Plaintiff's private nuisance claims should be dismissed as to Nan Ya because it does not control the source of the alleged nuisance or the property owned by numerous entities and individuals between the Lake City WWTP and Plaintiff's property and facilities. In addition, any alleged contamination of a public body of water cannot state a claim for private nuisance. Plaintiff's trespass claim against Nan Ya should be dismissed for the additional reason that the alleged PFAS particles are intangible in nature such that they cannot constitute a trespass. Further, Plaintiff lacks exclusive possession and

3

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

control of the subject watershed. In addition, any alleged presence of PFAS particles at Plaintiff's facilities occurs only as a result of Plaintiff deliberately drawing the subject water into its facilities. Plaintiff's negligence claim should be dismissed as to Nan Ya on the grounds that Plaintiff has failed to allege facts sufficient to state a plausible claim that Nan Ya owes a duty to Plaintiff or that any conduct by Nan Ya was a proximate cause of damages to Plaintiff.

Plaintiff's SAC fails to state facts sufficient to constitute a claim for an award of its attorneys' fees or prejudgment interest. This motion will be supported by a memorandum of law and exhibits to be submitted to the Court, the Court's record in this matter, and any additional arguments that may be presented to the Court. In addition, to the extent applicable to this Defendant, Nan Ya joins in arguments submitted for dismissal by co-defendants in this action.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. Plaintiff's claims are not ripe for adjudication and should be dismissed.

"A threshold inquiry for any court is a determination of justiciability, i.e., whether the litigation presents an active case or controversy." *Peoples Fed. Sav. & Loan Ass'n of S.C. v. Res. Plan. Corp.*, 358 S.C. 460, 477, 596 S.E.2d 51, 60 (2004) (quoting *Lennon v. S.C. Coastal Council,* 330 S.C. 414, 415, 498 S.E.2d 906, 906 (Ct. App. 1998)). Justiciability encompasses several doctrines, including an assessment of whether the plaintiff's claims are ripe for adjudication. See *James v. Anne's Inc.*, 390 S.C. 188, 193, 701 S.E.2d 730, 732 (2010) (citing *Jackson v. State*, 331 S.C. 486, 490 n.2, 489 S.E.2d 915, 917 n.2 (1997)). Where, as here, a claim presents only "a contingent, hypothetical or abstract dispute," the claim is not ripe for adjudication and must be dismissed. See *Pee Dee Elec. Co-op., Inc. v. Carolina Power & Light Co.*, 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983); see also *Peoples Fed. Sav. & Loan Ass'n of S.C.*, 358 S.C. at 477, 596 S.E.2d at 60 ("A justiciable controversy is a real and substantial controversy which is ripe and

4

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute.") (citation omitted).

See also *Carolina Care Plan, Inc. v. United HealthCare Servs., Inc*., 361 S.C. 544, 557, 606 S.E.2d 752, 759 (2004) (affirming dismissal of complaint where claims were contingent in nature and therefore not yet ripe for adjudication). See also *Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 294 (4th Cir. 2022) ("A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'") (citation omitted); *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) ("[A] plaintiff's claim is not ripe for judicial review 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013)).

See also *Kiawah Prop. Owners Grp. v. Pub. Serv. Comm'n of S.C.*, 357 S.C. 232, 242-43, 593 S.E.2d 148, 154 (2004) (finding "it is patent there is no present, justiciable controversy" where plaintiffs "assert only that the loan provisions may have some negative impact in the future") on the water utility's customers, because "'a contingent, hypothetical or abstract dispute' . . . is simply insufficient to warrant this Court's review"); *McClanahan v. Richland Cnty. Council*, 350 S.C. 433, 441, 567 S.E.2d 240, 244 (2002) (agreeing property owner's claim based on adoption of land use plan that had not yet been implemented "is not justiciable because it is not ripe for review"); see also, e.g., *Tracy v. Tracy*, 384 S.C. 91, 100, 682 S.E.2d 14, 18 (Ct. App. 2009) (determining case not ripe for review where appellant not yet exposed to liability due to appellee's conduct).

In this case, Plaintiff's allegations confirm that it has not yet suffered any legally cognizable injury due to PFAS, and in fact that it might never suffer such injury. Indeed, while the U.S. Environmental Protection Agency's PFAS drinking water standards ("maximum contaminant

5

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

levels" or "MCLs") became final in April 2024, (SAC para. 45), it has not yet been determined how, if at all, the rule will impact the Plaintiff or its ability to provide acceptable drinking water. Notably, the Plaintiff will not be required to comply with the MCLs until April 26, 2029. (SAC para. 47). Prior to the MCL compliance date, there is a three-year "initial monitoring" period that runs through April 26, 2027. (Id.); see also PFAS National Primary Drinking Water Regulation, 89 Fed. Reg. 32,532, 32,633 (Apr. 26, 2024) (codified at 40 CFR Parts 141 and 142). Plaintiff does not allege any facts demonstrating that, at this time, it is doing anything other than waiting to see if and when it will have to take action to comply with the 2029 MCLs. In fact, Plaintiff has not alleged that it has incurred any costs or expenses whatsoever due to the presence of PFAS in its source water. Rather, it is seeking "future costs of acquiring, installing, and operating adequate water treatment technologies." (See SAC para. 110). Nothing in the Complaint indicates that Plaintiff's operations have changed at all from the period before the MCLs were finalized in April or as a result of PFAS in the Pee Dee River Watershed, the Waccamaw River and/or the Intracoastal Waterway.

This status quo may continue indefinitely. Plaintiff's testing during the initial monitoring period may indicate that Plaintiff will not be required to make any capital investments to remain in compliance with applicable regulations. It is further uncertain whether the MCLs will remain valid law by the time they would actually apply to Plaintiff. The incoming administration of President Elect Donald Trump has announced that one of their top priorities is eliminating regulations that are burdensome on businesses and individuals. The regulation in question could easily one of these. In addition, in June 2024, three sets of plaintiffs filed challenges to the EPA's PFAS rule in actions currently pending before the D.C. Circuit Court of Appeals. See Petition for Review, *The Chemours Co. v. EPA*, No. 24-1192 (D.C. Cir. June 10, 2024), available at

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

https://www.epa.gov/system/files/documents/2024 06/chemoursv.-epa_d.c.cir_.pdf; Petition for Review, *Nat'l Assoc. of Mfrs. v. EPA*, No. 24-1191 (D.C. Cir. June 10, 2024), available at https://www.fbm.com/content/uploads/2024/06/24 1191_Documents.pdf; Petition for Review, *Am. Water Works Assoc. v. EPA*, No. 24-1188 (D.C. Cir. June 7, 2024), available at: https://www.awwa.org/Portals/0/AWWA/Government/062124Insiders/AWWA-vEPA-No 1188-DC-Cir-Filed-Petition.pdf.

The changes to the MCLs that could result from these cases or by Executive Order preclude Plaintiff's claims from being ripe at this time. See *Jowers v. S.C. Dep't of Health & Env't Control*, 423 S.C. 343, 364, 815 S.E.2d 446, 457 (2018) (finding action was not ripe because the plaintiff's claim "depends on there being no changes to the law regarding surface water withdrawals"). Because of these numerous contingencies and the resulting uncertainty, the facts alleged by Plaintiff demonstrate, at most, "the mere threat of potential injury," which is "too contingent or remote to support present adjudication." *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 228, 467 S.E.2d 913, 918 (1996) (quoting *Thrifty Rent- A-Car Sys., Inc. v. Thrifty Auto Sales of Charleston, Inc.,* 849 F. Supp. 1083, 1086 (D.S.C. 1991)). Thus, for this reason alone, Plaintiff's claims are not ripe for adjudication and should be dismissed.

In addition to Plaintiff's claims being premature, speculative, and legally insufficient, Plaintiff's claims may also intrude on regulatory territory reserved for federal oversight if permitted to proceed. Federal law may preempt state law in three ways: (1) Congress may expressly define the extent to which it preempts state law; (2) Congress may occupy a field of regulation, "impliedly" preempting state law; or (3) a state law may be preempted to the extent it "conflicts" with federal law. *Normandy Corp. v. S.C. Dep't of Transp.,* 386 S.C. 393, 409, 688 S.E.2d 136, 145 (Ct. App. 2009).

7

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Here, the Environmental Protection Agency ("EPA") issued a National Primary Drinking Water Regulation under the Safe Drinking Water Act to manage the risks of PFAS in drinking water. The new EPA regulation mandates several new obligations regarding PFAS including regular PFAS monitoring to the EPA. (See SAC para. 47). The Safe Drinking Water Act already provides mechanisms for PFAS regulation and enforcement. Therefore, Plaintiff's state law claims should be decided under federal law.

**B.  Plaintiff lacks standing and the Complaint should be dismissed.**

Plaintiff fails to establish any constitutional standing to bring this action. For constitutional standing, a plaintiff must show: "(1) he suffered an invasion of a legally protected interest, which is concrete and particularized, and actual or imminent; (2) a causal connection between the injury and the challenged conduct; and (3) it is likely the injury will be redressed by a favorable decision." *S.C. Pub. Interest Found. v. S.C. Dep't of Transp.*, 421 S.C. 110, 117-18, 804 S.E.2d 854, 858 (2017). "[A] private person may not invoke the judicial power to determine the validity of executive or legislative action unless he has sustained, or is in immediate danger of sustaining, prejudice therefrom." *Evins v. Richland Cnty. Historic Pres. Comm'n*, 341 S.C. 15, 21, 532 S.E.2d 876, 879 (2000).

Here, Plaintiff's claims rest entirely on speculative harm. Plaintiff alleges that it will incur future compliance costs and hypothetical property value reductions. (See SAC para. 110). These regulations may not even become law in 2029. Plaintiff does not allege a concrete and particularized injury. Furthermore, Plaintiff has failed to allege facts which show a causal connection between Plaintiff's alleged injury and Defendant's conduct. Therefore, Plaintiff has failed to establish standing to bring this action and the Complaint should be dismissed.

**C.  Plaintiff's individual claims against Nan Yas each fail as a matter of law.**

8

In addition to Plaintiff's failure to assert a justiciable dispute that is ripe for adjudication, each of Plaintiff's claims against Nan Ya are legally deficient, and should again be dismissed.

1. **Plaintiff's allegations of contamination of the Pee Dee River Watershed, the Waccamaw River, and the Intracoastal Waterway fail to state an actionable claim for private nuisance.**

Plaintiff's private nuisance claim against Nan Ya should be dismissed because the alleged contamination of a public water body cannot form the basis of a claim for private nuisance. Indeed, "[a] private nuisance affects only one person or a determinate number of persons," whereas "[a] nuisance is public because of the danger to the public which might have been created." See *Baltzeger v. Carolina Midland Ry. Co.*, 54 S.C. 242, 248, 32 S.E. 358, 360 (1899); *Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989) ("A nuisance is public because of the danger to the public which might have been created. It is private only because the individual as distinguished from the public has been or may be injured."); see also *Charleston Dev. Co. v. Alami*, 433 S.C. 533, 547-48, 860 S.E.2d 687, 695 (Ct. App. 2021) ("'A private nuisance is anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another. It produces damage to but one or two persons, and cannot be said to be public.'") (citations omitted); accord *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96 97 (4th Cir. 2011) ("If the only interest that is invaded is an interest shared equally by members of the public, then the alleged nuisance is public in nature. Such a circumstance is precisely the situation presented here, because DuPont's allegedly tortious conduct interfered with the general public's access to clean drinking water. . . . We therefore conclude . . . that when a release of pollutants directly affects a municipal water supply and does not interfere with any private water source, such as a well drilled on private property, the presence of the pollutants in the public water supply will not support a private nuisance claim.") (citations omitted).

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Plaintiff's Complaint makes clear that its claims against Nan Ya are based on the alleged contamination of the Pee Dee River Watershed, the Waccamaw River, and the Intracoastal Waterway. (See SAC para. 20)(alleging that Nan Ya discharges industrial wastewater contaminated with products that contain or degrade to these PFAS from the Lake City Plant to Lake Swamp, the Lynches River upstream of the Great Pee Dee River and Bull Creek); see also para. 2, 4-5, 48-51, 53, 69-70, 72, 74, 76, 82-84, 88). However, Plaintiff is just one of the hundreds of riparian landowners with property located along the Pee Dee River Watershed, Waccamaw River and Intracoastal Waterway. Plaintiff's nuisance claim therefore involves an alleged nuisance that is "public in nature," which "will not support a private nuisance claim." See *Rhodes*, 636 F.3d at 96-97. As such, Plaintiff's private nuisance claim in Count 1 should be dismissed.

### 2. Plaintiff's claim for public nuisance fails as a matter of law.

Plaintiff's public nuisance claim against Nan Ya should be dismissed because Plaintiff pleads no facts alleging that it has suffered any unique injury that is not suffered by the public at large, and it does not allege injury to its own real or personal property. A public nuisance can be asserted typically only by the State to remedy harms suffered by the public generally. *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n,* 407 S.C. 67, 78 (2014). A private citizen generally cannot bring a suit to abate a public nuisance and must rely on the State to assert the claim. Id. The one exception to this rule allows a private entity to bring a suit for a public nuisance only if it suffered a "special injury." Id. The special injury must be an "individual or specific damage in addition to that suffered by the public," id., and "is satisfied only by injury to the individual's real or personal property." *Overcash v. S.C. Elec. & Gas Co.*, 364 S.C. 569, 575 (2005).

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Plaintiff pleads no facts alleging that it has suffered any unique injury that is not suffered by the public at large, and it does not allege injury to its own real or personal property. Plaintiff alleges that its special injury is "the inability to provide potable water to customers without concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals deemed unsafe by the EPA" (SAC para. 83). This alleged injury is no different than the injury allegedly suffered by the public at large – the alleged contamination of water with PFAS. (See SAC para. 63). Also, although Plaintiff alleges that it "cannot use its properties", it does not identify an injury to its own personal or real property. (Id.). As such, Plaintiff's claim for public nuisance fails as a matter of law and should be dismissed.

### 3. Plaintiff fails to state a valid claim for trespass under South Carolina law.

#### a. PFAS are "intangible" particles that cannot support a trespass claim.

The South Carolina Supreme Court has definitively held that South Carolina follows "the traditional dimensional test and only recognizes intrusions by physical, tangible things as capable of constituting a trespass." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 152, 747 S.E.2d 468, 480 (2013). To constitute a physical and sufficiently tangible intrusion, the interference must be "with the right to exclusive possession," as opposed to "merely interfer[ing] with the right to use and enjoyment." Id. at 151, 747 S.E.2d at 480. Thus, intrusions by "microscopic particulates" or similarly intangible "infiltration[s] of contaminants onto a plaintiff's property" — while in some cases potentially could give rise to a claim for nuisance — do not constitute an actionable trespass under South Carolina law. See id. at 144-52, 747 S.E.2d at 476-80.

Notably, in adhering to the traditional rule that requires "an invasion by a physical, tangible thing for a trespass to exist," the South Carolina Supreme Court recognized that "the dimensional test is an imperfect rule" that "does not comport with modern science's understanding of matter

11

and the relationship between matter and energy." Id. at 150, 747 S.E.2d at 479. Nevertheless, the court held that South Carolina's traditional rule remained "superior" to the rules formulated by "a divergent line of decisions," as the traditional rule does not require the adoption of an uncertain "substantiality requirement," but instead "possesses the virtues of clarity, ease of implementation, and ability to serve as a guide for future conduct," thus "yield[ing] a stable rule as to what rises to the level of a trespass." Id. at 146, 149-51, 747 S.E.2d at 477, 479-80. The court further explained that the dimensional test preserves "the distinction between trespass and nuisance," whereas "the divergent view would transform trespass into nuisance," thereby "leav[ing] property owners with less, rather than more, protection of their property rights." Id. at 151-52, 747 S.E.2d at 480.

By retaining the traditional rule, the South Carolina Supreme Court expressly rejected "divergent" cases in Oregon and Alabama, which had held that intrusions of "fluoride particles" and "sulfoxide emissions" were sufficient to constitute a trespass despite their "intangible nature." Id. at 146-49, 747 S.E.2d at 477-78 (rejecting Martin v. Reynolds Metals Co., 221 Or. 86, 342 P.2d 790 (1959), which involved "fluoride particles," and *Borland v. Sanders Lead Co.*, 369 So. 2d 523 (Ala. 1979), which involved "lead and sulfoxide emissions"). Instead, the Babb court followed the Michigan Court of Appeals' decision in *Adams v. Cleveland-Cliffs Iron Co.*, wherein the court concluded that dust is "not actionable in trespass" because "dust, along with other forms of airborne particulate, does not normally present itself as a significant physical intrusion," but instead "become[s] a part of the ambient circumstances of th[e] space" on which it settles. See id. at 149-50, 747 S.E.2d at 479; see also 237 Mich. App. 51, 67-70, 602 N.W.2d 215, 222-24 (1999).

The South Carolina Supreme Court's rejection of *Martin v. Reynolds Metals Co.* is particularly instructive, as the Babb court rejected the ruling in Martin that an intrusion of "fluoride particles" could constitute an actionable trespass, as fluoride is chemically related to and derived

12

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

from fluorine, just like PFAS. See 405 S.C. at 146-50, 747 S.E.2d at 477-79; (see SAC para. 27-28 (referring to PFAS strong and stable "carbon-fluorine bonds")). In this case, Plaintiff's trespass claim is based on the alleged contamination from PFAS molecules, which are precisely the kind of "intangible matter" that the South Carolina Supreme Court held "are insufficient to constitute a trespass." See *Babb,* 405 S.C. at 144-52, 747 S.E.2d at 476-80. Indeed, Plaintiff's own Complaint demonstrates that PFAS molecules are microscopic particles — measured, if at all, in the parts per trillion — that cannot be visibly seen, felt, or otherwise perceived in water or any other medium. (See SAC para. 36-37, 39-40, 42-43, 46).

Moreover, the damages that Plaintiff alleges from the PFAS contamination are not to its "right to the exclusive, peaceable possession of [its] property," but are based on the alleged "losses to the use and enjoyment of its property rights," and the alleged "interference with Plaintiff's right to use and enjoy its property," which are remedied through (if by anything) a claim for nuisance, not trespass. (See SAC para. 5, 63, 65); see also *Babb*, 405 S.C. at 139, 149-52, 747 S.E.2d at 473, 479-80 (citation omitted). See also *City of Lake Elmo* v. 3M Co., 237 F. Supp. 3d 877, 888 (D. Minn. 2017) ("The Complaint alleges . . . that 3M trespassed upon Lake Elmo's property 'by contaminating it with PFCs and thereby preventing the City from using the groundwater within the aquifer that flows underneath the property.' As alleged, Lake Elmo is complaining of an invasion of the right to use and enjoy its land, rather than to exclusively possess its land. Accordingly, Lake Elmo's claim is one for nuisance, not trespass. Because Lake Elmo does not allege that 3M prevented it from possessing the groundwater, the trespass claim fails. The motion to dismiss is granted for this claim.") (citations omitted); *Barnes v. Birds Eye Foods, Inc.*, No. 1:10-CV-541, 2011 WL 13362363, at *6 (W.D. Mich. Sept. 26, 2011) (granting motion to dismiss trespass claim because "migrating groundwater interferes with the landowner's interest in use and

13

enjoyment of the property . . . not his interest in excluding others from the property [as] is vindicated by a trespass action"). For these reasons, Plaintiff's allegations do not state an actionable claim for trespass under South Carolina law and Count 3 of Plaintiff's Complaint should be dismissed.

> **b. Plaintiff's trespass claim based on the alleged contamination of the Pee Dee River Watershed, the Waccamaw River and the Intracoastal Waterway fails for other reasons.**

Plaintiff's trespass claim should also be dismissed for other reasons. For one thing, the claim fails because Plaintiff does not sufficiently allege a physical invasion of Plaintiff's property. As the South Carolina Supreme Court has made clear, trespass protects only the "right to exclusive possession." See *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 150-51, 747 S.E.2d 468, 479-80 (2013) (emphasis added); see also *Charleston Joint Venture v. McPherson*, 308 S.C. 145, 153, 417 S.E.2d 544, 549 (1992) (same). Here, however, Plaintiff does not hold an exclusive right to the water from the Pee Dee River Watershed, Waccamaw River, or Intracoastal Waterway, only a riparian right of reasonable use. See *White v. Whitney Mfg. Co.*, 60 S.C. 254, 265, 38 S.E. 456, 460 (1901) (holding it is a "well-settled rule of law" that while a riparian owner has "an equal right to the use of the water which flows in the stream adjacent to his lands . . . [h]e has no property in the water itself, but a simple usufruct").

Although Plaintiff alleges that PFAS contamination is present on property that Plaintiff owns, "including its land, SWTPs, and related buildings, improvements, and equipment that make up its water distribution systems" Plaintiff concedes that this alleged contamination only occurs as a result of Plaintiff's own actions, i.e. when Plaintiff's "water pumps are active." (See SAC para. 97, 99). Such allegations do not constitute an actionable trespass under South Carolina law, as instead "there must be an affirmative act" by the defendant, and "the invasion of the land must be

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

intentional." See *Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991). Importantly, an act is only "intentional" if "done with knowledge that it will to a substantial certainty result in the entry of the foreign matter" on the plaintiff's land. *Sales v. S.C. Dep't of Transp.*, No. 2014-000582, 2016 WL 3607225, at *2 (S.C. Ct. App. June 30, 2016) (quoting Restatement (Second) of Torts § 158 cmt. i (1965)). Here, there could be no "substantial certainty" 12 that PFAS would enter Plaintiff's property, as such entry could not have occurred absent Plaintiff's intervening activation of its water pumps. Plaintiff also cannot show an "unauthorized entry" of PFAS on "property in its exclusive possession," as Plaintiff made its own voluntary decision to activate the water pumps and draw in water from a public waterway, which is likewise fatal to Plaintiff's trespass claim. See *Ravan v. Greenville Cnty.*, 315 S.C. 447, 464, 434 S.E.2d 296, 306 (Ct. App. 1993) ("The essence of trespass is the unauthorized entry onto the land of another.").

Simply put, courts have considered allegations similar to the Plaintiff's here, and have in turn held that a drinking water utility cannot state a cause of action for trespass when it voluntarily draws PFAS-contaminated water from a public water source. See, e.g., *Utilities. Bd. of Tuskegee v. 3M Co.,* No. 2:22-cv-420, 2023 WL 1870912, at *16 (M.D. Ala. Feb. 9, 2023) ("Trespass . . . requires an invasion of property in plaintiff's exclusive possession. As alleged, the facts here do not sound in trespass because, unlike other indirect trespasses, Defendants' PFAS did not cross onto UBT's boundary line by a natural process. Rather, UBT pulls the water onto its property through an intake system from a public waterway (over which UBT does not have exclusive possession). Accordingly, there is no invasion onto UBT's property. . . . UBT's indirect trespass claims fail . . . for want of an invasion of property in its exclusive possession because UBT itself

15

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

pulled the water onto its property from a public water source . . . .") (internal citation omitted). This Court should do the same and Count 3 of Plaintiff's Complaint should again be dismissed.

### 4. Plaintiff's negligence claim against Nan Ya fails as a matter of law.

#### a. Nan Ya does not owe a legal duty of care to the Plaintiff.

It is well-settled under South Carolina law that "[a]n essential element in a negligence action is 'the existence of a legal duty of care owed by the defendant to the plaintiff.'" *Shaw v. Psychemedics Corp.*, 426 S.C. 194, 197, 826 S.E.2d 281, 282 (2019) (quoting *Oblachinski v. Reynolds*, 391 S.C. 557, 561, 706 S.E.2d 844, 845-46 (2011)). "If there is no duty, then the defendant in a negligence action is entitled to judgment as a matter of law." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 135-36, 638 S.E.2d 650, 656 (2006) (citing *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999)); see also *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 47, 644 S.E.2d 43, 46 (2007) ("In order for liability to attach based on a theory of negligence, the parties must have a relationship recognized by law as providing the foundation for a duty to prevent an injury." (citing *Huggins v. Citibank, N.A.*, 355 S.C. 329, 333, 585 S.E.2d 275, 277 (2003))). Notably, "[a]n affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance." McPherson v. CSX Transportation, Inc., No. 4:16-cv-2725, 2017 WL 1135291, at *2 (D.S.C. Mar. 27, 2017) (citing *Madison ex rel. Bryant*, 371 S.C. at 136, 638 S.E.2d at 656-57). "However, South Carolina courts 'will not extend the concept of a legal duty of care in tort liability beyond reasonable limits,'" and without more, "[f]oreseeability of injury, in and of itself, does not give rise to a duty." *Shaw*, 426 S.C. at 198, 826 S.E.2d at 283 (quoting *McCullough*, 373 S.C. at 48, 644 S.E.2d at 46); *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614, 618, 586 S.E.2d 586, 588 (2003).

16

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Here, Plaintiff does not allege any facts that suggest the existence of a relationship between it and Nan Ya sufficient to establish a legal duty of care. Indeed, Plaintiff does not allege any duty "created by statute, a contractual relationship, status, property interest, or some other special circumstance," but instead alleges only that the "Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to [PFAS] to avoid causing an unreasonable risk of harm to others." (See SAC para. 103). However, South Carolina does not recognize or impose such a broad and oversimplified duty of care. Just the opposite, as under South Carolina law, "one who has no control owes no duty." See *Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997) (citing *Clark v. Greenville Cnty.*, 313 S.C. 205, 209, 437 S.E.2d 117, 119 (1993)); see also *Ellis v. Tall Ships Charleston, LLC*, 593 F. Supp. 3d 253, 268 (D.S.C. 2022) ("Under South Carolina law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." (quoting *Faile v. S.C. Dep't of Juv. Just.*, 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002))). As a result of the absence of any duty, Plaintiff's negligence claim against Nan Ya in Count 4 of the Complaint should be dismissed.

**b. Plaintiff's alleged damages are not recoverable under negligence.**

Finally, Plaintiff's negligence claim against Nan Ya also fails as a matter of law because Plaintiff alleges no facts that would establish the element of damages. "Generally, under South Carolina law, the damages element [for a negligence claim] requires a plaintiff to establish physical injury or property damage." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 153, 747 S.E.2d 468, 481 (2013). As explained above, Plaintiff does not own the water in the Pee Dee River Watershed, the Waccamaw River, or the Intracoastal Waterway, but merely has a conditional right to use it. See *White v. Whitney Mfg. Co.*, 60 S.C. 254, 265, 38 S.E. 456, 460 (1901). The Complaint includes unexplained and conclusory allegations of damage or injury to Plaintiff's property, (see,

17

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

e.g., SAC para. 61, 65, 110 (alleging unspecified "past, present, and future injury to property," and unnamed damages and "losses resulting from injury to its property")) but does not allege any facts showing that anything other than water from a public waterway has or could have been damaged by PFAS. Instead, the Complaint reveals that Plaintiff's alleged damages are only (contingent) losses in property value, along with (potential) increases in future operating costs. Such allegations of damages do not implicate or suggest the kind of "physical injury or property damage" that is recoverable on a claim for negligence. See *Gray v. S. Facilities, Inc.*, 256 S.C. 558, 566-71, 183 S.E.2d 438, 442-44 (1971 (finding property owner could not recover for diminution of the value of his property resulting from oil fire in adjacent river that did not cause physical damage to his property).

Furthermore, Plaintiff is a special purpose district that provides "potable water to residents of various counties in South Carolina, including Horry County." (SAC para. 3). Under the municipal cost recovery rule, also known as the "free public services doctrine," public expenditures made in the performance of governmental functions, like those sought by Plaintiff to upgrade its SWTP, are not recoverable in tort. See *United States v. Standard Oil Co. of California*, 332 U.S. 301 (1947). Therefore, Plaintiff's damages claim for its future costs associated with the acquisition, installation and operation of adequate water treatment technologies would not be recoverable. Thus, for these additional reasons, Plaintiff's negligence claim fails as a matter of law and should be dismissed.

### III. CONCLUSION

For all of the foregoing reasons, Nan Ya Plastics Corporation, America's Motion to Dismiss should be granted, and all of the claims that Plaintiff has asserted against Nan Ya should be dismissed.

Respectfully submitted this 31st day of December 2024,

s/ Stan Barnett

_____

Stan Barnett (SC 000533)
Stan Barnett, Attorney at Law
305 North Civitas Street
Mt. Pleasant, SC 29464
843-708-4887
Stan.barnett@yahoo.com
*Counsel for Nan Ya Plastics Corporation, America*

ELECTRONICALLY FILED - 2024 Dec 31 1:19 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

19

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF HORRY | ) | FIFTEENTH JUDICIAL CIRCUIT |
| | ) | |
| GRAND STRAND WATER AND | ) | |
| SEWER AUTHORITY | ) | |
| | ) | C.A. No.: 2024-CP-26-05523 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALADDIN MANUFACTURING | ) | |
| CORPORATION, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS MOHAWK INDUSTRIES, INC. AND ALADDIN MANUFACTURING CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Mohawk Industries, Inc. and Aladdin Manufacturing Corporation (jointly, "Moving Defendants") have moved pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the South Carolina Rules of Civil Procedure to dismiss all claims asserted against them in the Second Amended Complaint ("Complaint"). Moving Defendants submit this memorandum in support of their motion.

**INTRODUCTION**

The Complaint alleges that Moving Defendants discharged per- and polyfluoroalkyl substances ("PFAS") chemicals into the Great Pee Dee River. Plaintiff is a special purpose district that operates water treatment facilities on Bull Creek in Bucksport and on the Intracoastal Waterway in Myrtle Beach. (*Compl.* ¶ 3.) Plaintiff claims that Moving Defendants owned and operated the Oak River Mill (the "Mill"), a yarn conversion and extrusion facility located on the Great Pee Dee River near Bennettsville, until the Mill closed in 2022. The Complaint asserts that Moving Defendants discharged PFAS chemicals used at the Mill into the River, and that PFAS

1

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

from the Mill flowed more than 80 miles downstream into Bull Creek, from which Plaintiff's Bucksport plant intakes surface water.[1] (*Compl*. ¶ 24.)

Based on these factual allegations, Plaintiff asserts causes of action against Moving Defendants for private and public nuisance, trespass, and negligence. Plaintiff contends that the presence of PFAS in its source water will require Plaintiff to upgrade its treatment facilities to comply with new U.S. Environmental Protection Agency ("EPA") regulations, set to take effect in 2029, related to PFAS levels in drinking water. Through this lawsuit, Plaintiff seeks to compel Moving Defendants and their co-Defendants to fund the acquisition, installation, and operation of water treatment technologies designed to remove PFAS from Plaintiff's water intake. (*Id*. at ¶¶ 7, 77, 83, 89, 101.)

The Complaint should be dismissed because the dispute is not ripe for judicial review. The EPA regulations on which Plaintiff's claims are based will not take effect until 2029, if at all. And even if the regulations ultimately take effect in their current form—which remains uncertain given several ongoing federal court challenges—it is unclear what specific actions, if any, Plaintiff must take to comply and whether the federal government will pay for any such action.

Moreover, the Complaint acknowledges that the new EPA rule includes an initial three-year testing period, which has only recently begun, to assess PFAS levels in source water. Plaintiff does not allege that it has thus far incurred costs or taken action to comply with the new regulations. Instead, the Complaint seeks to recover hypothetical future expenses associated with new water treatment system technologies that Plaintiff may never need. As such, Plaintiff's suit is premature and should be dismissed on that basis.

---

[1] The Mill does not lie upstream of Plaintiff's facility on the Intracoastal Waterway, and Plaintiff does not appear to assert claims against Moving Defendants in connection with that facility.

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Plaintiff's individual causes of action are also deficient, warranting dismissal on that basis as well. Plaintiff's private nuisance claim fails because the alleged contamination of the Great Pee Dee River affects the public generally, as opposed to Plaintiff in particular, which precludes a claim for private nuisance. Plaintiff's trespass claim likewise fails because PFAS molecules constitute "intangible" matter that will not support a trespass claim and, to the extent any PFAS entered Plaintiff's property from the waterway, it was the result of Plaintiff's own voluntary actions rather than intentional conduct by Moving Defendants. Lastly, Plaintiff's negligence claim fails as well because Mohawk owes no legal duty to Plaintiff and Plaintiff fails to allege that it has incurred any physical injury or property damage due to Moving Defendants' alleged negligence. For these reasons, set forth in greater detail below, Moving Defendants' motion should be granted.

