**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| Town of Cheraw,<br><br>    Plaintiff,<br><br>  v.<br><br>3M Company, Inc.;<br>Burlington Industries, Inc.;<br>Corteva, Inc.;<br>Daikin America, Inc.;<br>Delta Mills, Inc.;<br>DuPont de Nemours, Inc.;<br>E.I. Du Pont de Nemours, Inc.;<br>EIDP, Inc. f/k/a E.I. du Pont de Nemours and<br>Company;<br>J.P. Stevens & Company, Inc.;<br>The Chemours Company; and<br>The Chemours Company FC, LLC;<br><br>    Defendants. | Case No. ___2:25-cv-00679-RMG___<br><br>JURY TRIAL DEMANDED<br><br><br>__NOTICE OF REMOVAL__ |

Defendant 3M Company ("3M"), by undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1332, 1441, 1442(a)(1) and 1446, from the Court of Common Pleas for the Fourth Judicial Circuit, Chesterfield County, South Carolina, to the United States District Court for the District of South Carolina, Florence Division. 3M is entitled to remove this action based both on federal officer jurisdiction and on diversity jurisdiction. As grounds for removal, 3M states as follows.

**PRELIMINARY STATEMENT**

1.     Plaintiff Town of Cheraw ("Plaintiff") seeks to hold 3M and certain other Defendants liable based on their alleged conduct in designing, manufacturing, or selling per- and

1

polyfluoroalkyl substances ("PFAS") or PFAS-containing products, purportedly resulting in alleged contamination of Plaintiff's water supply, the Great Pee Dee River watershed.

2.    The alleged PFAS contamination of Plaintiff's water supply plausibly resulted at least in part from the use, storage, and/or disposal of PFAS-containing aqueous film-forming foams ("AFFF") that 3M and others developed and sold to the U.S. military in accordance with rigorous military specifications ("MilSpec") issued by the Department of Defense ("DoD"). AFFF is a firefighting foam that is highly effective for extinguishing fuel-based fires. Here, the alleged PFAS contamination of the Great Pee Dee River plausibly resulted at least in part from nearby use of MilSpec AFFF, including at military facilities such as the Salisbury Army Aviation Support Facility National Guard Base ("Salisbury AASF NG Base") and Stanly County Air National Guard Base ("Stanly County ANGB"). In fact, the State of South Carolina has filed an action against 3M and other Defendants to recover for alleged PFAS contamination of groundwater and surface waters encompassing Plaintiff's water supply, and the State expressly alleges that such PFAS resulted from AFFF used at military facilities. The State's case is pending in the *In re AFFF Products Liability Litigation* MDL ("MDL") before Judge Gergel in this District. *See* Compl., *South Carolina v. 3M Co., et al.*, No. 2:23-cv-05734-RMG (D.S.C.), ECF No. 1-1 ("State AG Complaint"). Because the alleged PFAS contamination of Plaintiff's water supply plausibly resulted from the use, storage, and/or disposal of MilSpec AFFF, 3M intends to assert in this action the federal government contractor defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), which bars Plaintiff from establishing, among other things, liability for the design and manufacture of MilSpec AFFF and for the provision of warnings for the product.

3.    Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action to have its federal defense adjudicated in a federal forum. Such removal "fulfills

2

the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008). Courts have held that AFFF manufacturers properly removed cases to federal court on the ground that the plaintiffs' claims plausibly arose at least in part from MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard*, No. 1:20-cv-1080, 2021 WL 744683, at *3-4 (W.D. Mich. Jan. 6, 2021).

4. Although Plaintiff's Complaint purports to disclaim any damages arising from contamination or injury related to AFFF, Plaintiff's requests for relief encompass damages attributable to PFAS-containing MilSpec AFFF. PFAS from MilSpec AFFF use plausibly has commingled with alleged PFAS from non-AFFF sources in the drinking water and wastewater for which Plaintiff seeks to recover.[1] Moreover, PFAS from MilSpec AFFF is identical to PFAS from other sources, and Plaintiff has not explained how to segregate out the PFAS covered by its disclaimer. Plaintiff cannot prevent 3M "from raising the production of MilSpec AFFF as a defense or an alternate theory" of the claimed damages. *Nessel*, 2021 WL 744683, at *3. As a result, 3M is entitled to a federal forum to litigate its federal defense.[2]

---

[1] The South Carolina Department of Health and Environmental Control has classified AFFF use at DoD and other federal facilities as having the highest "Impact Rank" of all potential sources of PFAS in surface waters in South Carolina. *See* SCDHEC, *Strategy to Assess the Impact of Polyfluoroalkyl Substances on Ambient Surface Waters in South Carolina* at 7 (Apr. 30, 2021), https://scdhec.gov/sites/default/files/media/document/BOW_PFAS_SurfaceWaterStrategy_0.pdf.

[2] 3M acknowledges that the MDL Court remanded the State's putative "non-AFFF" action to state court on the ground that the State had disclaimed AFFF-related damages and federal officer jurisdiction was lacking. Order, *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-2873, 2024 WL 1470056 (D.S.C. Feb. 29, 2024). That order is inconsistent with subsequent appellate precedent, and 3M is challenging it in its appeal to the Fourth Circuit, docketed as *In re AFFF Prods. Liab. Litig.*, No. 24-1270 (4th Cir.).