## I.    LEGAL STANDARD

The court may dismiss a claim where "the defendant demonstrates the plaintiff has failed 'to state facts sufficient to constitute a cause of action' in the pleadings filed with the court." *Williams v. Condon*, 347 S.C. 227, 232-33, 553 S.E.2d 496, 499 (Ct. App. 2001) (quoting Rule 12(b)(6), SCRCP). The court's "ruling on a motion to dismiss under Rule 12(b)(6), SCRCP, must be based solely on the allegations contained in the complaint." *Chewning v. Ford Motor Co.*, 346 S.C. 28, 32, 550 S.E.2d 584, 586 (Ct. App. 2001). However, in making a motion to dismiss, only the "well pleaded facts are admitted, but inferences drawn by the plaintiff from such facts and conclusions of law are not admitted." *Jensen v. S.C. Dep't of Soc. Scrvs.*, 297 S.C. 323, 326, 377 S.E.2d 102, 104 (Ct. App. 1987). The motion to dismiss must be granted if, viewing the evidence in favor of the plaintiff, the "facts alleged in the complaint and inferences reasonably deducible therefrom do not entitle the plaintiff to relief on any theory of the case." *Chewning*, 346 S.C. at 32-33, 550 S.E.2d at 586.

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## II.    ARGUMENT

### 1.    Plaintiff's claims are not ripe for adjudication.

"A threshold inquiry for any court is a determination of justiciability, i.e., whether the litigation presents an active case or controversy." *Lennon v. S.C. Coastal Council,* 330 S.C. 414, 415, 498 S.E.2d 906, 906 (Ct. App. 1998). This includes an assessment of whether the plaintiff's claims are ripe for adjudication. *See James v. Anne's Inc.,* 390 S.C. 188, 193, 701 S.E.2d 730, 732 (2010). A claim is not ripe and should be dismissed when it presents "a contingent, hypothetical or abstract dispute." *Pee Dee Elec. Co-op., Inc. v. Carolina Power & Light Co.,* 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983).

The Complaint establishes that Plaintiff has not yet suffered the injury for which it seeks recovery. The thrust of this case is that Plaintiff expects to incur costs to comply with recently enacted EPA regulations regarding "maximum contaminant levels" ("MCLs") of PFAS in drinking water. *PFAS National Primary Drinking Water Regulation*, 89 Fed Reg. 32532 (April 26, 2024) (the "Rule"). Although the Rule became final in April 2024 (Compl., ¶¶ 45-47), it remains unclear how, if at all, the Rule will impact Plaintiff. The Rule provides for a three year "initial monitoring" period that runs through 2027. *Id.*; *see also* 89 Fed. Reg. 32532, 32633. Even assuming that initial monitoring determines further action is necessary to satisfy the Rule, Plaintiff will not have to comply with the MCLs until 2029. *Id.* ¶ 47. Plaintiff alleges no facts indicating that it has incurred expenses yet due to alleged PFAS in its source water. In fact, nothing in the Complaint indicates that Plaintiff's operations have changed at all from before the MCLs were finalized in April 2024 or as a result of PFAS in the waterway. Rather, the Complaint makes clear that Plaintiff asks this Court to award unspecified, speculative costs that Plaintiff *may* incur in the future. (*Compl.*, ¶ 83)

4

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

(requesting "expenses associated with the *future* acquisition, installation, and operation of required treatment technologies") (emphasis added).

And it is far from clear that Plaintiff will incur these costs at all. Plaintiff's testing during the initial monitoring period may establish that improvements to Plaintiff's facilities are unnecessary to comply with the Rule. Moreover, the Rule faces numerous legal challenges that remain pending in federal courts.[2] Irrespective of the outcome of these lawsuits, the incoming administration and new leadership at EPA could alter or eliminate the Rule altogether before Plaintiff must comply with the MCLs. Furthermore, the federal government, including the EPA, has made available grants to pay for infrastructure and source water treatment for PFAS and other contaminants, and to conduct water quality testing.[3] Such grants could reduce or eliminate altogether any costs Plaintiff might otherwise incur to comply with the Rule. Because of these numerous contingencies and the consequent uncertainty regarding Plaintiff's obligations under the Rule, the facts alleged by Plaintiff demonstrate, at most, "the mere threat of potential injury," which is "too contingent or remote to support present adjudication." *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 228, 467 S.E.2d 913, 918 (1996) (quoting *Thrifty Rent-A-Car Sys., Inc. v. Thrifty Auto Sales of Charleston, Inc.*, 849 F. Supp. 1083, 1086 (D.S.C. 1991)). Thus, Plaintiff's claims are not ripe for adjudication and should be dismissed.[4]

---

[2] See, e.g., *National Association of Manufacturers v. EPA*, D.C. Cir., Case No. 24-01191, *The Chemours Company FC, LLC v. EPA*, D.C. Cir., Case No. 24-01192 and *American Water Works Association, et al v. EPA*, Fed. Cir., Case No. 24-01188, consolidated under Case No. 24-01188.

[3] www.epa.gov/newsreleases/biden-harris-administration-announces-2-billion-bipartisan-infrastructure-law-funding.

[4] Moreover, even if Plaintiff *had already* incurred costs to comply with the Rule, these costs simply are not the type of damages recoverable for trespass and nuisance causes of action under South Carolina law. *See Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 747 S.E.2d 468 (2013) ("The

5

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**2. Plaintiff's private nuisance claim fails because the alleged contamination of a public body of water cannot form the basis of a claim for private nuisance.**

Plaintiff's claim for private nuisance must be dismissed because the alleged contamination of a public body of water—the Great Pee Dee River—is a public harm that cannot form the basis of a private nuisance claim.

A private nuisance "affects only one person or a determinate number of persons," whereas "[a] nuisance is public because of the danger to the public which might have been created." *See Baltzeger v. Carolina Midland* Ry. Co., 54 S.C. 242, 248, 32 S.E. 358, 360 (1899); *Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989) ("A nuisance is public because of the danger to the public which might have been created. It is private only because the individual as distinguished from the public has been or may be injured."); *see also Charleston Dev. Co. v. Alami*, 433 S.C. 533, 547-48, 860 S.E.2d 687, 695 (Ct. App. 2021) ("'A private nuisance is anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another. It produces damage to but one or two persons, and cannot be said to be public.'") (citations omitted); *accord Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96-97 (4th Cir. 2011) ("If the only interest that is invaded is an interest shared equally by members of the public, then the alleged nuisance is public in nature. Such a circumstance is precisely the situation presented here, because DuPont's allegedly tortious conduct interfered with the general public's access to clean drinking water. . .. We therefore conclude . . . that when a release of pollutants directly affects a municipal water supply and does not interfere with any private water source, such as a well drilled on private property, the presence of the pollutants in the public water supply will not support a private nuisance claim.") (citations omitted).

---

damages recoverable for trespass and nuisance being strictly limited to damages to one's property interests, *the only proper measure of them is the value of the property*.") (emphasis added).

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Plaintiff's claims against Moving Defendants are based on the alleged contamination of the Great Pee Dee River more than 80 miles upstream of Bull Creek, from which Plaintiff's Bucksport facility intakes surface water. (*Compl*. ¶ 24.) This alleged harm, however, does not affect only Plaintiff. It effects the public at large. In fact, Plaintiff admits that the alleged contamination affects the "domestic water supply for over 115,000 water customers in Horry County[.]" (*Compl* ¶ 2.) Plaintiff's allegations therefore involve an alleged harm that is "public in nature," which "will not support a private nuisance claim." *See Rhodes*, 636 F.3d at 96-97. For this reason, Plaintiff's private nuisance claim should be dismissed.

Moreover, courts nationwide have held that a "private nuisance does not exist where water pollution affects only a municipal water supply." *Rhodes v. E.I. du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 767 (S.D.W. Va. 2009), *judgment entered*, No. 6:06-CV-00530, 2010 WL 11622804 (S.D.W. Va. Jan. 6, 2010), *and aff'd in part, appeal dismissed in part*, 636 F.3d 88 (4th Cir. 2011); *see Anderson v. W.R. Grace & Co.*, 628 F.Supp. 1219, 1233 (D. Mass.1986) ("The right to be free of contamination to the municipal water supply is clearly a 'right common to the general public', thus interference with that right would be a public nuisance."); *see also Adkins v. Thomas Solvent Co.*, 440 Mich. 293, 487 N.W.2d 715, 721 n. 11 (1992) (noting that "the contamination of ground water may give rise to an action for public nuisance"). When pollutants are released and impact the municipal water supply, rather than only a private water source, the harm affects a right shared by the general public and constitutes a public nuisance, not a private one. *Rhodes* 657 F.Supp. 2d at 767; *see Anderson*, 628 F.Supp. at 1233; *see also* Restatement (Second) of Torts § 821B cmt. b (explaining that conduct interfering with the public health constitutes a public nuisance). As in these cases, Plaintiff's private nuisance claim should be dismissed.

7

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**3.  Plaintiff's allegations do not support a claim for trespass.**

    **a.  An alleged entry onto property by PFAS will not support a trespass claim.**

Plaintiff's trespass claim fails because alleged contamination by PFAS is not an invasion by a physical, tangible thing as required by South Carolina law. South Carolina follows the traditional rule that "only recognizes intrusions by physical, tangible things as capable of constituting a trespass." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 152, 747 S.E.2d 468, 480 (2013). Intrusions by "microscopic particulates" or similarly intangible "infiltration[s] of contaminants onto a plaintiff's property" do not constitute actionable trespass under South Carolina law. *Id*. at 144-52, 476-80.

In adhering to the traditional rule that requires "an invasion by a physical, tangible thing," the Supreme Court recognized it was "an imperfect rule" that may not incorporate the pure scientific definition of matter. *Id.* at 150, 479. Nevertheless, the court held the traditional rule remained "superior" to the alternate rules which require the adoption of an uncertain "substantiality requirement," because it "possesses the virtues of clarity, ease of implementation, and ability to serve as a guide for future conduct" that will "yield a stable rule as to what rises to the level of a trespass." *Id*. at 149-51, 479-80. The Court further explained that the traditional rule preserves "the distinction between trespass and nuisance," whereas "the divergent view would transform trespass into nuisance," thereby "leav[ing] property owners with less, rather than more, protection of their property rights." *Id*. at 151-52, 480.

By retaining the traditional rule, the Supreme Court expressly rejected "divergent" cases in Oregon and Alabama, which held intrusions of "fluoride particles" and "sulfoxide emissions" respectively were sufficient to constitute a trespass despite their "intangible nature." *Id*. at 146-49, 747 S.E.2d at 477-78 (*rejecting Martin v. Reynolds Metals Co*., 342 P.2d 790 (1959) and *Borland v. Sanders Lead Co.,* 369 So. 2d 523 (Ala. 1979)). Instead, the Court followed the Michigan Court

8

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

of Appeals' decision in *Adams v. Cleveland-Cliffs Iron Co.* that concluded dust is "not actionable in trespass" because "dust, along with other forms of airborne particulate, does not normally present itself as a significant physical intrusion," but instead "become[s] a part of the ambient circumstances of th[e] space" on which it settles. *See Babb*, 405 S.C. at 149-50, 747 S.E.2d at 479; *see also* 237 Mich. App. 51, 67-70, 602 N.W.2d 215, 222-24 (1999).

PFAS molecules, measured in parts-per-trillion, fit squarely within the "microscopic particulates" discussed in *Babb*. Because any alleged PFAS contamination cannot constitute a trespass under South Carolina law, Plaintiff's trespass claim must be dismissed.

### b. Plaintiff fails to allege an intentional, unauthorized entry onto its property.

A trespass under South Carolina law requires a defendant's "affirmative act [and that] the invasion of the land must be intentional . . .." *Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991). In addition, the entry onto another's property must be unauthorized. *Ravan v. Greenville Cnty.*, 315 S.C. 447, 464, 434 S.E.2d 296, 306 (Ct. App. 1993) ("The essence of trespass is the unauthorized entry onto the land of another.").

Plaintiff fails to allege an intentional unauthorized entry onto its property as required by South Carolina law. The notion that Moving Defendants, by discharging water into the Great Pee Dee River, intended to cause PFAS to enter Plaintiff's property on Bull Creek more than 80 miles downstream is absurd. Moreover, Plaintiff concedes that, to the extent PFAS enters Plaintiff's property from the public waterway, it does so because Plaintiff *voluntarily* draws water into its facility by activating its pumps. (*Compl.* ¶ 97.) Plaintiff therefore fails to satisfy this required element of a trespass claim.

For similar reasons, multiple courts have recently found that a water treatment facility has no cause of action for trespass where the facility voluntarily draws allegedly contaminated water from a river. *See Utilities Bd. Of Tuskegee v. 3M Co.*, Inc., No. 2:22-cv-420-WKW, 2023 WL

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

1870912, at \*16 (M.D. Ala. Feb. 9, 2023) ("As alleged, the facts here do not sound in trespass because, unlike other indirect trespasses, Defendants' PFAS did not cross onto [plaintiff's] boundary line by a natural process."); *see also W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 208 F. Supp. 3d 1227, 1235 (N.D. Ala. 2016). Because Plaintiff's voluntary intake of allegedly contaminated surface water cannot state a claim for trespass, this claim must be dismissed.

### c. Plaintiff does not enjoy exclusive possession of the water from Bull Creek.

The South Carolina Supreme Court has made clear that trespass protects only the "right to *exclusive* possession" of property, as opposed to protection against "merely interfer[ing] with the right to use and enjoyment." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 150-151, 747 S.E.2d 468, 479-480 (2013) (emphasis added). And it is a "well-settled rule of law" that while a riparian owner, such as Plaintiff, has "an equal right to the use of the water which flows in the stream adjacent to his lands . . . [h]e has no property in the water itself, but a simple usufruct". *White v. Whitney Mfg. Co.*, 60 S.C. 254, 265, 38 S.E. 456, 460 (1901).

Accordingly, to the extent that Plaintiff seeks to recover on a trespass theory for the alleged pollution *of the waterway*, that claim fails because plaintiff does not hold an exclusive right to the water from the Bull Creek, only a riparian right of reasonable use. Plaintiff admits as much: "Plaintiff owns riparian land abutting Bull Creek and the Intracoastal Waterway, and ***Plaintiff has a property right in the reasonable use of these waters***, including for the provision of water to its customers." (*Compl*. ¶ 69) (emphasis added). Because Plaintiff does not enjoy exclusive possession of Bull Creek, Plaintiff cannot recover in trespass for the creek's alleged pollution.

10

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**4. Plaintiff's negligence claim fails because Defendant owes no duty to Plaintiff and Plaintiff fails to allege any cognizable damages.**

   **a. Defendant owes no duty to plaintiff.**

It is well-settled under South Carolina law that "[a]n essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." *Huggins v. Citibank, N.A.,* 355 S.C. 329, 332, 585 S.E.2d 275, 276 (2003). There can be no negligence liability unless the parties "have a relationship recognized by law as providing the foundation for a duty to prevent an injury." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.,* 373 S.C. 43, 47, 644 S.E.2d 43, 46 (2007). Such a duty "may be created by statute, a contractual relationship, status, property interest, or some other special circumstance." *Madison ex rel. Bryant v. Babcock Ctr., Inc.,* 371 S.C. 123, 136, 638 S.E.2d 650, 656-57 (2006). But foreseeability of the alleged injury alone does not give rise to a duty absent such a relationship. *See Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.,* 355 S.C. 614, 618, 586 S.E.2d 586, 588 (2003). "Absent a legally recognized duty, the defendant in a negligence action is entitled to a judgment as matter of law." *Wright v. S.C. Dep't of Transportation*, 437 S.C. 184, 191, 877 S.E.2d 788, 791 (Ct. App. 2022), *reh'g denied* (Sept. 23, 2022), *cert. denied* (May 24, 2023) (*citing Cole v. Boy Scouts of Am.*, 397 S.C. 247, 251, 725 S.E.2d 476, 478 (2011).

Plaintiff pleads no facts that could establish a duty of care owed by Moving Defendants to Plaintiff. Plaintiff does not allege Moving Defendants violated any applicable law or regulation. In fact, the only regulation referenced in the Complaint is the Rule, which Plaintiff concedes was enacted 2 years *after* Moving Defendants closed the Mill. Plaintiff's facility in Bucksport lies more than 80 miles from the Mill, and Plaintiff does not claim that any relationship existed at any time between Plaintiff and Moving Defendants. Plaintiff therefore alleges no duty "created by statute,

11

a contractual relationship, status, property interest, or some other special circumstance," *McCullough,* 373 S.C. at 47, 644 S.E.2d at 46.

Instead, Plaintiff makes only the conclusory allegation that "Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to [PFAS] to avoid causing an unreasonable risk of harm to others[.]" (*Compl.* ¶ 103). But Plaintiff fails to allege how the risk of the harm for which Plaintiff seeks recovery—the hypothetical future expense of complying with the Rule—was foreseeable years before the Rule was enacted. In any event, South Carolina law holds that "foreseeability of injury, in and of itself, does **not** give rise to a duty." *Charleston Dry Cleaners* at 618, 586 S.E.2d at 588 (*citing South Carolina State Ports Auth. v. Booz-Allen & Hamilton, Inc.*, 289 S.C. at 376, 346 S.E.2d at 325) (emphasis in original). Because no duty exists between Plaintiff and Moving Defendants, Plaintiff's negligence claim must fail.

### b. Plaintiff pleads no cognizable injury.

Damages is a required element of a negligence claim. *Babb*, 405 S.C. at 153, 747 S.E.2d at 481. "Generally, under South Carolina law, the damages element requires a plaintiff to establish physical injury or property damage." *Id*.

As stated in Section II.1. above, Plaintiff fails to allege cognizable damages because Plaintiff has not yet (and may never) incur costs to comply with the Rule. Other than the alleged future expenses to comply with the Rule, the Complaint asserts only conclusory allegations of harm. (*See, e.g., Compl.* ¶¶ 65, 86, 110, 120 (alleging unspecified "past, present, and future injury to property," and unnamed damages and "losses resulting from injury to its property")). These allegations are plainly insufficient to withstand a motion to dismiss. *Jones v. Gilstrap*, 288 S.C. 525, 528, 343 S.E.2d 646, 648 (Ct. App. 1986) (holding that, even under the liberal standard for a

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

motion to dismiss, mere conclusory allegations, unsupported by allegations of fact, are insufficient). Consequently, Plaintiff's negligence claim must be dismissed on this basis as well.

## III.   CONCLUSION

For all of the foregoing reasons, Moving Defendants' Motion to Dismiss should be granted, and Plaintiff's claims against Moving Defendants should be dismissed with prejudice.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/ MERRITT G. ABNEY
    Merritt G. Abney
    SC Bar No. 71893
    E-Mail: merritt.abney@nelsonmullins.com
    Sarah Specter Powell
    SC Bar No. 104261
    E-Mail: sarah.powell@nelsonmullins.com
    151 Meeting Street / Sixth Floor
    Post Office Box 1806 (29402-1806)
    Charleston, SC  29401-2239
    (843) 853-5200

    Wesley T. Moran
    South Carolina Bar No. 102787
    E-Mail: wes.moran@nelsonmullins.com
    3751 Robert M. Grissom Parkway / Suite 300
    Post Office Box 3939 (29578-3939)
    Myrtle Beach, SC 29577-6412
    (843) 448-3500

    *Attorneys for Defendants Aladdin Manufacturing Corporation and Mohawk Industries, Inc.*

Charleston, South Carolina
January 3, 2025

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FIFTEENTH JUDICIAL CIRCUIT |
| COUNTY OF HORRY | ) | |
| | ) | |
| GRAND STRAND WATER AND SEWER AUTHORITY, | ) | Civil Action No.  2024-CP-26-05523 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS MOHAWK INDUSTRIES, INC. AND ALADDIN MANUFACTURING CORPORATION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants Mohawk Industries, Inc. and Aladdin Manufacturing Corporation (jointly, "Moving Defendants"), respectfully move this Court to dismiss the Second Amended Complaint filed by Grand Strand Water & Sewer Authority (the "Plaintiff") pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the South Carolina Rules of Civil Procedure. Support for this Motion is set forth in Moving Defendants' Memorandum in Support of Motion to Dismiss, which is filed contemporaneously with this Motion and incorporated herein.

1

ELECTRONICALLY FILED - 2025 Jan 03 12:21 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

WHEREFORE, Moving Defendants respectfully request that the Court grant their Motion and enter an Order dismissing Plaintiff's claims against Moving Defendants with prejudice and grant any further relief that the Court may deem appropriate.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/ MERRITT G. ABNEY
Merritt G. Abney
SC Bar No. 71893
E-Mail: merritt.abney@nelsonmullins.com
Sarah Specter Powell
SC Bar No. 104261
E-Mail: sarah.powell@nelsonmullins.com
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC  29401-2239
(843) 853-5200

Wesley T. Moran
South Carolina Bar No. 102787
E-Mail: wes.moran@nelsonmullins.com
3751 Robert M. Grissom Parkway / Suite 300
Post Office Box 3939 (29578-3939)
Myrtle Beach, SC 29577-6412
(843) 448-3500

*Attorneys for Defendants Aladdin Manufacturing Corporation and Mohawk Industries, Inc.*

Charleston, South Carolina
January 3, 2025

ELECTRONICALLY FILED - 2025 Jan 06 12:25 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

GRAND STRAND WATER AND SEWER
AUTHORITY,

Plaintiff,

v.

ALADDIN MANUFACTURING
CORPORATION, *et al.*,

Defendants.

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

CASE NO. 2024-CP-26-05523

**ORDER GRANTING PRO HAC
VICE ADMISSION OF HANNAH
CORY CALDWELL**

Having considered the Motion of Marghretta H. Shisko, on behalf of Plaintiff Grand Strand Water and Sewer Authority, to admit Hannah Cory Caldwell, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**



Horry Common Pleas

**Case Caption:**     Grand Strand Water And Sewer Authority VS Aladdin Manufacturing
Corporation , defendant, et al
**Case Number:**     2024CP2605523

**Type:**     Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2025-01-03 15:09:39     page 2 of 2

ELECTRONICALLY FILED - 2025 Jan 06 12:25 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 06 10:00 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HORRY | ) | FOR THE FIFTEENTH JUDICIAL CIRCUIT |
| | ) | |
| Grand Strand Water and Sewer Authority, | ) | |
| | ) | |
| | ) | C.A. No.: 2024-CP-26-05523 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PROOF OF SERVICE** |
| | ) | |
| Aladdin Manufacturing Corporation *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Grand Strand Water and Sewer Authority, served Plaintiff's Second Amended Summons and Second Amended Complaint on Defendant Delta Mills, Inc. via personal service on the South Carolina Secretary of State on December 20, 2024, as shown on the attached Affidavit of Service. The South Carolina Secretary of State, in accordance with S.C. Code Ann. § 33-15-200, forwarded a copy of same to Delta Mills, Inc. on December 23, 2024, as shown on the attached letter from the Office of the Secretary of State.

/s/ *John B. White, Jr.*

John B. White, Jr., SC Bar No. 05996
Marghretta H. Shisko, SC Bar No. 100106
Griffin L. Lynch, SC Bar No. 72518
Christopher R. Jones, SC Bar No. 101265
JOHN B. WHITE, JR., PA
PO Box 2465 (29304)
291 S. Pine Street
Spartanburg, South Carolina 29302
Office: (864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

Spartanburg, SC
January 6, 2025

STATE OF SOUTH CAROLINA    )    IN THE COURT OF COMMON PLEAS

COUNTY OF HORRY    )    CASE NO: 2024-CP-26-05523

Grand Strand Sewer and Water
Authority,

Plaintiff,    **AFFIDAVIT OF SERVICE**

vs.

Aladdin Manufacturing Corporation,
et. al.,

Defendants.

The undersigned, Debbie Brothers being duly sworn, says that she served the foregoing: **COVER LETTER, TWO SECOND AMENDED SUMMONS AND TWO SECOND AMENDED COMPLAINTS** in the above captioned action upon the Defendant **DELTA MILLS, INC.,** by delivering the same to:

( ) the individual personally, or

(X) **KIM WICKERSHAM, Director for SC Secretary of State's Office** person served as authorized/designated to receive service for the defendant and leaving with him/her one (1) copy of the same at **1205 Pendleton Street, 5th Floor, Columbia, SC 29201** on the **20th day** of **December, 2024**, at **9:25 a.m.**

The Affiant further says, that upon information and belief, she know the person so served to be the defendant mentioned and described in the documents served and that the affiant is not a party to nor interested in the action.

_Debbie Brothers_
Debbie Brothers

SWORN TO before me this ___3rd___ day
of ___January___ ,2025
_McArthur Lewis_
Notary Public for S.C.
My Commission Expires: 3-6-2025

ELECTRONICALLY FILED - 2025 Jan 06 10:00 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

### State of South Carolina
### Office of the Secretary of State
### The Honorable Mark Hammond



1205 PENDLETON STREET, SUITE 525
COLUMBIA, SC 29201

803-734-2170
sos.sc.gov

December 23, 2024

ELECTRONIC CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Delta Mills, Inc.
c/o Mesirow Financial Consulting LLC
265 Franklin St., 16th Floor
Boston, MA 02110

RE: Delta Mills, Inc., 2024-CP-26-05523

Dear Madam/Sir:

In accordance with South Carolina Code § 33-15-200, we are enclosing herewith a copy
of the Second Amended Summons; and Second Amended Complaint in the above-
entitled case. Service was accepted on December 20, 2024 and a copy has been duly
filed in our office as of this date. The fee of $10.00 has been paid.

Yours very truly,

Allyson Green
South Carolina Secretary of State's Office

Enclosures

cc:    John B. White Jr., P.A.
       John B. White, Jr.
       291 South Pine Street P.O. Box 2465
       Spartanburg, SC 29304

| Corporations | UCC | Charities | Boards & Commissions | Notaries | Trademarks |
|---|---|---|---|---|---|
| 803-734-2158 | 803-734-2175 | 803-734-1790 | 803-734-2512 | 803-734-2512 | 803-734-0367 |

ELECTRONICALLY FILED - 2025 Jan 06 10:00 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 06 10:00 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HORRY | ) | FOR THE FIFTEENTH JUDICIAL CIRCUIT |
| | ) | |
| Grand Strand Water and Sewer Authority, | ) | |
| | ) | |
| | ) | C.A. No.: 2024-CP-26-05523 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PROOF OF SERVICE** |
| | ) | |
| Aladdin Manufacturing Corporation *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Grand Strand Water and Sewer Authority, served Plaintiff's Second Amended Summons and Second Amended Complaint on Defendant JP Stevens & Co., Inc. via personal service on the South Carolina Secretary of State on December 20, 2024, as shown on the attached Affidavit of Service. The South Carolina Secretary of State, in accordance with S.C. Code Ann. § 33-15-200, forwarded a copy of same to JP Stevens & Company, Inc. on December 23, 2024, as shown on the attached letter from the Office of the Secretary of State.

/s/ *John B. White, Jr.*
John B. White, Jr., SC Bar No. 05996
Marghretta H. Shisko, SC Bar No. 100106
Griffin L. Lynch, SC Bar No. 72518
Christopher R. Jones, SC Bar No. 101265
JOHN B. WHITE, JR., PA
PO Box 2465 (29304)
291 S. Pine Street
Spartanburg, South Carolina 29302
Office: (864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

Spartanburg, SC
January 6, 2025

STATE OF SOUTH CAROLINA )    IN THE COURT OF COMMON PLEAS

COUNTY OF HORRY )

CASE NO: 2024-CP-26-05523

Grand Strand Sewer and Water
Authority,

                 Plaintiff,     )    **AFFIDAVIT OF SERVICE**

vs.

Aladdin Manufacturing Corporation,
et. al.,

            Defendants.

The undersigned, Debbie Brothers being duly sworn, says that she served the foregoing: **COVER LETTER, TWO SECOND AMENDED SUMMONS AND TWO SECOND AMENDED COMPLAINTS** in the above captioned action upon the Defendant **J.P. STEVENS & CO., INC.,** by delivering the same to:

( ) the individual personally, or

(X) **KIM WICKERSHAM, Director for SC Secretary of State's Office** person served as authorized/designated to receive service for the defendant and leaving with him/her one (1) copy of the same at **1205 Pendleton Street, 5th Floor, Columbia, SC 29201** on the **20th day** of **December, 2024,** at **9:25 a.m.**

The Affiant further says, that upon information and belief, she know the person so served to be the defendant mentioned and described in the documents served and that the affiant is not a party to nor interested in the action.

_____
Debbie Brothers

SWORN TO before me this 3RD day
of _____January_____ ,2025
_____
Notary Public for S.C.
My Commission Expires: 3-6-2025



## State of South Carolina
## Office of the Secretary of State
## The Honorable Mark Hammond

1205 PENDLETON STREET, SUITE 525
COLUMBIA, SC 29201

803-734-2170
sos.sc.gov

ELECTRONICALLY FILED - 2025 Jan 06 10:00 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

December 23, 2024

ELECTRONIC CERTIFIED MAIL
RETURN RECEIPT REQUESTED

J.P. Stevens & Co., Inc.
c/o WestPoint Stevens, Inc.
P.O. Box 71 507 West 10th Street
West Point, GA 31833

RE: J.P. Stevens & Co., Inc., 2024-CP-26-05523

Dear Madam/Sir:

In accordance with South Carolina Code § 33-15-200, we are enclosing herewith a copy
of the Second Amended Summons; and Second Amended Complaint in the above-
entitled case.  Service was accepted on December 20, 2024 and a copy has been duly
filed in our office as of this date.  The fee of $10.00 has been paid.

Yours very truly,

Allyson Green

Allyson Green
South Carolina Secretary of State's Office

Enclosures

cc:    John B. White Jr., P.A.
       John B. White, Jr.
       291 South Pine Street P.O. Box 2465
       Spartanburg, SC 29304

| Corporations | UCC | Charities | Boards & Commissions | Notaries | Trademarks |
|---|---|---|---|---|---|
| 803-734-2158 | 803-734-2175 | 803-734-1790 | 803-734-2512 | 803-734-2512 | 803-734-0367 |

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | **IN THE COURT OF COMMON PLEAS** |
| **COUNTY OF HORRY** | **FIFTEENTH JUDICIAL CIRCUIT** |

GRAND STRAND WATER AND SEWER AUTHORITY,

   *Plaintiff*,

*v.*

ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsable parties, MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, LLC,

   *Defendants*.

Civil Action No: 2024CP2605523

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FIBER INDUSTRIES, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant, Fiber Industries, LLC d/b/a Darling Fibers ("Defendant" or "Fiber"), by and through their undersigned counsel, and pursuant to Rules 8(a), Rule 12(b)(1), and 12(b)(6) of the South Carolina Rules of Civil Procedure, hereby submits this memorandum of law in support of its motion to dismiss all claims asserted against it in the Second Amended Complaint ("SAC") filed by Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff"), a "special purpose

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

district" that provides potable water to residents of various counties in South Carolina, respectfully stating as follows:

## PRELIMINARY STATEMENT

Plaintiff's SAC, relying on a federal drinking water standard that is neither final nor as to which compliance is required for another four years, alleges contamination by Defendant of an upstream public body of water with intangible matter, yet devoid of any allegation of actual present expenses or damages to Plaintiff.  The SAC should be dismissed as to Defendant—which had only limited operations at the site since 2017—on multiple grounds:

- *Lack of Ripeness/Prematurity.*  The claims of Plaintiff are based on newly-promulgated drinking water standards for certain per- and polyfluoroalkyl substances ("PFAS"). However, those rules do not become final or require compliance until 2029.  Moreover, Plaintiff attempts to recover premature speculative damages for "the mere threat of a potential injury" without alleging any actual expenses or damages based on the alleged contamination.  *See* Argument, Sec. A; *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219 (1996).

- *Failure to State a Claim.*  The SAC is an omnibus complaint against fourteen (14) defendants replete with allegations against "Defendants," collectively.  To the extent Plaintiff alleges claims against Fiber, specifically, all of those claims are deficient and should be dismissed; they improperly expand the reach of trespass and nuisance claims and fail to allege any duty owed by this Defendant to Plaintiff needed to support a traditional negligence claim.

  - *Trespass.*  The SAC fails to adequately allege invasion of Plaintiff's property by tangible matter—a necessary element of a trespass claim.  Rather, this is a case

2

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

allegedly arising from intangible, microscopic PFAS particles purportedly deposited into a public waterway without any intentional act by Defendant on Plaintiff's property, which is another necessary element of a claim for trespass. *See* Argument Sec. B.1; *Babb v. Lee County Landfill S.C., LLC*, 405 S.C. 129 (2013); *White v. Whitney Mfg. Co.*, 60 S.C. 254, (1901); *Snow v. City of Columbia*, 305 S.C. 544 (Ct. App. 1991).

o   *Private Nuisance*.  An alleged contamination of a public body of water cannot state a claim for private nuisance.  *See* Argument Sec. B.2.a; *Charleston Dev. Co., LLC v. Alami*, 433 S.C. 533 (Ct. App. 2021).

o   *Public Nuisance.*  Because Plaintiff is a private entity that does not allege a unique injury to its real or personal property, the claim for public nuisance fails as well. *See* Argument Sec. B.2.b; *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67 (2014).

o   *Negligence.*  This is at base a negligence suit related to alleged PFAS contamination in a waterway not alleged to be owned by Plaintiff, and thus Defendant owes no duty to Plaintiff, an essential element of a negligence claim.  Moreover, Plaintiff does not plead cognizable damages to support a negligence claim (or any claim based on gross negligence and/or recklessness).  *See* Argument Sec. B.3; *Doe ex rel. Doe v. Wal-Mart Stores, Inc.*, 393 S.C. 240 (2011); *Babb*, 405 S.C. at 153.