5.     In addition, there is complete diversity of citizenship between Plaintiff and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Alternatively then, removal of this action is proper under 28 U.S.C. §§ 1332(a) and 1441.

## BACKGROUND

6.     Plaintiff filed this action on January 6, 2025, in the Court of Common Pleas for the Fourth Judicial Circuit, Chesterfield County, South Carolina, bearing Case No. 2025CP1300012. On the same day, Plaintiff filed the operative Amended Complaint ("Complaint") (attached as Exhibit 1).

7.     The Complaint alleges that Plaintiff provides drinking water to residents of Chesterfield County. *See* Complaint ¶¶ 13-14. The Complaint further alleges that Plaintiff operates a drinking water treatment plant and draws its water from the Great Pee Dee River. *See id.* ¶¶ 14-17, 91-93. Plaintiff also operates a wastewater treatment facility. *See id.* ¶¶ 18-19.

8.     Plaintiff alleges that it brought this action to recover costs and obtain other relief relating to alleged contamination of its drinking water supply and wastewater with PFAS. *See* Complaint, p. 1. Plaintiff asserts that the Great Pee Dee River has PFAS levels in excess of recent EPA regulatory limits; that Plaintiff must bring its water into compliance with those limits; and that it must upgrade its water and wastewater treatment facilities to address PFAS. *See id.* ¶¶ 1-12. Plaintiff seeks compensatory and punitive damages, specifically including costs of upgrading its water and wastewater treatment facilities and other expenses for PFAS removal. *See id.* ¶ 24.

9.     Plaintiff asserts that the PFAS for which it seeks to recover include PFOA and PFOS, chemicals that degrade to PFOA and PFOS, and chemical precursors of PFOA and PFOS. *See* Complaint ¶ 1 n.1.  PFOA and PFOS are PFAS chemicals that have been used in manufacturing AFFF products, including MilSpec AFFF. *See* State AG Complaint ¶ 2.

4

10.     Plaintiff asserts claims against both "PFAS Manufacturers" (including 3M and certain other Defendants) and "PFAS Users" (including manufacturers that operated local or nearby facilities). *See* Complaint ¶¶ 25-35. Plaintiff generically alleges that Defendants "manufactured, sold, used, and/or caused the unauthorized discharge of PFAS into the Great Pee Dee River, from which Cheraw sources its drinking water." *Id.* ¶ 4; *see id.* ¶¶ 91-104.

11.     Plaintiff alleges that it disclaims any damages from AFFF. *See id.* ¶ 38.

12.     Plaintiff asserts claims for negligence/gross negligence (*id.*, ¶¶ 105-118), continuing nuisance (*id.*, ¶¶ 119-130), public nuisance (*id.*, ¶¶ 131-140), trespass (*id.*, ¶¶ 141-153); failure to warn (*id.*, ¶¶ 154-162); and violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 *et seq.* (*id.*, ¶¶ 163-171).

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE MET

13.     Venue for the removal of this action is proper in this Court pursuant to 28 U.S.C. §§ 121(3) and 1441(a) because the Court of Common Pleas for the Fourth Judicial Circuit, Chesterfield County, South Carolina, is located within the District of South Carolina, Florence Division. This action is related to cases in the MDL that are pending in this District, which include cases against 3M and other Defendants for alleged PFAS contamination in South Carolina.

14.     3M is not required to notify or obtain the consent of any other Defendant to remove Plaintiff's action as a whole under § 1442(a)(1). *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Houser v. Ammco Tools, a/k/a Hennessy Indus., Inc.*, Civil Action No. RDB-13-1179, 2013 WL 3364377, at *1 n.5 (D. Md. July 2, 2013). Nor is 3M required to notify or obtain the consent of any other Defendant to assert diversity jurisdiction as an alternative basis for removal under § 1441(a), because 3M is also removing this case under § 1442(a)(1) and thus is not removing it "*solely*" under § 1441(a). 28 U.S.C. § 1446(b)(2) ("When a civil action is

removed *solely* under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." (emphasis added))

15.    Pursuant to 28 U.S.C. § 1446(a), true and accurate copies of the operative Complaint and Summons are attached hereto as Exhibit 1. True and accurate copies of all other documents on file in the state-court proceeding are attached hereto as Exhibit 2.

16.    3M was served with the Complaint and Summons on January 10, 2025. This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

17.    Pursuant to 28 U.S.C. § 1446(d), 3M is serving a copy of this Notice of Removal upon all other parties to this case and is filing a copy with the Clerk of the Court of Common Pleas for the Fourth Judicial Circuit, Chesterfield County, South Carolina.

18.    By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

19.    3M reserves the right to amend or supplement this Notice of Removal.

20.    If any question arises as to the propriety of the removal of this action, 3M requests the opportunity to present a brief and oral argument in support of removal.