Plaintiff's claims cannot proceed for two additional reasons.

•   *Municipal Cost Recovery Rule.*  Under the municipal cost recovery rule (also known as the "free public services doctrine"), a public governmental entity, such as Plaintiff, cannot recover for alleged expenditures made (or to be made) in the performance of governmental

functions (*e.g.*, future upgrading of water treatment plants). *See* Argument Sec. C; *United States v. Standard Oil Co. of Cal.*, 332 U.S. 301 (1947).

- ***Primary Jurisdiction.***   Under the South Carolina State Safe Drinking Water Act (the "Act"), exclusive enforcement of the claims in the SAC rests with the South Carolina Department of Environmental Services (the "Department").   Thus, the Department—not this Court—has primary jurisdiction over the claims. *See* Argument Sec. D; *United States v. W. Pac. R.R. Co.*, 352 U.S. 59 (1956).

## BACKGROUND

Plaintiff is a public entity that provides potable water to residents of various counties in South Carolina.  SAC ¶ 15.  Plaintiff operates the Bull Creek Surface Water Treatment Plant ("SWTP") and the Myrtle Beach SWTP and owns certain land on Bull Creek in Bucksport, South Carolina and on the Intracoastal Waterway in Myrtle Beach.  SAC ¶ 3.  Plaintiff's SWTPs withdraw water from Bull Creek and the Intracoastal Waterway for treatment before distributing it to customers. *Id.*  Plaintiff's SAC, which was filed on October 7, 2024, claims that all fourteen Defendants contaminated these waters with PFAS.

Defendant currently leases the textile manufacturing facility at issue in the SAC, which is located at 1000 E. McIver Road Darlington, South Carolina 29532 ("the Facility").  Defendant has only leased the Facility since 2017 and has conducted operations for only a limited portion of that time—facts noticeably absent from Plaintiff's SAC.  Plaintiff's only allegation directed to Fiber is the same generalized allegation it has asserted with respect to all named Defendants, stating that "Darling Fibers uses products that contain or degrade to PFOA, PFOS, PFHxs, PFNA, PFBS, and/or GenX Chemicals in the manufacture of textile fibers and fabrics." SAC ¶ 21.  However, Plaintiff fails to identify any specific "products that contain or degrade" to PFAS that Defendant has allegedly used.

4

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

On the basis of these allegations, Plaintiff asserts four causes of action against Defendant: (1) trespass, (2) private nuisance, (3) public nuisance, (4) and negligence, gross negligence, and/or recklessness. For the reasons stated below, all of these claims should be dismissed.

## LEGAL STANDARD

"Under Rule 12(b)(6), SCRP, a defendant may move to dismiss a complaint based on a failure to state facts sufficient to constitute a cause of action." *Spence v. Spence*, 368 S.C. 106, 116 (2006). "A ruling on a motion to dismiss a claim pursuant to Rule 12(b)(6), SCRCP, must be based solely on the allegations set forth on the face of the complaint." *United Educ. Distributors, LLC v. Educ. Testing Serv.*, 350 S.C. 7, 13 (Ct. App. 2002). When deciding a motion to dismiss, "the question is whether, in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Plyler v. Burns*, 373 S.C. 637, 645 (S.C. 2007).

South Carolina is a fact-pleading state that requires a plaintiff to plead the ultimate facts and a statement of facts constituting a cause of action. Rule 8(a), SCRCP. Thus, a complaint must contain factual allegations regarding each essential element of a viable cause of action, and failure to plead facts sufficient to constitute a cause of action warrants dismissal under Rule 12(b)(6). *See Doe v. Marion*, 361 S.C. 463 (S.C. App. 2004) (affirming dismissal under 12(b)(6) where Plaintiffs failed to allege sufficient facts to support their negligence claim).

## ARGUMENT

### A.     Plaintiff's Claims Are Not Ripe For Adjudication.

"A threshold inquiry for any court is a determination of justiciability, *i.e.*, whether the litigation presents an active case or controversy." *Lennon v. S.C. Coastal Council*, 330 S.C. 414, 415 (Ct. App. 1998). This includes an assessment of whether the plaintiff's claims are "ripe and appropriate for judicial determination." *Pee Dee Elec. Co-op., Inc. v. Carolina Power & Light*

5

*Co.*, 279 S.C. 64, 66 (1983).  A claim is not ripe and should be dismissed when it presents "a contingent, hypothetical or abstract dispute."  *Id.*  South Carolina courts hold that "[i]t is not enough that a threat of *possible* injury currently exists; the mere threat of a potential injury is too contingent or remote to support present adjudication."  *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 228 (1996) (citation omitted).

Plaintiff's SAC demonstrates that it has not yet suffered any legally cognizable injury due to PFAS, and likely never will.  Although the U.S. Environmental Protection Agency (the "EPA") published PFAS drinking water standards in April, 2024, it has not yet been determined how, if at all, the rule will impact Plaintiff.  SAC ¶ 45.  The EPA regulation, which is being challenged in multiple lawsuits, does not become final and require compliance until 2029.  *Id.* at ¶ 47.  In the SAC, Plaintiff argues that Defendant should pay "expenses associated with future acquisition, installation, and operation of required treatment technologies."  *Id.* at ¶ 83.  Plaintiff thus implicitly admits that it is not currently required to—and has not—purchased treatment technologies to comply with the possible future regulation.  Plaintiff seeks instead to recover damages for "the mere threat of a potential injury," as the EPA regulation does not yet require compliance and is subject to change.  *Waters*, 321 S.C. at 328.  Since it is premature and entirely speculative what measures, if any, Plaintiff may be required to take in the future, Plaintiff's claims are not ripe for adjudication and should be dismissed.

**B.    All of Plaintiff's Claims Against Defendant Fail To State A Cause Of Action And Should Be Dismissed With Prejudice.**

Plaintiff's claims are not ripe for adjudication.  Nonetheless, if the Court finds the claims are judiciable, then the case is—at its core—a negligence cause of action.  Plaintiff, however, has attempted to expand the scope of the matter to insufficiently allege claims for trespass, as well as

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

private and public nuisance.  As detailed below, all of these claims fail as a matter of law, and should be dismissed with prejudice.

### 1.  *Plaintiff Fails To Allege Facts Necessary To Support Trespass Claim.*

"Trespass is any intentional invasion of the plaintiff's interest in the exclusive possession of his property . . . . To constitute actionable trespass, however, there must be an affirmative act, invasion of land must be intentional, and harm caused must be the direct result of that invasion." *Hawkins v. City of Greenville*, 358 S.C. 280, 296 (Ct. App. 2004).  Here, the SAC fails to adequately allege invasion of Plaintiff's property by a tangible matter, and fails to meet each element of a trespass cause of action.  Based on these grounds, Plaintiff's trespass claim should be dismissed.

### a)  PFAS Particles Are Intangible Matter That Cannot Support A Trespass Claim.

Plaintiff fails to state a valid claim for trespass because the alleged PFAS particles are intangible in nature.  "South Carolina adheres to the traditional rule requiring an invasion by a physical, tangible thing for a trespass to exist." *Babb v. Lee County Landfill S.C.*, *LLC*, 405 S.C. 129, 145 (2013).  In *Babb*, the Court analyzed and rejected a line of trespass cases that would allow claims based on intangible invasions. *Id.* at 150-52 (concluding that allowing trespass actions for "microscopic and atomic particles" would lead to public uncertainty as to what constitutes a trespass and "would transform trespass into nuisance" where plaintiffs could recover for "even the most ephemeral intrusion").

While the invasion at issue in *Babb* was an "invisible odor," such an odor in the air is equivalent to PFAS particles in the water because PFAS—similar to odors or gas—are infinitesimal, microscopic, particles, that are "visibly undetectable and transient." *Babb*, 405 S.C. at 146 (citation omitted); *see* SAC ¶ 36 (acknowledging that PFAS molecules are measured in

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

parts per trillion). Such particles are exactly the kind of "intangible matter" that the South Carolina Supreme Court has held do not interfere with the exclusive possession of land and are "insufficient to constitute a trespass." *Babb*, 405 S.C. at 146. As such, Plaintiff's trespass claim should be dismissed because microscopic, PFAS particles do not give rise to an actionable trespass under South Carolina law.

b)      Plaintiff Cannot Show *Any* Other Element of Trespass.

Even if the Court finds that PFAS *is* tangible matter, Plaintiff fails to allege all other elements of trespass. In a trespass cause of action, Plaintiff must show "an invasion (a) which interfered with the right of exclusive possession of the land, and (b) which was a direct result of some act committed by the defendant." *Graham v. Town of Latta, S.C.*, 417 S.C. 164, 192 (Ct. App. 2016) (citations omitted); *see also Santoro v. Schulthess*, 384 S.C. 250, 268 (Ct. App. 2009). Further, "the invasion of land must be intentional." *Graham*, 417 S.C. at 193.

*(1)      Plaintiff does not have exclusive possession over the waterways.*

Plaintiff's trespass claim should be dismissed because it does not sufficiently allege a physical invasion of Plaintiff's property. South Carolina courts are clear that trespass *only* protects one's right to the exclusive possession of his property, and Plaintiff does not have exclusive possession over the waterways at the center of its trespass claim. *Babb*, 405 S.C. at 139. In its Complaint, Plaintiff acknowledges that it "owns and occupies riparian lands in Horry County, both on Bull Creek in Bucksport, South Carolina, and on the Intracoastal Waterway in Myrtle Beach, South Carolina." SAC ¶ 3. Plaintiff thus does not hold an exclusive right to the water from Bull Creek or the Intracoastal Waterway, but rather a riparian right of reasonable use. "Under the common law, riparian property owners—those owning land adjacent to rivers or streams—hold special rights allowing them to make 'reasonable use' of the water adjacent to their property."

8

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

*Jowers v. S.C. Dep't of Health & Env't Control*, 423 S.C. 343, 355 (2018).  While it is well-settled in South Carolina that a riparian owner has "an equal right to the use of the water which flows in the stream adjacent to his lands . . . [h]e has no property *in the water itself*, but a simple usufruct." *White v. Whitney Mfg. Co.*, 60 S.C. 254, 265 (1901) (emphasis added).  As such, Plaintiff does not possess exclusive property rights over the waterways at issue in its trespass action.

> (2)     *Plaintiff's alleged harm is not the result of an alleged affirmative act by Defendant.*

What is more, Plaintiff does not allege, because they cannot show, that Defendant engaged in some "affirmative act" that directly caused an invasion of Plaintiff's property.  *Graham*, 417 S.C. at 193.  While Plaintiff alleges that PFAS is present on its property, "including its land, SWTPs, and related buildings, improvements, and equipment that makes up its water distribution system," SAC ¶ 99, Plaintiff concedes that such contamination has only occurred as a result of Plaintiff's own actions in deliberately drawing the subject water into its facilities.  *Id.* at ¶ 97. ("[E]ach separate invasion of PFAS-contaminated water constitutes a new trespass every time Plaintiff's water pumps are active.").  Thus, it is not an alleged contamination of the water that directly caused an invasion, but rather Plaintiff's intervening activation of its water pumps that brought the alleged chemicals onto its property.

Further, even if the allegations are taken as true, Plaintiff does not claim and could not show, that Defendant intentionally allowed PFAS to enter Plaintiff's property.  *Snow v. City of Columbia*, 305 S.C. 544, 553 (Ct. App. 1991) (holding that "[t]o constitute an actionable trespass . . . the invasion of land must be intentional," i.e., "[the trespasser] must intend [the] act which constitutes the unwarranted entry on another's land.").  "Intent is proved by showing that the defendant acted voluntarily and that he knew or should have known the result would follow from his act."  *Id.* at 553 (citation omitted).  Here, Plaintiff has not even alleged that Defendant released

9

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

any PFAS chemicals into waterways owned by Plaintiff. Specifically, Plaintiff does not allege that Defendant both intentionally contaminated the waters with PFAS and that Defendant knew or should have known that such chemicals would invade Plaintiff's property. Since Plaintiff can show neither that it had exclusive possession over the waterways into which Defendant allegedly discharged PFAS, nor that Defendant directly caused an intentional invasion of Plaintiff's real or personal property, Plaintiff's trespass claim should be dismissed.

### 2.    *Plaintiff Does Not State The Elements of a Nuisance Claim.*

a)    <u>Private nuisance.</u>

Plaintiff's private nuisance claim should be dismissed because an alleged contamination of a public body of water cannot state a claim for private nuisance. A private nuisance "produces damage to but one or two persons, and cannot be said to be public." *Charleston Dev. Co., LLC v. Alami*, 433 S.C. 533, 547-48 (Ct. App. 2021) (quoting *Deason v. S. Ry. Co.*, 142 S.C. 328, 334, (1927)); *see also Baltzeger v. Carolina Midland Ry. Co.*, 54 S.C. 242, 248 (1899) ("A private nuisance affects only one person or a determinate number of persons." (quoting 16 Am. & Eng. Enc. Law, 926)).

Because Plaintiff is just one of the many riparian landowners with property located along Black Creek, the Great Pee Dee River, and Bull Creek, Plaintiff cannot sustain its private nuisance claim. Plaintiff's SAC makes clear that its claims are based solely on an alleged and unsubstantiated discharge of industrial wastewater containing PFAS into Black Creek, which then flows downstream into the Great Pee Dee River, and Bull Creek. SAC ¶ 21; *see also id*. at ¶ 52. Thus, even if Plaintiff could establish any misconduct by Defendant, and it cannot, any such a claim at best might sound as a private nuisance claim because any such alleged misconduct would not be public in nature.

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

b)     Public nuisance.

Plaintiff fails to state a cause of action for public nuisance as well, however, because Plaintiff is a private entity that does not allege a unique injury to its real or personal property. In South Carolina, "[w]hile a public nuisance cause of action can be used to remedy harms suffered by the public generally, typically only the State may assert this cause of action." *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 78 (2014). A private party may bring a private civil suit for a public nuisance "only if he suffered special injury to his real or personal property." *Id.* Courts have defined a special injury as an "individual or specific damage in addition to that suffered by the public" that must be "of a special character, distinct and different from the injuries suffered by the public generally." *Id.* ((citations omitted).

Plaintiff fails to allege facts demonstrating that it has suffered a unique injury different from that experienced by the public at large, if any. SAC ¶ 2 (claiming that Defendants' alleged discharge has contaminated "Plaintiff's properties and the domestic water supply for over 115,000 customers in Horry County"). Plaintiff rather attempts to disguise the injury allegedly suffered by the public at large—the contamination of its water source with PFAS—as its own unique injury. *Id.* at ¶ 83 (arguing that Plaintiff's special injuries include "the inability to provide potable water to customers without concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals deemed unsafe by the EPA").

Additionally, Plaintiff cannot allege an injury to its own real or personal property. As discussed above, *see supra* Argument Sec. B.1.b, though Plaintiff has a riparian right of reasonable use in the waterways, "[h]e has no property in the water itself, but a simple usufruct." *White.*, 60 S.C. at 265; SAC ¶ 3. Thus, while Plaintiff claims a special injury relating to "the lost use of its properties," it does not show that Defendant injured its actual property. Instead, Plaintiff's asserted injury, at its core, is its wholly unsubstantiated allegation that Defendant contaminated the

11

waterways from which Plaintiff draws waters into its facilities. SAC ¶ 83; *id.* at ¶ 16 ("Plaintiff operates the Bull Creek SWTP . . . [which] is riparian to, and draws water from, Bull Creek . . . The Myrtle Beach SWTP is riparian to, and draws water from, the Intracoastal Waterway."). As such, Plaintiff fails to allege that Defendant caused any special injury to its real or personal property, and Plaintiff's claim for public nuisance fails as a matter of law.

### 3. *Plaintiff Fails to State a Claim for Negligence Against Defendant.*

"To prevail on a negligence claim, a plaintiff must establish duty, breach, causation, and damages." *Babb*, 405 S.C. at 153 (citing *Sherrill v. Southern Bell Tel. & Tel. Co.*, 260 S.C. 494, 499 (1973)). Here, the SAC fails to adequately allege that Defendant owed Plaintiff any duty or that Plaintiff suffered the kind of damages that are recoverable under a negligence theory. Thus, based on these separate grounds, Plaintiff's negligence claim in the SAC should be dismissed.

#### a)    Defendant does not owe a duty to Plaintiff.

Under South Carolina law, the existence of a legal duty of care owed by the defendant to the plaintiff is an essential element in a negligence cause of action, *Huggins v. Citibank, N.A.*, 355 S.C. 329, 332 (2003), and the existence of a duty owed is a question of law for the courts. *Doe v. Greenville Cnty. Sch. Dist.*, 375 S.C. 63 (2007). A duty "may be created by statute, a contractual relationship, status, property interest, or some other special circumstance." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 47-8 (2007). "It is the relationship between the parties, not the potential 'foreseeability of injury,' that determines whether the law will recognize a duty in a given context." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 535 (D.S.C. 2014) (citing *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614, 619 (2003)). This ensures that the concept of duty in tort liability is not extended beyond reasonable limits. *S.C. State Ports Auth. v. Booz-Allen & Hamilton, Inc.*, 289 S.C. 373,

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

377 (1986). If there is no duty, the defendant is entitled to judgment as a matter of law. *Huggins*, 355 S.C. at 333.

The SAC fails to allege any facts suggesting any statutory obligation, property interest, or contractual, business or other relationship between Plaintiff and Defendant that could establish such a duty. Accordingly, since the SAC fails to allege any duty owed by Defendant, Plaintiff's negligence claim (and gross negligence and/or recklessness claim, to the extent alleged) against Defendant should be dismissed.

> b)    Plaintiff's alleged damages are not recoverable under a negligence theory.

Plaintiff's negligence claim against Defendant also fails as a matter of law because Plaintiff alleges no facts that would establish the damages element of such a claim. "In negligence, proof of actual damage is an essential element of the tort." *Richardson's Restaurants, Inc. v. Nat'l Bank of S.C.*, 304 S.C. 289, 296 (1991). "There is no liability if there is no actual damage." *Id.* Under South Carolina law, the damages element "requires a plaintiff to establish physical injury or property damage." *Babb*, 405 S.C. at 153.

Plaintiff only alleges speculative losses in property value and potential operating cost increases in the future. SAC ¶ 110. As pled, Plaintiff's damages allegations do not implicate or suggest the kind of "physical injury or property damage" that is recoverable under a negligence claim. *See Gray v. S. Facilities, Inc.*, 256 S.C. 558, 566-71 (1971) (finding property owner could not recover for diminution of the value of property resulting from oil fire in adjacent river that did not cause physical damage to his property). Thus, for this independent reason, Plaintiff's negligence claim (and gross negligence and/or recklessness claim, to the extent alleged) against Defendant fails as a matter of law and should be dismissed.

13

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**C.     The Municipal Cost Recovery Rule (Also Known As The "Free Public Services Doctrine") Precludes The Speculative Damages Plaintiff Seeks.**

Under the municipal cost recovery rule, also known as the "free public service doctrine," public expenditures made in the performance of governmental functions are not recoverable in tort. *See United States v. Standard Oil Co. of Cal.*, 332 U.S. 301, 315-17 (1947) (holding that the "exercise of judicial power to establish [] new liability . . . would be intruding within a field properly within [the legislature's] control"). Attempts by governmental bodies to sue product manufacturers over response costs are an end run around the democratic process. *See Int'l Bhd. of Teamsters, Local 734 Health & Welfare Fund v. Philip Morris, Inc.*, 196 F.3d 818, 825 (7th Cir. 1999) ("[I]t is no part of the judicial function . . . to decree a sudden, *ex post* shift in the financial consequences of selling a consumer product by attaching what would amount to a regressive excise tax."); *Torres v. Putnam Cnty.*, 541 S.E.2d 133, 136 & n.4 (Ga. App. 2000) (allegation that defendant "caus[ed] the county to spend money enforcing its laws and protecting its citizens" failed to state a claim).

Plaintiff is a "special purpose district that provides potable water to residents of various counties in South Carolina, including Horry County." SAC ¶ 3. Under S.C. Code of Laws § 6-11-1610, a special purpose district is "a district created by an Act of the General Assembly or pursuant to general law and which provides any governmental power or function including, but not limited to, fire protection, sewerage treatment, water or natural gas distribution or recreation." S.C. Code Ann. § 6-11-1610. A special purpose district also means any rural community water district authorized or created under the provisions of Chapter 13 of Title 6 of the S.C. Code of Laws. *See* S.C. Code Ann. § 6-13-10.

As a public, governmental entity, Plaintiff cannot claim relief from the Court for alleged damages to upgrade its SWTPs. *See* SAC ¶ 7.

14

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**D.     In The Alternative, The Court Should Stay This Action And Refer The Issue To The Department Of Environmental Services.**

In the alternative, the Court should stay this action upon referral to the South Carolina Department of Environmental Services (the "Department") on the grounds of primary jurisdiction. "Primary jurisdiction . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its view." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956) (internal quotation marks omitted).

The South Carolina State Safe Drinking Water Act (the "Act") reflects the regulatory framework under which the legislature entrusted the Department with addressing the exact harm alleged here. *See* S.C. Code Ann. § 44-5—10, *et seq.* The Act prohibits any person from "render[ing] a public water system, or part or portion of a public water system, inoperable or unusable by means of contamination . . . ." *Id.* at § 44-55-80(B). The Act exclusively vests enforcement authority in the Department and, if requested by the Department, the Attorney General. *Id.* at §§ 44-55-60 through 44-55-100. Under the Act, violators are liable to the State, not the public water system, and damages are limited to actual damages sustained. *Id.* at § 44-55-90(B)(1), 44-55-1520. Because the exclusive enforcement of these issues rests with the Department, this Court should refer this case to the Department to exercise primary jurisdiction.

15

## **CONCLUSION**

For the reasons set forth above, Plaintiff's SAC should be dismissed in its entirety as to Defendant Fiber. In the alternative, this Court should stay this action and refer this case to the South Carolina Department of Environmental Services under the doctrine of primary jurisdiction.

MCANGUS GOUDELOCK & COURIE, LLC


*s/ Dominic A. Starr*

DOMINIC A. STARR (SC Bar No: 66231)
dominic.starr@mgclaw.com
ZACHARY S. BROWN (SC Bar No: 103144)
Zachary.brown@mgclaw.com
2411 North Oak Street, Suite 401
Myrtle Beach, South Carolina 29577
Telephone: (843) 848-6000
Facsimile: (843) 449-2306
ATTORNEYS FOR FIBER INDUSTRIES, LLC

16

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF HORRY | ) | |
| GRAND STRAND WATER AND SEWER AUTHORITY, | ) | Civil Action No. 2024CP2605523 |
| Plaintiff, | ) | |
| vs. | ) | **DEFENDANT FIBER INDUSTRIES, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., ITS PREDECESORS, SUCCESSORS, ASSIGNS, AND/OR RESPONSIBLE PARTIES; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., ITS PREDECESSORS, SUCCESSORS, ASSIGNS, AND/OR RESPONSIBLE PARTIES; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; AND WASTE INDUSTRIES, LLC, | ) | |
| Defendants. | ) | |

YOU WILL PLEASE TAKE NOTICE that ten (10) days after service hereof, or as soon thereafter as counsel may be heard, Defendant, Fiber Industries, LLC, by and through their undersigned attorneys, will move before the Presiding Judge of the Horry County Court of Common Pleas dismissing them from the above-captioned action pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the *South Carolina Rules of Civil Procedure* as the Second Amended Complaint fails to state a viable cause of action against this Defendant. The grounds for this motion are set forth in the Memorandum of Law filed herewith.

MCANGUS GOUDELOCK & COURIE, LLC

*s/ Dominic A. Starr*

DOMINIC A. STARR (SC Bar No. 66231)
dominic.starr@mgclaw.com
ZACHARY S. BROWN (SC Bar No. 103144)
Zachary.Brown@mgclaw.com
2411 North Oak Street, Suite 401
Myrtle Beach, South Carolina 29577
Telephone: (843) 848-6000
Facsimile: (843) 449-2306
ATTORNEYS FOR FIBER INDUSTRIES, LLC

January 10, 2025

ELECTRONICALLY FILED - 2025 Jan 10 3:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

January 9, 2025

The Honorable Renee Elvis
Clerk of Court
P.O. Box 677
Conway, SC  29528-0677

RE:    Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation, et al.

Case No: 2024-CP-26-05523

Dear Ms. Elvis:

I certify that the Office of Bar Admissions has received the verified application requesting Hannah Cory Caldwell be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:    Hannah Cory Caldwell
Marghretta Shisko

FILED
HORRY COUNTY
2025 JAN 13 P 12: 34
RENEE N. ELVIS
CLERK OF COURT
HORRY COUNTY, SC

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF HORRY | IN THE COURT OF COMMON PLEAS<br>FOR THE FIFTEENTH JUDICIAL CIRCUIT |
| GRAND STRAND WATER AND SEWER<br>AUTHORITY, | C.A. No. 2024-CP-26-05523 |
| *Plaintiff*,<br>v. | **AMENDED MEMORANDUM<br>IN SUPPORT OF<br>MOTION TO DISMISS BY<br>NAN YA PLASTICS<br>CORPORATION, AMERICA** |
| ALADDIN MANUFACTURING<br>CORPORATION; BURLINGTON INDUSTRIES,<br>INC.; DELTA MILLS, INC., its predecessors,<br>successors, assigns, and/or responsible parties;<br>DOMTAR PAPER COMPANY, LLC; ELEVATE<br>TEXTILES, INC., FIBER INDUSTRIES, LLC;<br>GFL ENVIRONMENTAL USA, INC.; J.P.<br>STEVENS & COMPANY, INC., its predecessors,<br>successors, assigns, and/or responsible parties;<br>MOHAWK INDUSTRIES, INC.; NAN YA<br>PLASTICS CORPORATION, AMERICA; NAN<br>YA ADVANCED MATERIALS, LLC; RED<br>ROCK DISPOSAL, LLC; SAMPSON COUNTY<br>DISPOSAL, LLC; and WASTE INDUSTRIES,<br>LLC, | |
| *Defendants*. | |

## INTRODUCTION

Defendant Nan Ya Plastics Corporation America ("Nan Ya") has moved the Court to dismiss Plaintiff's Second Amended Complaint as to NAN YA pursuant to South Carolina Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6). Plaintiff Grand Strand Water & Sewer Authority ("Plaintiff") is a public entity that operates the Bull Creek Surface Water Treatment Plant ("SWTP") and the Myrtle Beach SWTP and owns certain land on Bull Creek in Bucksport, South Carolina and on the Intracoastal Waterway in Myrtle Beach. (Plaintiff's Second Amended Complaint ("SAC"). Plaintiff's SWTPs withdraw water from Bull Creek and the Intracoastal

1

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Waterway for treatment before distributing it to customers. Plaintiff's claims involve per- and polyfluoroalkyl and related substances ("PFAS"). There are multiple types of PFAS.

Since filing its Motion, Nan Ya has learned that the former U.S. Air Force Base in Myrtle Beach, which was where the Myrtle Beach International Airport is now located, has very high concentrations of several of the PFAS chemicals which Plaintiff alleges defendants are discharging into waters which flow to its water intake locations. The site of the former base is only 2.5 miles from the intake on the Atlantic Intracoastal Waterway and some 10 miles from the Bull Creek intake. As explained below, there is little doubt that these chemicals are discharged from the former AFB site into the Intracoastal Waterway ("AIWW") and that those waters mix with the waters from which Plaintiff draws drinking water. For this reason, Nan Ya is amending its Motion to include as a basis for dismissal of this action SCRCP 12(b)(7) and 19(b) for failure to join the United States as a party.

## I.

### CONTAMINATION OF THE FORMER AFB SITE

The former Myrtle Beach AFB site is located just south of the US Highway 17 Bypass and adjacent to the AIWW. See Exhibit 1, a map illustrating the location of the AFB site and the two water intake locations which are the subject of Plaintiff's Amended Complaint. At this location, the AIWW is tidal. For part of the day, it flows northeast, where 2.5 miles away the Plaintiff's AIWW intake is located. The other part of the day, if flows to the southwest and joins with the Waccamaw River which, in turn, flows into Bull Creek where the plaintiff's other intake is located some 10 miles away.

As required by federal law and applicable regulations, the U.S. Department of Defense, specifically the U.S. Air Force Base Realignment and Closure ("BRAC") Coordinator and the

2

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Under Secretary of Defense for Acquisition and Sustainment have prepared detailed reports concerning their assessment of the degree of contamination of the former AFB site with Per-and Polyfluoroalkyl substances in the ground, groundwater and drinking water at the site. The concentrations are very high and no action is underway to remediate the contamination.

Exhibit 2 is a portion of the report of the Air Force dated July 6, 2020. At pages 4-2 and 4-3, the report notes that the northern portion of the site drains through a series of ditches directly into the AIWW. These ditches carry both surface water and groundwater. The report confirms at page 4-6 that both surface and groundwater contaminated with PFOS and PFOA flow into the AIWW and constitute a release of these chemicals into the waterway in concentrations that exceed USEPA LHAs (lifetime health advisories). The report notes that the City of Myrtle Beach's drinking water intake is 2.5 miles away (to the northeast) on the AIWW. This is also the site of Plaintiff's intake.

Exhibit Three is a portion of the Department of Defense report dated January 2023 on the presence of Per- and Polyfluoroalkyl Substances at BRAC locations. The report explains at page 1 that the assessment and cleanup of these chemicals at BRAC sites is required and is being done pursuant to the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), known as the "Superfund" law. At pages 23 and 24, the report summarizes the data as to various chemical concentration in groundwater as follows: PFOS 2,490,000 ppt; PFOA 150,000 ppt; PFBS 51,900 ppt; and PFHxS 740,000 ppt. All of these are chemicals the Plaintiff alleges the Defendants have discharged into waters that mix with the water at its two intake sites.

## II.

### INDISPENSABLE PARTIES UNDER RULES 12(b)(7) and 19(b)

3

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Rule 12(b)(7) provides for a motion to dismiss for "failure to join a party under Rule 19". Rule 19(a) requires the joinder of a party, when it will not deprive the court of jurisdiction over the subject matter of the action if:

(1) in his absence complete relief cannot be accorded among those already parties or

(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may

    (i)      as a practical matter impair or impede his ability to protect that interest or

    (ii)     leave any of the persons already parties subject to a substantial risk or incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Rule 19(b) provides that if a party that is necessary under the criteria set forth in 19(a) cannot be made a party, the court "shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." The Rule sets out four factors to consider in determining if the absent party is indispensable:

(1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties;

(2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;

(3) whether a judgment rendered in the person's absence will be adequate;

(4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Our courts have taken a pragmatic and fact intensive approach to determining if an absent party is indispensable. When that absent party's rights or interests will not be protected unless that party is joined, they are indispensable. In Goddard v. Fairway Development Partnership, 310 S.C. 408, 426 S.E.2d 828 (Ct. App. 1993), the Court of Appeals held an owner of a lot in a Planned Unit Development was indispensable in a case where the plaintiff sought to have the PUD dissolved as dissolution required 100% approval by all unit owners. Where an absent party's rights or interests are not implicated by resolving a litigation without them and their absence does not affect the resolution of the claims between the parties, the absent party is not necessary and, therefore, not indispensable. In Steward v. State Crop Pest Commission, 307 S.C. 133, 414 S.E.2d 121 (1992), in which the Supreme Court held that the US Department of Agriculture and a subsidiary agency of that department were not necessary parties as the issues between the parties did not concern the authority or actions of those agencies, but only the actions authorized by the State authorized by federal statute.