**REMOVAL IS PROPER UNDER THE FEDERAL**
**OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)**

21.    Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its actions taken pursuant to a federal officer's direction have a causal nexus

6

with plaintiff's claims or injuries or are otherwise related to the lawsuit; and (d) it can assert a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 133-35 (1989); *see also Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 254 (4th Cir. 2021); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135.

22. Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). To the contrary, § 1442 as a whole must be "liberally construed" in favor of removal. *Cnty Bd. of Arlington Cnty.*, 996 F.3d at 251; *see Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Durham*, 445 F.3d at 1252.

23. All requirements for removal under § 1442(a)(1) are satisfied when, as here, the notice of removal alleges that the plaintiff's injuries are, at least in part, caused by or related to MilSpec AFFF, regardless of whether the plaintiff has purported to disclaim MilSpec AFFF-related injuries. *See, e.g.*, *Nessel*, 2021 WL 744683, at *3 (denying motion to remand in PFAS case because, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF, . . . Plaintiffs cannot decide what defense Defendants might present"). Federal courts have found that removal under § 1442 is proper when the complaint seeks damages

for alleged PFAS-related injuries from MilSpec AFFF. *See, e.g., In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-2873, 2019 WL 2807266, at *2-3 (D.S.C. May 24, 2019) ("*In re AFFF*"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018).

24.    Here, the alleged PFAS from non-AFFF sources plausibly commingled in Plaintiff's water supply with PFAS from MilSpec AFFF, and as a result, Plaintiff's claims for damages and other relief related to PFAS in its water supply relate to a single injury attributable at least in part to MilSpec AFFF. To the extent that alleged PFAS deriving from non-AFFF sources cannot actually be separated out from PFAS deriving from the MilSpec AFFF sources, Plaintiff necessarily is seeking to impose liability on 3M for alleged contamination attributable in part to MilSpec AFFF, despite its alleged disclaimer. Moreover, 3M is entitled to a federal forum to litigate any apportionment of Plaintiff's damages between PFAS from non-AFFF sources and PFAS from AFFF sources, as the Seventh Circuit recently held in another case for alleged PFAS contamination in which the plaintiff similarly purported to disclaim injury from AFFF. *See People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 849 (7th Cir. 2024) (holding that "a federal court should be the one to resolve" difficult questions of apportionment of PFAS-related injuries between non-AFFF sources and AFFF sources subject to a federal defense, and ordering remand *only* because the plaintiff conceded that pursuant to its alleged disclaimer, it would not seek recovery for "mixed PFAS contamination" so its "recovery is barred" "[i]f even a morsel of contamination" is from AFFF). This case has been properly removed to this Court based on federal officer jurisdiction.

A.    **MilSpec AFFF**

25.    In the late 1960s/early 1970s, the U.S. military began using MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially

8

devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the U.S. Naval Research Laboratory developed AFFF (with some assistance from industry participants), and its researchers were granted the first AFFF patent in 1966.[3] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[4]

26.     The design, manufacture, and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command, part of the DoD. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[5] All MilSpec AFFF products must be "qualified for listing on the applicable Qualified Products List" prior to military procurement.[6] Prior to such listing, "a manufacturer's . . . products are examined, tested, and approved to be in conformance with specification requirements."[7] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[8] Naval Sea Systems Command "reserves the right to perform any of the

---

[3] U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[4] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[5] The 1969 MilSpec and all its revisions and amendments through the April 2020 amendment (MIL-PRF-24385F(4)) are available at https://tinyurl.com/yxwotjpg.

[6] MIL-PRF-24385F(4) § 3.1 (2020).

[7] DoD, SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[8] DoD, SD-6, *supra* note 7, at 1.

[quality assurance] inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements."[9]

27.    From its inception until recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants"—the class of PFAS chemicals that includes PFOA and PFOS.[10] Even today, the AFFF MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.[11] Indeed, the AFFF MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS from AFFF "while still meeting all other military specification requirements."[12]

28.    3M manufactured and sold PFAS-containing MilSpec AFFF to the U.S. military for over three decades pursuant to contracts with the United States. One or more of 3M's AFFF products were on the Navy's Qualified Products List for MilSpec AFFF from 1970 until 2010 (even though 3M had phased out production of AFFF beginning in 2000).[13] The U.S. military used MilSpec AFFF manufactured by 3M throughout the United States, including in South Carolina.

29.    3M also historically manufactured and sold PFAS-containing MilSpec AFFF to non-military users, including in South Carolina. As one notable example, so-called "Part 139"

---

[9] *See, e.g.*, MIL-PRF-24385F(4) § 4.1 (2020).

[10] *See* Mil-F-24385 § 3.2 (1969); MIL-PRF-24385F(2) § 3.2 (2017). In May 2019, the MilSpec was revised to drop the explicit requirement that the surfactants in the product be "fluorocarbon." *See* MIL-PRF-24385F(3) § 3.2 (2019). But under current technology, the only AFFF products capable of meeting the MilSpec's stringent performance requirements—and the only ones listed on the military's Qualified Product List—are those containing fluorocarbon surfactants. Thus, as a practical matter, the MilSpec still requires fluorocarbon surfactants.

[11] *See* MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).

[12] *See* MIL-PRF-24385F(4) § 6.6.