Rule 19 is the same as the federal rule, so that decisions by federal courts on issues surrounding necessary and indispensable parties are important to consider. Federal courts follow the approach that determining whether a party is indispensable can only be done in the context of a particular litigation after a practical examination of the circumstances present in the case. In doing so, in addition to the factors set forth in Rule 19, they apply four interests to keep in mind: 1) the plaintiff's interest in having a forum; 2) the defendant's interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability shared with another; 3) the interests of the absent party; and 4) the interests of the courts and the public in complete, consistent and efficient settlement of controversies. Nichols v. Rysavy, 809 F.2d 1317, 1332 (8th Cir. 1987); and Spirit Lake Tribe v. North Dakota, 262 F.2d 732, 746 (8th Cir. 2001).

5

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Where the absent party is the United States, resolving a motion under Rule 19 must consider the implications of federal sovereign immunity.  In EEE Minerals, LLC v. North Dakota, 318 F.R.D 118 (D.N.D. 2016), the court ruled that the absence of the United States as a party required dismissal of a suit seeking to determine ownership of oil and gas rights under and adjacent to the Missouri River.  The Court found that the United States was a "required", or necessary, party under Rule 19(a) because it had leased and owns significant oil and gas and other mineral interests in the lands involved in the lawsuit.  Therefore, the court held complete relief could not be accorded among the existing parties because title to the leases would remain uncertain, given that the United States would not be bound by any holding.  The court held that despite not being bound by any ruling in its absence, the United States' title would still be clouded and significantly impair the United States' interest and noted that none of the existing parties, "can be expected to articulate the government's position on its behalf."  Having found the United States was a necessary party, the court proceeded to analyze if, under 19(b), the United States was indispensable, noting that there had to be a heavy emphasis on protecting the governmental interest involved so that that interest would not be potentially injured.  Citing 7 Wright and Miller, Federal Practice and Procedure, § 1617 (3d ed. 2001), Republic of the Philipines v. Pimental, 553 U.S. 851, 867, 128 S.Ct. 2180, 171 L.Ed.2d 131 (2008); and Wichita and Affiliated Tribes of Okla. v. Hodel, 788 F.2d 765, 777 (D.C. Cir. 1986).

The court held that the United States would face substantial prejudice, emphasizing that prejudice is obvious "when it is not named a party to an action in which it has an interest."  Despite concluding under the fourth factor required to be evaluated by Rule 19(b) that the plaintiff had no alternative remedy, the court dismissed the action.  The plaintiffs sought to have the court solve this problems identified by the court by joining the United States as a party.  The court rejected

6

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

this request, holding that there was no waiver of sovereign immunity that would allow that to be done. Significantly, the court explained that the plaintiffs had failed to pursue their claims against the United States within the statute of limitations provided by a waiver of sovereign immunity which would have allowed them to sue the United States, the Quiet Title Act, 28 U.S.C. Sec. 2409(a).

## III.

## THE UNITED STATES IS AN INDISPENDABLE PARTY

Plaintiff has filed this action against 14 companies it alleges have or are discharging "forever chemicals" into rivers that flow to and mix with the waters from which it withdraws drinking water at two sites, on Bull Creek and on the AIWW. Plaintiff alleges as causes of action against all defendants – private nuisance, public nuisance, trespass, and negligence – and four more against Burlington Industries, Inc. alone. The assessments published by the U.S Department of Defense leave no doubt that the former AFB site in Myrtle Beach is discharging these chemicals into the AIWW only 2.5 miles from the AIWW intake point and some 10 miles from the Bull Creek site. If it is ever determined that any of the current defendants have discharged any of the chemicals plaintiff complains of so as to result in their presence at either intake point, there would have to be a determination of what percent of any damage suffered by plaintiff each defendant is responsible for. Inevitably, therefore, it must be determined what percentage of environmental contamination of the waters at each intake point is the result of discharge from the AFB site. Given the very large concentrations of several of these chemicals revealed to be present in the water draining from the AFB site into the AIWW, it is clear that the AFB site is, if not the only culprit, the most significant one.

7

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

In light of these facts, the United States is a necessary party under Rule 19(a). Without the United States present as a party, there cannot be complete relief accorded between the existing parties. Unless the United States is a party, it cannot be forced to provide documents (other than through the singularly imperfect use of a FOIA request) or witnesses due to the Touhy Doctrine, holding that the United States is immune from providing any documents or witnesses in a litigation in which it is not a party. United States ex rel. Touhy v. Ragen, 340 U.S. 462, 468 (1951). While it will be vitally important for defendants to pursue all available evidence of release of contamination from the AFB site, lack of the ability to engage is discovery would make that impossible unless the United States is a party. It is also hard to imagine this Court being able to assign some percentage of causation to the United States, particularly when it seems that would be significant, without full participation by the United States as a party.

While, as in the EEE Minerals, LLC case cited above, the United States would not be bound by any judgment as to its potential causation of Plaintiff's damages, if any are proven, it is manifestly clear that the United States would be adversely affected by such a judgment. The United States, as it acknowledges in Exhibit 3, is subject to the provisions of CERCLA because of the contamination of the AFB site with these chemicals. It is, therefore, subject to being forced to pay "an equitable share" of the costs of correcting contamination for the release of these chemicals. See 42 U.S.C. Sec. 9613. An example of application of this assignment of responsibility is the case of American In'tl Specialty Lines Insurance Co. v. United States, Case No. CV-09-1734 AHM (RZx), (C.D.Ca. 2013). In that case, the role of the United States as owner of a covered facility and the arranger of disposal of hazardous materials led the court to impose liability for 40% of the costs of remediation of the contamination at the site. Proceeding without the United States as a party will, therefore, not only prevent full and fair adjudication of the plaintiff's claims

8

and defendants' defenses, it will prejudice the United States in a significant way, something the U.S. Supreme Court has held it is of paramount importance to avoid in circumstances such as this. Republic of the Philipines v. Pimental, supra.

Applying the four factors in Rule 19(b) reveals that that United States is an indispensable party as well as a necessary one. As explained above, proceeding without the United States will not only prejudice the existing parties, it will prejudice the United States as well.  That prejudice cannot be avoided or mitigated by provisions inserted in any order or judgment.  A judgment rendered without the United States as a party would be inadequate as it would leave as an open question how much legal liability the United States should be held to, while subjecting the existing defendants to potentially greater percentages of liability than they should bear in light of the considerable contribution of release of the subject chemicals by the United States.

As always when the absent party is the United States the trickiest of the factors to analyze is its sovereign immunity and whether dismissal would deprive plaintiff of an adequate remedy. As seen in the EEE Minerals, LLC case above, lack of an alternate remedy is not determinative. It is obviously an important factor to consider, however.  In this case, unlike the plaintiffs in that case, Plaintiff has an adequate alternative remedy.  There are waivers of sovereign immunity available to Plaintiff to pursue its claims against the United States, not in this Court, but instead in US District Court.  They will not exist forever, but like the remedy the plaintiffs lost due to expiration of the statute of limitations in EEE Minerals, LLC , these alternative remedies also have statutes of limitation.

For the torts Plaintiff alleges, the United States has waived sovereign immunity in the Federal Tort Claims Act, 28 U.S.C. Sec. 2871, et seq.  The duty of the United States not to release hazardous chemicals is not discretionary, but mandatory, as noted in the DOD reports.  A plaintiff

9

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

must, however, file an administrative claim with the appropriate agency prior to filing suit and if suit is later filed, plaintiff is limited to recovery of the amount asked for in that claim. There is a two-year statute of limitations on such claims, which is stayed when the administrative claim is filed. A suit by Plaintiff against the United States under the FTCA can be accompanied by its current claims against the Defendants. Attorneys fees may also be recovered in a suit. This is certainly an adequate remedy for the torts alleged by Plaintiff, but it is not the only one available to Plaintiff to secure the remediation it seek as well as damages.

The federal Safe Drinking Water Act, 42 U.S.C. §§ 300f et seq. waives sovereign immunity and subjects the United States to suit in the case of an "imminent and substantial endangerment" to human health resulting from discharges of "a contaminant which is present in or is likely to enter a public water system or an underground source of drinking water," where the United States has "caused or contributed to the endangerment" of a public water system. 42 U.S.C. § 300j-8(e). Pursuing a "citizen suit" would require Plaintiff to serve the United States and the SC Department of Environmental Services with a formal notice of intent to sue. Sixty days after such service, suit could be filed.

None of the administrative requirements are burdensome or deny Plaintiff a fully adequate remedy in lieu of the selective one it has chosen in this case. There are other potential remedies available to Plaintiff to secure the relief it seeks from the United States, including the Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. § 6972(a)(1)(B). (The decision of the Ninth Circuit in Cal. River Watch v. City of Vacaville, 39 F.4th 624 (9th Cir. 2021) held that seeking damages for causing drinking water to be contaminated with dangerous chemicals was appropriate under RCRA). Attorneys fees may be recovered in suits under both the Safe Drinking Water Act and RCRA. Regardless, of whether or how Plaintiff seeks relief from the United States, it is clear

10

that the current Defendants cannot equitably and fairly defend themselves against the claims of the

Plaintiff without the United States being a party.  Rule 19(b) requires that this case be dismissed.

### III. CONCLUSION

For all of the foregoing reasons, Nan Ya Plastics Corporation, America's Motion to

Dismiss should be granted, and all of the claims that Plaintiff has asserted against Nan Ya should

be dismissed.

Respectfully submitted this 17th day of January 2025.

s/ Stan Barnett

_____

Stan Barnett (SC 000533)
Stan Barnett, Attorney at Law
305 North Civitas Street
Mt. Pleasant, SC 29464
843-708-4887
Stan.barnett@yahoo.com
*Counsel for Nan Ya Plastics Corporation, America*

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

11

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**EXHIBIT 1**

KEY TO MAP OF FORMER AFB BASE AND GSWS INTAKES

A          AIWW WATER INTAKE LOCATION

B          FORMER MYRTLE BEACH AFB AS IT ABUTS AIWW

C          BULL CREEK INTAKE LOCATION

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523



# Untitled Map
Area West of Hemingway

Legend

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Google Earth

Image © 2024 Airbus
Data SIO, NOAA, U.S. Navy, NGA, GEBCO

6 mi

N

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**EXHIBIT 2**



# MYRTLE BEACH AFB
# SOUTH CAROLINA

## ADMINISTRATIVE RECORD
## COVER SHEET

## AR File Number 599306

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523



**DEPARTMENT OF THE AIR FORCE**

**AIR FORCE CIVIL ENGINEER CENTER**

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

6 July 2020

MEMORANDUM FOR:  South Carolina Department of Health and
Environmental Control (SCDHEC)
Department of Defense (DoD) Corrective Action Section
Division of Waste Management
Bureau of Land and Waste Management
Attn: Ms. Meredith Amick
2600 Bull Street
Columbia, SC 29201

FROM:  AFCEC/CIBW - Griffiss
706 Hangar Road
Rome, New York 13441

SUBJECT:  Final Site Inspection Report for Aqueous Form Filming Foam Areas at Former
Myrtle Beach Air Force Base

Dear Ms. Amick:

Copies of the final version of the subject document are submitted as indicated on the attached
distribution list. The Final Site Inspection Report for Aqueous Form Filming Foam Areas located
on the former Myrtle Beach Air Force Base presents the methodologies used and results of the
2017 investigation activities. The draft version of the report was approved by SCDHEC in a
letter dated 25 June 2020. The only change to the report was updating the title from "Draft" to
"Final".

Should you have any questions or concerns, please contact me at (315) 356-0810.

CATHERINE JERRARD
BRAC Environmental Coordinator

cc: See Distribution List
Attachment: Final Site Inspection Report for Aqueous Form Filming Foam Areas at Former
Myrtle Beach Air Force Base

2:25-cv-11180-RMG    Date Filed 08/18/25    Entry Number 1-1    Page 421 of 536

Myrtle AR # :    599306    52 of 597
Site Inspection Report for Aqueous Film Forming Foam Areas at
Former Myrtle Beach Air Force Base

## 4.0    MIGRATION/EXPOSURE PATHWAYS AND TARGETS

The following subsections describe migration pathways and potential targets within the range of influence of the former Myrtle Beach AFB. Because of the nature of areas where potential releases of AFFF may have occurred, groundwater, surface water, soil, and sediment were sampled and their migration pathways evaluated in this SI report. This section discusses the likelihood of a release and an estimation of the targets (or receptors) actually or potentially exposed to releases via groundwater, surface water, sediment, and soil.

As part of the former Myrtle Beach AFB-specific QAPP, conceptual site models (CSMs) were presented for each AFFF area investigated. The CSMs serve to conceptualize the relationship between the contaminant sources and receptors through consideration of potential or actual migration pathways. These are dynamic models and have been updated based on the results of the SI field effort. The most current CSMs are presented in Appendix E.

### 4.1    ENVIRONMENTAL SETTING

#### 4.1.1    Local Geology

Myrtle Beach AFB is underlain by more than 1,300 ft of sediments, mostly unconsolidated deposits that strike in a generally northeast-southwest direction and dip gently southeast. Geological units tend to thicken near the seacoast and are typically exposed inland. Geologic units present in the Myrtle Beach area include various Quaternary and Tertiary units and sediments: Peedee and Middendorf Formations, and Black Creek Group of early Cretaceous age (Ebasco Environmental [Ebasco], 1996).

The subsurface geology consists of beach, back barrier sediments, and fine-grained sediments typical of swamp, marsh, lagoon, and estuarine conditions. Geologic units include the Canepatch Formation and Waccamaw Formations. The Canepatch Formation includes silty fines and poorly sorted medium- to fine-grained sediments and clays. The Waccamaw Formation consists of gray to brown sandy marl and medium-grained sands (Ebasco, 1996).

The surface geology of Myrtle Beach AFB consists of two distinct lithologic units of the Quaternary Socastee Formation (Glowacz, 1980). The Myrtle Beach Barrier sediments comprise that portion of the Socastee Formation occupying coastal areas, while the Myrtle Beach Backbarrier sediments occupy higher elevations inland (Ebasco, 1996).

The Myrtle Beach Barrier sediments consist of well-sorted, fine- to coarse-grained dune sands. These sands are well drained, highly permeable, and relatively free of fines. Typically, groundwater is first encountered at depths of 5 ft bgs or less (Ebasco, 1996).

The Myrtle Beach Backbarrier sediments occupy the flatland behind the barrier zone. This unit typically consists of interlayered clays, silty sands, clayey sands, and sands. Where present, the clay facies may range in thickness from 4 to 20 ft. This clay layer generally exhibits poor drainage characteristics and a high water table due to a large fine fraction that restricts permeability (Ebasco, 1996).

#### 4.1.2    Hydrogeologic Setting

Myrtle Beach AFB is underlain by four main aquifer systems: the Middendorf at a depth of 1,300 to 1,500 ft below mean sea level (msl), the Black Creek at a depth of 200 to 300 ft below msl, the Peedee at a depth of 45 to 90 ft below msl, and the shallow water table aquifer that comprises the Socastee and recent alluvial

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

sediments (Zack, 1977). All monitoring wells at Myrtle Beach AFB are installed in the shallow aquifer. This aquifer consists of well sorted, fine- to coarse-grained quartz sand in the near-coastal areas and changes to clays and clayey to silty sands in the more inland areas of Myrtle Beach AFB. Groundwater in the shallow aquifer contains high concentrations of iron, manganese, sodium, and potassium. It is not generally considered a source of potable water, but SCDHEC has classified it as a potential drinking water source (Ebasco, 1996).

The Peedee Aquifer ranges from 170 to 220 ft in thickness and is composed of dark gray, clayey sand with layers of calcareous clay and loose, shelly limestone. Groundwater from this aquifer system may contain iron, calcium, magnesium, sulfate, and hydrogen sulfide. Therefore, use as a groundwater supply is localized and mainly for irrigation. Based on previous water well drilling in Horry County, clay layers at the base of this formation hydraulically separate the Peedee from the Black Creek. Clay layers situated toward the top of the Peedee Formation are also thought to impart short-term hydraulic separation between the Peedee and the overlying water table and shallow aquifers within the Socastee Formation (Ebasco, 1996).

The Black Creek Formation ranges from 650 to 725 ft in thickness and consists of dark gray clay interbedded with gray to white, fine- to very-fine-grained quartz sand with aquifer. This aquifer system contained within this formation is the most important source of groundwater in the Myrtle Beach AFB area. This aquifer is hydraulically separated from the overlying Peedee Formation by a sequence of continuous confining clay layers (aquitards) (Ebasco, 1996).

The Middendorf Aquifer ranges from 300 to 500 ft in thickness and rests unconfonnably upon the Pre-Cretaceous basement rock. The Middendorf Formation consists of coarse-grained sands with lenses of well-sorted sands. Due to the high concentration of salt water contained in this formation, it has not been developed as a groundwater supply (Ebasco, 1996).

### 4.1.3    Hydrologic Setting

Myrtle Beach AFB lies entirely within the Atlantic Coastal Plain physiographic province and is characterized by relatively flat-lying topography. Land surface elevations range from sea level to 30 ft above msl. Because of the low topographic relief and near-sea-level land elevations, extensive tidal marshlands have developed. Fresh- to brackish-water swamps and bogs are also common throughout the region, especially in areas adjacent to small streams. These conditions have promoted the development of an extensive system of man-made drainage ditches. Besides directing surface runoff and overland flow to the tributaries of major drainage ways, the ditches also act to dewater saturated or waterlogged sediments. This effect has greatly improved the usefulness of much of the northern and western sections of Myrtle Beach AFB. Flooding is not a concern at Myrtle Beach AFB because of the combination of the presence of drainage ditches (SWMU 15) and the location of base operations at elevations greater than 20 ft above msl, which places Myrtle Beach AFB above the 100-year floodplain (Ebasco, 1996).

Surface water flow at the former Myrtle Beach AFB is derived primarily from stormwater runoff and, to a lesser extent, from water treated via a series of OWSs located at industrial facilities across the installation. The former Myrtle Beach AFB drainage ditches run in a network designed so that smaller ephemeral ditches converge into larger perennial ditches, which eventually discharge off the former Base. The drainage system divides the former installation into a North Drainage Basin and a South Drainage Basin that discharge

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

directly into off-base water bodies via man-made drainage ditches (Figure 4-1). Surface water in the North Drainage Basin, which encompasses approximately 56 percent of the drainage area, discharges into the Intracoastal Waterway, while surface water in the South Drainage Basin discharges into the Atlantic Ocean.

Due to the shallow water table, drainage ditches and streams within the area may be gaining or losing during various seasons. When groundwater elevations are higher than the bottom of a ditch/stream, it is possible for groundwater to discharge to the surface water. When groundwater elevations drop below the level of the bottom of the drainage ditch or stream, the ditch/stream may act as a losing stream and surface water may be transferred as groundwater. Both losing and gaining ditches and streams at and near the former Myrtle Beach AFB, may act as pathways for contaminant transport.

Wetlands have also been identified throughout the former installation property and are characterized by low-lying areas with occasional standing water (USAF, 1993). Based on available topographic data and observations made at the time of the investigation, surface water at AFFF Areas 4, 5, 6, 7, 8, as well as the northern portion of AFFF Area 10, drains to the west by means of sheet flow towards the Intracoastal Waterway. Surface water at AFFF Areas 3 and 9, as well as the southern portion of AFFF Area 10, generally drain south by means of sheet flow that is collected by a system of drainage ditches and stormwater conveyances. Stormwater flows to a culvert beneath the former taxiway (now Radar Road) discharging into a stormwater detention pond that lies in this area south of the site.

### 4.1.4    Physical Source Access Conditions

The surface geology of the installation area can be summarized as distinct lithologic units of the Quaternary Age Socastee Formation (Glowacz et al., 1980). Soils at the former installation consist predominantly of sand with a few discontinuous silt and clay layers. The AFFF areas are accessible by on-site workers who are allowed within the restricted access airport operational areas.

### 4.2    WELL SURVEY AND ASSESSMENT

A potable well survey was conducted as part of the SI. The well survey included a review of the South Carolina Department of Natural Resources (SCDNR) water well data by querying a radius of four miles from specific latitudes and longitudes of the installation boundaries. In addition, the City of Myrtle Beach was contacted. The survey identified 122 wells within the four-mile target distance limit. According to the database, only one public supply well, Well #1, is located on-base. All domestic wells are located upgradient or crossgradient from the former AFB. Table 4-1 provides a summary of the wells identified.

### Table 4-1. Summary of Well Survey Results

| Well Type | No. of Wells | Well Type | No. of Wells |
|-----------|-------------|-----------|-------------|
| Domestic | 32 | Observation | 12 |
| Other | 1 | Public Supply | 21 |
| Test hole | 5 | Stand by | 26 |

4-3

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

2:25-cv-11180-RMG    Date Filed 08/18/25    Entry Number 1-1    Page 424 of 536

Myrtle AR # :    599306    55 of 597
Site Inspection Report for Aqueous Film Forming Foam Areas at
Former Myrtle Beach Air Force Base

Additional evaluation of the public and private wells identified suggest completion depths are within the Peedee and Black Creek aquifers, which are hydraulically separated from the shallow aquifer by multiple clay layers. In addition, no active public or private drinking water wells were identified downgradient of the AFFF Areas.

The former Myrtle Beach AFB maintained its own independent water supply through four wells (Wells #1, #2, #3, and #5) located at the installation. These wells were constructed to depths of approximately 800 ft bgs into the Peedee and Black Creek aquifers (AMEC, 2015). The former Myrtle Beach AFB and the surrounding area utilized deep groundwater wells developed in the Black Creek aquifer for potable water until approximately 2000. All of the wells located on the installation have been closed except for Well #1, located at Building 537 (Figure 2-2). The former public water supply well is operated by the City of Myrtle Beach; however, it is inactive but remains available with well house and pumping equipment still intact. It is primarily used to restore water levels in area lakes. Groundwater samples were collected from Well #1 during the site investigation for the fire training area completed in August 2016, and PFOA, PFOS, and PFBS were not detected (AMEC, 2015).

Currently, drinking water for the former Myrtle Beach AFB and surrounding area is provided via surface water from the Grand Strand Water and Sewer Authority (GSWSA). The treatment plant is permitted to treat up to 40 million gallons of water daily and serves a primary population of 30,000 (City of Myrtle Beach, 2017). The GSWSA Myrtle Beach Surface Water Treatment Facility withdraws and treats water from the Atlantic Intracoastal Waterway (City of Myrtle Beach, 2017) approximately 2.5 miles down-stream of the former Myrtle Beach surface water discharge area. The Great Pee Dee watershed is the source of surface water. Originating in North Carolina, it includes waters from Lake Tillery, Blewett Falls Lake, Lumber River, Little Pee Dee River, Great Pee Dee River, Lake Robinson, Black Creek, and Lynches River. The Atlantic Intracoastal Waterway drains both northeast and southwest to the Atlantic Ocean. The divide, according to the United States Geological Survey (USGS) National Hydrography Dataset, is located near where the Socastee Swamp enters the Intracoastal Waterway, approximately 2.0 miles west of the former AFB (USGS, 2000).

Down-gradient public supply well HOR-266 was further investigated and determined to no longer be present. According to the SCDNR water well database, the well was located at Myrtle Beach State Park. However, current park officials have no knowledge of the well and reported that drinking water is supplied by the city of Myrtle Beach.

## 4.3    RELEASE AND HUMAN EXPOSURE PATHWAYS

This SI evaluated eight AFFF Areas for a release of PFOS, PFOA, and PFBS to groundwater, soil, surface water and sediment. A release is identified when concentrations of PFOS, PFOA or PFBS exceed project screening levels (i.e., USEPA LHAs, USAF calculated levels, or RSLs, see Table 1-1). Exposure pathway analysis was not required for areas that did not identify a release. AFFF areas identified with a release are evaluated below to determine if the human exposure pathway is characterized as complete or incomplete. According to AFCEC (AFCEC/CIB, 2017), exposure pathways are characterized as complete or incomplete. A complete exposure pathway must have the following five elements:

- a source of contamination (area with analytical result above the LHA for PFOS/PFOA in water contributing to drinking water);

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

2:25-cv-11180-RMG     Date Filed 08/18/25     Entry Number 1-1     Page 425 of 536

Myrtle AR # :     599306                                          56 of 597
Site Inspection Report for Aqueous Film Forming Foam Areas at
Former Myrtle Beach Air Force Base

- a mechanism for transport to drinking water (groundwater migration);
- a point of exposure (a drinking water well);
- a route of exposure to a human receptor (ingestion of drinking water); and,
- a human receptor (a person drinking the water).

If any one or more of the elements above is missing, the exposure pathway is considered incomplete.

The drinking water pathway discussion includes AFFF areas where PFOS and PFOA releases to groundwater were identified and the assessment of associated drinking water pathways. The non-drinking water pathway discussion includes AFFF areas where releases were identified for PFOS and PFOA to soil and/or sediment, and PFBS to soil, sediment and/or groundwater.

### 4.3.1  Drinking Water Pathway

Complete drinking water pathways are defined as actionable when a release of PFOS, PFOA or PFOS+PFOA above the LHA has been confirmed in drinking water that is attributable to the USAF. A drinking water pathway is incomplete when there has been a release of PFOS, PFOA or PFOS+PFOA above the HA, but there are no drinking water receptors. Groundwater migration pathways for the confirmed AFFF area releases to groundwater are discussed below, including whether the exposure pathway is actionable, complete or incomplete, and the basis of the determination. Based on the collection and review of analytical data from AFFF Areas 1, 3, 4, 5, and 6, PFOS and/or PFOA or the sum of both are present in groundwater at concentrations exceeding the USEPA LHA of 0.070 µg/L and; therefore, considered release areas. PFBS was not reported at concentrations exceeding the RSL in groundwater.

#### 4.3.1.1  Actionable Complete Pathways

There are no downgradient receptors identified within 1 mile of the AFFF Areas. Therefore, there are no actionable complete pathways.

#### 4.3.1.2  Complete Pathways

There are no downgradient receptors identified within 1-mile of the AFFF Areas. Therefore, there are no complete pathways.

#### 4.3.1.3  Incomplete Pathways

PFOS, PFOA, and the sum of PFOS+PFOA concentrations in groundwater exceeded the LHA of 0.070 µg/L at AFFF Areas 3, 4, 5, 6, 7 , 8, 9 and 10, suggesting a release to groundwater has occurred in these areas. However, there are no drinking water receptors potentially exposed to groundwater; therefore, the drinking water pathways for AFFF Areas 3 through 10 are considered incomplete.

### 4.3.2  Groundwater Migration Pathways Conclusions

Groundwater from each AFFF area investigated exhibited concentrations of PFOS, PFOA, or the sum of both above the LHA of 0.070 µg/L. Concentrations of PFBS did not exceed the RSL. Groundwater in the area flows to the northwest and southeast. Groundwater within the shallow water table at the installation typically occurs within a few ft bgs and extends to a depth of approximately 30 to 40 ft bgs, and is bounded by the layers situated at the top of the underlying Peedee Formation. Domestic and municipal wells identified within the four-mile radius of the base are completed within the intermediate and deep aquifers. Because of the presence of an impermeable clay layer, there is limited hydraulic connection between the

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

upper water-bearing zone (shallow groundwater) and the deeper aquifers. In addition, no active public or private wells were identified immediately downgradient of the AFFF Areas. Therefore, based on the lack of potential receptors and the presence of confining aquifers beneath the former Myrtle Beach AFB, exposures (ingestion) to shallow groundwater are not expected and the groundwater pathway is considered incomplete.

## 4.4    NON DRINKING WATER PATHWAY

Non-drinking water pathways are evaluated for areas with confirmed releases of PFOS and/or PFOA to soil or sediment above the USAF calculated screening level and/or PFBS to soil or groundwater above respective RSLs. A release evaluation was conducted at AFFF Areas 3, 4, 5, 6, 7, 8, 9, and 10 through direct observation, chemical analysis, and a review of physical source conditions. A confirmed release to soil was identified at a single AFFF area:

### 4.4.1.1    *AFFF Area 7: Building 360 (Fire Station) and Wash Rack/OWS 19*

PFOS was present in subsurface soil at a depth of 2-4 ft bgs at a concentration (4,000 µg/kg) exceeding the USAF calculated risk-based screening level of 1,260 µg/kg. The release is likely the result of fire training, or fire training equipment testing or vehicle washing at the fire station.

### 4.4.2    Surface Water

Generally, surface water was not compared to a specific project screening level as there are no regulatory criteria for PFOS/PFOA and PFBS for surface water and results evaluated to determine simple presence or absence. However, as drinking water for the area is supplied by the Intracoastal Waterway and into which surface water from the former AFB drains, comparison to the USEPA LHAs is appropriate. Surface water samples were collected only from AFFF Area 9 and the pathway evaluation is discussed below.

### 4.4.2.1    *AFFF Area 9: Drainage Ditches and Sluice Gate*

PFOS and PFOA were present in surface water collected from AFFF Area 9 at concentrations exceeding the USEPA LHAs suggesting a release to surface water has occurred. This includes surface water at northernmost discharge point where surface water leaves the former base boundary and enters the Intracoastal Waterway. The former Myrtle Beach AFB ditches run in a network designed so that smaller ephemeral ditches converge into larger perennial ditches, which eventually discharge off Base. Deeper ditches are typically are 5 to 10 ft in depth and generally contain a small amount of standing water suggesting groundwater seepage. Due to the shallow water table, impacted groundwater may enter the ditch system and act as a continuing source of PFOS or PFOA under gaining conditions and conversely, may migrate into groundwater under losing conditions.

The GSWSA Myrtle Beach Surface Water Treatment Facility intake (facility ID S26101) is located approximately 2.5 miles downstream of the former AFB. The GSWSA sampled the intake for PFOS and PFOA in 2014 and 2015 in accordance with the USEPA Third Unregulated Contaminant Monitoring Rule (UCMR3). PFOS and PFOA were not present at concentrations above their respective detection limits of 0.040 and 0.020 µg/L. Therefore, based on the distance from the former AFB and reported concentrations from the intake below the LHAs, the drinking water pathway from surface water is considered incomplete.

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

2:25-cv-11180-RMG    Date Filed 08/18/25    Entry Number 1-1    Page 427 of 536

Myrtle AR # :    599306                                    58 of 597
Site Inspection Report for Aqueous Film Forming Foam Areas at
Former Myrtle Beach Air Force Base

## 5.0    SUMMARY AND CONCLUSIONS

The primary objectives of the former Myrtle Beach AFB SI were to:

- determine the presence/absence of PFOS, PFOA, and PFBS in groundwater, soil, surface water, and sediment;
- determine if concentrations of PFOA, PFOS, or sum of both in groundwater or surface water exceed the USEPA LHAs;
- determine if PFBS concentrations in groundwater and soil exceed the USEPA RSLs;
- determine if PFOS and/or PFOA are present in soil and/or sediment at concentrations above the USAF calculated screening level; and,
- identify potential human health drinking water pathways and receptors, and if necessary, conduct response actions for impacts to drinking water greater than the LHA that are attributable to the USAF.

The objectives were met by sampling a combination of newly installed and existing wells, advancing borings and collecting soil samples, sampling surface water and sediment, and conducting a potable well survey. Results of the SI are summarized below and in Table 5-1.

### 5.1    GROUNDWATER

Groundwater from each AFFF area investigated exhibited concentrations of PFOS, PFOA, or the sum of both above the LHA of 0.070 µg/L (Figure 5-1). Concentrations of PFBS did not exceed the USEPA RSLs. Groundwater in the area flows to the northwest and southeast. Groundwater within the shallow water table at the installation typically occurs within a few ft bgs and extends to a depth of approximately 30 to 40 ft bgs, and is bounded by the layers situated at the top of the underlying Peedee Formation. Domestic and municipal wells identified within the four-mile radius of the base are completed within the intermediate and deep aquifers. Because of the presence of an impermeable clay layer, there is limited hydraulic connection between the upper water-bearing zone (shallow groundwater) and the deeper aquifers. Therefore, exposures to shallow groundwater are not anticipated and the drinking water pathway considered incomplete.

Because concentrations of PFOS and PFOA in groundwater exceed USEPA LHAs, future response actions may be conducted at the former Myrtle Beach AFB pending promulgation of Federal or State standards. New and existing monitoring wells associated with concentrations of PFOS and PFOA above the USEPA LHAs should be left in place for future groundwater evaluations. A summary of wells recommended for retention is included in Appendix F.

### 5.2    SOIL

PFOS, PFOA, and PFBS were present in surface soil and subsurface soil. However, only PFOS was present in subsurface soil (2-4 ft bgs) at concentrations exceeding the USAF calculated screening level. This location was near the fire station where AFFF may have used or washed from firefighting equipment. This area has limited access, however personnel may be exposed to the shallow soil therefore, the exposure pathway is considered completed.