[13] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014) & MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

airports—*i.e.*, certain large civilian airports (*see* 14 C.F.R. § 139.1 (2019))—historically have used MilSpec AFFF, including 3M's MilSpec AFFF products. In fact, by 2006, the U.S. government was requiring Part 139 airports to use AFFF meeting MilSpec standards.[14]

30.     The PFAS chemicals that allegedly are contaminating Plaintiff's drinking water supply plausibly have derived at least in part from the use, storage, and/or disposal of MilSpec AFFF at military facilities and elsewhere. Accordingly, Plaintiff's claims to recover for the alleged PFAS contamination of its water and wastewater are related to or arise in part from MilSpec AFFF.

31.     Specifically, PFAS from the use, storage, and/or disposal of MilSpec AFFF at the Salisbury AASF NG Base in Salisbury, North Carolina, plausibly has contributed to the alleged PFAS contamination of Plaintiff's drinking water supply, the Great Pee Dee River. The Salisbury AASF NG Base is located in the Yadkin–Pee Dee watershed (which stretches between North Carolina and South Carolina), and PFAS releases there plausibly would be a source of PFAS in Plaintiff's drinking water supply. Further, the Salisbury AASF NG Base is a confirmed site where the U.S. military has used and stored AFFF. *See* AECOM, *FINAL Site Inspection Report, Salisbury Army Aviation Support Facility #2, North Carolina* (May 2022), at 3-1 to 3-2, 7-1 to 7-2, https://www.nationalguard.mil/Leadership/Joint-Staff/Personal-Staff/Public-Affairs/Community-Engagement/Environmental/PFAS-Library/North-Carolina/FileId/343153/. A PFAS investigation for the Salisbury AASF NG Base identified pathways whereby PFAS from AFFF use plausibly had migrated off-site to surrounding groundwater and surface water that can have impacted Plaintiff's water supply, the Great Pee Dee River: a report detailing the PFAS investigation

---

[14] *See* FAA Part 139 CertAlert 06-02, Aqueous Film Forming Foam (AFFF) meeting MIL-F-24385 (Feb. 8, 2006) (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1971-14 (D.S.C.)).

specifically identifies pathways whereby PFAS may have impacted the Yadkin River, which is the upper course of the Great Pee Dee River. *See id.* at 7-1 to 7-3.

32.     Additionally, PFAS in Plaintiff's water supply also plausibly derives from the use of MilSpec AFFF at the Stanly County ANGB and Stanly County Airport, located in Stanly County, North Carolina. The Stanly County ANGB and Stanly County Airport are also located in the Yadkin–Pee Dee watershed where PFAS releases plausibly would be a source of PFAS in Plaintiff's drinking water supply. The reports for PFAS investigations for Stanly County ANGB indicated that drainage from the site is towards a tributary of the Pee Dee River and identified pathways whereby PFAS plausibly migrated off-site into groundwater. *See* AMEC Foster Wheeler, *Final Report, FY16 Phase I Regional Site Inspections For Perfluorinated Compounds, Stanly Co. ANGB* at E-2 to E-3 (Mar. 25, 2019) (*available at* https://ar.cce.af.mil/Search) (AR#585624); BB&E, Inc., *Final Perfluorinated Compounds Preliminary Assessment Site Visit Report, Stanly County ANGB* at 7 (Jan. 2016) (*available at* https://ar.cce.af.mil/Search) (AR#470209). Further, the State of North Carolina has a case pending in the MDL against 3M and other Defendants in which the complaint expressly alleges that AFFF use at the Stanly ANGB and Stanly County Airport have contaminated surrounding drinking water supplies including the Pee Dee River. Compl. ¶¶ 1-12, 36-51, 120-136, *North Carolina v. 3M Co., et al.*, No. 2:22-cv-00014 (D.S.C.), ECF No. 1-1.

33.     Notably, the State of South Carolina's own AFFF lawsuit pending in the MDL incorporates maps which purportedly show the "association between AFFF-using sites and chemicals known to appear in AFFF" and purportedly support the State's allegation that "AFFF is the most probable source of contamination at these testing locations." State AG Complaint ¶ 138. Specifically those maps depict the alleged PFAS contamination in Chesterfield County where

12

Plaintiff's water supply is located, and they identify both Salisbury AASF NG Base and Stanly ANGB as nearby military facilities that allegedly are "probable source[s] of contamination" with PFAS. *Id.*; *compare id.* ¶ 136 n.54 (citing Environmental Working Group ("EWG") website for information depicted in the maps incorporated by the complaint), *with* EWG, *PFAS Contamination in the U.S.*, https://www.ewg.org/interactive-maps/pfas_contamination/map/ (identifying the Salisbury AASF NG Base and the Stanly ANGB as likely AFFF PFAS sites).

34.     MilSpec AFFF sources of PFAS in Plaintiff's water supply are not necessarily limited to the Salisbury AASF NG Base and Stanly County ANGB/Stanly County Airport. MilSpec AFFF use at other nearby military facilities and/or other sites also potentially contributed to PFAS in Plaintiff's water supply.