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## 5.3     SURFACE WATER

PFOS, PFOA, and PFBS are present in surface water at former Myrtle Beach AFB. Surface water at the former AFB discharges to the Intracoastal Waterway. The City of Myrtle Beach drinking water intake is on the Intracoastal Waterway approximately 2.5 miles downstream from the former AFB. The intake was sampled for PFOS and PFOA in 2014 and 2015 in compliance with the USEPA UCMR3. PFOS and PFOA were not present at concentrations above their respective detection limits of 0.040 and 0.020 µg/L. Therefore, based on the distance from the former AFB and reported concentrations from the intake below the LHAs, the drinking water pathway from surface water is considered incomplete.

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**EXHIBIT 3**

# Per- and Polyfluoroalkyl Substances at Base Realignment and Closure Locations



## January 2023

Office of the Under Secretary of Defense
for Acquisition and Sustainment

The estimated cost of this report or study for the Department of Defense is approximately
$2,230 in Fiscal Years 2022 - 2023. This includes $600 in expenses and $1,630 in DoD labor.
Generated on 2023Jan16 RefID: 6-10012B9

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... i

FIGURE ................................................................................................................................. i

APPENDIX ............................................................................................................................ i

I. INTRODUCTION .......................................................................................................... 1

II. BACKGROUND ........................................................................................................... 1

III. PFAS DETECTIONS; MITIGATION EFFORTS; AND REMEDIATION PLANS, STATUS, AND TIMELINES ............................................................................................. 2

IV. LIKELY SOURCES OF PFAS RELEASE ................................................................. 3

V. ESTIMATED CURRENT AND FUTURE COSTS ...................................................... 3

VI. CONCLUSION ............................................................................................................ 4

# FIGURE

Figure 1: Typical CERCLA Timeline ........................................................................................ 2

# APPENDIX

Data Associated with DoD Base Realignment and Closure Locations Being Assessed for Per- and Polyfluoroalkyl Substances Use or Potential Release

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# I. INTRODUCTION

House Report 117-391, page 23, accompanying H.R. 8238, the Military Construction, Veterans Affairs, and Related Agencies Appropriations Bill, 2023, requests that the Deputy Assistant Secretary of Defense for Environment and Energy Resilience prepare an updated comprehensive report for the congressional defense committees that establishes a baseline of information regarding per- and polyfluoroalkyl substances (PFAS) at Base Realignment and Closure (BRAC) locations. The House Report requests (1) a list of all closed military installations; (2) an indication of whether PFAS have been detected in drinking water and groundwater; (3) an indication of the level of PFAS that have been detected; (4) information on the likely sources of PFAS; (5) an explanation of current mitigation efforts and proposed remediation plans; (6) the status of remediation; (7) a timeline for cleanup; and (8) an estimate of total cost to investigate and clean up PFAS at BRAC locations.

PFAS are a national issue that requires national solutions. The Department of Defense (DoD) is taking cleanup actions to address PFAS from DoD activities nationwide. DoD's cleanup program follows the federal cleanup law (i.e., the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 [CERCLA], also known as "Superfund") to address DoD releases of PFAS and determine the appropriate cleanup actions based on risk.

The information in this report is as of the end of Fiscal Year (FY) 2022 and accounts for some but not all additional work that may be required as the U.S. Environmental Protection Agency (EPA) issues new guidance and regulations concerning PFAS (e.g., regional screening levels in May 2022, interim drinking water Health Advisories [HAs] for perfluorooctane sulfonate [PFOS] and perfluorooctanoic acid [PFOA] in June 2022, a proposed national drinking water standard expected in December 2022).

# II. BACKGROUND

DoD is committed to protecting human health and the environment by conducting cleanup under CERCLA. DoD follows the CERCLA process to fully investigate releases, prioritize responses, and determine the appropriate cleanup actions based on risk to human health and the environment. The steps in the CERCLA process include the following:[1]

- Preliminary Assessment (PA)/Site Inspection (SI)
- Remedial Investigation (RI)/Feasibility Study (FS)
- Remedial Design (RD)/Remedial Action-Construction (RA-C)
- Remedial Action-Operation (RA-O)
- Long-Term Management (LTM)

Figure 1 shows the typical amount of time it takes to complete the CERCLA phases listed above.

---

[1] Sites do not have to progress through all CERCLA phases. For example, no further action may be required at the end of the PA/SI or RI/FS phase. In addition, some sites may not require an RA-O or LTM phase if response actions completed during the RD/RA-C phase are sufficient to clean up the sites.

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**Figure 1: Typical CERCLA Timeline**



In addition to these phases, CERCLA can include short-term actions called "removal" or "interim" actions, which DoD conducts to address contaminants quickly to prevent, minimize, or mitigate damage to public health or welfare or to the environment. Removal actions can occur at any time during the CERCLA process. For example, if there is drinking water exposure to PFOS/PFOA above the EPA's 2016 lifetime drinking water HAs of 70 parts per trillion (ppt) combined on or off base resulting from DoD activities, the Department initiates short-term actions (e.g., providing bottled water, point-of-use water filters) and long-term actions (e.g., municipal connections, filtration systems) so that no one – on or off base – is drinking water that is above 70 ppt. Typically, a removal action does not provide a final response action, and the site will continue through the CERCLA remedial process after completion of the removal action.

DoD tailors the actual sequence, timing, and scope of cleanup actions to site-specific conditions. Additionally, the Department prioritizes resources and addresses sites where risk to human health is the highest. As DoD moves through the CERCLA process, it works in collaboration with regulatory agencies, communities, and other stakeholders to ensure open and transparent information sharing.

## III. PFAS DETECTIONS; MITIGATION EFFORTS; AND REMEDIATION PLANS, STATUS, AND TIMELINES

The appendix lists the 239 BRAC locations where the Department has conducted or is conducting cleanup under CERCLA. As of the end of FY 2022, DoD has determined that 116 of these locations (49 percent) require an assessment of PFAS use or potential release. For each BRAC location DoD has assessed or is assessing, the appendix provides the highest validated detections of PFOS, PFOA, perfluorobutanesulfonic acid (PFBS), perfluorononanoic acid (PFNA), and perfluorohexanesulfonic acid (PFHxS) in drinking water and groundwater for those locations where DoD detected these PFAS above the method reporting limit. As of the end of FY 2022, the DoD Components detected PFOS/PFOA in drinking water above EPA's HAs from DoD activities at 14 of the BRAC locations (12 percent) being assessed. The DoD Components immediately took action at all 14 locations, ensuring that no one – on or off base – is drinking water above EPA's 2016 lifetime HAs where DoD is the known source.

To satisfy the request for mitigation efforts, site remediation plans and timelines, and the status of cleanup, the appendix includes the current investigation phase(s), actual and projected phase start date(s), and projected phase completion date(s) for the 116 BRAC locations being assessed as of the end of FY 2022. The appendix also identifies the BRAC locations where no

PFAS at BRAC Locations

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

further action is required. Additionally, the appendix shows where the DoD Components have implemented a removal action to quickly address PFOS/PFOA in drinking water above EPA's lifetime HAs combined on or off base resulting from DoD activities.

The Background section of this report provides the average timeline for each phase in the CERCLA process, and the appendix presents the current status of each BRAC location in this process. However, the Department cannot provide a complete remediation timeline until it completes additional phases in the CERCLA process. DoD cannot estimate the amount of time it will take to clean up PFAS at a specific location until it knows how much PFAS it will need to address, as well as other site-specific characteristics that are determined during the RI/FS phase.

## IV.  LIKELY SOURCES OF PFAS RELEASE

The DoD Components followed a comprehensive approach to compile the list of BRAC locations where DoD may have used or potentially released PFAS. These sites include fire training areas, aircraft crash sites, aircraft hangars, and aqueous film forming foam spray test areas.

## V.  ESTIMATED CURRENT AND FUTURE COSTS

Through the end of FY 2022, DoD has obligated approximately $551.4 million to investigate and clean up PFAS at BRAC locations, as shown in the appendix. The appendix also shows that DoD anticipates obligating $129.7 million in FY 2023, and an additional $1.79 billion after FY 2023, to continue these efforts. DoD expects this estimate to increase as the DoD Components complete the initial assessments and learn more about the extent of the cleanup required, and due to future regulations issued by EPA. Further, the timeline for the RA-O phase will vary significantly depending on the amount and extent of PFAS at a specific location, as well as other site-specific characteristics that are determined during the RI/FS phase. The Department cannot estimate this timeline and therefore cannot estimate the complete cost of cleanup until this information is known. The Department will plan and program for these requirements as they are defined.

The funding data presented in the appendix represents a snapshot in time of the obligations and estimated costs to investigate and clean up PFAS at BRAC locations as of September 30, 2022. The DoD Components developed the cost estimates prior to the enactment of the FY 2023 Appropriations Act. The cost estimates do not include the $200 million above the budget request that Congress provided to increase the pace of cleanup at the BRAC locations affected by PFAS. However, the joint explanatory statement accompanying Division J of the Military Construction, Veterans Affairs, and Related Agencies Appropriations Bill, 2023, page 21, requires DoD to submit a spend plan for these additional funds to the House and Senate Committees on Military Construction, Veterans Affairs, and Related Agencies. The Department will submit a separate spend plan to the committees that provides information about how the DoD Components will use the additional $200 million to address PFAS releases from DoD activities at BRAC locations.

DoD does not track funding by contaminant, and the cost data in the appendix represents the DoD Components' best estimates of the funding obligated through FY 2022, and to be obligated in FY 2023 and beyond, for investigations and cleanup of DoD releases of PFAS. However, the DoD Base Closure Account is adequately funded to pursue all executable remediation activities in FY 2023.

## VI.  CONCLUSION

DoD is taking action under CERCLA to address PFAS releases from DoD activities at BRAC locations.  The Department identified 116 BRAC locations requiring an assessment of PFAS use or potential release to determine what future cleanup activities, if any, are required; no further action is required at 16 percent of these locations.  DoD has obligated $551.4 million through the end of FY 2022 and plans to obligate $129.7 million in FY 2023 to address its PFAS releases at BRAC locations.  The Department plans to obligate an additional $1.79 billion after FY 2023 to address PFAS releases, based on information available as of the end of FY 2022. DoD expects this estimate to increase as the DoD Components complete the initial assessments and learn more about the extent of the cleanup required, and due to future regulations issued by EPA.  The Department will plan and program for these requirements as they are defined.

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## Appendix:  Data Associated with DoD Base Realignment and Closure Locations Being Assessed for Per- and Polyfluoroalkyl Substances Use or Potential Release

| DoD Component | State/Territory | Installation Name | Highest Detection of PFOS in Drinking Water (ppt)* | Highest Detection of PFOS in Groundwater (ppt)* | Highest Detection of PFOA in Drinking Water (ppt)* | Highest Detection of PFOA in Groundwater (ppt)* | Highest Detection of PFBS in Drinking Water (ppt)* | Highest Detection of PFBS in Groundwater (ppt)* | Highest Detection of PFNA in Drinking Water (ppt)* |
|---|---|---|---|---|---|---|---|---|---|
| Air Force | New Hampshire | Pease AFB | 2,500 | 490,000 | 350 | 130,000 | 89 | 2,700 | 7.4 |
| Air Force | New York | Griffiss AFB | There are no downgradient drinking water wells to sample. | 60,700 | There are no downgradient drinking water wells to sample. | 1,100 | There are no downgradient drinking water wells to sample. | 700 | There are no downgradient drinking water wells to sample. |
| Air Force | New York | Plattsburgh AFB | 347 | 130,000 | 140 | 981,000 | 25.2 | 15,800 | 59 |
| Air Force | New York | Roslyn Air National Guard Station | Not Sampled | Not Sampled | Not Sampled | Not Sampled | Not Sampled | Not Sampled | Not Sampled |
| Air Force | Ohio | Gentile Air Force Station | There are no downgradient drinking water wells to sample. | 146 | There are no downgradient drinking water wells to sample. | 33.9 | There are no downgradient drinking water wells to sample. | 83.8 | There are no downgradient drinking water wells to sample. |
| Air Force | Ohio | Newark AFB | There are no downgradient drinking water wells to sample. | 1,160 | There are no downgradient drinking water wells to sample. | 249 | There are no downgradient drinking water wells to sample. | 435 | There are no downgradient drinking water wells to sample. |
| Air Force | Ohio | Rickenbacker | There are no downgradient drinking water wells to sample. | 14,400 | There are no downgradient drinking water wells to sample. | 45,800 | There are no downgradient drinking water wells to sample. | 4,470 | There are no downgradient drinking water wells to sample. |
| Air Force | South Carolina | Myrtle Beach AFB | 9.6 | 2,490,000 | 31 | 150,000 | Not Detected | 51,900 | Not Detected |
| Air Force | Texas | Bergstrom AFB | There are no downgradient drinking water wells to sample. | 8,860,000 | There are no downgradient drinking water wells to sample. | 2,260,000 | There are no downgradient drinking water wells to sample. | 349,000 | There are no downgradient drinking water wells to sample. |
| Air Force | Texas | Brooks-City Base | Not Sampled | Not Sampled | Not Sampled | Not Sampled | Not Sampled | Not Sampled | Not Sampled |
| Air Force | Texas | Carswell AFB | Not Sampled | Not Sampled | Not Sampled | Not Sampled | Not Sampled | Not Sampled | Not Sampled |
| Air Force | Texas | Kelly AFB | There are no downgradient drinking water wells to sample. | 249,000 | There are no downgradient drinking water wells to sample. | 30,000 | There are no downgradient drinking water wells to sample. | 7,330 | There are no downgradient drinking water wells to sample. |
| Air Force | Texas | Reese AFB | 1,620 | 1,820 | 3,960 | 5,460 | 197 | 3,770 | 20 |
| Air Force | Washington | Four Lakes Air National Guard Station | Not Sampled | Not Sampled | Not Sampled | Not Sampled | Not Sampled | Not Sampled | Not Sampled |

PFAS at BRAC Locations

ELECTRONICALLY FILED - 2025 Jan 17 2:43 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## Appendix: Data Associated with DoD Base Realignment and Closure Locations Being Assessed for Per- and Polyfluoroalkyl Substances Use or Potential Release

| Highest Detection of PFNA in Groundwater (ppt)* | Highest Detection of PFHxS in Drinking Water (ppt)* | Highest Detection of PFHxS in Groundwater (ppt)* | Current Phase | Actual or Estimated Start Date (Fiscal Year and Quarter) | Estimated Completion Date (Fiscal Year and Quarter) | Removal Action | Actual Obligations Through FY 2022 ($000) | Planned Obligations in FY 2023 ($000) | Planned Obligations after FY 2023 ($000)^ |
|---|---|---|---|---|---|---|---|---|---|
| 357 | 530 | 80,000 | RI | FY 2020 Q4 | FY 2025 Q4 | Initial Action, Action Pending | 79,255 | 6,567 | 333,574 |
| 117 | There are no downgradient drinking water wells to sample. | 11,400 | No phases are currently underway; the RI is planned. | FY 2025 Q4 | To Be Determined | No Removal Action Planned | 1,847 | 0 | 40,467 |
| 8,000 | 119 | 607,000 | RI | FY 2020 Q4 | FY 2025 Q4 | Initial Action, Action Pending | 8,443 | 482 | 81,540 |
| Not Sampled | Not Sampled | Not Sampled | No further action is required. | Not Applicable | Not Applicable | Not Applicable | 53 | 0 | 0 |
| 3.54 | There are no downgradient drinking water wells to sample. | 149 | No phases are currently underway; the RI is planned. | FY 2025 Q4 | To Be Determined | No Removal Action Planned | 273 | 0 | 2,233 |
| 22.7 | There are no downgradient drinking water wells to sample. | 1,890 | No phases are currently underway; the RI is planned. | FY 2025 Q4 | To Be Determined | No Removal Action Planned | 302 | 0 | 2,531 |
| 146 | There are no downgradient drinking water wells to sample. | 46,600 | No phases are currently underway; the RI is planned. | FY 2025 Q4 | To Be Determined | No Removal Action Planned | 494 | 0 | 46,104 |
| 2,500 | 15 | 740,000 | RI | FY 2021 Q4 | FY 2026 Q4 | No Removal Action Planned | 3,735 | 0 | 22,895 |
| 27,400 | There are no downgradient drinking water wells to sample. | 5,850,000 | No phases are currently underway; the RI is planned. | FY 2023 Q1 | To Be Determined | No Removal Action Planned | 3,483 | 0 | 10,047 |
| Not Sampled | Not Sampled | Not Sampled | No further action is required. | Not Applicable | Not Applicable | Not Applicable | 66 | 0 | 0 |
| Not Sampled | Not Sampled | Not Sampled | No further action is required. | Not Applicable | Not Applicable | Not Applicable | 66 | 0 | 0 |
| 1,750 | There are no downgradient drinking water wells to sample. | 77,200 | No phases are currently underway; the RI is planned. | FY 2025 Q4 | To Be Determined | No Removal Action Planned | 1,917 | 0 | 47,668 |
| 113 | 1,540 | 23,700 | RI | FY 2019 Q4 | FY 2028 Q2 | Initial Action, Action Pending | 91,577 | 4,884 | 284,945 |
| Not Sampled | Not Sampled | Not Sampled | No further action is required. | Not Applicable | Not Applicable | Not Applicable | 50 | 0 | 0 |

ELECTRONICALLY FILED - 2025 Jan 20 1:00 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**STATE OF SOUTH CAROLINA**

**COUNTY OF HORRY**

Grand Strand Water and Sewer Authority,

Plaintiff,

v.

Aladdin Manufacturing Corporation; Burlington Industries, Inc.; Delta Mills, Inc., its predecessors, successors, assigns, and/or responsible parties; Domtar Paper Company, LLC.; Elevate Textiles, Inc.; Fiber Industries, LLC; GFL Environmental USA, Inc.; J.P. Stevens & Company, Inc., its predecessors, successors, assigns, and/or responsible parties; Mohawk Industries, Inc., Nan Ya Plastics Corporation, America; PRET Advanced Materials, LLC; Red Rock Disposal, LLC; and Waste Industries, LLC,

Defendants.

**IN THE COURT OF COMMON PLEAS**

**FIFTEENTH JUDICIAL CIRCUIT**

**C.A. No.: 2024-CP-26-05523**

**Defendant PRET Advanced Materials, LLC's Status Conference Statement**

Defendant PRET Advanced Materials, LLC ("PRET") submits the following for the Court's consideration at the status conference scheduled for January 22, 2025 in this and related lawsuits involving the PFAS litigation brought by publicly-owned water providers seeking damages within their local districts.

This status conference was scheduled at the request of counsel for plaintiffs in several lawsuits involving PFAS. By letter dated November 25, 2024, counsel for those plaintiffs noted that it had filed several lawsuits involving alleged PFAS contamination and that most of the defendants that had already responded to the complaints in those cases had filed motions to dismiss and, for those that had been served with discovery requests, motions to stay discovery pending

1

ELECTRONICALLY FILED - 2025 Jan 20 1:00 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

resolution of the motions to dismiss.  The suggestion by counsel for those plaintiffs at that point[1] was to have an initial status conference to discuss an orderly schedule for hearings on the motions to dismiss and to stay that had been filed.

In Plaintiffs' Status Conference Statement submitted to the Court late Friday, January 17, 2025, however, counsel for those plaintiffs makes no mention of the motions to dismiss and to stay or the very significant and threshold issues raised in those motions.  Rather, counsel for those plaintiffs suggests moving straight to onerous and burdensome discovery and to consider very significant protocols for case management, even though related lawsuits are still being filed and defendants in currently pending cases have yet to be served or appear in those cases.  PRET submits that it is premature to address any of the case management issues and procedures suggested in Plaintiffs' Status Conference Statement until at least the pending motions to dismiss and to stay have been resolved.

**Background.**

Plaintiff's claims involve per- and polyfluoroalkyl and related substances ("PFAS").  There are multiple types of PFAS.  Further, PFAS have dozens of uses in industrial, commercial, and consumer applications, have been used for decades, and are ubiquitous.  They have been used in consumer products (for example, cookware, clothing, and cosmetics), and consumers' use of those products results in discharges of PFAS into the wastewater.

PRET has not and does not make, sell, or distribute PFAS or purchase PFAS for use in its operations, and Plaintiff does not allege that it does.  Further, PRET does not discharge its

---

[1] The same law firm has since filed additional lawsuits on behalf of other plaintiffs naming defendants not named in earlier suits, and other lawsuits have been filed by other law firms on behalf of other plaintiffs that also name additional defendants.  Further, at least one lawsuit (filed on behalf of the City of Columbia) was filed in state court, then removed to federal court, and is awaiting ruling on a motion to remand to state court.  Accordingly, there are multiple defendants who have not yet had a chance to weigh in on the issues addressed herein.

2

ELECTRONICALLY FILED - 2025 Jan 20 1:00 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

wastewater into a public body of water, but rather sends it to a public wastewater treatment facility that treats and then discharges it.[2]  Moreover, the wastewater treatment plant that receives materials from PRET is many miles from Plaintiff's facilities (and not even upstream from one of Plaintiff's facilities).  Other defendants may be similarly situated to PRET, but the complaints in certain cases currently pending in South Carolina state court (*e.g., The City of Georgetown, SC v. 3M Co., Inc., et al* (Georgetown County Case No. 2025-CP-22-00014)) name parties that manufactured and sold PFAS.  Those cases and parties involve additional and different issues and may require certain differences in case management.  Many defendants have yet to respond to the newly filed Complaints.

A premise for Plaintiff's claims is that the United States Environmental Protection Agency ("EPA") recently proposed a dramatic reduction in the allowable amount of certain PFAS in drinking water to 4 parts per *trillion.*  But that EPA regulation, which is being challenged in multiple lawsuits, does not become final and require compliance until **2029.**  Plaintiff alleges that it may be able to meet the potential future requirement by incurring unspecified and unknown expenses.

Similar to several other Defendants, PRET's Motion to Dismiss raises fundamental, threshold issues that should be resolved before a lawsuit against it proceeds.  In its motion, PRET argues that this Court lacks jurisdiction and the case should be dismissed on the grounds that it is premature, contingent, speculative, and not justiciable because the subject EPA regulation does not yet require compliance and is subject to change, Plaintiff is not currently required to and has

---

[2] In this case and in related cases, counsel for these plaintiffs have elected not to sue wastewater treatment facilities or other state or federal entities that discharge PFAS into the public water bodies or whose operations result in PFAS contamination of those water bodies, which raises several other legal issues.

ELECTRONICALLY FILED - 2025 Jan 20 1:00 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

not purchased treatment technologies to comply with that potential future requirement, and it is entirely speculative what measures, if any, Plaintiff may be required to take in the future.

There are other fundamental, threshold issues as to whether Plaintiff has stated facts sufficient to state a claim against PRET. Plaintiff asserts four causes of action against PRET: (1) private nuisance, (2) public nuisance, (3) trespass, and (4) negligence.

Plaintiff has no viable claim for nuisance for alleged contamination of a public body of water. Further, PRET does not control the alleged source of the nuisance or the property between PRET's and Plaintiff's facilities owned by numerous third parties.

Plaintiff's trespass claim lacks merit because, among other reasons, the only way the allegedly contaminated water comes onto Plaintiff's facilities is because Plaintiff intentionally draws the water into its facility, rather than by any intentional interference with Plaintiff's property by PRET.

And Plaintiff's negligence claim lacks merit because the facts alleged fail to demonstrate that PRET owes any duty to Plaintiff. There is no allegation that PRET ever violated its environmental permits or engaged in any unlawful activity, much less owed or violated any duty to Plaintiff.

**Conclusion.**

For the reasons set forth herein, PRET submits that the next step for management of these and related cases is, as originally suggest by counsel for plaintiffs in their November 25 letter requesting the status conference, to set a reasonable schedule for the resolution of the pending motions to dismiss and to stay.

[Signature on Next Page]

4

ELECTRONICALLY FILED - 2025 Jan 20 1:00 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Respectfully submitted,

**HAYNSWORTH SINKLER BOYD, P.A.**

By: s/Robert Y. Knowlton
Robert Y. Knowlton, S.C. Bar No. 3589
John P. Boyd, S.C. Bar No. 72412
1201 Main Street, 22nd Floor (29201)
Post Office Box 11889
Columbia, SC 29211-1889
(803) 779-3080
bknowlton@hsblawfirm.com
jboyd@hsblawfirm.com

Frank T. Davis, S.C. Bar No. 66291
Jonathan D. Klett, S.C. Bar. 103208
One North Main, 2nd Floor
(864) 240-3211
fdavis@hsblawfirm.com
jklett@hsblawfirm.com

*Attorneys for Defendant PRET Advanced
Materials, LLC*

January 20 , 2025

5

ELECTRONICALLY FILED - 2025 Jan 21 4:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**STATE OF SOUTH CAROLINA**

**COUNTY OF HORRY**

**IN THE COURT OF COMMON PLEAS**

**FIFTEENTH JUDICIAL CIRCUIT**

|   |   |   |
|---|---|---|
| Grand Strand Water and Sewer Authority, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2024-CP-26-05523 |
| Aladdin Manufacturing Corporation, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

### GFL DEFENDANTS' RESPONSE TO PLAINTIFFS' STATUS CONFERENCE STATEMENT

Defendants GFL Environmental USA, Inc., Red Dock Disposal, LLC, Sampson County Disposal, LLC, and Waste Industries, LLC (collectively, "GFL Defendants") hereby submit this response to Plaintiffs' "Status Conference Statement," which was filed with the Court on January 17, 2025 in the above-referenced case and its companion cases.[1]

The GFL Defendants join in the response to Plaintiffs' Statement filed by Defendant T&S Brass and Bronze Works, Inc. The GFL Defendants agree with T&S Brass that consideration of a case management order at this time is premature. If any claims remain following the Court's ruling on the many pending dispositive motions, the remaining parties should meet and confer and propose a consent case management order to the Court. Case management procedures should not be set while it is still unknown which Defendants will remain in the cases and be subject to those

---

[1] GFL Defendants specifically reserve their right to contest this Court's jurisdiction over them. They submit this Statement for the limited purpose of protecting their interests against Plaintiffs' premature efforts to dictate the terms of discovery, trial and other substantive matters in this matter in the event the Court finds that they are subject to its jurisdiction and that Grand Strand Sewer and Water Authority's claims against them may proceed.

1

ELECTRONICALLY FILED - 2025 Jan 21 4:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

procedures, or which claims a case management order will govern.

Plaintiffs' request to jump the gun on case management procedures at this status conference is particularly prejudicial to the GFL Defendants. Each GFL Defendant has moved, or will soon move, to dismiss all claims made against them by the Grand Strand Water and Sewer Authority because this Court lacks personal jurisdiction over them (as well as because Grand Strand's claims are premature and fail to state a claim—arguments that have been made by many of the other Defendants as well). None of the GFL Defendants are South Carolina entities. All of the alleged conduct on which Grand Strand bases its claims against them occurred in North Carolina.

Furthermore, GFL Environmental USA, Inc. and Waste Industries, LLC are wrongly named defendants. Grand Strand sued them on the incorrect belief that they are involved in the operation of certain landfills in North Carolina. In fact, these entities do not own or operate any landfills anywhere and have nothing to do with the claims in this case. GFL Environmental USA, Inc. operates a waste collection and hauling operation in Michigan and does not conduct any type of business in North Carolina or South Carolina. Accordingly, GFL Defendants should be dismissed from this case entirely. They should not be required to defend themselves in a South Carolina Court or become subject to a substantive discovery order before the Court has ruled in their pending and soon-to-be-filed motions contesting the Court's jurisdiction.

Plaintiffs' rush to address discovery procedures is particularly improper because Plaintiffs' Statement does not give any reasons why the Court should jump ahead to those issues, and no good reason is apparent to the GFL Defendants. Furthermore, the GFL Defendants had been under the impression until days ago that the sole purpose of this status conference was to address the pending and expected motions to dismiss and motions to stay discovery, as indicated by Plaintiffs' letter that requested the conference.

ELECTRONICALLY FILED - 2025 Jan 21 4:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

The GFL Defendants also have substantive objections to Plaintiffs' proposal. Plaintiffs suggest that a universal order is appropriate because all the Defendants are similarly situated, and thus discovery will focus on similar issues. This is inaccurate, at least with respect to the GFL Defendants. The landfills that the GFL Defendants operate (or are incorrectly alleged to operate) are only passive receivers of any PFAS that may be contained in the municipal waste discarded by residents and businesses. The landfills do not purposefully acquire PFAS or PFAS containing products. The justification for Plaintiffs' proposal, however, is that they anticipate conducting discovery, across the cases and Defendants, on similar topics related to the acquisition and use of "PFAS-containing products supplied to and used by Defendants." These topics are generally inapplicable landfills. Subjecting the GFL Defendants to the same uniform disclosure or discovery requirements as other Defendants would be wasteful and inefficient.

The GFL Defendants also specifically object to Plaintiffs' request that the Court invert the usual discovery sequence and require all Defendants to identify their expert witnesses in an "initial disclosure." Grand Strand has pleaded only a tenuous and indirect connection between the landfills and the alleged PFAS contamination of its source waters. Grand Strand does not allege that the landfills discharge any PFAS or PFAS-containing wastewater directly into the environment or in South Carolina. Instead, it alleges that leachate is transported from landfills in North Carolina to a third-party wastewater treatment plant in North Carolina, that the third-party fails to, or lacks the capacity to, adequately treat the leachate, and that the third-party discharges PFAS-containing effluent into a river more than 60 miles from Grand Strand's water intakes.

If any claims survive the GFL Defendants' motions to dismiss, it will be Grand Strand's burden to establish, with evidence and, presumably, expert opinions, that the GFL Defendants are responsible for the alleged contamination at issue in this case. The GFL Defendants cannot

3

ELECTRONICALLY FILED - 2025 Jan 21 4:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

reasonably be expected to guess at how Grand Strand will attempt to demonstrate this, or to put forward their own experts before Grand Strand has presented its expert opinions.

For these reasons and the reasons stated in T&S Brass' Response, the GFL Defendants request that the Court (1) set briefing schedules for all pending and anticipated dispositive motions; (2) authorize discovery to commence, pursuant to the South Carolina Rules of Civil Procedure, among any parties that remain after all dispositive motions have been resolved; and (3) instruct that any remaining parties meet and confer on a <u>consent</u> case management order.

**WILLIAMS MULLEN**

By:  _s/ John G. Tamasitis_____
Richard H. Willis (SC Bar No. 6159)
John G. Tamasitis (SC Bar No. 101875)
1230 Main Street, Suite 330
Columbia, SC 29201
Tel. 803.567.4615
Fax: 803.567.4601
*rwillis@williamsmullen.com*
*jtamasitis@williamsmullen.com*

Philip L. Comella (PHV Admission to be filed)
Ryan G. Rudich (PHV Admission to be file)
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2800
Chicago, Illinois  60601-3713
Telephone:  (312) 836-4112
Facsimile:  (312) 527-4000
pcomella@taftlaw.com
rrudich@taftlaw.com

*Counsel for Defendants GFL Environmental USA, Inc., Red Rock Disposal, LLC, Sampson County Disposal, LLC, and Waste Industries, LLC*

January 21, 2025
Columbia, South Carolina

4

ELECTRONICALLY FILED - 2025 Jan 23 11:22 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

**STATE OF SOUTH CAROLINA**

**COUNTY OF HORRY**

**IN THE COURT OF COMMON PLEAS**

**FIFTEENTH JUDICIAL CIRCUIT**

Grand Strand Water and Sewer Authority,

Plaintiff,

v.

Aladdin Manufacturing Corporation *et al.*,

Defendants.

C.A. No. 2024-CP-26-05523

## PLAINTIFFS' STATUS CONFERENCE STATEMENT

Plaintiffs in this consolidated litigation[1] are local and regional public utilities and water authorities who share a common challenge: the contamination of their water sources and properties with certain perfluoroalkyl substances ("PFAS").

The Environmental Protection Agency's recent publications mark a significant advancement in the scientific understanding of PFAS toxicity. While the EPA previously advised that PFOA and PFOS—the two most studied PFAS compounds—could be safely consumed at levels of up to 70 parts per trillion ("ppt") over a lifetime, the agency now makes clear that **no safe level exists** for consuming these chemicals. Building on this understanding, the EPA has enacted maximum contaminant levels under the Safe Drinking Water Act for PFOA, PFOS, and four additional PFAS types ("MCL PFAS"). These regulations prohibit water authorities from

---

[1] The undersigned represent Plaintiffs Woodruff-Roebuck Water District; Greenwood Commissioners of Public Works; Laurens County Water and Sewer Commission; Grand Strand Water and Sewer Authority; City of Florence, South Carolina; South Carolina Public Service Authority (Santee Cooper); City of Union, South Carolina; and City of Clinton, South Carolina. Pursuant to the Supreme Court's consolidation order, this litigation also includes additional local public utilities and water authorities.