35.     Once PFAS from AFFF has migrated from military bases and/or other AFFF sites to surrounding groundwater and surface water, the PFAS would commingle with and becomes indistinguishable from PFAS from any non-AFFF sources. Tellingly, Plaintiff's own Complaint alleges that PFAS "migrate through surface water and groundwater" and "travel long distances while causing extensive contamination." Complaint ¶ 38; *see id.* ¶ 120. PFAS from MilSpec AFFF plausibly has commingled with PFAS from non-AFFF sources in Plaintiff's water supply, the Great Pee Dee River, so that Plaintiff's effort to recover for *any* PFAS levels in its water supply provides a basis for 3M to assert its federal government contractor defense.

36.     Because the alleged PFAS contamination at issue in this action is, at least in part, plausibly attributable and/or related to MilSpec AFFF use at military facilities and elsewhere that has inseparably commingled in the water supply with PFAS from non-AFFF sources, 3M is entitled to remove this case as a whole pursuant to federal officer jurisdiction. That is because Plaintiff's claims for alleged PFAS necessarily relate to PFAS deriving at least in part from

13

MilSpec AFFF sources, *i.e.*, "[i]t is entirely possible that Plaintiff['s] injuries occurred from actions taken while Defendants were acting under color of federal office: namely, MilSpec AFFF." *Nessel*, 2021 WL 744683, at *3. 3M therefore is entitled to raise "the production of MilSpec AFFF as a defense or alternative theory," and on that basis, may remove this case. *Id*. Although the Complaint purports to allege that Plaintiff is not seeking any relief for PFAS contamination from AFFF (*see* Complaint ¶ 38), Plaintiff's claims nonetheless relate to alleged PFAS contamination that is, at least in part, plausibly caused by or related to MilSpec AFFF (and not just non-AFFF PFAS sources). Plaintiffs' disclaimer thus does not preclude removal of this case. *See Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 180 (1st Cir. 2024) (holding that defendant properly removed case under the federal officer removal statute, notwithstanding the plaintiff's alleged disclaimer of relief related to federal conduct, because "[t]o credit the disclaimer would permit [plaintiff] to recover based on what, when considered through [defendant's] theory of removal, were acts under a federal officer," and plaintiff's "attempts at artful pleading cannot serve as an end run around the federal officer removal statute"). Federal officer removal is proper despite the alleged disclaimer because the claimed injury from PFAS is plausibly due in part to PFAS from MilSpec AFFF—and at a minimum, 3M is entitled to litigate any apportionment of Plaintiff's injury between PFAS from MilSpec AFFF sources and PFAS from other sources in federal court. *See Raoul*, 111 F.4th at 849 ("If the contamination came from AFFF, then the government contractor defense could apply . . . even though the State's complaint expressly excluded 3M from liability for PFAS contamination sources from AFFF" because "a factfinder would need to apportion the contamination" between AFFF and non-AFFF PFAS sources); *Nessel*, 2021 WL 744683, at *3 (denying State of Michigan's motion to remand and concluding that federal officer

removal was proper notwithstanding the complaint's allegation that Michigan was not seeking relief for MilSpec AFFF; "Plaintiffs' artful pleading does not obviate the facts on the ground.").

**B.**       **All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

   ***1.***       ***The "Person" Requirement Is Satisfied***

37.       The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) meets the definition of "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes corporations. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *accord Isaacson*, 517 F.3d at 135-36.

   ***2.***       ***The "Acting Under" Requirement Is Satisfied***

38.       The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 152 (2007); *Papp*, 842 F.3d at 812. The phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer*, 860 F.3d at 255 (internal quotation marks omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. Rather, "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer*, 860 F.3d at 255.

39.       The requirement of "acting under" a federal officer is met here because the alleged PFAS contamination at issue in this action stems in part from MilSpec AFFF, a vital product provided by 3M that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product"

15

used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[15] Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF.

40.    In designing, manufacturing, and supplying the MilSpec AFFF at issue, 3M acted under the direction and control of federal officers. Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, MilSpec AFFF products were subject to various tests by the U.S. Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[16]

41.    For these reasons, 3M has satisfied the "acting under" requirement. *See In re AFFF*, 2019 WL 2807266, at *2 (finding that "acting under" requirement was satisfied because defendant demonstrated that it manufactured MilSpec AFFF under guidance of U.S. military); *Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8-9 (same).

### 3.    The "Under Color Of Federal Office" Requirement Is Satisfied

42.    The third requirement, that the defendant's actions were taken "under color of federal office," requires a "nexus" between plaintiff's claims and the defendant's acts undertaken at the direction of a federal officer. As with the "acting under" requirement, "[t]he hurdle erected

---

[15] Fulfilling the Roosevelts' Vision at 37.