ELECTRONICALLY FILED - 2025 Jan 23 11:22 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

delivering drinking water containing MCL PFAS concentrations above these newly defined thresholds, with enforcement to begin in 2029.

However, like the vast majority of water providers, Plaintiffs rely on conventional water treatment technologies that are unable to remove PFAS. And MCL PFAS, including PFOA and PFOS, currently contaminate their drinking water, which leaves Plaintiffs' treatment plants at levels above the EPA limits. Not only does the PFAS contamination pose an obstacle to Plaintiffs' legal compliance and injure Plaintiffs' property interests—according to the EPA, it directly threatens public health and the environment. Indeed, even if Plaintiffs were subject to no regulation, the EPA's stance alone compels that Plaintiffs act to protect their own interests and those of their customers and communities.

Plaintiffs serve cities and counties across the state, providing water to over 800,000 residences and businesses. When accounting for spouses, children, employees, tenants, patients, and other individuals in these communities, the PFAS contamination problem in Plaintiffs' water supplies impacts **well over a million South Carolina residents**—approaching or exceeding 25% of the state's population.

The contamination spreads through South Carolina's rivers, lakes, and streams—surface waters that Plaintiffs are authorized to withdraw, treat, and provide to customers. It is largely driven by private industries that utilize MCL PFAS in their manufacturing processes, generating PFAS-laden wastewater. These industries discharge wastewater into local treatment plants, which process and release it into the same surface waters that Plaintiffs rely on for drinking water. Unfortunately, as at Plaintiffs' water facilities, PFAS bypass the conventional treatment systems used by wastewater treatment plants and flow unhindered into the state's surface waters. These

ELECTRONICALLY FILED - 2025 Jan 23 11:22 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

contaminated waters then pass through Plaintiffs' water plants just as easily and into homes and businesses across the state.

Plaintiffs commenced this litigation not only to protect their own rights, but also because the PFAS contamination presents a critical public health and infrastructural challenge—a burden that neither Plaintiffs nor their customers can, or should, bear alone. Plaintiffs' surface water treatment plants require upgraded treatment technologies to provide PFAS-free water. And Plaintiffs believe that the financial burden of these upgrades should not fall on their drinking water customers and communities, who bear no responsibility for this contamination. Instead, those who caused and profited from the contamination must be held accountable to ensure this crisis is justly resolved. Plaintiffs are seeking to do so both comprehensively and urgently.

Plaintiffs have named numerous industries as defendants due to their alleged discharge of PFAS-contaminated wastewater, either directly to South Carolina surface waters or indirectly through their applicable wastewater treatment providers. Plaintiffs also anticipate adding as defendants the chemical suppliers of PFAS-discharging defendants upon receiving discovery revealing their identities. Thus, Plaintiffs anticipate that the number of parties and scope of discovery in this litigation will be significant.

Discovery topics will include:

- The identities of the suppliers of products containing or degrading to MCL PFAS used by Defendants;

- The type and volume of PFAS-containing products supplied to and used by Defendants;

- The industrial processes employed by Defendants who use these products and cause their discharge;

- The chemical composition of the products at issue, including the mechanisms by which the MCL PFAS are present in the products;

ELECTRONICALLY FILED - 2025 Jan 23 11:22 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

- The fate and transport of these products—i.e., the means by which they are used, disposed of, and eventually reach surface waters, Plaintiffs' water sources, and Plaintiffs' properties;

- Defendants' historical knowledge of the chemical properties of, and the environmental and health risks posed by, these products; and

- Instructions, if any, from Defendants' chemical suppliers as to the nature of these products and their proper disposal.

Based on the experience of Plaintiffs' counsel in litigating PFAS cases involving complex topics of chemistry, industry history, and fate and transport, Plaintiffs believe that this discovery will require extensive document production, witness testimony from officers and employees of Plaintiffs and all Defendants, and property inspections.

The volume of complex matters in this case presents unique challenges in organizing and managing recurring issues—both in discovery and in substantive litigation.

Plaintiffs, therefore, make the following recommendations:

1. *Appointment of Leadership*. Leadership counsel will provide the Court with the means for efficiently contacting all parties in each case for scheduling matters, and it will aid the parties in informally resolving issues that require consent or agreement among the parties.

2. *Consolidated Case Number*. A consolidated case number provides a centralized docket for all filings concerning consolidated matters.

3. *Initial Disclosures*. Core discovery topics applicable to all cases can be covered at the outset in each case, including the following:

   a. Sales records of products containing MCL PFAS;

   b. Identification of suppliers of MCL PFAS;

   c. Applicable insurance policies;

   d. The analytical results of any PFAS testing conducted by the responding party;

   e. Previous depositions in other cases by any party concerning PFAS; and

   f. Identification of experts.

ELECTRONICALLY FILED - 2025 Jan 23 11:22 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

4. *Discovery Protocols.* Standard discovery protocols inform the parties of this Court's expectations in how to approach matters that can otherwise cause delay, such as disputes and scheduling difficulties. Protocols should cover matters such as:

    a. Objections to written discovery, including the prohibition of both boilerplate and general objections, and requiring clarity as to whether the responding party is withholding responsive information based on an objection;

    b. Special interrogatories;

    c. Property inspection procedures, including scheduling and setting protocols for PFAS-sampling methods and parameters;

    d. Standard procedures for resolving discovery disputes, including meet and confer processes and resolution with the Court;

    e. Privilege logs;

    f. Document requests made to Plaintiffs via the Freedom of Information Act;

    g. Subpoenas;

    h. Production of documents and electronically stored information;

    i. Deposition scheduling and conduct; and

    j. Protective orders, including confidentiality designations for documents and testimony produced in discovery.

5. *Periodic Conferences before the Court.* Regular conferences before this Court will aid efficiencies in many ways, including dispute resolution and maintaining discovery scheduling.

6. *Consolidated Briefing.* Except for motions involving facts unique to a particular Defendant, consolidated briefing will prevent frequent repetition and bloat from overburdening the parties and the Court, while maintaining full and fair representation of the parties' views on the facts and their legal arguments.

7. *Setting Trial Dates.* Firm trial dates aid all parties in completing discovery and readying the case for resolution. Plaintiffs recommend January 2027.

Due to the volume of parties and factual complexities in these cases, Plaintiffs believe that a Case Management Order streamlining these matters as outlined above will significantly contribute to resolving this case in the most efficient and timely manner possible.

Respectfully submitted,

      /s/ John B. White. Jr.

John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiffs*

January 17, 2025

ELECTRONICALLY FILED - 2025 Jan 23 11:22 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| | ) FIFTEENTH JUDICIAL CIRCUIT |
| COUNTY OF HORRY | ) |
| | ) |
| | ) C.A. No.: 2024-CP-26-05523 |
| GRAND STRAND WATER AND SEWER AUTHORITY, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| *v.* | ) |
| | ) |
| ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, LLC, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**DEFENDANTS GFL ENVIRONMENTAL USA, INC. AND WASTE INDUSTRIES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants GFL Environmental USA, Inc. ("GFL") and Waste Industries, LLC ("Waste Industries," collectively "Defendants"), through their undersigned counsel, and pursuant to Rules 8(a), 12(b)(1), 12(b)(2), and 12(b)(6) of the South Carolina Rules of Civil Procedure, hereby submit this memorandum of law in support of their motion to dismiss all claims asserted against

1

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

them in the Second Amended Complaint filed by the Plaintiff, Grand Strand Water and Sewer Authority ("Grand Strand"), respectfully stating as follows:

## I.    INTRODUCTION

Grand Strand's Second Amended Complaint (the "Complaint") is subject to dismissal on multiple grounds.  As an initial matter, Defendants are wrongly named parties in this action. Grand Strand's claims are based on the alleged disposal of leachate from South Wake Landfill, Red Rock Landfill and Sampson County Landfill (collectively, "Landfills"), which are all located in North Carolina.  Contrary to the allegations in the Complaint, Defendants do not own or operate any of the Landfills. GFL is a Michigan-based solid waste collection and hauling operation. Waste Industries has a waste collecting and hauling operation in the Carolinas and Virginia.  Defendants have no connection to the matters at issue in this lawsuit. They were sued only because of Grand Strand's misunderstanding about which entities operate the Landfills.

The Complaint fails for multiple additional reasons as well, including that the Court lacks personal jurisdiction over the Defendants. GFL is incorporated in Delaware and Waste Industries is a resident of North Carolina. The Complaint does not allege that Defendants engaged in any conduct in, or directed at, South Carolina.  Subjecting Defendants to this lawsuit in South Carolina would violate constitutional due process protections and the South Carolina long-arm statute.

Grand Strand also has not stated a valid claim against Defendants. The dispute is not ripe for judicial review.  Grand Strand's claims are based on the newly-promulgated drinking water standards for certain per- and polyfluoroalkyl substances ("PFAS"), which Grand Strand does not have to comply with until at least 2029. Even assuming the standards go into effect as written at that time (they are currently being challenged in federal court), it is unknowable what measures, if any, Grand Strand will have to take to meet them. The rule includes a three-year initial testing

2

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

period. Grand Strand does not allege that it has incurred any costs—or taken any action at all—due to the new rule or on account of alleged PFAS-contaminated water. The costs it is seeking to recover—future expenses it might incur to acquire and operate a new water treatment system—are inherently conjectural and contingent. Accordingly, this lawsuit is premature and should be dismissed.

If Grand Strand's claims are allowed to proceed now, there is potential that Grand Strand would receive an unwarranted windfall. Grand Strand asks the Court to speculate that the condition of its source water five years from now will be the same as it is today—that there will be no changes to PFAS contributions (such as would result from the installation of third-party wastewater pretreatment systems), river flow rates, or any other developments that will moot Grand Strand's claims before 2029. Furthermore, in the event Grand Strand's claims do become ripe, they will lie only against any parties legally responsible for contributing PFAS to Grand Strand's source water at that time, not today.

Grand Strand's claims against Defendants also fail on additional grounds. The injuries Grand Strand ascribes to Defendants arise from the alleged discharge of PFAS from the Lumberton Wastewater Treatment Plant, a third-party, and not from the Landfills that Grand Strand wrongly alleges Defendants control. Grand Strand alleges that the Landfills deliver leachate to Lumberton and that discharges from Lumberton flow downstream and contaminate Grand Strand's water sources. But Grand Strand does not allege that Defendants have any control over Lumberton's operations or discharges. South Carolina law does not allow Grand Strand to sue Defendants for Lumberton's discharges.

In addition to the above deficiencies, Grand Strand's complaint against Defendants fails because:

3

1. The alleged contamination of the riverways affects the general public and cannot support a claim for private nuisance;

2. PFAS molecules are "intangible" matter that as a matter of law cannot constitute a trespass;

3. Grand Strand has no claim for trespass because the PFAS only allegedly entered its property as a result of its own actions;

4. Defendants owe no duty to Grand Strand and therefore cannot be liable for negligence; and

5. Grand Strand does not allege that it suffered any physical injury or property damage as required for a valid negligence claim.

For all of these reasons, and as explained in more detail below, the Complaint should be dismissed.

## II.     ARGUMENT AND CITATION OF AUTHORITY

### A.     Defendants Are Wrongly Named Parties to this Action.

The claims against Defendants are all based on the assertion that they or their subsidiaries operate three landfills in North Carolina from which they transport PFAS-containing leachate to the Lumberton wastewater treatment facility. (*Id*., ¶ 22). Grand Strand alleges that Lumberton fails to remove the PFAS before discharging effluent into a river system upstream of Grand Strand's water intakes. *Id*. But Defendants do not, in fact, own or operate any of the Landfills (or any landfills at all). (*See* **Exhibit A**, Affidavit of Anthony Pelletier).[1] GFL is a solid waste collection and hauling operation in Michigan. Waste Industries is in the business of collecting and hauling

---

[1] Although usually a court may only consider the allegations in the complaint when considering a motion to dismiss, when defendants are challenging the court's personal jurisdiction, as Defendants are here, they may submit an affidavit to establish relevant facts. *See Abdulla v. S. Bank*, 439 S.C. 391, 400, 887 S.E.2d 138, 143 (Ct. App. 2023). If the Court nevertheless determines that it cannot consider the affidavit in support of this portion of Defendants' motion, it may convert the motion to a motion for summary judgment and consider the affidavit. *See Gilbert v. Miller*, 356 S.C. 25, 27, 586 S.E.2d 861, 863 (Ct. App. 2003).

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

solid waste in North Carolina, South Carolina, and Virginia. Further, they are not the parent companies, directly or indirectly, of the entities that do own and operate the Landfills.

Defendants have made Grand Strand aware of these facts and provided an affidavit supporting them. (*See* **Exhibit B**). The affidavit also identifies the entities that do own and operate the Landfills. Defendants requested that Grand Strand dismiss Defendants from the case and obviate the need for this motion, in light of the fact that they were included in the case only because of Grand Strand's misunderstanding. Defendants received no response from Grand Strand.

**B.     South Carolina Law Applies to Grand Strand's Claims.**

Grand Strand alleges that its claims against Defendants arise under North Carolina law. (Compl., ¶ 9). But under South Carolina choice-of-law rules, South Carolina law applies to Grand Strand's claims. The substantive law governing tort actions filed in South Carolina is determined by the *lex loci delicti*, "the law of the state in which the injury occurred." *Boone v. Boone*, 345 S.C. 8, 13, 546 S.E.2d 191, 193 (2001). Under this test, the applicable law is that of "the state where the last event necessary to make an actor liable for an alleged tort takes place." *Friedman as trustee for SportCo Creditors Liquidation Tr. v. Wellspring Cap. Mgmt., LLC*, 651 B.R. 509, 516 (Bankr. D.S.C. 2023) (quoting *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) (quoting RESTATEMENT (FIRST) OF CONFLICT OF LAWS § 377 (1934))).[2] For each of Grand

---

[2] Note 3 to Restatement (First) of Conflict of Laws § 377 (1934) offers examples analogous to the allegations in this case which confirm that South Carolina is the place of the alleged wrong for purposes of the *lex loci delicti* analysis:

> *3. When harm is caused to land or chattels, the place of wrong is the place where the force takes effect on the thing.*
> *Illustrations:*
> *A, standing in state X, throws a stone with which he breaks a mirror in state Y. The place of the wrong is state Y.*
> *A, in state X, throws out noxious fumes from a chimney which destroy the grass of B in state Y. The place of the wrong is in Y.*

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Strand's claims, that event is the alleged contamination of Grand Strand's property and source waters, which are all located in South Carolina. (Compl., ¶ 16). Thus, Grand Strand's claims are governed by South Carolina law.

**C.     The Court Lacks Personal Jurisdiction Over Defendants.**

Defendants are not residents of South Carolina (Compl., ¶ 22). Jurisdiction in this Court could therefore only arise under the South Carolina long-arm statute, S.C. Code Ann. § 36–2–803. *See Cribb v. Spatholt*, 382 S.C. 475, 482, 676 S.E.2d 706, 710 (Ct. App. 2009). For the statute to apply, however, Grand Strand must demonstrate that Defendants' contacts with the state are substantial enough that compelling them to defend a suit in this Court "does not offend traditional notions of fair play and justice" and is consistent with due process. *Aviation Assocs. & Consultants, Inc. v. Jet Time, Inc.*, 303 S.C. 502, 507, 402 S.E.2d 177, 180 (1991). Jurisdiction can only attach if the plaintiff identifies "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." *Coggeshall v. Reprod. Endocrine Assocs. of Charlotte*, 376 S.C. 12, 16, 655 S.E.2d 476, 478 (2007). The court's "principal inquiry" in this type of jurisdictional assessment "is whether the defendant's activities manifest an intention to submit to the power of a sovereign." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011).

Grand Strand cannot meet its burden. GFL has not, at any time, been present or conducted any activity in South Carolina. (*See* **Exhibit A**). Its sole business is collecting and hauling waste in Michigan. *Id*. It does not do business, is not registered to do business, and does not solicit business in South Carolina. *Id*. Nor does it own any property or have any employees in South Carolina. *Id*. Waste Industries does conduct some business in South Carolina, but that business is not the basis for the claims against it in this lawsuit. To exercise specific jurisdiction over a non-resident requires showing that the "the defendant directed its activities to a resident of [South

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

6

Carolina] *and that the cause of action arises out of or relates to those activities*." *S. Plastics Co. v. S. Com. Bank*, 310 S.C. 256, 260, 423 S.E.2d 128, 131 (1992) (emphasis added).

The actions attributed to Defendants in the Complaint were directed exclusively within North Carolina. The allegedly wrongful actions are limited to moving leachate between three North Carolina landfills and a permitted wastewater treatment plant in North Carolina. (Compl., ¶ 22). Grand Strand alleges that Defendants put in motion a series of events—Lumberton's failure to adequately treat wastewater, Lumberton's discharge of contaminated effluent into the Lumber River, and the carrying of PFAS through a river network to Grand Strand's water intakes—that eventually result in impacts within South Carolina. But the indirect results of Defendants' alleged North Carolina activity does not extend the Court's jurisdiction to them.

In the personal jurisdiction analysis, "the focus must center on the contacts generated by the defendant, and not on the unilateral actions of some other entity." *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 492 (2005). "Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). It is only Lumberton's unilateral actions in treating and discharging wastewater that allegedly connect Defendants' out-of-state contact with South Carolina, which cannot suffice.

Nor does this Court acquire jurisdiction by virtue of Grand Strand's allegations that Defendants "knew or should have known" that Lumberton's discharge would result in harm in South Carolina. The U.S. Supreme Court has "consistently held" that "foreseeability of causing injury in another state…is not a sufficient benchmark for exercising personal jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quotations omitted). In fact, basing

7

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

jurisdiction "on general notions of fairness and foreseeability, is inconsistent with the premises of lawful judicial power." *Nicastro*, 564 U.S. at 883. Because "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id*.; *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) (holding that sellers of automobiles in New York were not subject to jurisdiction in Oklahoma in case arising from car accident there despite foreseeability that cars they sold would be driven to that state). Here, Defendants' alleged actions are contained entirely within North Carolina. Thus, this Court has no jurisdiction over the claims against them.

### D.    Grand Strand's Claims Are Not Ripe.

"A threshold inquiry for any court is a determination of justiciability, *i.e.*, whether the litigation presents an active case or controversy." *Lennon v. S.C. Coastal Council*, 330 S.C. 414, 415, 498 S.E.2d 906, 906 (Ct. App. 1998). This includes an assessment of whether the plaintiff's claims are ripe for adjudication. *See James v. Anne's Inc*., 390 S.C. 188, 193, 701 S.E.2d 730, 732 (2010). A claim is not ripe and should be dismissed when it presents "a contingent, hypothetical or abstract dispute." *Pee Dee Elec. Co-op., Inc. v. Carolina Power & Light Co*., 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983).

Grand Strand's allegations demonstrate that it has not yet suffered any legally cognizable injury due to PFAS, and such injury may never come to pass. Although the U.S. Environmental Protection Agency's PFAS drinking water standards ("maximum contaminant levels" or "MCLs") became final in April 2024, (Compl., ¶ 45), it has not yet been determined how, if at all, the rule will impact Grand Strand. Grand Strand will not have to comply with the MCLs until 2029. (*Id*., ¶ 47). Before that, there is a three year "initial monitoring" period that runs through April 2027. (*Id*.); *see also* PFAS National Primary Drinking Water Regulation, 89 Fed. Reg. 32,532, 32,633 (April 26, 2024) (codified at 40 CFR Parts 141 and 142).

8

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Grand Strand does not allege any facts indicating that, at this time, it is doing anything other than waiting to see if and when it will have to take action to comply with the MCLs in 2029. Grand Strand has not alleged it has incurred any costs or expenses whatsoever due to PFAS in its source water. Rather, it is seeking "expenses associated with the *future* acquisition, installation, and operation of required treatment technologies[.]" (Compl., ¶ 83 (emphasis added)). Nothing in the Complaint indicates that Grand Strand's operations have changed at all from the period before the MCLs were finalized in April 2024 or as a result of PFAS in Bull Creek or the Intracoastal Waterway.

This status quo may continue indefinitely. Grand Strand's testing during the initial monitoring period may indicate Grand Strand will not be required to make any capital investments to remain in compliance with applicable regulations. It is also uncertain whether the MCLs will remain valid law by the time they would be applicable to Grand Strand. In June 2024, three sets of plaintiffs filed challenges to EPA's rule in actions currently pending before the Court of Appeals for the D.C. Circuit. *See Am. Water Works Assoc. v. U.S. EPA*, Case No. 24-1188; *Nat'l Assoc. of Manufacturers, et al. v. U.S. EPA*, Case No. 24-1191; *The Chemours Company FC, LLC v. U.S. EPA*, Case No. 24-1192. The potential changes that could result from these cases (or for other reasons) preclude Grand Strand's claims from being ripe at this time. *See Jowers v. S.C. Dep't of Health & Env't Control*, 423 S.C. 343, 364, 815 S.E.2d 446, 457 (2018) (finding that action was not ripe because the plaintiff's claim "depends on there being no changes to the law regarding surface water withdrawals."). Because of these numerous uncertainties, the facts alleged by Grand Strand demonstrate, at most, "the mere threat of potential injury," which is "too contingent or remote to support present adjudication." *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 228, 467 S.E.2d 913, 918 (1996) (quoting *Thrifty Rent–A–Car Sys., Inc. v. Thrifty Auto Sales*

9

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

*of Charleston, Inc.*, 849 F. Supp. 1083, 1086 (D.S.C. 1991)). Accordingly, Grand Strand's claims are not ripe and should be dismissed.

**E.     Each of Grand Strand's Causes of Action Against Defendants Fail as a Matter of Law.**

> ### 1.     *Grand Strand Has No Claim for Nuisance Against Defendants Because Defendants Do Not Control the Source of the Alleged Nuisance.*

As a matter of South Carolina law, Defendants cannot be liable to Grand Strand for nuisance for delivering leachate to a third-party wastewater treatment plant. Nuisance law is a mechanism for resolving "conflicting interests of **landowners**" and balancing their competing rights. *Winget v. Winn-Dixie Stores, Inc.*, 242 S.C. 152, 159, 130 S.E.2d 363, 367 (1963) (emphasis added); *see also O'Cain v. O'Cain*, 322 S.C. 551, 560, 473 S.E.2d 460, 465 (Ct. App. 1996). It follows, the South Carolina Supreme Court has held, that "one who has no control over property at the time of the alleged nuisance cannot be held liable therefor." *Clark v. Greenville Cnty.*, 313 S.C. 205, 210, 437 S.E.2d 117, 119 (1993). The alleged nuisance for which Grand Strand alleges Defendants are responsible arises solely from Lumberton's discharges from its wastewater treatment plant.  Defendants have no control over that facility and cannot be liable for its discharges.

*Greenville County* is indistinguishable in all material respects. In *Greenville County*, the plaintiffs alleged that their properties were contaminated by hazardous waste that had escaped from a nearby landfill. They sued the landfill as well as a number of corporations that had sent hazardous waste to the landfill for disposal. The South Carolina Supreme Court affirmed judgment for the corporations on the nuisance claim because plaintiffs "neither alleged nor produced any evidence the corporate respondents had control over the landfill or the hazardous waste once it was deposited at the landfill." *Id*. at 210, 437 S.E.2d at 119. Likewise, Grand Strand concedes that control of the allegedly PFAS containing wastewater is passed from Defendants to Lumberton

before any PFAS is discharged into the river system, and Grand Strand does not allege that Defendants have any control over Lumberton's treatment facility.

A South Carolina federal court, in *Weatherford v. E.I. Dupont de Neumours & Co.*, No. 4:22-CV-1427-RBH, 2023 WL 11015357 (D.S.C. Sept. 27, 2023), recently held that *Greenville County* compelled it to dismiss PFAS nuisance claims nearly identical to Grand Strand's. In *Weatherford*, the plaintiffs alleged that their drinking water wells were contaminated with PFAS which had been discharged from a textile facility's wastewater treatment plant. They brought claims against the companies that manufactured and distributed the PFAS to that facility. The court dismissed the nuisance claims because those defendants were not alleged to have control over the manufacturing facility (*id*. at *6), despite the plaintiffs' allegation that the defendants "knew [the PFAS they supplied] would go into the water and soil surrounding the textile plant." *Id*. at *1. The same result is required here. Accordingly, Counts 1 (private nuisance) and 2 (public nuisance)[3] should be dismissed.

> **2.     *Grand Strand's Allegations of Contamination of Public Waterways Do Not State a Claim for Private Nuisance.***

Grand Strand's private nuisance claim should be dismissed for the additional reason that the alleged contamination of a public waterway cannot be the basis of a private nuisance claim. A private nuisance "produces damage to but one or two persons, and cannot be said to be public." *Charleston Dev. Co., LLC v. Alami*, 433 S.C. 533, 547-48, 860 S.E.2d 687, 695 (Ct. App. 2021) (quoting *Deason v. S. Ry. Co.*, 142 S.C. 328, 334, 140 S.E. 575, 577 (1927)); *see also Baltzeger v. Carolina Midland Ry. Co.*, 54 S.C. 242, 248, 32 S.E. 358, 360 (1899) ("A private nuisance affects

---

[3] Defendants' lack of control over Lumberton's plant precludes Grand Strand's public and private nuisance claims, as the difference between the two causes of action is based only on the persons affected, not "the nature or character of the thing or activity itself." *Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989).

11

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

only one person or a determinate number of persons." (quoting 16 Am. & Eng. Enc. Law, 926));

*accord Rhodes v. E.I. du Pont de Nemours & Co.,* 636 F.3d 88, 96-97 (4th Cir. 2011) (holding

"that when a release of pollutants directly affects a municipal water supply and does not interfere

with any private water source…the presence of the pollutants in the public water supply will not

support a private nuisance claim.") Grand Strand is just one of the many riparian landowners in

the more than 60 miles of river between Lumberton and Grand Strand's property.[4]

> **3.     *Grand Strand's Allegations Do Not Support a Trespass Claim Under South Carolina Law.***

>> a.     <u>PFAS particles are "intangible" matter that cannot support a trespass claim.</u>

South Carolina follows the traditional rule that there must be "an invasion by a physical,

tangible thing for a trespass to exist." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 145, 747

S.E.2d 468, 476 (2013). To qualify as "tangible," the invasion must "interfere with the right to

exclusive possession" and not "merely interfere with the right to use and enjoyment." *Id*. at 151, 747

S.E.2d at 480. Invasion by "microscopic particulates" are not "tangible" and can support, if anything,

only a nuisance claim, but do not constitute trespass. *Id*. at 146, 747 S.E.2d at 477.

PFAS molecules are quintessentially "intangible." The alleged PFAS at issue in this case

are measured, if at all, in the parts per ***trillion***. (Compl., ¶¶ 36-47). Grand Strand does not allege

(nor could it) that PFAS can be seen, felt, or otherwise perceived in water. PFAS in water is the

equivalent of dust in air, which is "intangible" under the traditional rule that South Carolina follows.

---

[4] A court may take judicial notice of a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201(b), SCRE. "'[G]eographical information is especially appropriate for judicial notice.'" *Prioleau v. Wallace*, No. 5:24-cv-1171, 2024 WL 3416605, at *1 (D.S.C. May 24, 2024), *adopted by* 2024 WL 3412324 (D.S.C. July 15, 2024) (quoting *United States v. Johnson*, 726 F.2d 1018, 1021 (4th Cir. 1984)). The distance between the Lumberton wastewater treatment plant and Grand Strand's property in Myrtle Beach (the closer of the two) is more than sixty miles "as the crow flies." The length of the rivers between the two locations is longer.

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

As the court explained in *Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51, 69 (1999)—the case which persuaded the *Babb* Court to adopt the traditional rule—while "dust particles are tangible objects in a strict sense that they can be touched and are comprised of physical elements," they cannot form the basis of a trespass claim because dust "does not normally present itself as a significant physical intrusion." PFAS molecules likewise "do not normally occupy the land [or water] on which they settle in any meaningful sense" but rather "simply become a part of the ambient circumstances of that space." *Id*. at 70.

PFAS are also equivalent to the microscopic fluoride particles that were the subject of the trespass action in *Martin v. Reynolds Metals Co.*, 221 Or. 86 (1959) (PFAS—per- and poly*fluoro*alkyl substances—are all fluorinated compounds) (Compl., ¶¶ 27-28). Although the *Martin* court found trespass liability, the *Babb* court specifically rejected *Martin* and this expanded theory of trespass law. Grand Strand's claims are squarely at odds with *Babb*.

The nature of Grand Strand's claims confirm that dismissal is the correct result. The core of Grand Strand's Complaint is that its ability to use its property to provide drinking water to its customers is (or rather, will be) negatively impacted. Its allegations do not implicate its "right to the exclusive, peaceable possession of [its] property." *Babb*, 405 S.C. at 139, 747 S.E.2d at 473 (quoting *Ravan v. Greenville Cnty.*, 315 S.C. 447, 463, 434 S.E.2d 296, 306 (Ct. App. 1993)). It is therefore nuisance law that would provide the remedy, if there was in fact a wrong (which there is not).[5] In all respects, this case is a quintessential nuisance matter and Grand Strand's attempts to dress it in other tort theories should be rejected.

---

[5] *See also City of Lake Elmo v. 3M Co.*, 237 F. Supp. 3d 877, 888 (D. Minn. 2017) (finding that complaint alleging contamination of groundwater used for drinking water with PFAS stated a claim for nuisance but not trespass because plaintiff "is complaining of an invasion of the right to use and enjoy its land, rather than to exclusively possess its land" and "[b]ecause [plaintiff] does not allege that [defendant] prevented it from possessing the groundwater, the trespass claim fails.")

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

b.     The alleged contamination of the Bull Creek and the Intracoastal Waterway cannot constitute a trespass to Grand Strand.

Grand Strand's trespass claim also fails because Grand Strand does not allege that there has been any actionable invasion of Grand Strand's property. Trespass protects only the "rights of **_exclusive_** possession." *Babb*, 405 S.C. at 141, 747 S.E.2d at 475 (emphasis added). Grand Strand has no such right in the river water, but rather only a riparian right of reasonable use. *See White v. Whitney Mfg. Co.*, 60 S.C. 254, 265, 38 S.E. 456, 460 (1901) (holding that although a riparian owner has "an equal right to the use of the water which flows in the stream adjacent to his lands. . . . He has no property in the water itself, but a simple usufruct.") (quotation omitted).

Although Grand Strand alleges that PFAS have been present on the property it owns, they got there only as a result of Grand Strand's own actions: the alleged invasion occurs only when Grand Strand's "water pumps are active." (Compl., ¶ 97). This does not constitute a trespass under South Carolina law, which requires that the trespass be caused by a defendant's "affirmative act [and that] **_the invasion of the land must be intentional_** . . . ." *Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991) (emphasis added). An act is only "intentional" if it "is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter" on the plaintiff's land. *Sales v. S.C. Dep't of Transportation*, No. 2014-000582, 2016 WL 3607225, at *2 (S.C. Ct. App. June 30, 2016) (quoting Restatement (Second) of Torts § 158 cmt. i (1965)). There can be no such certainty that any PFAS will enter Grand Strand's property absent Grand Strand's intervening acts. Likewise, there is no trespass because Grand Strand's instrumental role prevents the presence of PFAS there from being "unauthorized." *See Ravan v. Greenville Cnty.*, 315 S.C. 447, 464, 434 S.E.2d 296, 306 (Ct. App. 1993) ("The essence of trespass is the unauthorized entry onto the land of another.").

14

Multiple courts have recently found that a drinking water utility has no cause of action for trespass where it voluntarily draws PFAS contaminated water from a public water source. *See Utilities Bd. of Tuskegee v. 3M Co., Inc.*, No. 2:22-cv-420-WKW, 2023 WL 1870912, at \*16 (M.D. Ala. Feb. 9, 2023) ("As alleged, the facts here do not sound in trespass because, unlike other indirect trespasses, Defendants' PFAS did not cross onto [plaintiff's] boundary line by a natural process."); *see also W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 208 F. Supp. 3d 1227, 1235 (N.D. Ala. 2016). This Court should reach the same conclusion and dismiss Count 3.

### 4.    *Grand Strand Has Failed to State a Claim for Negligence Against Defendants.*

#### a.    Defendants owe no duty to Grand Strand.

It is well-settled under South Carolina law that "[a]n essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." *Huggins v. Citibank, N.A.*, 355 S.C. 329, 332, 585 S.E.2d 275, 276 (2003). There can be no negligence liability unless the parties "have a relationship recognized by law as providing the foundation for a duty to prevent an injury." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 47, 644 S.E.2d 43, 46 (2007). Such a duty "may be created by statute, a contractual relationship, status, property interest, or some other special circumstance." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 136, 638 S.E.2d 650, 656-57 (2006). But "[f]oreseeability of injury, in and of itself, does not give rise to a duty." *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614, 618, 586 S.E.2d 586, 588 (2003).