[16] *See* DoD, SD-6, *supra* note 7, at 1.

by this requirement is quite low." *Isaacson*, 517 F.3d at 137. To meet this requirement, "there need be only *a connection or association* between the act in question and the federal office." *Sawyer*, 860 F.3d at 258 (internal quotation marks omitted) (explaining that 28 U.S.C. § 1442 permits removal of actions "for *or relating to* any act under color of [federal] office"); *Papp*, 842 F.3d at 813; *Isaacson*, 517 F.3d at 137-38 (explaining that it is sufficient if the act that allegedly caused the plaintiff's injuries occurred while the defendant was performing its official duties).[17]

43.    Here, Plaintiff's claims against 3M for alleged PFAS contamination of its water and wastewater are for or relate to (at least in part) 3M's design, manufacture, and sale of MilSpec AFFF. MilSpec AFFF was designed and manufactured according to DoD military specifications; has been used, stored, and/or released at military facilities and elsewhere in the vicinity of Plaintiff's water supply; and has plausibly impacted PFAS levels of Plaintiff's water supply. As a result, Plaintiff's claims against 3M relate to its acts taken under color of federal office. *See In re AFFF*, 2019 WL 2807266, at *3 (nexus element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products . . . for which the U.S. military imposes MilSpec standards."); *Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government.").

44.    Courts "credit Defendants' theory of the case" when determining whether the requisite nexus exists. *Isaacson*, 517 F.3d at 137; *see Express Scripts, Inc.*, 119 F.4th at 192; *Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present"). As averred in this Notice of Removal, Plaintiff's alleged injuries plausibly arise at least in part from MilSpec AFFF. Plaintiff's claims thus sufficiently relate to 3M's actions under

---

[17] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

color of federal office. "[I]t is enough for . . . removal that at least some of the pollution arose from the federal acts." *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020)).

### 4.     The "Colorable Federal Defense" Requirement Is Satisfied

45.     The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion of the government contractor defense.

46.     At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)). Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (quoting *Willingham*, 395 U.S. at 409).

18

47.     Under the government contractor defense, the defendant is not liable for the design or manufacture of equipment or supplies (or for warnings relating to them) "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

48.     The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling.[18] Those specifications are "reasonably precise," including in requiring the use of PFAS.[19] In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *See In re AFFF*, 2019 WL 2807266, at *3 (noting that a colorable defense was alleged where AFFF MilSpec "included specifications for the chemical class that includes PFOS/PFOA"); *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but

---

[18] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 5, *supra*.

[19] As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family. Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification.

continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

49.     With respect to the second requirement, 3M's products have appeared on the DoD Qualified Products List,[20] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See In re AFFF*, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); *Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications.").

50.     Regarding the third requirement, the U.S. government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[21] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered

---

[20] *See* QPL/QPD Histories, cited in note 13, *supra*.

[21] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1-6 (Nov. 4, 2002).

to have adverse effects environmentally."[22] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[23] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."[24] In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.[25] More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, the DoD still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[26] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants,"[27] and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[28] *See In re AFFF*, 2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S.

---

[22] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[23] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

[24] EPA Presentation on Activities/Issues on Fluorosurfactants, March 16, 2001 (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1971-2 (D.S.C.)).

[25] *See* EPA, Revised Draft Hazard Assessment, *supra* note 24.

[26] DoD, *Aqueous Film Forming Foam Report to Congress* 1-2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[27] MIL-PRF-24385F(4) § 3.2 (2020).

[28] MIL-PRF-24385F(4) § 6.6 & Tables I, III; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . ."); *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

51.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89-90; *see also Ayo*, 2018 WL 4781145, at *13.

52.     In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by 3M presents genuine issues of fact for trial. *See In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is, by definition, better than merely "colorable."

53.     3M's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on 3M for alleged injuries to Plaintiff that were caused in whole or in part by 3M's compliance with military specifications, Plaintiff is attempting to use state tort law

22

to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

54.     Accordingly, 3M is entitled to remove this action to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

**IN ADDITION, REMOVAL IS PROPER BASED ON DIVERSITY JURISDICTION**

55.     Additionally, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Diversity jurisdiction exists if two requirements are met. First, the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Second, there must be complete diversity between the plaintiff and the defendants. *See, e.g.*, *Navy Fed. Credit Union v. LTD Fin. Servs.*, 972 F.3d 344, 353 (4th Cir. 2020). Complete diversity exists if the suit is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3). There is complete diversity here because Plaintiff is a citizen of South Carolina and every Defendant is a citizen of a different State.

56.     For diversity purposes, a corporation is a citizen of "every State or foreign state by which it has been incorporated" as well as "the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see, e.g.*, *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). The citizenship of an unincorporated business entity such as an LLC or a partnership "is determined by the citizenship of all of its members." *Cent. W. Va. Energy Co.*, 636 F.3d at 103. An LLC's or partnership's own state of organization and principal place of business are irrelevant for determining its citizenship.

57.     Plaintiff is a town in Chesterfield County created pursuant to South Carolina law. Plaintiff is a citizen of South Carolina.

58.     None of the Defendants is a citizen of South Carolina.

23

59.     As the Complaint alleges, 3M is a Delaware corporation. Complaint ¶ 25. 3M has its principal place of business in St. Paul, Minnesota. 3M is a citizen of Delaware and Minnesota.

60.     The Complaint alleges that Defendant Daikin America, Inc., is a Delaware corporation with its principal place of business in Orangeburg, New York. *Id*. ¶ 26. Daikin America, Inc., is a citizen of Delaware and New York.