Grand Strand does not allege any facts that suggest any relationship between Defendants and Grand Strand sufficient to establish a duty. Grand Strand does not allege that it and Defendants have any contractual, business, or other relationship of any kind on which a duty could be found.

With respect to duty, the Complaint asserts only that all of the "Defendants have a duty to use due care in the handling, use and disposal of products containing or degrading to [PFAS] to avoid

15

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

causing an unreasonable risk of harm to others." (Compl. ¶ 103). But South Carolina does not impose such a broad and general duty. To the contrary, "there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." *Babcock Ctr.,* 371 S.C. at 136, 638 S.E.2d at 656. Furthermore, "one who has no control owes no duty." *Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997). Accordingly, in allegedly delivering wastewater to Lumberton, Defendants had no duty to ensure that Lumberton treated the wastewater in a way that did not risk harm to third parties and thus owed no duty to Grand Strand. *See, e.g.*, *Oulla v. Velazques*, 427 S.C. 428, 444, 831 S.E.2d 450, 458 (Ct. App. 2019) (finding that sod manufacturer that placed sod on truck which subsequently fell and injured motorist did not owe a duty to motorist to ensure that the sod was properly secured).

        b.        <u>Grand Strand has not alleged a type of damages that are recoverable under a negligence theory.</u>

Grand Strand's negligence claim also fails because Grand Strand alleges no facts that would establish the damages element of such a claim, which "requires a plaintiff to establish physical injury or property damage." *Babb*, 405 S.C. at 153, 747 S.E.2d at 481. As explained above, Grand Strand does not own the water in Bull Creek or the Intracoastal Waterway, but merely has a conditional right to use it. *See Whitney Mfg. Co.*, 60 S.C. at 265, 38 S.E. at 460. The Complaint makes unexplained and conclusory references to damage or injury to property, but does not allege any facts showing that anything other than river water has or could be damaged by PFAS. Instead, the Complaint reveals that Grand Strand's alleged damages are only (contingent) losses in property *value* and (potential) increases in operating costs in the future. Such damages are not "physical injury or property damage" recoverable in negligence. *See Gray v. S. Facilities, Inc.*, 256 S.C. 558, 183 S.E.2d 438 (1971) (finding that property owner could not recover for diminution of the value of his property resulting from oil fire in adjacent river that did not cause

16

physical damage to his property). Thus, for this reason as well, Grand Strand's negligence claim fails as a matter of law and should be dismissed.

### III.     CONCLUSION

For all of the foregoing reasons, GFL Environmental USA, Inc. and Waste Industries, LLC Motion to Dismiss should be granted, and all of the claims that Grand Strand has asserted against them should be dismissed.

**WILLIAMS MULLEN**

By: s/ John G. Tamasitis
Richard H. Willis (SC Bar No.: 6159)
John G. Tamasitis (SC Bar No.: 101875)
1230 Main Street, Suite 330
Columbia, SC 29201
Tel: 803.567.4615
Fax: 803.567.4601
rwillis@williamsmullen.com
jtamasitis@williamsmullen.com

**TAFT STETTINIUS & HOLLISTER**

Philip L. Comella (*PHV admission to be filed*)
Ryan G. Rudich (*PHV admission to be filed*)
111 E. Wacker Drive, Suite 2600
Chicago, IL 60601
Tel. 312.527.4000
Fax: 312.527.4011
pcomella@taftlaw.com
rrudich@taftlaw.com

*Counsel for Defendants GFL Environmental USA, Inc. and Waste Industries, LLC*

January 24, 2025

Columbia, South Carolina

17

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# Exhibit A

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | ) **IN THE COURT OF COMMON PLEAS** |
| **COUNTY OF HORRY** | ) |
| | ) **FIFTEENTH JUDICIAL CIRCUIT** |
| GRAND STRAND WATER AND SEWER AUTHORITY, | ) |
| *Plaintiff,* | ) |
| *v.* | ) |
| ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, LLC, | ) C.A. No.: 2024-CP-26-05523 |
| *Defendants.* | ) |

## AFFIDAVIT OF ANTHONY PELLETIER IN SUPPORT OF MOTION TO DISMISS DEFENDANTS GFL ENVIRONMENTAL USA, INC. AND WASTE INDUSTRIES, LLC

Anthony Pelletier, being duly sworn, deposes and says:

1.     I am over 18 years of age, of sound mind, and otherwise competent to make this Affidavit.

2.     My title is Vice President - Post-Collections Support for GFL Environmental. In this position, I have gained an understanding of the corporate structure of GFL, the different lines of business in which the company operates, and the manner in which each landfill owned or operated by a direct or indirect subsidiary or affiliate manages leachate generated by that landfill.

1

3.     The evidence set out in this Affidavit is based on both my personal knowledge and information assembled by other authorized personnel and company representatives.

4.     I have reviewed the Second Amended Complaint in the case of *Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corp. et al* (C.A. No. 2024-CP-26-05523) and in particular, Paragraph 22 of the Complaint, which contains allegations against GFL Environmental USA, Inc., Waste Industries, LLC, Sampson Country Disposal LLC, and Red Rock Disposal, LLC.

5.     Paragraph 22 contains inaccuracies and omissions concerning (a) the ownership and operation of the identified landfills; (b) how the leachate is managed at the landfills; and (c) the Defendants' business operations.  Specifically:

(a)     The South Wake Landfill is operated by Wake County Disposal, LLC. Contrary to the allegations of Paragraph 22, neither GFL Environmental USA, Inc. nor Waste Industries, LLC own or operate the South Wake Landfill.

(b)     The South Wake Landfill ceased transporting leachate to the Lumberton wastewater treatment plant in September 2024 and instead began treating the leachate at a new on-site reverse osmosis treatment system.  Treated effluent from this treatment system is discharged to an on-site sewer line. The South Wake Landfill does not accept waste from South Carolina.

(c)     GFL Environmental USA, Inc., a Delaware corporation, is a Michigan solid waste collection and hauling operation.  It has no operations in North Carolina or South Carolina and does not own or operate any landfills.  It does not own, lease, or maintain any property in South Carolina.  It does not maintain an office, place of business, or mailing address in South Carolina.  It does not have any employees in South Carolina.  It does not advertise, solicit business, or engage in any marketing in South Carolina.

(d)     Waste Industries, LLC is a North Carolina company with its principal place of business in North Carolina.  It is in the business of collecting and hauling solid waste in North Carolina, South Carolina, and Virginia.  It does not own or operate any landfills.

(e)     Also, contrary to the allegations of the Second Amended Complaint, (i) although Sampson County Disposal, LLC is the owner and operator of the Sampson County Landfill, it is not a subsidiary or division of either GFL Environmental USA, Inc. or Waste Industries, LLC; and (ii) although Red Rock Disposal, LLC is the owner and operator of the Red Rock Landfill in Holly Springs, North Carolina, it is not a subsidiary or division of GFL Environmental USA, Inc. or Waste Industries, LLC.

(f)     The Red Rock Landfill ceased transporting leachate to the Lumberton wastewater treatment plant on December 10, 2024.  Leachate is now transported to the South Wake Landfill and treated in the reverse osmosis treatment system there.

2

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Further affiant sayeth not.

Executed on this 16th day of January __, 2025.

_____
[AFFIANT]

Sworn to before me this 16th day of January, 2025.

_____
NOTARY NAME]

My Commission Expires: __12-13-2025__

3

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# Exhibit B

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523



111 East Wacker, Suite 2600
Chicago, IL 60601
Tel: 312.527.4000 | Fax: 312.527.4011
taftlaw.com

**Philip L. Comella**
312.836.4112
PComella@taftlaw.com

January 16, 2025

**BY EMAIL**

John B. White, Jr.
John B. White Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302

> **Re*:*** ***Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corp. et al***
> **(C.A. No. 2024-CP-26-05523)**

Dear John:

Following up on our previous communications, this letter and the attached affidavit provides information showing that GFL Environmental USA, Inc. and Waste Industries, LLC are improperly named as defendants in the above-referenced litigation. Attached is an affidavit by Anthony Pelletier, Vice-President – Post Collection Support for GFL Environmental. In it, he affirms that neither of these defendants own or operate the South Wake Landfill. The landfill is owned by Wake County, NC and operated by Wake County Disposal, LLC. GFL Environmental USA and Waste Industries also are not parent companies, directly or indirectly, of Sampson County Disposal, LLC or Red Rock Disposal, LLC. Based on the allegations in the Complaint, GFL Environmental USA and Waste Industries were included in this lawsuit only because of Grand Strand's understandable confusion over the relevant entities.

We appreciate your willingness to consider correcting the mis-identification of these parties outside of typical motion practice as doing so will save us both time briefing the issue. (We will undoubtedly have other issues to brief.)

Your co-counsel, Mr. Watson, had previously asked us a number of questions about past and current operations of the South Wake Landfill. Most of those questions are answered by Mr. Pelletier's affidavit. We do not believe any remaining questions are relevant to whether GFL Environmental USA or Waste Industries are proper defendants in this case, but if you would like, please call me to further discuss the matter.

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Last, so that there is no misunderstanding, by identifying the actual operator of the South Wake Landfill, we are not conceding that Grand Strand can state a valid claim against Wake County Disposal, LLC.

We appreciate the extensions your firm has provided to allow GFL Environmental USA and Waste Industries to answer or otherwise plead, which by agreement is now January 24, 2025. In order to avoid unnecessary motion practice, we would appreciate it if you would confirm your agreement to dismiss these parties no later than January 21, 2025.

Sincerely yours,

Philip L. Comella

Attachment

cc:     Richard Willis

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF HORRY** | ) | |
| | ) | **FIFTEENTH JUDICIAL CIRCUIT** |
| | ) | |
| GRAND STRAND WATER AND SEWER AUTHORITY, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| ALADDIN MANUFACTURING CORPORATION; BURLINGTON INDUSTRIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; FIBER INDUSTRIES, LLC; GFL ENVIRONMENTAL USA, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MOHAWK INDUSTRIES, INC.; NAN YA PLASTICS CORPORATION, AMERICA; PRET ADVANCED MATERIALS, LLC; RED ROCK DISPOSAL, LLC; SAMPSON COUNTY DISPOSAL, LLC; and WASTE INDUSTRIES, LLC, | ) | C.A. No.: 2024-CP-26-05523 |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## AFFIDAVIT OF ANTHONY PELLETIER

Anthony Pelletier, being duly sworn, deposes and says:

1.     I am over 18 years of age, of sound mind, and otherwise competent to make this Affidavit.

2.     My title is Vice President - Post-Collections Support for GFL Environmental. In this position, I have gained an understanding of the corporate structure of GFL, the different lines

1

170708018v1

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

of business in which the company operates, and the manner in which each landfill owned or operated by a direct or indirect subsidiary or affiliate manages leachate generated by that landfill.

3.    The evidence set out in this Affidavit is based on both my personal knowledge and information assembled by other authorized personnel and company representatives.

4.    I have reviewed the Second Amended Complaint in the case of *Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corp. et al* (C.A. No. 2024-CP-26-05523) and in particular, Paragraph 22 of the Complaint, which contains allegations against GFL Environmental USA, Inc., Waste Industries, LLC, Red Rock Disposal, LLC, and Sampson Country Disposal LLC.

5.    Paragraph 22 contains inaccuracies concerning (a) the ownership and operation of the identified landfills and (b) how the leachate is managed at the South Wake Landfill. Specifically:

(a)    The South Wake Landfill is owned by Wake County, NC and operated by Wake County Disposal, LLC. Contrary to the allegations of Paragraph 22, neither GFL Environmental USA, Inc. nor Waste Industries, LLC own or operate the South Wake Landfill.

(b)    The South Wake Landfill ceased transporting leachate to the Lumberton wastewater treatment plant in September 2024 and instead began treating the leachate at a new on-site reverse osmosis treatment system. Treated effluent from this treatment system is discharged to an on-site sewer line.

(c)    GFL Environmental USA, Inc., is a Michigan solid waste collection and hauling operation. It has no operations in North Carolina or South Carolina and does not own or operate any landfills.

(d)    Waste Industries, LLC is in the business of collecting and hauling solid waste in North Carolina, South Carolina, and Virginia. It does not own or operate any landfills.

(e)    Also contrary to the allegations of the Second Amended Complaint, (i) although Sampson County Disposal, LLC is the owner and operator of the Sampson County Landfill, it is not a subsidiary or division of either GFL Environmental USA, Inc. or Waste Industries, LLC; and (ii) although Red Rock Disposal, LLC is the owner and operator of the Red Rock Landfill in Holly Springs, North Carolina, it is not a subsidiary or division of GFL Environmental USA, Inc. or Waste Industries, LLC.

170708018v1

Further affiant sayeth not.

Executed on this 15th day of January __, 2025.

_____

[AFFIANT]

ELECTRONICALLY FILED - 2025 Jan 24 3:05 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

3

170708018v1

ELECTRONICALLY FILED - 2025 Jan 24 2:59 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

GRAND STRAND WATER AND SEWER
AUTHORITY,

              *Plaintiff,*

*v.*

ALADDIN MANUFACTURING
CORPORATION; BURLINGTON
INDUSTRIES, INC.; DELTA MILLS,
INC., its predecessors, successors, assigns,
and/or responsible parties; DOMTAR
PAPER COMPANY, LLC; ELEVATE
TEXTILES, INC.; FIBER INDUSTRIES,
LLC; GFL ENVIRONMENTAL USA,
INC.; J.P. STEVENS & COMPANY, INC.,
its predecessors, successors, assigns, and/or
responsible parties; MOHAWK
INDUSTRIES, INC.; NAN YA PLASTICS
CORPORATION, AMERICA; PRET
ADVANCED MATERIALS, LLC; RED
ROCK DISPOSAL, LLC; SAMPSON
COUNTY DISPOSAL, LLC; and WASTE
INDUSTRIES, LLC,

              *Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

IN THE COURT OF COMMON PLEAS
FIFTEENTH JUDICIAL CIRCUIT

C.A. No.: 2024-CP-26-05523

**MOTION TO DISMISS**

Defendants GFL Environmental USA, Inc. and Waste Industries, LLC, by and through

their undersigned counsel, and pursuant to Rules 8(a), 12(b)(1), 12(b)(2), and 12(b)(6) of the South

Carolina Rules of Civil Procedure, hereby move this Court to dismiss all claims asserted against

them in the Second Amended Complaint filed by the Plaintiff, Grand Strand Water and Sewer

Authority.  A separate memorandum of law shall follow separately.

*[Signature block on the following page.]*

1

Respectfully Submitted,

**WILLIAMS MULLEN**

By: s/ John G. Tamasitis
Richard H. Willis (SC Bar No.: 6159)
John G. Tamasitis (SC Bar No.: 101875)
1230 Main Street, Suite 330
Columbia, SC 29201
Tel: 803.567.4615
Fax: 803.567.4601
rwillis@williamsmullen.com
jtamasitis@williamsmullen.com

**TAFT STETTINIUS & HOLLISTER**

Philip L. Comella (*PHV admission to be filed*)
Ryan G. Rudich (*PHV admission to be filed*)
111 E. Wacker Drive, Suite 2600
Chicago, IL 60601
Tel. 312.527.4000
Fax: 312.527.4011
pcomella@taftlaw.com
rrudich@taftlaw.com

*Counsel for Defendants GFL Environmental USA,
Inc. and Waste Industries, LLC*

January 24, 2025

Columbia, South Carolina

ELECTRONICALLY FILED - 2025 Jan 24 2:59 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

2

ELECTRONICALLY FILED - 2025 Jan 24 1:06 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA       )    IN THE COURT OF COMMON PLEAS
COUNTY OF SPARTANBURG         )
                             )
                             )
IN RE:                       )
                             )              NOTICE
                             )        OF STATUS CONFERENCE
PFAS LITIGATION              )
COORDINATED DOCKET           )
                             )
                             )
_____)

A status conference has been set in the PFAS Litigation cases for 11:00 a.m. on Friday, January 24, 2025, at the Spartanburg County Courthouse in Courtroom 6D and will be on Judge Knie's virtual courtroom.

Counsel has been notified via electronic mail.


IT IS SO ORDERED at Spartanburg, South Carolina this 23rd day of January, 2025.


_____
Honorable Grace Gilchrist Knie
Circuit Judge
S.C. PFAS Litigation

Page 1 of 1

ELECTRONICALLY FILED - 2025 Jan 24 4:01 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# The Supreme Court of South Carolina

## RE: PFAS Litigation

## ORDER

Pursuant to the provisions of Article V, Section 4 of the South Carolina Constitution, I find that assigning a single circuit judge to dispose of all matters arising out of the PFAS litigation currently pending and to be filed in the state court system will promote the effective and expeditious disposition of this litigation through uniform rulings and will conserve the judicial resources of the parties, their counsel, and the judiciary. Therefore,

IT IS ORDERED that the Honorable Grace Gilchrist Knie be vested with exclusive jurisdiction to hear and dispose of all PFAS litigation cases. Judge Knie shall decide all pretrial motions and other pretrial matters, including appropriate scheduling deadlines and admission of counsel *pro hac vice* pursuant to Rule 404, SCACR, arising out of the PFAS cases filed in the state court system. Judge Knie shall have jurisdiction in all circuits in the state to dispose of all pretrial matters arising out of the PFAS litigation and may schedule such hearings as may be necessary at any time without regard as to whether there is a term of court scheduled.

IT IS FURTHER ORDERED that for administrative purposes and convenience, upon the filing of a new action involving PFAS litigation, the clerk of court shall notify Judge Knie, via email, of such filing within five business days. This notification shall include the case caption, including the docket number, as well as the name of the attorney or party signing the pleadings. Judge Knie shall then direct the clerk of court as to the preferred method for transmitting the pleadings and additional filings to her office.

IT IS FURTHER ORDERED that Judge Knie shall have jurisdiction to issue case management orders directing the consolidation of certain pretrial matters within the PFAS litigation.

IT IS FURTHER ORDERED that this is not a consolidation for trial purposes. At the conclusion of all pretrial matters, any party may move to have

trial ready cases transferred to the trial roster of the court of original jurisdiction or the court of appropriate venue for trial. Judge Knie shall preside over the trials of all PFAS cases.

This order shall remain in effect until amended or rescinded by the Chief Justice.

_____ C.J.
FOR THE COURT
John W. Kittredge
Chief Justice of South Carolina

Columbia, South Carolina
August 14, 2024

ELECTRONICALLY FILED - 2025 Jan 24 4:01 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 24 4:01 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# The Supreme Court of South Carolina

RE: Local PFAS Litigation

---

## ORDER

---

Pursuant to the provisions of Article V, section 4 of the South Carolina Constitution, I find that assigning a single circuit judge to dispose of all matters arising out of the PFAS litigation brought by publicly-owned water providers seeking damages within their local districts (Local PFAS Litigation) currently pending and to be filed in the state court system will promote the effective and expeditious disposition of this litigation through uniform rulings and will conserve the judicial resources of the parties, their counsel, and the judiciary. Therefore,

IT IS ORDERED that the Honorable Grace Gilchrist Knie be vested with exclusive jurisdiction to hear and dispose of all Local PFAS Litigation cases. Judge Knie shall decide all pretrial motions and other pretrial matters, including appropriate scheduling deadlines and admission of counsel *pro hac vice* pursuant to Rule 404, SCACR, arising out of the Local PFAS Litigation cases filed in the state court system. Judge Knie shall have jurisdiction in all circuits in the state to dispose of all pretrial matters arising out of the Local PFAS Litigation and may schedule such hearings as may be necessary at any time without regard to whether there is a term of court scheduled.

IT IS FURTHER ORDERED that for administrative purposes and convenience, upon the filing of a new action involving Local PFAS Litigation, the clerk of court shall notify Judge Knie, via email, of such filing within five business days. This notification shall include the case caption, including the docket number, as well as the name of the attorney or party signing the pleadings. Judge Knie shall then direct the clerk of court as to the preferred method for transmitting the pleadings and additional filings to her office.

IT IS FURTHER ORDERED that Judge Knie shall have jurisdiction to issue case management orders directing the consolidation of certain pretrial matters within the Local PFAS Litigation.

IT IS FURTHER ORDERED that this is not a consolidation for trial purposes. At the conclusion of all pretrial matters, any party may move to have trial ready cases transferred to the trial roster of the court of original jurisdiction or the court of appropriate venue for trial. Judge Knie shall preside over the trials of all Local PFAS Litigation cases.

This order supersedes the PFAS Litigation Order dated August 14, 2024, and shall remain in effect until amended or rescinded by the Chief Justice.

John W. Kittredge
Chief Justice of South Carolina

Columbia, South Carolina
October ___7___, 2024

ELECTRONICALLY FILED - 2025 Jan 24 4:01 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 28 10:46 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA  )  IN THE COURT OF COMMON PLEAS
COUNTY OF SPARTANBURG   )
            )
            )
IN RE:           )
            )  NOTICE OF HEARING
            )
PFAS LITIGATION     )
COORDINATED DOCKET   )
            )
            )
_____)

Pending motion hearings have been set in the PFAS Litigation cases (2024-CP-26-5523 <u>Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation, et. al.</u>) for **9:30 a.m. on Wednesday, March 12, 2025**, at the **Spartanburg County Courthouse in Courtroom 2A** and will be on Judge Knie's virtual courtroom.

Counsel has been notified via electronic mail.

IT IS SO ORDERED at Spartanburg, South Carolina this 28th day of January, 2025.

_____
Honorable Grace Gilchrist Knie
Circuit Judge
S.C. PFAS Litigation

ELECTRONICALLY FILED - 2025 Jan 30 5:55 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS
FOR THE FIFTEENTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

Grand Strand Water and Sewer Authority,

*Plaintiff*,

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants*.

C.A. No. 2024-CP-26-05523

**REQUEST FOR ENTRY OF DEFAULT AS TO DEFENDANT DELTA MILLS, INC.**

Pursuant to Rule 55(a), SCRCP, the undersigned, as counsel for Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff"), respectfully requests that the Clerk of Court make an entry of default against Defendant Delta Mills, Inc. ("Delta Mills"). This request is based on the Affidavit of Default attached hereto as Exhibit 1. The Affidavit of Default establishes that Plaintiff served Delta Mills with the Second Amended Summons and Complaint in this action on December 20, 2024, by serving the South Carolina Secretary of State's Office. Delta Mills has not answered or otherwise appeared in this action, and Delta Mills' answer to the Second Amended Complaint was due on or before January 24, 2025. *See* Rule 12(a), SCRCP. Because Delta Mills has failed to plead or otherwise defend as provided by the South Carolina Rules of Civil Procedure, Delta Mills is in default, and Plaintiff respectfully requests the entry of default against Delta Mills.

ELECTRONICALLY FILED - 2025 Jan 30 5:55 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Respectfully submitted,

*/s/ Marghretta H. Shisko*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

January 30, 2025

2

# EXHIBIT 1

ELECTRONICALLY FILED - 2025 Jan 30 5:55 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 30 5:55 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS
FOR THE FIFTEENTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

Grand Strand Water and Sewer Authority,

*Plaintiff,*

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants.*

C.A. No. 2024-CP-26-05523

**AFFIDAVIT OF DEFAULT AS TO
DEFENDANT DELTA MILS, INC.**

Personally appeared before me, Marghretta H. Shisko, who, after first being duly sworn, states as follows:

1.      My name is Marghretta H. Shisko. I am over the age of 18 and I am competent to provide this affidavit. I am an attorney licensed to practice in the State of South Carolina, and I am counsel for Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff") in the above-captioned action.

2.      On December 20, 2024, Plaintiff served Defendant Delta Mills, Inc. with the Second Amended Summons and Complaint in this action pursuant to section 33-15-200(c) of the South Carolina Code and Rule 4(d)(7), SCRCP, by serving copies of the same on the South Carolina Secretary of State's Office via process server.[1]

3.      Defendant Delta Mills, Inc.'s answer to the Second Amended Complaint was due on January 24, 2025, but Delta Mills, Inc. has not answered or otherwise appeared in this action.

---

[1] *See* Correspondence and Affidavit of Service, attached as Exhibit A.

4.    Defendant Delta Mills, Inc. is not a minor, incompetent, or member of the military service.

5.    Defendant Delta Mills, Inc. is now in default.

_____
Marghretta H. Shisko

SWORN AND SUBSCRIBED TO BEFORE

ME this 3th day of January , 2025

_____
Notary Public, State of South Carolina

My Commission Expires: 4/28/32

2

ELECTRONICALLY FILED - 2025 Jan 30 5:55 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# EXHIBIT A

ELECTRONICALLY FILED - 2025 Jan 30 5:55 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

State of South Carolina
Office of the Secretary of State
The Honorable Mark Hammond



1205 PENDLETON STREET, SUITE 525
COLUMBIA, SC 29201

803-734-2170
sos.sc.gov

December 23, 2024

ELECTRONIC CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Delta Mills, Inc.
c/o Mesirow Financial Consulting LLC
265 Franklin St., 16th Floor
Boston, MA 02110

RE: Delta Mills, Inc., 2024-CP-26-05523

Dear Madam/Sir:

In accordance with South Carolina Code § 33-15-200, we are enclosing herewith a copy of the Second Amended Summons; and Second Amended Complaint in the above-entitled case. Service was accepted on December 20, 2024 and a copy has been duly filed in our office as of this date. The fee of $10.00 has been paid.

Yours very truly,

Allyson Green

Allyson Green
South Carolina Secretary of State's Office

Enclosures

cc:     John B. White Jr., P.A.
        John B. White, Jr.
        291 South Pine Street P.O. Box 2465
        Spartanburg, SC 29304

ELECTRONICALLY FILED - 2025 Jan 30 5:55 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA   )
                              )
COUNTY OF HORRY           )
                              )
Grand Strand Sewer and Water  )
Authority,                      )
                              )
         Plaintiff,      )
                              )
vs.                         )
                              )
Aladdin Manufacturing Corporation, )
et. al.,                      )
                              )
        Defendants.    )
                              )

IN THE COURT OF COMMON PLEAS

CASE NO: 2024-CP-26-05523

**AFFIDAVIT OF SERVICE**

The undersigned, Debbie Brothers being duly sworn, says that she served the foregoing: **COVER LETTER, TWO SECOND AMENDED SUMMONS AND TWO SECOND AMENDED COMPLAINTS** in the above captioned action upon the Defendant **DELTA MILLS, INC.,** by delivering the same to:

( ) the individual personally, or

(X) **KIM WICKERSHAM, Director for SC Secretary of State's Office** person served as authorized/designated to receive service for the defendant and leaving with him/her one (1) copy of the same at **1205 Pendleton Street, 5th Floor, Columbia, SC 29201** on the **20th day** of **December, 2024,** at **9:25 a.m.**

The Affiant further says, that upon information and belief, she know the person so served to be the defendant mentioned and described in the documents served and that the affiant is not a party to nor interested in the action.

_Debbie Brothers_
Debbie Brothers

SWORN TO before me this _3rd_ day of _January_ ,2025

_McArthur Lewis_
Notary Public for S.C.
My Commission Expires: 3-6-2025

ELECTRONICALLY FILED - 2025 Jan 30 5:55 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 30 6:06 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS
FOR THE FIFTEENTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

Grand Strand Water and Sewer Authority,

*Plaintiff*,

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants*.

C.A. No. 2024-CP-26-05523

**REQUEST FOR ENTRY OF DEFAULT AS TO DEFENDANT J.P. STEVENS & COMPANY, INC.**

Pursuant to Rule 55(a), SCRCP, the undersigned, as counsel for Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff"), respectfully requests that the Clerk of Court make an entry of default against Defendant J.P. Stevens & Company, Inc. ("JPS"). This request is based on the Affidavit of Default attached hereto as Exhibit 1. The Affidavit of Default establishes that Plaintiff served JPS with the Second Amended Summons and Complaint in this action on December 20, 2024, by serving the South Carolina Secretary of State's Office. JPS has not answered or otherwise appeared in this action, and JPS' answer to the Second Amended Complaint was due on or before January 24, 2025. *See* Rule 12(a), SCRCP. Because JPS has failed to plead or otherwise defend as provided by the South Carolina Rules of Civil Procedure, JPS is in default, and Plaintiff respectfully requests the entry of default against JPS.

ELECTRONICALLY FILED - 2025 Jan 30 6:06 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Respectfully submitted,

*/s/ Marghretta H. Shisko*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

January 30, 2025

2

# EXHIBIT 1

ELECTRONICALLY FILED - 2025 Jan 30 6:06 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 30 6:06 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS
FOR THE FIFTEENTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

Grand Strand Water and Sewer Authority,

Plaintiff,

v.

Aladdin Manufacturing Corporation, et al.,

Defendants.

C.A. No. 2024-CP-26-05523

**AFFIDAVIT OF DEFAULT AS TO DEFENDANT J.P. STEVENS & COMPANY, INC.**

Personally appeared before me, Marghretta H. Shisko, who, after first being duly sworn, states as follows:

1.      My name is Marghretta H. Shisko. I am over the age of 18 and I am competent to provide this affidavit. I am an attorney licensed to practice in the State of South Carolina, and I am counsel for Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff") in the above-captioned action.

2.      On December 20, 2024, Plaintiff served Defendant J.P. Stevens & Company, Inc. ("JPS") with the Second Amended Summons and Complaint in this action pursuant to section 33-15-200(c) of the South Carolina Code and Rule 4(d)(7), SCRCP, by serving copies of the same on the South Carolina Secretary of State's Office via process server.[1]

3.      Defendant JPS's answer to the Second Amended Complaint was due on January 24, 2025, but JPS has not answered or otherwise appeared in this action.

4.      Defendant JPS is not a minor, incompetent, or member of the military service.

---

[1] *See* Correspondence and Affidavit of Service, attached as Exhibit A.

5.     Defendant JPS is now in default.

_____
Marghretta H. Shisko

SWORN AND SUBSCRIBED TO BEFORE

ME this 30th day of ___January___, 2025

_____
Notary Public, State of South Carolina

My Commission Expires: 4/28/32

ELECTRONICALLY FILED - 2025 Jan 30 6:06 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

2

# EXHIBIT A

ELECTRONICALLY FILED - 2025 Jan 30 6:06 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

## State of South Carolina
## Office of the Secretary of State
## The Honorable Mark Hammond



1205 PENDLETON STREET, SUITE 525
COLUMBIA, SC 29201

803-734-2170
sos.sc.gov

December 23, 2024

ELECTRONIC CERTIFIED MAIL
RETURN RECEIPT REQUESTED

J.P. Stevens & Co., Inc.
c/o WestPoint Stevens, Inc.
P.O. Box 71 507 West 10th Street
West Point, GA 31833

RE: J.P. Stevens & Co., Inc., 2024-CP-26-05523

Dear Madam/Sir:

In accordance with South Carolina Code § 33-15-200, we are enclosing herewith a copy
of the Second Amended Summons; and Second Amended Complaint in the above-
entitled case.  Service was accepted on December 20, 2024 and a copy has been duly
filed in our office as of this date.  The fee of $10.00 has been paid.

Yours very truly,

Allyson Green
South Carolina Secretary of State's Office

Enclosures

cc:     John B. White Jr., P.A.
        John B. White, Jr.
        291 South Pine Street P.O. Box 2465
        Spartanburg, SC 29304

Corporations
803-734-2158

UCC
803-734-2175

Charities
803-734-1790

Boards & Commissions
803-734-2512

Notaries
803-734-2512

Trademarks
803-734-0367

ELECTRONICALLY FILED - 2025 Jan 30 6:06 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 30 6:06 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF HORRY | ) | CASE NO: 2024-CP-26-05523 |
| Grand Strand Sewer and Water Authority, | ) | |
| Plaintiff, | ) | **AFFIDAVIT OF SERVICE** |
| vs. | ) | |
| Aladdin Manufacturing Corporation, et. al., | ) | |
| Defendants. | ) | |

The undersigned, Debbie Brothers being duly sworn, says that she served the foregoing: **COVER LETTER, TWO SECOND AMENDED SUMMONS AND TWO SECOND AMENDED COMPLAINTS** in the above captioned action upon the Defendant **J.P. STEVENS & CO., INC.,** by delivering the same to:

( ) the individual personally, or

(X) **KIM WICKERSHAM, Director for SC Secretary of State's Office** person served as authorized/designated to receive service for the defendant and leaving with him/her one (1) copy of the same at **1205 Pendleton Street, 5th Floor, Columbia, SC 29201** on the **20th day** of **December, 2024,** at **9:25 a.m.**

The Affiant further says, that upon information and belief, she know the person so served to be the defendant mentioned and described in the documents served and that the affiant is not a party to nor interested in the action.