61.     The Complaint alleges that Defendant DuPont de Nemours, Inc. is a Delaware corporation. *Id*. ¶ 27. Upon information and belief, DuPont de Nemours, Inc., has its principal place of business in Wilmington, Delaware. DuPont de Nemours, Inc. is a citizen of Delaware.

62.     The Complaint alleges that Defendant E. I. du Pont de Nemours, Inc. is a Delaware corporation. *Id*. ¶ 28. Upon information and belief, E. I. du Pont de Nemours, Inc. has its principal place of business in Wilmington, Delaware. E. I. du Pont de Nemours, Inc. is a citizen of Delaware.

63.     The Complaint alleges that Defendant EIDP, Inc. is a Delaware corporation. *Id*. ¶ 29. Upon information and belief, EIDP, Inc. has its principal place of business in Wilmington, Delaware. EIDP, Inc. is a citizen of Delaware.

64.     The Complaint alleges that Defendant Corteva, Inc. is a Delaware corporation. *Id*. ¶ 30. Upon information and belief, Corteva, Inc. has its principal place in Indianapolis, Indiana. Corteva, Inc. is a citizen of Delaware and Indiana.

65.     The Complaint alleges that Defendant The Chemours Company is a Delaware corporation. *Id*. ¶ 31. Upon information and belief, The Chemours Company has its principal place of business in Wilmington, Delaware. The Chemours Company is a citizen of Delaware.

66.     The Complaint alleges that Defendant Chemours Company FC, LLC is a Delaware corporation. *Id*. ¶ 32. In fact, Chemours Company FC, LLC is a limited liability company and thus has the same citizenship as its members. Upon information and belief, the sole member of

24

Chemours Company FC, LLC, is Defendant The Chemours Company, which is a citizen of Delaware. *See supra* ¶ 64. Thus, Chemours Company FC, LLC is a citizen of Delaware.

67.     The Complaint alleges that Defendant Burlington Industries, Inc. was a Delaware corporation. Complaint ¶ 33. Upon information and belief, Burlington Industries, Inc. previously had its principal place of business in Greensboro, North Carolina, but was dissolved in or around 2005. Accordingly, Burlington Industries, Inc. is a citizen of Delaware only. *See, e.g.*, *Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288, 292 (4th Cir. 1999) (holding that a dissolved corporation no longer had the citizenship of its former principal place of business).[29]

68.     The Complaint alleges that Defendant Delta Mills, Inc. was a Delaware corporation and that its principal place of business used to be located in Fountain Inn, South Carolina. *Id*. ¶ 34. Upon information and belief, Delta Mills, Inc., was dissolved in or around 2006. As a result, Delta Mills, Inc. no longer has a principal place of business in South Carolina. Accordingly, Delta Mills, Inc. is a citizen of Delaware only. *See Athena Automotive, Inc.*, 166 F.3d at 292; *see also Navy Fed. Credit Union*, 972 F.3d at 359-360 & n.10 ("[A]n inactive corporation . . . has no principal place of business, and is instead a citizen of its state of incorporation only." (quoting *Midatlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995))).

---

[29] Although the Complaint alleges that a South Carolina court has appointed a South Carolina attorney as the receiver for Burlington Industries, Inc. (Complaint ¶ 33), that does not render Burlington Industries, Inc. a South Carolina citizen here. Notably, the receiver's principal role has been simply to seek recovery of funds on behalf of South Carolina plaintiffs, including Plaintiff here, by initiating third-party litigation in South Carolina court against out-of-state companies that issued insurance policies to Burlington Industries, Inc. *See, e.g.*, First Am. Compl., *Burlington Indus., Inc. v. Cont'l Cas. Co., et al.*, No. 2024-CP-42-04138 (S.C. Ct. Common Pleas, Spartenburg Cnty. Jan. 23, 2025). The receiver has no control over or connection to Burlington Industries, Inc. outside of such litigation and is not a real party in interest in this case. His appointment does not defeat diversity. *See, e.g.*, *Messer v. American Gems, Inc.*, 612 F.2d 1367, 1375 (4th Cir. 1980) (disregarding citizenship of administratrix appointed to initiate litigation on behalf of out-of-state beneficiaries because exercise of diversity jurisdiction furthered purpose of "protection of the noncitizen who is obliged to sue or be sued in the state of his adversary").

69.    The Complaint alleges that Defendant J.P. Stevens & Company, Inc. was a Delaware corporation. Complaint ¶ 35. Upon information and belief, J.P. Stevens & Company, Inc. was dissolved in or around 1989 and its principal place of business previously had been in New York, New York. Accordingly, J.P. Stevens & Company, Inc. is a citizen of Delaware only. *See Navy Fed. Credit Union*, 972 F.3d at 359-360; *Athena Automotive, Inc.*, 166 F.3d at 292.

70.    Because Plaintiff is a citizen of South Carolina, and every Defendant is a citizen of a different State under 28 U.S.C. § 1332, complete diversity among the parties exists in this action.

71.    The amount in controversy requirement is also satisfied. The amount in controversy in a case where federal jurisdiction is based on diversity of citizenship must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. As the Supreme Court has made clear, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Although 3M denies Plaintiff's claims to monetary and other relief, the amount in controversy here is plainly in excess of the jurisdictional minimum.