_____
Debbie Brothers

SWORN TO before me this 3RD day
of _Jonuary_ ,2025
_____
Notary Public for S.C.
My Commission Expires: 3-6-2025

ELECTRONICALLY FILED - 2025 Jan 31 9:40 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS
FOR THE FIFTEENTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

Grand Strand Water and Sewer Authority,

*Plaintiff*,

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants*.

C.A. No. 2024-CP-26-05523

**ENTRY OF DEFAULT AS TO
DELTA MILLS, INC.**

IT APPEARING to me from the file book, the file in this case, and the affidavit of counsel for the Plaintiff, Grand Strand Water and Sewer Authority, that Defendant Delta Mills, Inc. has failed to timely plead or otherwise defend as provided by the South Carolina Rules of Civil Procedure, I hereby, pursuant to Rule 55(a), SCRCP, make this entry of default as to Defendant Delta Mills, Inc.

AND IT IS SO ENTERED.

_____
Horry County Clerk of Court

1



Horry Common Pleas

**Case Caption:**    Grand Strand Water And Sewer Authority VS Aladdin Manufacturing
Corporation , defendant, et al

**Case Number:**    2024CP2605523

**Type:**    Order/Entry of Default

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2025-01-31 09:26:30    page 2 of 2

ELECTRONICALLY FILED - 2025 Jan 31 9:40 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 31 9:38 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS
FOR THE FIFTEENTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

Grand Strand Water and Sewer Authority,

*Plaintiff*,

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants*.

C.A. No. 2024-CP-26-05523

**ENTRY OF DEFAULT AS TO J.P. STEVENS & COMPANY, INC.**

IT APPEARING to me from the file book, the file in this case, and the affidavit of counsel for the Plaintiff, Grand Strand Water and Sewer Authority, that Defendant J.P. Stevens & Company, Inc. has failed to timely plead or otherwise defend as provided by the South Carolina Rules of Civil Procedure, I hereby, pursuant to Rule 55(a), SCRCP, make this entry of default as to Defendant J.P. Stevens & Company, Inc.

AND IT IS SO ENTERED.

_____
Horry County Clerk of Court

1

ELECTRONICALLY FILED - 2025 Jan 31 9:38 AM - HORRY - COMMON PLEAS - CASE#2024CP2605523



Horry Common Pleas

**Case Caption:**     Grand Strand Water And Sewer Authority VS Aladdin Manufacturing
                     Corporation , defendant, et al
**Case Number:**     2024CP2605523

**Type:**            Order/Entry of Default


IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760


Electronically signed on 2025-01-31 09:25:10     page 2 of 2

ELECTRONICALLY FILED - 2025 Jan 31 1:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS
FOR THE FIFTEENTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

Grand Strand Water and Sewer Authority,

*Plaintiff,*

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants.*

C.A. No. 2024-CP-26-05523

**PLAINTIFF'S MOTION TO APPOINT A RECEIVER OVER DEFENDANT DELTA MILLS, INC.**

Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff" or "GSWSA") hereby moves for the appointment of a receiver over Defendant Delta Mills, Inc. For the following reasons, Plaintiff respectfully submits that the Court should appoint a receiver over Defendant Delta Mills, Inc. pursuant to section 15-65-10(4) of the South Carolina Code.

**Background**

Defendant Delta Mills, Inc. was a Delaware corporation that was registered to transact business in South Carolina until September 17, 2009. Before its dissolution, Delta Mills and its related entities (collectively, "Delta Mills") operated a number of textile mills and/or plants in South Carolina, including facilities in Wallace and Pamplico. Over the course of its facility operations, Delta Mills used products containing toxic per- and polyfluoroalkyl substances ("PFAS") in the finishing of its textile products, and Delta Mills discharged its PFAS-contaminated industrial wastewater to South Carolina waterways.

Delta Mills' business activities at the facility in Wallace contaminated the Great Pee Dee River, which is upstream of GSWSA's water source at Bull Creek. Further, Delta Mills did not

ELECTRONICALLY FILED - 2025 Jan 31 1:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

remediate the PFAS contamination at this facility when it ceased operations in 2006, and its legacy PFAS contamination has caused and continues to cause harm to Plaintiff. As set forth in the Second Amended Complaint, Plaintiff is a public drinking water utility that provides potable water to its customers, and Plaintiff will be required to design, construct, and operate new water treatment technologies to remove PFAS contamination and provide drinking water free from PFAS. Plaintiff asserts causes of action against Delta Mills (and other upstream dischargers) for private nuisance, public nuisance, trespass, and negligence, gross negligence, and/or recklessness.

## Argument

Under South Carolina law, "a judge of the circuit court" may appoint a receiver "[w]hen a corporation has been dissolved, is insolvent or in imminent danger of insolvency or has forfeited its corporate rights, and, in like cases of the property within this State of foreign corporations." S.C. Code Ann. § 15-65-10(4). The decision to appoint a receiver is discretionary with the appointing judge. *Midlands Util., Inc. v. S.C. Dep't of Health & Env't Control*, 301 S.C. 224, 228, 391 S.E.2d 535, 538 (1989). "A receiver represents the court appointing him. He is an officer of the court and is the agency through which the court acts." *Jeffcoat v. Morris*, 300 S.C. 526, 528, 389 S.E.2d 159, 160 (Ct. App. 1989), *overruled on other grounds by United Carolina Bank v. Caroprop*, 316 S.C. 1, 446 S.E.2d 415 (1994). Before a party's property may be put in the hands of a receiver, "[a]t least four days' notice of the application must be given, unless the court shall, upon it being made to appear that delay would work injustice, prescribe a shorter time." S.C. Code Ann. § 15-65-20.

This Court—which has exclusive jurisdiction to hear and dispose of all Local PFAS Litigation cases and all pretrial matters arising therefrom[1]—should appoint a receiver over Delta

---

[1] *RE: Local PFAS Litigation*, S.C. Sup. Ct. Order dated Oct. 7, 2024.

ELECTRONICALLY FILED - 2025 Jan 31 1:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

Mills because it is dissolved and has forfeited its right to conduct business in South Carolina.[2] Before withdrawing from the State and dissolving, however, Delta Mills engaged in tortious conduct causing harm to Plaintiff (and likely others), as alleged in Plaintiff's Second Amended Complaint. Additionally, Plaintiff properly served the Second Amended Summons and Complaint on Delta Mills through the South Carolina Secretary of State,[3] *see* S.C. Code Ann. § 33-15-200(c), and Delta Mills has not answered and is currently in default. Consistent with section 15-65-20, Plaintiff is providing notice of this Motion to Delta Mills by serving copies on the South Carolina Secretary of State.

Plaintiff respectfully requests that this Court enter an order appointing Peter D. Protopapas as the Receiver over Delta Mills. Mr. Protopapas has extensive experience acting as the receiver over dissolved or defunct entities such as Delta Mills. As an officer of the Court, the Receiver can determine whether Delta Mills has any assets (including, for example, insurance coverage), and he should be granted the authority to, among other things, accept service of claims, retain counsel, make claims against any insurance policies, and marshal and administer Delta Mills' assets.

## Conclusion

For the foregoing reasons, Plaintiff respectfully submits that the appointment of a receiver over Delta Mills is appropriate, and the receiver should be granted the power and authority to fully administer Delta Mills' assets, accept service and engage counsel on its behalf, and take any and all steps necessary to protect the interests of Delta Mills, whatever they may be. Plaintiff further respectfully submits that the Court should appoint Peter D. Protopapas as receiver over Delta Mills, and requests that the Court issue an order appointing a receiver as soon as practically possible.

---

[2] *See* Aff., Ex. A.
[3] *See* Aff., Ex. B.

3

Respectfully submitted,

*/s/ Marghretta H. Shisko*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

F. Jerome Tapley*
Hirlye Ryan Lutz, III*
Brett Cooper Thompson*
Robert Akira Watson*
Hamilton Jordan*
Hannah Caldwell*
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, AL 35205
(205) 328-2200
jtapley@corywatson.com
rlutz@corywatson.com
bthompson@corywatson.com
awatson@corywatson.com
hjordan@corywatson.com
hcaldwell@corywatson.com
*admitted pro hac vice*

*Attorneys for Plaintiff*

January 31, 2025

ELECTRONICALLY FILED - 2025 Jan 31 1:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

4

# EXHIBIT - AFFIDAVIT

ELECTRONICALLY FILED - 2025 Jan 31 1:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 31 1:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS
FOR THE FIFTEENTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

Grand Strand Water and Sewer Authority,

Plaintiff,

v.

Aladdin Manufacturing Corporation, et al.,

Defendants.

C.A. No. 2024-CP-26-05523

**AFFIDAVIT OF MARGHRETTA H. SHISKO**

Personally appeared before me, Marghretta H. Shisko, who, after first being duly sworn, states as follows:

1.     My name is Marghretta H. Shisko. I am over the age of 18 and am competent to provide this affidavit. I am an attorney licensed to practice in the State of South Carolina, and I am counsel for Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff") in the above-captioned action.

2.     Defendant Delta Mills, Inc. is a dissolved foreign corporation that was formerly registered to transact business in the State of South Carolina. Delta Mills, Inc. dissolved effective September 17, 2009, after applying for and obtaining a certificate of withdrawal from the SC Secretary of State pursuant to section 33-15-200 of the South Carolina Code.[1] In its application, Delta Mills, Inc.: (1) revoked the authority of its South Carolina registered agent to accept service of process; (2) appointed the SC Secretary of State as its agent for service of process in actions

---

[1] See Application for Surrender of Authority to Do Business in the State of South Carolina, attached as Exhibit A.

based on a cause of action that arose from its transaction of business in the State; (3) provided a mailing address for the Secretary of State to forward any process against the corporation served on him; and (4) agreed to notify the Secretary of State of any future changes in its mailing address. *See* § 33-15-200(b).

3.     Plaintiff served Defendant Delta Mills, Inc. with the Second Amended Summons and Complaint in this action on December 20, 2024, pursuant to section 33-15-200(c) of the South Carolina Code and Rule 4(d)(7), SCRCP, by serving copies of the same on the SC Secretary of State's Office via process server.[2]

4.     Defendant Delta Mills, Inc.'s Answer to the Second Amended Complaint was due on January 24, 2025, but Delta Mills, Inc. has not answered or otherwise appeared in this action. Pursuant to Rule 55(a), SCRCP, default was entered as to Defendant Delta Mills, Inc. on January 31, 2025.

5.     Plaintiff is filing a Motion to Appoint a Receiver over Delta Mills, Inc., pursuant to section 15-65-10(4) of the South Carolina Code, and is providing notice of the Motion by serving copies of the same on Defendant Delta Mills, Inc. through the SC Secretary of State's Office pursuant to sections 33-15-200(c) and 15-65-20 of the South Carolina Code.

*Signature Page Follows*

---

[2] *See* Correspondence and Affidavit of Service, attached as Exhibit B.

ELECTRONICALLY FILED - 2025 Jan 31 1:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

_____
Marghretta H. Shisko

SWORN AND SUBSCRIBED TO BEFORE

ME this 31st day of January , 2025

_____
Notary Public, State of South Carolina

My Commission Expires: 4/28/32

ELECTRONICALLY FILED - 2025 Jan 31 1:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

3

# EXHIBIT A

ELECTRONICALLY FILED - 2025 Jan 31 1:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

CERTIFIED TO BE A TRUE AND CORRECT COPY
AS TAKEN FROM AND COMPARED WITH THE
ORIGINAL ON FILE IN THIS OFFICE

Nov 07 2024
REFERENCE ID: 1749836

*Mark Hammond*
SECRETARY OF STATE OF SOUTH CAROLINA

**STATE OF SOUTH CAROLINA
SECRETARY OF STATE**

**APPLICATION FOR SURRENDER OF AUTHORITY TO DO BUSINESS IN
THE STATE OF SOUTH CAROLINA**

<u>**TYPE OR PRINT CLEARLY IN BLACK INK**</u>

Pursuant to S C Code § 33 15 200 the undersigned corporation hereby applies to the Secretary of State for surrender of authority to do business in the State of South Carolina and for that purpose submits the following statement

1    The name of the corporation is _____ DELTA MILLS INC _____

2    The corporation is incorporated under the laws of the state of _____ DELAWARE _____

3    The corporation received a certificate of authorization to transact business in South Carolina dated _____ 07/16/1993 _____

4    The corporation is no longer transacting business in South Carolina

5    The corporation hereby surrenders its authority to transact business in the State of South Carolina

6    The corporation revokes the authority of its registered agent in South Carolina to accept service of process and consents that process in any action suit or proceeding based upon any cause of action arising in this State before the effective date of this application may be served on the Secretary of State

7    The address to which the Secretary of State may mail a copy of any process against the corporation that may be served on him is _____ C/O MESIROW FINANCIAL CONSULTING LLC _____
_____ 265 FRANKLIN ST 16TH FLOOR BOSTON MA 02110 _____

The corporation hereby agrees to notify the Secretary of State of any change in this mailing address

8    Unless a delayed date is specified this application shall be effective upon acceptance for filing by the Secretary of State (See sections 33 1 230(b)) _____

Date ____ 9/15/09 ____

DELTA MILLS, INC
Name of Corporation

_____
Signature

LEON SZLEZINGER, CHIEF DESIGNATED OFFICER
Type or Print Name and Office

<u>**FILING INSTRUCTIONS**</u>

1    Two copies of this application the original and either a duplicate original or a conformed copy must be filed

2    Filing Fee (payable at the time of filing this document)  $10 00

Return to   Secretary of State
PO Box 11350
Columbia SC 29211

FRN APP FOR SURRENDER OF AUTHORITY doc

090917-0128         FILED 09/17/2009
DELTA MILLS INC

Filing Fee $10 00 ORIG



Mark Hammond         South Carolina Secretary of State

ELECTRONICALLY FILED - 2025 Jan 31 1:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# EXHIBIT B

ELECTRONICALLY FILED - 2025 Jan 31 1:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523



# State of South Carolina
## Office of the Secretary of State
### The Honorable Mark Hammond

1205 PENDLETON STREET, SUITE 525
COLUMBIA, SC 29201

803-734-2170
sos.sc.gov

December 23, 2024

ELECTRONIC CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Delta Mills, Inc.
c/o Mesirow Financial Consulting LLC
265 Franklin St., 16th Floor
Boston, MA 02110

RE: Delta Mills, Inc., 2024-CP-26-05523

Dear Madam/Sir:

In accordance with South Carolina Code § 33-15-200, we are enclosing herewith a copy
of the Second Amended Summons; and Second Amended Complaint in the above-
entitled case. Service was accepted on December 20, 2024 and a copy has been duly
filed in our office as of this date. The fee of $10.00 has been paid.

Yours very truly,

Allyson Green
South Carolina Secretary of State's Office

Enclosures

cc:    John B. White Jr., P.A.
       John B. White, Jr.
       291 South Pine Street P.O. Box 2465
       Spartanburg, SC 29304

| Corporations | UCC | Charities | Boards & Commissions | Notaries | Trademarks |
|---|---|---|---|---|---|
| 803-734-2158 | 803-734-2175 | 803-734-1790 | 803-734-2512 | 803-734-2512 | 803-734-0367 |

ELECTRONICALLY FILED - 2025 Jan 31 1:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA    )    IN THE COURT OF COMMON PLEAS
                                     )
COUNTY OF HORRY    )    CASE NO: 2024-CP-26-05523
                                     )
Grand Strand Sewer and Water    )
Authority,    )
                                     )
              Plaintiff,    )    **AFFIDAVIT OF SERVICE**
                                     )
vs.    )
                                     )
Aladdin Manufacturing Corporation,    )
et. al.,    )
                                     )
              Defendants.    )
                                     )

The undersigned, Debbie Brothers being duly sworn, says that she served the foregoing: **COVER LETTER, TWO SECOND AMENDED SUMMONS AND TWO SECOND AMENDED COMPLAINTS** in the above captioned action upon the Defendant **DELTA MILLS, INC.,** by delivering the same to:

( ) the individual personally, or

(X) **KIM WICKERSHAM, Director for SC Secretary of State's Office** person served as authorized/designated to receive service for the defendant and leaving with him/her one (1) copy of the same at **1205 Pendleton Street, 5th Floor, Columbia, SC 29201** on the **20th day** of **December, 2024**, at **9:25 a.m.**

The Affiant further says, that upon information and belief, she know the person so served to be the defendant mentioned and described in the documents served and that the affiant is not a party to nor interested in the action.

                                                    _Debbie Brothers_
                                                    Debbie Brothers

SWORN TO before me this 3rd day of January ,2025

_McArthur Lewis_
Notary Public for S.C.
My Commission Expires: 3-6-2025

ELECTRONICALLY FILED - 2025 Jan 31 1:08 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 31 1:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF HORRY | FOR THE FIFTEENTH JUDICIAL CIRCUIT |

IN RE:
PFAS LITIGATION COORDINATED DOCKET

Grand Strand Water and Sewer Authority,

*Plaintiff*,

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants*.

C.A. No. 2024-CP-26-05523

**PLAINTIFF'S MOTION TO APPOINT A RECEIVER OVER DEFENDANT J.P. STEVENS & COMPANY, INC.**

Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff" or "GSWSA") hereby moves for the appointment of a receiver over Defendant J.P. Stevens & Company, Inc. For the following reasons, Plaintiff respectfully submits that the Court should appoint a receiver over Defendant J.P. Stevens & Company, Inc. pursuant to section 15-65-10(4) of the South Carolina Code.

**Background**

Defendant J.P. Stevens & Company, Inc. was a Delaware corporation that was registered to transact business in South Carolina until August 30, 1999. Before its dissolution, J.P. Stevens & Company, Inc. and its related entities (collectively, "JPS") operated a number of textile mills and/or plants in South Carolina, including a textile finishing facility in Wallace, South Carolina, which JPS subsequently sold to Delta Mills, Inc. (or a related entity) in or around 1987. Over the course of its facility operations, JPS used products containing toxic per- and polyfluoroalkyl substances ("PFAS") in the finishing of its textile products, and JPS discharged its PFAS-contaminated industrial wastewater to South Carolina waterways.

ELECTRONICALLY FILED - 2025 Jan 31 1:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

JPS's business activities at the facility in Wallace contaminated the Great Pee Dee River, which is upstream of GSWSA's water source at Bull Creek. Further, JPS did not remediate the PFAS contamination at this facility when it ceased operations and transferred the facility, and its legacy PFAS contamination has caused and continues to cause harm to Plaintiff. As set forth in the Second Amended Complaint, Plaintiff is a public drinking water utility that provides potable water to its customers, and Plaintiff will be required to design, construct, and operate new water treatment technologies to remove PFAS contamination and provide drinking water free from PFAS. Plaintiff asserts causes of action against JPS (and other upstream dischargers) for private nuisance, public nuisance, trespass, and negligence, gross negligence, and/or recklessness.

## Argument

Under South Carolina law, "a judge of the circuit court" may appoint a receiver "[w]hen a corporation has been dissolved, is insolvent or in imminent danger of insolvency or has forfeited its corporate rights, and, in like cases of the property within this State of foreign corporations." S.C. Code Ann. § 15-65-10(4). The decision to appoint a receiver is discretionary with the appointing judge. *Midlands Util., Inc. v. S.C. Dep't of Health & Env't Control*, 301 S.C. 224, 228, 391 S.E.2d 535, 538 (1989). "A receiver represents the court appointing him. He is an officer of the court and is the agency through which the court acts." *Jeffcoat v. Morris*, 300 S.C. 526, 528, 389 S.E.2d 159, 160 (Ct. App. 1989), *overruled on other grounds by United Carolina Bank v. Caroprop*, 316 S.C. 1, 446 S.E.2d 415 (1994). Before a party's property may be put in the hands of a receiver, "[a]t least four days' notice of the application must be given, unless the court shall, upon it being made to appear that delay would work injustice, prescribe a shorter time." S.C. Code Ann. § 15-65-20.

2

ELECTRONICALLY FILED - 2025 Jan 31 1:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

This Court—which has exclusive jurisdiction to hear and dispose of all Local PFAS Litigation cases and all pretrial matters arising therefrom[1]—should appoint a receiver over JPS because it is dissolved and has forfeited its right to conduct business in South Carolina.[2] Before withdrawing from the State and dissolving, however, JPS engaged in tortious conduct causing harm to Plaintiff (and likely others), as alleged in Plaintiff's Second Amended Complaint. Additionally, Plaintiff properly served the Second Amended Summons and Complaint on JPS through the South Carolina Secretary of State,[3] *see* S.C. Code Ann. § 33-15-200(c), and JPS has not answered and is currently in default. Consistent with section 15-65-20, Plaintiff is providing notice of this Motion to JPS by serving copies on the South Carolina Secretary of State.

Plaintiff respectfully requests that this Court enter an order appointing Peter D. Protopapas as the Receiver over JPS. Mr. Protopapas has extensive experience acting as the receiver over dissolved or defunct entities such as JPS. As an officer of the Court, the Receiver can determine whether JPS has any assets (including, for example, insurance coverage), and he should be granted the authority to, among other things, accept service of claims, retain counsel, make claims against any insurance policies, and marshal and administer JPS's assets.

### Conclusion

For the foregoing reasons, Plaintiff respectfully submits that the appointment of a receiver over JPS is appropriate, and the receiver should be granted the power and authority to fully administer JPS's assets, accept service and engage counsel on its behalf, and take any and all steps necessary to protect the interests of JPS, whatever they may be. Plaintiff further respectfully

---

[1] *RE: Local PFAS Litigation*, S.C. Sup. Ct. Order dated Oct. 7, 2024.
[2] *See* Aff., Ex. A.
[3] *See* Aff., Ex. B.

ELECTRONICALLY FILED - 2025 Jan 31 1:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

submits that the Court should appoint Peter D. Protopapas as receiver over JPS, and requests that

the Court issue an order appointing a receiver as soon as practically possible.

Respectfully submitted,

*/s/ Marghretta H. Shisko*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

F. Jerome Tapley*
Hirlye Ryan Lutz, III*
Brett Cooper Thompson*
Robert Akira Watson*
Hamilton Jordan*
Hannah Caldwell*
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, AL 35205
(205) 328-2200
jtapley@corywatson.com
rlutz@corywatson.com
bthompson@corywatson.com
awatson@corywatson.com
hjordan@corywatson.com
hcaldwell@corywatson.com
*admitted pro hac vice*

*Attorneys for Plaintiff*

4

January 31, 2025

ELECTRONICALLY FILED - 2025 Jan 31 1:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# EXHIBIT - AFFIDAVIT

ELECTRONICALLY FILED - 2025 Jan 31 1:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 31 1:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS
FOR THE FIFTEENTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

Grand Strand Water and Sewer Authority,

*Plaintiff*,

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants*.

C.A. No. 2024-CP-26-05523

**AFFIDAVIT OF MARGHRETTA H. SHISKO**

Personally appeared before me, Marghretta H. Shisko, who, after first being duly sworn, states as follows:

1.    My name is Marghretta H. Shisko. I am over the age of 18 and am competent to provide this affidavit. I am an attorney licensed to practice in the State of South Carolina, and I am counsel for Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff") in the above-captioned action.

2.    Defendant J.P. Stevens & Co., Inc. is a dissolved foreign corporation that was formerly registered to transact business in the State of South Carolina. J.P. Stevens & Co., Inc. dissolved effective August 30, 1999, after applying for and obtaining a certificate of withdrawal from the SC Secretary of State pursuant to section 33-15-200 of the South Carolina Code.[1] In its application, J.P. Stevens & Co., Inc.: (1) revoked the authority of its South Carolina registered agent to accept service of process; (2) appointed the SC Secretary of State as its agent for service

---

[1] *See* Application for Surrender of Authority to Do Business in the State of South Carolina, attached as Exhibit A.

ELECTRONICALLY FILED - 2025 Jan 31 1:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

of process in actions based on a cause of action that arose from its transaction of business in the State; (3) provided a mailing address for the Secretary of State to forward any process against the corporation served on him; and (4) agreed to notify the Secretary of State of any future changes in its mailing address. *See* § 33-15-200(b).

3.    Plaintiff served Defendant J.P. Stevens & Co., Inc. with the Second Amended Summons and Complaint in this action on December 20, 2024, pursuant to section 33-15-200(c) of the South Carolina Code and Rule 4(d)(7), SCRCP, by serving copies of the same on the SC Secretary of State's Office via process server.[2]

4.    Defendant J.P. Stevens & Co., Inc.'s Answer to the Second Amended Complaint was due on January 24, 2025, but J.P. Stevens & Co., Inc. has not answered or otherwise appeared in this action. Pursuant to Rule 55(a), SCRCP, default was entered as to Defendant J.P. Stevens & Company, Inc. on January 31, 2025.

5.    Plaintiff is filing a Motion to Appoint a Receiver over J.P. Stevens & Co., Inc. pursuant to section 15-65-10(4) of the South Carolina Code and is providing notice of the Motion by serving copies of the same on Defendant J.P. Stevens & Co., Inc. through the SC Secretary of State's Office pursuant to sections 33-15-200(c) and 15-65-20 of the South Carolina Code.

*Signature Page Follows*

---

[2] *See* Correspondence and Affidavit of Service, attached as Exhibit B.

2

Marghretta H. Shisko

SWORN AND SUBSCRIBED TO BEFORE

ME this 31st day of _____January_____ , 2025

Notary Public, State of South Carolina

My Commission Expires: 4/28/32

ELECTRONICALLY FILED - 2025 Jan 31 1:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

3

# EXHIBIT A

ELECTRONICALLY FILED - 2025 Jan 31 1:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

CERTIFIED TO BE A TRUE AND CORRECT COPY
AS TAKEN FROM AND COMPARED WITH THE
ORIGINAL ON FILE IN THIS OFFICE

Nov 07 2024
REFERENCE ID: 1749860

*Mark Hammond*
SECRETARY OF STATE OF SOUTH CAROLINA

## STATE OF SOUTH CAROLINA
## SECRETARY OF STATE

### APPLICATION FOR SURRENDER OF AUTHORITY TO DO BUSINESS IN THE STATE OF SOUTH CAROLINA



*Jim Miles*
SECRETARY OF STATE
**FILED**
AM　AUG 3 0 1999　PM
7 8 9 10 11 12 1 2 3 4 5 6

2

Pursuant to the provisions of the 1976 South Carolina Code, as amended, the undersigned corporation hereby applies to the Secretary of State for surrender of authority to do business in the State of South Carolina, and for that purpose submits the following statement:

1.　The name of the corporation is　J.P. Stevens & Co., Inc.

2.　The corporation is incorporated under the laws of the state of　Delaware

3.　The corporation received a certificate of authorization to transact business in South Carolina dated　8|30/46

4.　The corporation is no longer transacting business in South Carolina.

5.　The corporation hereby surrenders its authority to transact business in the State of South Carolina.

6.　The corporation revokes the authority of its registered agent in South Carolina to accept service of process, and consents that process in any action, suit or proceeding based upon any cause of action arising in this State before the effective date of this application may be served on the Secretary of State.

7.　The address to which the Secretary of State may mail a copy of any process against the corporation that may be served on him is　c/o WestPoint Stevens Inc., P. O. Box 71, 507 West 10th Street, West Point GA 31833
The corporation hereby agrees to notify the Secretary of State of any change in this mailing address.

8.　Unless a delayed date is specified, this application shall be effective upon acceptance for filing by the Secretary of State (See §§33-1-230(b):

DATE:　8/26/99

J.P. Stevens & Co., Inc.
(Name of Corporation)

By　_____ (Signature)

Christopher N. Zodrow, Vice President & Secretary
(Type or Print Name and Office)

## FILING INSTRUCTIONS

1.　Two copies of this application, the original and either a duplicate original or a conformed copy, must be filed.

2.　Filing Fee (payable at the time of filing this document)　$10.00

Form Approved by South Carolina Secretary of State  1/89

99-033916CC

ELECTRONICALLY FILED - 2025 Jan 31 1:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

# EXHIBIT B

ELECTRONICALLY FILED - 2025 Jan 31 1:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523



## State of South Carolina
## Office of the Secretary of State
## The Honorable Mark Hammond

1205 PENDLETON STREET, SUITE 525
COLUMBIA, SC 29201

803-734-2170
sos.sc.gov

December 23, 2024

ELECTRONIC CERTIFIED MAIL
RETURN RECEIPT REQUESTED

J.P. Stevens & Co., Inc.
c/o WestPoint Stevens, Inc.
P.O. Box 71 507 West 10th Street
West Point, GA 31833

RE: J.P. Stevens & Co., Inc., 2024-CP-26-05523

Dear Madam/Sir:

In accordance with South Carolina Code § 33-15-200, we are enclosing herewith a copy of the Second Amended Summons; and Second Amended Complaint in the above-entitled case. Service was accepted on December 20, 2024 and a copy has been duly filed in our office as of this date. The fee of $10.00 has been paid.

Yours very truly,

Allyson Green
South Carolina Secretary of State's Office

Enclosures

cc:    John B. White Jr., P.A.
       John B. White, Jr.
       291 South Pine Street P.O. Box 2465
       Spartanburg, SC 29304

| Corporations | UCC | Charities | Boards & Commissions | Notaries | Trademarks |
|---|---|---|---|---|---|
| 803-734-2158 | 803-734-2175 | 803-734-1790 | 803-734-2512 | 803-734-2512 | 803-734-0367 |

ELECTRONICALLY FILED - 2025 Jan 31 1:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

ELECTRONICALLY FILED - 2025 Jan 31 1:36 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS

COUNTY OF HORRY )

CASE NO: 2024-CP-26-05523

Grand Strand Sewer and Water )
Authority, )

Plaintiff, )   **AFFIDAVIT OF SERVICE**

vs. )

Aladdin Manufacturing Corporation, )
et. al., )

Defendants. )

The undersigned, Debbie Brothers being duly sworn, says that she served the foregoing: **COVER LETTER, TWO SECOND AMENDED SUMMONS AND TWO SECOND AMENDED COMPLAINTS** in the above captioned action upon the Defendant **J.P. STEVENS & CO., INC.,** by delivering the same to:

( ) the individual personally, or

(X) **KIM WICKERSHAM, Director for SC Secretary of State's Office** person served as authorized/designated to receive service for the defendant and leaving with him/her one (1) copy of the same at **1205 Pendleton Street, 5ᵗʰ Floor, Columbia, SC 29201** on the **20th day** of **December, 2024**, at **9:25 a.m.**

The Affiant further says, that upon information and belief, she know the person so served to be the defendant mentioned and described in the documents served and that the affiant is not a party to nor interested in the action.

_____
Debbie Brothers

SWORN TO before me this 3ᴿᴰ day
of _____January_____ ,2025
_____
Notary Public for S.C.
My Commission Expires: 3-6-2025

ELECTRONICALLY FILED - 2025 Jan 31 1:02 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523

STATE OF SOUTH CAROLINA                    IN THE COURT OF COMMON PLEAS

IN RE: PFAS LITIGATION
COORDINATED DOCKET

_____

COUNTY OF HORRY

Grand Strand Water and Sewer Authority,

*Plaintiff*,

v.                                                                C.A. No. 2024-CP-26-05523

Aladdin Manufacturing Corporation et al.,

*Defendants*.

## [PROPOSED] SCHEDULING ORDER FOR BRIEFING OF PENDING MOTIONS

Pursuant to the South Carolina Supreme Court's Order governing PFAS litigation currently pending and to be filed in the state court system, dated August 14, 2024, and as superseded by the Supreme Court's Order dated October 7, 2024, the Court hereby sets forth the following schedule for all motions pending as of the date of this Order in the above-captioned PFAS litigation case:

1.  All memoranda of law in support of the pending motions shall be filed no later than **February 14, 2025**.

2.  All memoranda of law in opposition to the pending motions shall be filed no later than **February 28, 2025**.

3.  A hearing will be held on all motions pending in the above-captioned case on **March 12, 2025** at 9:30 a.m. in Courtroom 2A at the Spartanburg County Courthouse.

**IT IS SO ORDERED**.

[JUDICIAL ELECTRONIC SIGNATURE PAGE TO FOLLOW.]

1



Horry Common Pleas

**Case Caption:**    Grand Strand Water And Sewer Authority VS Aladdin Manufacturing
Corporation , defendant, et al

**Case Number:**    2024CP2605523

**Type:**    Order/Scheduling Order

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2025-01-31 12:11:24    page 2 of 2

ELECTRONICALLY FILED - 2025 Jan 31 1:02 PM - HORRY - COMMON PLEAS - CASE#2024CP2605523