72.    Although Plaintiff does not state a precise dollar amount in controversy, the allegations in the Complaint make clear that the damages sought exceed $75,000, exclusive of interest and costs. Plaintiff alleges that it operates a drinking water treatment plant and a wastewater treatment plant and that both must be upgraded to remove PFAS. *See* Complaint ¶¶ 14, 18, 21. Plaintiff further alleges that it "has suffered, and will continue to suffer, substantial economic and consequential damage, including but not limited to: past and future expenses associated with the testing and monitoring of PFAS contamination levels in Cheraw's raw water and drinking water; past and future expenses associated with testing, monitoring, and installing temporary emergency filtration and pumping systems; pilot program costs associated with

26

permanent filtration systems capable of removing Defendants' PFAS from Cheraw's drinking water; past and future costs associated with the purchase, installation, and operation of permanent filtration systems capable of removing Defendants' PFAS from Cheraw's drinking water and wastewater; costs associated with remediating Cheraw's existing treatment and pumping facilities; damage to goodwill and reputation; and lost revenue and sales," as well as "past, present, and future engineering, operating, and maintenance costs." *Id.* ¶ 23. Plaintiff alleges that it "seeks compensatory and punitive damages to the fullest extent allowed by South Carolina law," and that that "includes but is not limited to compensatory damages to upgrade [its] water and wastewater treatment technology to be able to remove all PFAS from drinking water and wastewater, filtration equipment, piping, and other necessary infrastructure," as well as "damages for increased operational expenses associated with the operation of these facilities, such as increased electrical expenses, staffing expenses, and proper disposal of any associated byproducts related to PFAS treatment." *Id*. ¶ 24. Plaintiff also seeks past and future damages, treble damages under the South Carolina Unfair Trade Practices Act, punitive damages, and attorneys' fees. *Id.* at p. 34.

73.     Plaintiff's allegations make plain that the amount in controversy here exceeds $75,000, exclusive of interest and costs, and thus that the jurisdictional amount-in-controversy requirement under § 1332(a) is satisfied.

74.     Because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs, this case is subject to removal by 3M on diversity grounds pursuant to 28 U.S.C. §§ 1332 and 1441.

* * * * *

27

WHEREFORE, 3M hereby removes this action from the Court of Common Pleas for the Fourth Judicial Circuit, Chesterfield County, South Carolina, to the United States District Court for the District of South Carolina, Florence Division.

Respectfully submitted,

February 5, 2025

s/Brian C. Duffy

Brian C. Duffy (Fed ID No. 9491)
DUFFY & YOUNG, LLC
96 Broad Street
Charleston, SC 29401
(843) 720-2044
(843) 720-2047
bduffy@duffyandyoung.com

*Liaison Counsel for Defendant 3M Company*

Daniel L. Ring, Esq.
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 701-8520
dring@mayerbrown.com

*Counsel for Defendant 3M Company*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 5, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record. I further certify that I caused a true and correct copy of the foregoing document to be served upon the following parties by First Class Mail and/or by Email, as indicated below:

<u>**By Mail and Email:**</u>

Amy L.B. Hill, SC Bar No.: 68541
William C. Lewis, SC Bar No.: 101287
Richardson Thomas, LLC
1513 Hampton Street
Columbia, South Carolina 29201
amy@richardsonthomas.com
will@richardsonthomas.com

Jeffrey E. Friedman
Jeffrey E. (Jay) Friedman, Jr.
Matthew D. Conn
Madison M. Gitschier
Friedman, Dazzio & Zulanas, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242
jfriedman@friedman-lawyers.com
jayfriedman@friedman-lawyers.com
mconn@friedman-lawyers.com
mgitschier@friedman-lawyers.com

*Counsel for Plaintiff*

<u>**By Email:**</u>

Theodore M Grossman
Jones Day
250 Vesey Street
New York, NY 10281-1047
Email: tgrossman@jonesday.com

*Counsel for Daikin America Inc.*

David R. Erickson
Shook, Hardy & Bacon LLP
2555 Grand Boulevard
Kansas City, MO 64108
derickson@shb.com

*Counsel for Defendants E.I. Du Pont de Nemours and Company; EIDP, Inc. f/k/a E.I. Du Pont de Nemours and Company; The Chemours Company; and the Chemours Company FC, LLC*

Katherine L.I. Hacker
Bartlit Beck LLP
1801 Wewatta St., 12th Floor
Denver, CO 80202
kat.hacker@bartlitbeck.com

*Counsel for Defendant DuPont de Nemours, Inc., and Corteva, Inc.*

**<u>By Mail</u>:**

Peter M. McCoy, Jr.
15 Prioleau Street
Charleston, SC 29401

*Counsel for Defendant Burlington Industries, Inc.*

Delta Mills, Inc.
c/o William H. Hardman, Jr.
700 North Woods Drive
Fountain Inn, SC 29864

*Defendant*

J.P. Stevens & Company, Inc.
c/o Corporation Service Co.
1301 Gervais Street
Columbia, SC 29201

*Defendant*

s/ Brian C. Duffy
DUFFY & YOUNG, LLC
